IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FILED BY

2006 JUL 14  PM 3: 37

CASE NO.: 06-21748 CIV-MARTINEZ/BANDSTRA

MARK J. GAINOR,

        Plaintiff,

v.

SIDLEY, AUSTIN, BROWN & WOOD, LLP,

        Defendants
_____/

## NOTICE OF PENDENCY OF REFILED ACTION

Defendant, SIDLEY AUSTIN, LLP f/k/a SIDLEY AUSTIN BROWN & WOOD, LLP

("Sidley"), pursuant to Rule 3.8 of the Local Rules of the United States District Court for the

Southern District of Florida, files this Notice of Pendency of Refiled Action to advise the Court

of a refiled action involving identical parties and common issues of law and fact.

## GAINOR I

The earlier filed action ( referred to herein as "Gainor I") was commenced on or about June

7, 2004, in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County. It was styled

*Mark J. Gainor, Plaintiff v. Sidley, Austin, Brown & Wood, LLP*, Case No. 04-13737 CA (27). A

copy of the Plaintiff's Complaint and Demand for Jury Action is attached hereto as Exhibit "A".

That case was removed by Sidley on diversity grounds on or about August 12, 2004, to this Court

where it became Case No. 04-22058 (Moreno/Garber). Plaintiff voluntarily dismissed the matter on



CASE NO.: 06-21748 CIV-MARTINEZ/BANDSTRA

or about December 15, 2004.

### GAINOR II

Plaintiff filed the instant case (referred to hereinafter as "Gainor II") on or about June 7, 2006, in the Circuit Court in and for Miami-Dade County. It was also entitled Mark J. Gainor v. Sidley, Austin, Brown & Wood, LLP and was assigned Case No. 06-11275 CA 27 ( see Exhibit "B"). Sidley filed its Notice of Removal on diversity grounds in this Court on or about July 12, 2006, and the case became Case No. 06-21748 CIV-Martinez.

Both Gainor I and Gainor II involve the same parties, the same issues and identical claims, including the following: professional malpractice, breach of contract, breach of implied contract, unjust enrichment, negligent misrepresentation, fraudulent misrepresentation, breach of fiduciary duty, tortious interference with an advantageous business relationship and violations of the Florida Civil Remedies for Criminal Practices Act.

### DUTY OF GIVING NOTICE

Rule 3.8 S.D.Fla.L.R. imposes a continuing duty upon the Clerk and attorneys of record to promptly notify the Court and opposing counsel of other actions and proceedings, including refiled and similar actions. Moreover, the Court's Internal Operating Procedures at § 2.15.00 provide as follows:

#### Transfer of Refiled and Similar Actions and Procedures

**Refiled** Whenever an action or proceeding previously dismissed without prejudice is refiled without a substantial change in issues or parties, judges should confer and discuss whether the case should be transferred to the judge who previously dismissed the action or proceeding and, upon agreement, it shall be transferred to the judge who previously dismissed the action or proceeding.

CASE NO.: 06-21748 CIV-MARTINEZ/BANDSTRA

IOP.2.15.00(A).  Gainor I and Gainor II present this very situation.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy was faxed and mailed this $14th$ day of

July, 2006 on Richard Benjamin Wilkes, Richard Benjamin Wilkes, P.A., 600 South Magnolia

Avenue, Suite 200, Tampa, Florida 33606.

Respectfully submitted,

PODHURST ORSECK, P.A.
25 West Flagler Street, Suite 800
Miami, Florida  33130
(305) 358-2800 / Fax (305) 358-2382
kezell@podhurst.com


By: _____
    KATHERINE W. EZELL
    Fla. Bar No. 114771

Of Counsel:

MUNGER, TOLLES & OLSON, LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
(613) 683-9100/Fax (613) 683-5136

Attorneys for Defendant Sidley Austin, LLP

-3-

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION

MARK J. GAINOR,

     Plaintiff,

v.

SIDLEY, AUSTIN, BROWN & WOOD, LLP,

     Defendant.

_____/

CASE NO.: *C4 - 13737  CA (27)*

## PLAINTIFF'S COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiff, Mark J. Gainor ("Gainor"), an individual, sues Defendant, Sidley, Austin, Brown & Wood, LLP ("Sidley"), a Delaware limited liability partnership, and alleges:

## ALLEGATIONS COMMON TO ALL COUNTS
### (Paragraphs 1 - 33)

1.    This is an action for damages in excess of $15,000.00, exclusive of interest, attorneys' fees and costs.

2.    Gainor is an individual residing in Dade County, Florida.

3.    Sidley is a limited liability partnership organized and existing under the laws of the State of Delaware with its principal place of business in Chicago, Illinois.

4.    Sidley is one of the nation's largest law firms, with over 1,400 lawyers, multiple offices and a practice both national and international in scope. At all times material, Sidley held itself out to the public as possessing greater than ordinary knowledge and skill in the field of tax planning.

5.    Sidley has provided legal services to Florida residents and has furnished legal opinion letters to the Plaintiff, and others, in the State of Florida.

6.    This action accrued in Miami-Dade County, Florida.

7.    Jurisdiction over Sidley is based on § 48.193, Fla. Stat., because these causes of action arise from Sidley individually and/or through its agent(s) doing one or more of the following acts:

a.    engaging in business in the State of Florida by delivering legal opinion letters in Florida and in providing legal representation to Florida residents;

b.    committing a tortious act or acts within the State of Florida as alleged in Counts I, V, VI, VII and VIII of this Complaint; and

c.    causing injury to persons or property within the State of Florida arising out of an act or omission outside of Florida, as alleged in all Counts of this Complaint, and actively engaging in the solicitation of Florida residents for the provision of legal services.

8.    In 1998, Gainor maintained an 81.2% interest in Gainor Medical Management, LLC ("GMM") through direct ownership as well as through interests in two wholly-owned subchapter S corporations, Bryan Medical, Inc. ("Bryan Medical") and Gainor Medical U.S.A., Inc. ("GMUSA").

9.    Arthur Andersen, LLP ("Andersen") had an established relationship of trust and confidence with Gainor as his accountant, consultant, and financial advisor. Due to this relationship, Andersen became aware of Gainor's plans to sell the GMM business.

10.    Before the closing on the sale of his business, Andersen informed Gainor that it might be able to recommend a certain strategy to help reduce his total tax liability on the planned sale.

2

11.    In January of 1999, GMM sold substantially all of its assets and subsidiaries; the liquidation generated a total gain in excess of one hundred and twenty million dollars ($120,000,000).

12.    After the sale, in or about March of 1999, Andersen, with Sidley's express or implicit authority, offered to Gainor a strategy designed by Sidley to effectuate a tax savings of approximately seventeen million dollars ($17,000,000) related to the asset sale. Andersen explained to Gainor that this tax shelter would be supported by a "more likely than not" opinion letter, upon which he could rely, indicating that the deductions arising from the implementation of the strategy (hereinafter the "Sidley Plan") would be upheld, if challenged by the Internal Revenue Service (the "IRS").

13.    On or about August 20, 1999, Andersen sent to Gainor, via facsimile, a schedule confirming the anticipated professional fees and transaction costs that would be incurred and the tax savings to be realized from implementing the Sidley Plan.

14.    The total projected cost of the Sidley Plan included approximately two million, one hundred thousand dollars ($2,100,000) in fees and transaction costs, of which four hundred thousand dollars ($400,000) was allocated to Sidley.

15.    On or about September 1, 1999, Gainor authorized Andersen to proceed with the Sidley Plan.

16.    Unbeknownst to Gainor, beginning in or about January of 1996, Sidley had begun implementing a plan to develop, organize, and sell unregistered abusive tax shelters under the guise of legitimate, complex investment strategies.

3

17. Beginning in or about January of 1996 and continuing until at least October 15, 2003, Sidley was organizing and promoting unregistered, abusive tax shelters, including, but not limited to, transactions described by the IRS and identified as "listed transactions" in Notice 99-59 (Boss), Notice 2000-44 (Son-of-Boss, BLIPS, COBRA), Notice 2001-16 (MIDCO), Notice 2001-45 (basis-shifting shelter, FLIPS/OPIS), and Notice 2002-21 (CARDS), as well as certain other transactions identified as Spread Options, Common Trust Fund, and Option Transfer; these shelters were organized, sold, and implemented in conjunction with various accounting firms and investment advisors.

18. These abusive tax shelters created the appearance of substantial capital losses via a series of transactions specifically designed to offset large capital gains, usually incurred as a result of the taxpayer's liquidation or sale of an investment position or business.

19. Unbeknownst and undisclosed to Gainor, at some point in time prior to August of 1999, Sidley and Andersen agreed to work together to develop, organize and promote certain abusive tax shelters, including but not limited to the investment strategy recommended to Gainor. Andersen's role included identifying and targeting prospective customers.

20. Under this arrangement, Sidley authorized and encouraged Andersen to promise to the prospective customers that Andersen would arrange for the customers to get legal representation from Sidley that would in turn provide to them favorable, "independent," more-likely-than-not opinion letters. Andersen's ability to promise the delivery of these opinion letters from Sidley was a significant element in the promotion efforts. In fact, Andersen expressly conditioned its own entitlement to professional fees, upon the delivery of these "more-likely-than-not" opinion letters from independent counsel.

4

21.    After Gainor accepted the Sidley Plan, a series of complex and costly financial transactions were conducted that were designed by Sidley to generate over seventy million dollars ($70,000,000) in apparent capital losses; all of Gainor's ownership interests in GMUSA (by that time having been merged into Lucor Special Investments, Inc. ("LSI")) and Bryan Medical were transferred to MJG (a Georgia limited partnership in which Gainor held an 86.17 percent interest as a limited partner).

22.    On December 10, 1999, the IRS released Notice 99-59, "Tax Avoidance Using Distributions of Encumbered Property."   Notice 99-59 described certain abusive arrangements factually similar to the Sidley Plan and warned that such transactions generate artificial losses lacking economic substance and do not constitute the type of bona fide losses that are deductible under the Internal Revenue Code.

23.    That same day, Sidley and Andersen discussed the impact of Notice 99-59 on the Sidley Plan.  Sidley advised Andersen that Sidley would still issue the favorable "more likely than not" opinion letters, but that the opinions would have to address Notice 99-59.  Sidley admitted to Andersen that Notice 99-59 could impair Gainor's ability to say that he relied in good faith on the advice of a tax professional, but Sidley never communicated this to Gainor.

24.    Thereafter, in accordance with the Sidley Plan, on December 14, 1999, MJG sold its stock in Bryan Medical for two hundred ninety-seven thousand, one hundred fifteen dollars ($297,115) and reported an approximate forty million dollar ($40,000,000) capital loss from the sale. Likewise, on December 23, 1999, MJG sold all of its stock in LSI for one hundred twenty-five thousand, seven hundred seventy-five dollars ($125,775) and reported an additional thirty million, six hundred thousand dollars ($30,600,000) capital loss from the sale.

5

25.     After the transactions were finalized, on December 31, 1999, as promised, Sidley delivered to Gainor two qualified tax opinion letters. These letters (over 50 pages in length each) confirmed that the deductions claimed for the capital losses generated in connection with the subject transactions would "more likely than not" be upheld if challenged by the IRS.

26.     These opinion letters specifically represent that the subject transactions and consequent deductions claimed would "more likely than not" be upheld if challenged by the IRS. Sidley, via both its pre-transaction representations and finalized opinion letters, represented to Gainor that there was a greater than fifty percent (50%) chance that these losses could legitimately be claimed as deductions and would be upheld if challenged by the IRS. The opinion letters failed to disclose that Notice 99-59 would impair Gainor's ability to say that he relied in good faith upon the advice of a tax professional.

27.     At all times material, Sidley knew or should have known that the deductions were not likely to be upheld if challenged by the IRS; this information was withheld from Gainor. Indeed, Sidley knew or should have known that there was virtually no reasonable possibility that the deductions would be upheld if challenged; this information was also withheld from Gainor.

28.     More specifically, Sidley knew, or through the exercise of reasonable care and due diligence, should have known, that it was making one or more of the following material misrepresentations or omissions in both its opinion letters of December 31, 1999 and in its preliminary advice and directives:

        a.     misrepresentations as to the actual risk associated with entering into the subject transactions;

6

   b.      failure to disclose that the subject transactions should have been registered as

"potentially abusive tax shelters" under 26 U.S.C. § 6111(c) and that investor

lists needed to be maintained under 26 U.S.C. § 6112;

   c.      failure to disclose Sidley's actual role as an organizer, promoter and seller of

these unregistered, potentially abusive tax shelters, its relationship with

Andersen and other large accounting firms, and related conflicts of interest

which precluded the rendition of objective and "independent" tax opinions;

and

   d.      failing to disclose Sidley's concerns that Gainor's ability to rely in good faith

upon the advice of a tax professional was impaired by Notice 99-59.

29.     On December 22, 2001, the IRS published Announcement 2002-2, 2002-1 C.B. 304

(Disclosure Initiative), in which it encouraged taxpayers to disclose their participation in and tax

treatment of tax shelters in exchange for the IRS's waiver of certain penalties under 26 U.S.C. §

6662.

30.     On March 14, 2002, Sidley sent three letters to Gainor and related entities advising

them of the IRS voluntary disclosure program and "strongly recommending" the he consult with his

"regular tax advisor" regarding the terms and implications of the voluntary disclosure program and

the advisability of participating in same with respect to the transactions conducted in accordance

with the Sidley Plan.

31.     Further to Sidley's correspondence to him of March 14, 2002, Gainor voluntarily

disclosed to the IRS his involvement with the subject transactions.

32.    Gainor is negotiating with the IRS and is subject to a disallowance of approximately seventy million dollars ($70,000,000) in capital losses.

33.    All conditions precedent to the maintenance of this action have been performed, occurred or waived.

## COUNT I
### (Professional Malpractice)

34.    Gainor realleges paragraphs 1 through 33 as though fully set forth herein.

35.    Gainor and Sidley had an attorney-client relationship.

36.    Sidley had a duty to represent Gainor with the reasonable care, skill, and diligence ordinarily possessed and exercised by attorneys specializing in the field of tax planning, under similar circumstances.

37.    Sidley breached this duty and deviated from the acceptable standard of care for a tax specialist by its conduct set forth above, including but not limited to the material misrepresentations and/or omissions more specifically set forth in paragraph 28.

38.    As a result of Sidley's breaches and deviations, Gainor entered into the subject transactions and has suffered damages including, but not limited to, over two million dollars ($2,000,000) in professional fees and transaction costs incurred in connection with the Sidley Plan, additional fees and costs incurred in connection with participation in the IRS Voluntary Disclosure Plan and related IRS dealings, exposure to millions of dollars in additional taxes, and lost opportunities for proper tax planning.

8

WHEREFORE, Plaintiff, Mark J. Gainor, respectfully requests that this Court award compensatory damages and costs, against Sidley and such further relief as this Court deems just and proper in the premises.

## COUNT II
### (Breach of Contract)

39. Gainor realleges paragraphs 1 through 33 as though fully set forth herein.

40. At all times material, Andersen had actual or apparent authority to act on behalf of Sidley in connection with the implementation of the Sidley Plan.

41. Sidley, through its agent, Andersen, and Gainor entered into an oral agreement. The terms were that Sidley would represent Gainor and provide certain legal services. More specifically, Sidley, working through Andersen, would advise Gainor on how to structure a complex set of business transactions that would provide substantial tax savings related to the sale of his business. Sidley further agreed to provide "independent," legal opinion letters confirming the propriety of these transactions and opining that the consequent deductions taken would more likely than not be upheld if challenged by the IRS. In consideration thereof, Gainor agreed to pay Sidley four hundred thousand dollars ($400,000).

42. The foregoing agreement constitutes an oral contract for the provision of legal services and thus, there was an implied covenant by Sidley to exercise ordinary skill and knowledge in the rendition of professional legal services. Additionally there was implied covenant of good faith and fair dealing.

43. Gainor fully performed his duties under the contract. Although Sidley delivered the legal opinion letters, it breached the contract by breaking both of the implied covenants set forth in

9

paragraph 42 above. Sidley breached these covenants by its conduct set forth above, including, but not limited to, the material misrepresentations and/or omissions more specifically set forth in paragraph 28.

44.    As a result of Sidley's breaches, Gainor entered into the subject transactions and has suffered damages including, but not limited to, over two million dollars ($2,000,000) in professional fees and transaction costs incurred in connection with the Sidley Plan, additional fees and costs incurred in connection with participation in the IRS Voluntary Disclosure Plan and related IRS dealings, exposure to millions of dollars in additional taxes, and lost opportunities for proper tax planning.

WHEREFORE, Plaintiff, Mark J. Gainor, respectfully requests that this Court award compensatory damages and costs, against Sidley and such further relief as this Court deems just and proper in the premises.

**COUNT III**
**(Breach of Contract Implied in Fact)**

45.    Gainor realleges paragraphs 1 through 33 as though fully set forth herein.

46.    An agreement between Sidley and Gainor arose by implication given the facts and circumstances surrounding the parties' conduct.

47.    Gainor conferred a benefit upon Sidley by paying four hundred thousand dollars ($400,000) to Sidley which was accepted as payment for legal services.

48.    Under ordinary circumstances, a reasonable law firm holding itself out as specializing in tax planning, would reasonably expect to be required to render substantial, competent legal services for such a benefit.

10

49.    Sidley breached the implied contract with Gainor in failing to render competent legal services by, among other things: (1) failing to exercise such reasonable care, skill, and diligence as is ordinarily exercised by attorneys specializing in the field of tax planning, under similar circumstances; (2) failure to disclose that the subject transactions should have been registered as "potentially abusive tax shelters" under 26 U.S.C. § 6111(c) and that investor lists needed to be maintained under 26 U.S.C. § 6112; (3) failing to disclose Sidley's actual role as an organizer, promoter and seller of these and other unregistered, potentially abusive tax shelters, its relationship with Andersen, and related conflicts of interest which precluded the rendering of objective and "independent" tax opinions; and (4) failing to disclose to Gainor Sidley's concerns that Gainor's ability to rely in good faith upon the advice of a tax professional was impaired by Notice 99-59.

50.    As a result of Sidley's failure to render competent legal advice, Gainor entered into the subject transactions and has suffered damages including, but not limited to, over two million dollars ($2,000,000) in professional fees and transaction costs incurred in connection with the Sidley Plan, additional fees and costs incurred in connection with participation in the IRS Voluntary Disclosure Plan and related IRS dealings, exposure to millions of dollars in additional taxes, and lost opportunities for proper tax planning.

WHEREFORE, Plaintiff, Mark J. Gainor, respectfully requests that this Court award compensatory damages and costs, against Sidley and such further relief as this Court deems just and proper in the premises.

11

## COUNT IV
### (Breach of Contract Implied in Law: Unjust Enrichment)

51.    Gainor realleges paragraphs 1 through 33 as though fully set forth herein.

52.    Gainor conferred a benefit upon Sidley by paying four hundred thousand dollars ($400,000) to Sidley.

53.    Sidley knowingly and voluntarily accepted and retained this benefit conferred upon it as compensation for providing competent legal services that were never rendered.

54.    Under these circumstances, Sidley would be unjustly enriched if permitted to retain this benefit without having rendered competent legal services, unless Sidley is required to disgorge these professional fees, together with interest, back to Gainor.

WHEREFORE, Plaintiff, Mark J. Gainor, respectfully requests that this Court award compensatory damages and costs, against Sidley and such further relief as this Court deems just and proper in the premises.

## COUNT V
### (Negligent Misrepresentation)

55.    Gainor realleges paragraphs 1 through 33 as though fully set forth herein.

56.    Sidley authorized and encouraged Andersen to utilize Sidley's name and reputation as well as the promise of favorable, "more likely than not," Sidley opinion letters, in order to promote certain abusive tax shelters.

57.    As set forth above, Sidley, via authorized statements made by Andersen on its behalf, and in statements contained within its final opinion letters delivered to Gainor, made one or more of the false statements or omissions of material fact more specifically set forth in paragraph 28.

12

58.   At the time they were made, Sidley should have known that these representations of material fact were false and that these omissions of fact were material.

59.   As a result of their attorney-client relationship, Sidley and Gainor's relationship was both fiduciary and confidential in nature. Furthermore, Sidley held itself out to the public as a tax specialist with a superior knowledge of the subject matter to which these misrepresentations and omissions relate.

60.   Sidley intended that its misrepresentations and omissions of material fact induce Gainor to act in reliance thereon.

61.   Gainor justifiably relied on Sidley's misrepresentations and omissions of material fact by entering into the subject transactions and paying substantial fees and transaction costs.

62.   As a result of Sidley's negligent misrepresentations and omissions, Gainor has suffered damages including, but not limited to, over two million dollars ($2,000,000) in professional fees and transaction costs incurred in connection with the Sidley Plan, additional fees and costs incurred in connection with participation in the IRS Voluntary Disclosure Plan and related IRS dealings, exposure to millions of dollars in additional taxes, and lost opportunities for proper tax planning.

WHEREFORE, Plaintiff, Mark J. Gainor, respectfully requests that this Court award compensatory damages and costs, against Sidley and such further relief as this Court deems just and proper in the premises.

## COUNT VI
### (Fraudulent Misrepresentation)

63.   Gainor realleges paragraphs 1 through 33 as though fully set forth herein.

13

64. Sidley authorized and encouraged Andersen to utilize the Sidley name and reputation as well as the promise of favorable, "more likely than not," Sidley opinion letters to promote certain abusive tax shelters.

65. As set forth above, Sidley, via authorized statements made by Andersen on its behalf and in statements contained within its final opinion letters delivered to Gainor, made one or more of the false statements or omissions of material fact more specifically set forth in paragraph 28.

66. At the time they were made, Sidley knew that these representations of material fact were false and that these omissions of fact were material.

67. As a result of their attorney-client relationship, Sidley and Gainor's relationship was both fiduciary and confidential in nature. Furthermore, Sidley held itself out to the public as a tax specialist with a superior knowledge of the subject matter to which these misrepresentations and omissions relate.

68. Sidley intended that its misrepresentations and omissions of material fact induce Gainor to act in reliance thereon.

69. Gainor justifiably relied on Sidley's misrepresentations and omissions of material fact by entering into the subject transactions and paying substantial fees and transaction costs.

70. As a result of Sidley's fraudulent misrepresentations and omissions, Gainor has suffered damages including but not limited to over two million dollars ($2,000,000) in professional fees and transaction costs incurred in connection with the Sidley Plan, additional fees and costs incurred in connection with participation in the IRS Voluntary Disclosure Plan and related IRS dealings, exposure to millions of dollars in additional taxes, and lost opportunities for proper tax planning.

14

WHEREFORE, Plaintiff, Mark J. Gainor, respectfully requests that this Court award compensatory damages and costs, against Sidley and such further relief as this Court deems just and proper in the premises.

## COUNT VII
### (Breach of Fiduciary Duty)

71.    Gainor realleges paragraphs 1 through 33 as though fully set forth herein.

72.    As a result of their attorney-client relationship, Sidley and Gainor's relationship was fiduciary in nature in that Gainor reposed trust and confidence in Sidley and Sidley undertook such trust, and assumed a fiduciary duty to advise, counsel, and protect Gainor and to exercise loyalty and due care.

73.    Sidley breached its fiduciary duty owed to Gainor by: (1) misrepresenting the risk associated with entering into the subject transactions; (2) failing to disclose that the subject transactions should have been registered as "potentially abusive tax shelters" under 26 U.S.C. § 6111(c) and that investor lists needed to be maintained under 26 U.S.C. § 6112; (3) failing to disclose Sidley's actual role as an organizer, promoter and seller of these and other unregistered, potentially abusive tax shelters, its relationship with Andersen, and related conflicts of interest which precluded the rendering of objective and "independent" tax opinions; and (4) failing to disclose Sidley's concerns regarding Gainor's ability to say in good faith that he relied upon the advice of a tax professional.

74.    As a result of Sidley's breach of fiduciary duty, Gainor entered into the subject transactions and has suffered damages including but not limited to over two million dollars ($2,000,000) in professional fees and transaction costs incurred in connection with the Sidley Plan,

15

additional fees and costs incurred in connection with participation in the IRS Voluntary Disclosure Plan and related IRS dealings, exposure to millions of dollars in additional taxes, and lost opportunities for proper tax planning.

WHEREFORE, Plaintiff, Mark J. Gainor, respectfully requests that this Court award compensatory damages and costs, against Sidley and such further relief as this Court deems just and proper in the premises.

## COUNT VIII
### (Tortious Interference with an Advantageous Business Relationship)

75.  Gainor realleges paragraphs 1 through 33 as though fully set forth herein.

76.  Gainor had an established business relationship of trust and confidence with Andersen. Gainor routinely relied on Andersen to provide accounting and consulting services and to protect his financial interests while maintaining the confidentiality of sensitive financial information.

77.  Sidley had knowledge that Andersen maintained these types of relationships with clients such as Gainor and had access to such clients' confidential financial information. Sidley knew that Andersen's existing relationships with clients such as Gainor could be utilized to promote unregistered, abusive tax shelters being sold and marketed by Sidley for profit.

78.  Sidley intentionally and unjustifiably interfered with Gainor's advantageous business, confidential and fiduciary relationship with Andersen by inducing Andersen to promote the Sidley Plan to Andersen's clients, including Gainor.

79.  As a result of Sidley's interference, Gainor entered into the subject transactions and has suffered damages including but not limited to over two million dollars ($2,000,000) in professional fees and transaction costs incurred in connection with the Sidley Plan, additional fees

16

and costs incurred in connection with participation in the IRS Voluntary Disclosure Plan and related IRS dealings, exposure to millions of dollars in additional taxes, and lost opportunities for proper tax planning.

WHEREFORE, Plaintiff, Mark J. Gainor, respectfully requests that this Court award compensatory damages and costs, against Sidley and such further relief as this Court deems just and proper in the premises.

**COUNT IX**
**(Violations of the Florida Civil Remedies for Criminal Practices Act)**

80.     Gainor realleges paragraphs 1 through 33 as though fully set forth herein.

81.     Beginning in or about January of 1996 and continuing until at least October 15, 2003, Sidley knowingly and willfully engaged in a scheme to defraud hundreds of individuals across the United States by directly or indirectly organizing and promoting unregistered, abusive tax shelters, under the guise of legitimate investment strategies, including but not limited to transactions described by the IRS and identified as "listed transactions" in Notice 99-59 (Boss), Notice 2000-44 (Son-of-Boss, BLIPS, COBRA), Notice 2001-16 (MIDCO), Notice 2001-45 (basis-shifting shelter, FLIPS/OPIS), and Notice 2002-21 (CARDS), as well as certain other transactions identified as Spread Options, Common Trust Fund, and Option Transfer that were organized, sold and implemented in conjunction with various accounting firms and investment advisors.

82.     These abusive tax shelters created the appearance of substantial capital losses via a series of transactions specifically designed to offset large capital gains, usually incurred as a result of the taxpayer's liquidation or sale of an investment position or business.

17

83.     Sidley generated millions of dollars in professional fees by repeatedly issuing favorable ("more than likely than not") tax opinion letters in connection with these abusive tax shelters.

84.     Further to its marketing of these tax shelters, Sidley recruited some of the largest accounting and financial consulting firms, including Andersen and KPMG, LLP ("KPMG"), as well as other financial institutions (hereinafter "The Marketers"), in order to identify and target prospective customers.

85.     In order to more effectively promote these abusive tax shelters, Sidley authorized and encouraged The Marketers to promise to the prospective customers that The Marketers would arrange for legal representation from Sidley, which would in turn provide favorable, "independent," more-likely-than-not opinion letters. The Marketers' ability to promise the delivery of these opinion letters from Sidley was a significant element in the promotion efforts.

86.     Sidley authorized The Marketers to represent to prospective customers that certain deductions taken as a result of taxpayers implementing these abusive tax shelters would "more likely than not" be upheld if challenged by the IRS. At the time Sidley authorized these representations, it knew that they were false.

87.     Over the course of a seven-year period, Sidley systematically issued hundreds of knowingly false and misleading, favorable opinion letters on these tax shelters that it was secretly promoting via The Marketers. These form opinion letters were false and misleading because, at the time they were issued, Sidley knowingly and willfully: (1) misrepresented the risks associated with entering into the tax shelter; (2) failed to disclose that the subject transactions should have been registered as "potentially abusive tax shelters" under 26 U.S.C. § 6111(c) and that investor lists

18

needed to be maintained under 26 U.S.C. § 6112; and (3) failed to disclose Sidley's actual role as an organizer, promoter and seller of these unregistered, potentially abusive tax shelters, its relationship with The Marketers, and related conflicts of interest which precluded the rendition of objective and "independent" tax opinions.

88.     Sidley's attorney-client relationships with Gainor and other similarly situated tax shelter customers were both fiduciary and confidential in nature. Furthermore, Sidley held itself out to the public as a tax specialist with superior knowledge of the subject matter as to which these intentional misrepresentations and omissions related.

89.     Sidley intended that its misrepresentations and omissions of material fact induce Gainor and other similarly situated clients to act in reliance thereon.

90.     Gainor justifiably relied on Sidley's misrepresentations and omissions of material fact by entering into the subject transactions and paying substantial fees and transaction costs.

91.     Sidley knowingly and willfully engaged in a systematic course of conduct by promoting abusive tax shelters and repeatedly delivering knowingly false and misleading, form opinion letters to Florida residents with the criminal intent to obtain monies from one or more persons by false or fraudulent pretenses, representations, and/or promises.

92.     Sidley's conduct in repeatedly and knowingly promoting abusive tax shelters and delivering false and misleading opinion letters to Florida residents via U.S. mail constitutes a pattern of criminal activity and is unlawful pursuant to Fla. Stat. §§ 817.034 (a) and (b), and/or Title 18 U.S.C. § 1341.

93.     While engaging in this scheme to defraud and in furtherance thereof, Sidley, on multiple occasions, communicated with persons located within the state of Florida, via U.S. mail,

19

with the intent to obtain monies from such persons, including the occasions specifically set forth below:

    a.    On or about June 15, 1998, Sidley delivered to Peter T. Loftin in Florida, via U.S. Mail, one of its knowingly false and misleading, form opinion letters. This letter opined that deductions taken as a result of certain investment transactions, similar in nature to those transactions later described by the IRS and identified as "listed transactions" in Notice 2000-45 (FLIPS), would more likely than not be upheld if challenged by the IRS.

    b.    On or about August 31, 1998, Sidley delivered to Joseph J. Jacoboni in Florida, via U.S. Mail, one of its knowingly false and misleading, form opinion letters. This letter opined that deductions taken as a result of certain investment transactions similar in nature to those transactions later described by the IRS and identified as "listed transactions" in Notice 2000-45 (FLIPS), would more likely than not be upheld if challenged by the IRS.

    c.    On or about December 31, 1999, Sidley delivered to Peter T. Loftin in Florida, via U.S. Mail, one of its knowingly false and misleading, form opinion letters. This letter opined that deductions taken as a result of certain investment transactions similar in nature to those transactions later described by the IRS and identified as "listed transactions" in Notice 2000-44 (BLIPS), would more likely than not be upheld if challenged by the IRS.

    d.    On or about December 31, 1999, Sidley delivered to Gainor in Florida, via U.S. Mail, one of its knowingly false and misleading, form opinion letters. This letter

20

opined that deductions taken as a result of certain investment transactions similar in nature to those transactions described by the IRS and identified as "listed transactions" in Notice 99-59 (BOSS), would more likely than not be upheld if challenged by the IRS.

    e.    On or about December 31, 1999, Sidley again delivered to Gainor in Florida, via U.S. Mail, another of its knowingly false and misleading, form opinion letters. This letter opined that deductions taken as a result of certain other investment transactions similar in nature to those transactions described by the IRS and identified as "listed transactions" in Notice 99-59 (BOSS), would more likely than not be upheld if challenged by the IRS.

94.    As a result of its criminal actions, Sidley has received substantial payments, including but not limited to, payments for each of the knowingly false and misleading opinion letters referenced in paragraph 93 above.

95.    Sidley has used or invested, directly or indirectly, the proceeds of these payments in the acquisition of title to or a right or equity in real property, or in the establishment or operation of an enterprise.

96.    Sidley's actions are unlawful pursuant to § 772.103, Fla. Stat.

97.    As a result of Sidley's actions, Gainor entered into the subject transactions and has suffered damages including but not limited to over two million dollars ($2,000,000) in professional fees and transaction costs incurred in connection with the Sidley Plan, additional fees and costs incurred in connection with participation in the IRS Voluntary Disclosure Plan and related IRS

21

dealings, exposure to millions of dollars in additional taxes, and lost opportunities for proper tax planning.

98.    Gainor has been forced to retain the undersigned counsel and is obligated to pay them a reasonable fee for legal services.

WHEREFORE, Plaintiff, Mark J. Gainor, respectfully requests that this Court award treble damages, statutory damages, costs, and attorneys fees pursuant to § 772.104, Fla. Stat., against Sidley and such further relief as this Court deems just and proper in the premises.

## DEMAND FOR JURY TRIAL

Gainor demands a jury trial on all issues so triable.

RICHARD BENJAMIN WILKES
Florida Bar No. 267163
KENNETH C. THOMAS
Florida Bar No. 0624640
**GARDNER WILKES SHAHEEN**
Post Office Box 1810
Tampa, Florida 33601-1810
Telephone:    (813) 221-8000
Facsimile:    (813) 229-1597
Attorneys for Plaintiff

22

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION

MARK J. GAINOR,

       Plaintiff,

CASE NO.: 06-11295 CA 27

v.

SIDLEY, AUSTIN, BROWN & WOOD, LLP,

       Defendant.

_____/

### PLAINTIFF'S COMPLAINT
### AND DEMAND FOR JURY TRIAL

      Plaintiff, Mark J. Gainor ("Gainor"), an individual, sues Defendant, Sidley, Austin, Brown & Wood, LLP ("Sidley"), a Delaware limited liability partnership, and alleges:

### ALLEGATIONS COMMON TO ALL COUNTS
### (Paragraphs 1 - 33)

      1.    This is an action for damages in excess of $15,000.00, exclusive of interest, attorneys' fees and costs.

      2.    Gainor is an individual residing in Dade County, Florida.

      3.    Sidley is a limited liability partnership organized and existing under the laws of the State of Delaware with its principal place of business in Chicago, Illinois.

      4.    Sidley is one of the nation's largest law firms, with over 1,400 lawyers, multiple offices and a practice both national and international in scope. At all times material, Sidley held itself out to the public as possessing greater than ordinary knowledge and skill in the field of tax planning.



5.    Sidley has provided legal services to Florida residents and has furnished legal opinion letters to the Plaintiff, and others, in the State of Florida.

6.    This action accrued in Miami-Dade County, Florida.

7.    Jurisdiction over Sidley is based on § 48.193, Fla. Stat., because these causes of action arise from Sidley individually and/or through its agent(s) doing one or more of the following acts:

        a.    engaging in business in the State of Florida by delivering legal opinion letters in Florida and in providing legal representation to Florida residents;

        b.    committing a tortious act or acts within the State of Florida as alleged in Counts I, V, VI, VII and VIII of this Complaint; and

        c.    causing injury to persons or property within the State of Florida arising out of an act or omission outside of Florida, as alleged in all Counts of this Complaint, and actively engaging in the solicitation of Florida residents for the provision of legal services.

8.    In 1998, Gainor maintained an 81.2% interest in Gainor Medical Management, LLC ("GMM") through direct ownership as well as through interests in two wholly-owned subchapter S corporations, Bryan Medical, Inc. ("Bryan Medical") and Gainor Medical U.S.A., Inc. ("GMUSA").

9.    Arthur Andersen, LLP ("Andersen") had an established relationship of trust and confidence with Gainor as his accountant, consultant, and financial advisor. Due to this relationship, Andersen became aware of Gainor's plans to sell the GMM business.

10.    Before the closing on the sale of his business, Andersen informed Gainor that it might be able to recommend a certain strategy to help reduce his total tax liability on the planned sale.

2

11.    In January of 1999, GMM sold substantially all of its assets and subsidiaries; the liquidation generated a total gain in excess of one hundred and twenty million dollars ($120,000,000).

12.    After the sale, in or about March of 1999, Andersen, with Sidley's express or implicit authority, offered to Gainor a strategy designed by Sidley to effectuate a tax savings of approximately seventeen million dollars ($17,000,000) related to the asset sale. Andersen explained to Gainor that this tax shelter would be supported by a "more likely than not" opinion letter, upon which he could rely, indicating that the deductions arising from the implementation of the strategy (hereinafter the "Sidley Plan") would be upheld, if challenged by the Internal Revenue Service (the "IRS").

13.    On or about August 20, 1999, Andersen sent to Gainor, via facsimile, a schedule confirming the anticipated professional fees and transaction costs that would be incurred and the tax savings to be realized from implementing the Sidley Plan.

14.    The total projected cost of the Sidley Plan included approximately two million, one hundred thousand dollars ($2,100,000) in fees and transaction costs, of which four hundred thousand dollars ($400,000) was allocated to Sidley.

15.    On or about September 1, 1999, Gainor authorized Andersen to proceed with the Sidley Plan.

16.    Unbeknownst to Gainor, beginning in or about January of 1996, Sidley had begun implementing a plan to develop, organize, and sell unregistered abusive tax shelters under the guise of legitimate, complex investment strategies.

3

17.    Beginning in or about January of 1996 and continuing until at least October 15, 2003, Sidley was organizing and promoting unregistered, abusive tax shelters, including, but not limited to, transactions described by the IRS and identified as "listed transactions" in Notice 99-59 (Boss), Notice 2000-44 (Son-of-Boss, BLIPS, COBRA), Notice 2001-16 (MIDCO), Notice 2001-45 (basis-shifting shelter, FLIPS/OPIS), and Notice 2002-21 (CARDS), as well as certain other transactions identified as Spread Options, Common Trust Fund, and Option Transfer; these shelters were organized, sold, and implemented in conjunction with various accounting firms and investment advisors.

18.    These abusive tax shelters created the appearance of substantial capital losses via a series of transactions specifically designed to offset large capital gains, usually incurred as a result of the taxpayer's liquidation or sale of an investment position or business.

19.    Unbeknownst and undisclosed to Gainor, at some point in time prior to August of 1999, Sidley and Andersen agreed to work together to develop, organize and promote certain abusive tax shelters, including but not limited to the investment strategy recommended to Gainor. Andersen's role included identifying and targeting prospective customers.

20.    Under this arrangement, Sidley authorized and encouraged Andersen to promise to the prospective customers that Andersen would arrange for the customers to get legal representation from Sidley that would in turn provide to them favorable, "independent," more-likely-than-not opinion letters. Andersen's ability to promise the delivery of these opinion letters from Sidley was a significant element in the promotion efforts. In fact, Andersen expressly conditioned its own entitlement to professional fees, upon the delivery of these "more-likely-than-not" opinion letters from independent counsel.

4

21.    After Gainor accepted the Sidley Plan, a series of complex and costly financial transactions were conducted that were designed by Sidley to generate over seventy million dollars ($70,000,000) in apparent capital losses; all of Gainor's ownership interests in GMUSA (by that time having been merged into Lucor Special Investments, Inc. ("LSI")) and Bryan Medical were transferred to MJG (a Georgia limited partnership in which Gainor held an 86.17 percent interest as a limited partner).

22.    On December 10, 1999, the IRS released Notice 99-59, "Tax Avoidance Using Distributions of Encumbered Property." Notice 99-59 described certain abusive arrangements factually similar to the Sidley Plan and warned that such transactions generate artificial losses lacking economic substance and do not constitute the type of bona fide losses that are deductible under the Internal Revenue Code.

23.    That same day, Sidley and Andersen discussed the impact of Notice 99-59 on the Sidley Plan. Sidley advised Andersen that Sidley would still issue the favorable "more likely than not" opinion letters, but that the opinions would have to address Notice 99-59. Sidley admitted to Andersen that Notice 99-59 could impair Gainor's ability to say that he relied in good faith on the advice of a tax professional, but Sidley never communicated this to Gainor.

24.    Thereafter, in accordance with the Sidley Plan, on December 14, 1999, MJG sold its stock in Bryan Medical for two hundred ninety-seven thousand, one hundred fifteen dollars ($297,115) and reported an approximate forty million dollar ($40,000,000) capital loss from the sale. Likewise, on December 23, 1999, MJG sold all of its stock in LSI for one hundred twenty-five thousand, seven hundred seventy-five dollars ($125,775) and reported an additional thirty million, six hundred thousand dollars ($30,600,000) capital loss from the sale.

5

25.    After the transactions were finalized, on December 31, 1999, as promised, Sidley delivered to Gainor two qualified tax opinion letters.  These letters (over 50 pages in length each) confirmed that the deductions claimed for the capital losses generated in connection with the subject transactions would "more likely than not" be upheld if challenged by the IRS.

26.    These opinion letters specifically represent that the subject transactions and consequent deductions claimed would "more likely than not" be upheld if challenged by the IRS.  Sidley, via both its pre-transaction representations and finalized opinion letters, represented to Gainor that there was a greater than fifty percent (50%) chance that these losses could legitimately be claimed as deductions and would be upheld if challenged by the IRS.  The opinion letters failed to disclose that Notice 99-59 would impair Gainor's ability to say that he relied in good faith upon the advice of a tax professional.

27.    At all times material, Sidley knew or should have known that the deductions were not likely to be upheld if challenged by the IRS; this information was withheld from Gainor.  Indeed, Sidley knew or should have known that there was virtually no reasonable possibility that the deductions would be upheld if challenged; this information was also withheld from Gainor.

28.    More specifically, Sidley knew, or through the exercise of reasonable care and due diligence, should have known, that it was making one or more of the following material misrepresentations or omissions in both its opinion letters of December 31, 1999 and in its preliminary advice and directives:

    a.    misrepresentations as to the actual risk associated with entering into the subject transactions;

6

b.    failure to disclose that the subject transactions should have been registered as "potentially abusive tax shelters" under 26 U.S.C. § 6111(c) and that investor lists needed to be maintained under 26 U.S.C. § 6112;

c.    failure to disclose Sidley's actual role as an organizer, promoter and seller of these unregistered, potentially abusive tax shelters, its relationship with Andersen and other large accounting firms, and related conflicts of interest which precluded the rendition of objective and "independent" tax opinions; and

d.    failing to disclose Sidley's concerns that Gainor's ability to rely in good faith upon the advice of a tax professional was impaired by Notice 99-59.

29.    On December 22, 2001, the IRS published Announcement 2002-2, 2002-1 C.B. 304 (Disclosure Initiative), in which it encouraged taxpayers to disclose their participation in and tax treatment of tax shelters in exchange for the IRS's waiver of certain penalties under 26 U.S.C. § 6662.

30.    On March 14, 2002, Sidley sent three letters to Gainor and related entities advising them of the IRS voluntary disclosure program and "strongly recommending" the he consult with his "regular tax advisor" regarding the terms and implications of the voluntary disclosure program and the advisability of participating in same with respect to the transactions conducted in accordance with the Sidley Plan.

31.    Further to Sidley's correspondence to him of March 14, 2002, Gainor voluntarily disclosed to the IRS his involvement with the subject transactions.

7

32.    On January 20, 2006, Gainor filed Form 13750, Election to Participate in Announcement 2005-80 Settlement Initiative.  Pursuant to this settlement with the IRS, Gainor accepted disallowance of the claimed tax benefits associated with the Sidley Plan in a manner consistent with relevant published guidance and the facts and circumstances surrounding the transactions.  In its examination report, the IRS has proposed to disallow $68,350,964 of capital losses resulting from the transactions, resulting in an approximate underpayment of tax in the amount of $13,670,192.

33.    All conditions precedent to the maintenance of this action have been performed, occurred or waived.

**COUNT I**
**(Professional Malpractice)**

34.    Gainor realleges paragraphs 1 through 33 as though fully set forth herein.

35.    Gainor and Sidley had an attorney-client relationship.

36.    Sidley had a duty to represent Gainor with the reasonable care, skill, and diligence ordinarily possessed and exercised by attorneys specializing in the field of tax planning, under similar circumstances.

37.    Sidley breached this duty and deviated from the acceptable standard of care for a tax specialist by its conduct set forth above, including but not limited to the material misrepresentations and/or omissions more specifically set forth in paragraph 28.

38.    As a result of Sidley's breaches and deviations, Gainor entered into the subject transactions and has suffered damages including, but not limited to, over two million dollars ($2,000,000) in professional fees and transaction costs incurred in connection with the Sidley Plan,

8

additional fees and costs incurred in connection with participation in the IRS Voluntary Disclosure Plan and related IRS dealings, exposure to millions of dollars in additional taxes, and lost opportunities for proper tax planning.

WHEREFORE, Plaintiff, Mark J. Gainor, respectfully requests that this Court award compensatory damages and costs, against Sidley and such further relief as this Court deems just and proper in the premises.

## COUNT II
### (Breach of Contract)

39.    Gainor realleges paragraphs 1 through 33 as though fully set forth herein.

40.    At all times material, Andersen had actual or apparent authority to act on behalf of Sidley in connection with the implementation of the Sidley Plan.

41.    Sidley, through its agent, Andersen, and Gainor entered into an oral agreement. The terms were that Sidley would represent Gainor and provide certain legal services. More specifically, Sidley, working through Andersen, would advise Gainor on how to structure a complex set of business transactions that would provide substantial tax savings related to the sale of his business. Sidley further agreed to provide "independent," legal opinion letters confirming the propriety of these transactions and opining that the consequent deductions taken would more likely than not be upheld if challenged by the IRS. In consideration thereof, Gainor agreed to pay Sidley four hundred thousand dollars ($400,000).

42.    The foregoing agreement constitutes an oral contract for the provision of legal services and thus, there was an implied covenant by Sidley to exercise ordinary skill and knowledge in the

9

rendition of professional legal services. Additionally there was implied covenant of good faith and fair dealing.

43.    Gainor fully performed his duties under the contract. Although Sidley delivered the legal opinion letters, it breached the contract by breaking both of the implied covenants set forth in paragraph 42 above. Sidley breached these covenants by its conduct set forth above, including, but not limited to, the material misrepresentations and/or omissions more specifically set forth in paragraph 28.

44.    As a result of Sidley's breaches, Gainor entered into the subject transactions and has suffered damages including, but not limited to, over two million dollars ($2,000,000) in professional fees and transaction costs incurred in connection with the Sidley Plan, additional fees and costs incurred in connection with participation in the IRS Voluntary Disclosure Plan and related IRS dealings, exposure to millions of dollars in additional taxes, and lost opportunities for proper tax planning.

WHEREFORE, Plaintiff, Mark J. Gainor, respectfully requests that this Court award compensatory damages and costs, against Sidley and such further relief as this Court deems just and proper in the premises.

## COUNT III
### (Breach of Contract Implied in Fact)

45.    Gainor realleges paragraphs 1 through 33 as though fully set forth herein.

46.    An agreement between Sidley and Gainor arose by implication given the facts and circumstances surrounding the parties' conduct.

10

47.    Gainor conferred a benefit upon Sidley by paying four hundred thousand dollars ($400,000) to Sidley which was accepted as payment for legal services.

48.    Under ordinary circumstances, a reasonable law firm holding itself out as specializing in tax planning, would reasonably expect to be required to render substantial, competent legal services for such a benefit.

49.    Sidley breached the implied contract with Gainor in failing to render competent legal services by, among other things: (1) failing to exercise such reasonable care, skill, and diligence as is ordinarily exercised by attorneys specializing in the field of tax planning, under similar circumstances; (2) failure to disclose that the subject transactions should have been registered as "potentially abusive tax shelters" under 26 U.S.C. § 6111(c) and that investor lists needed to be maintained under 26 U.S.C. § 6112; (3) failing to disclose Sidley's actual role as an organizer, promoter and seller of these and other unregistered, potentially abusive tax shelters, its relationship with Andersen, and related conflicts of interest which precluded the rendering of objective and "independent" tax opinions; and (4) failing to disclose to Gainor Sidley's concerns that Gainor's ability to rely in good faith upon the advice of a tax professional was impaired by Notice 99-59.

50.    As a result of Sidley's failure to render competent legal advice, Gainor entered into the subject transactions and has suffered damages including, but not limited to, over two million dollars ($2,000,000) in professional fees and transaction costs incurred in connection with the Sidley Plan, additional fees and costs incurred in connection with participation in the IRS Voluntary Disclosure Plan and related IRS dealings, exposure to millions of dollars in additional taxes, and lost opportunities for proper tax planning.

11

WHEREFORE, Plaintiff, Mark J. Gainor, respectfully requests that this Court award compensatory damages and costs, against Sidley and such further relief as this Court deems just and proper in the premises.

### COUNT IV
### (Breach of Contract Implied in Law: Unjust Enrichment)

51.    Gainor realleges paragraphs 1 through 33 as though fully set forth herein.

52.    Gainor conferred a benefit upon Sidley by paying four hundred thousand dollars ($400,000) to Sidley.

53.    Sidley knowingly and voluntarily accepted and retained this benefit conferred upon it as compensation for providing competent legal services that were never rendered.

54.    Under these circumstances, Sidley would be unjustly enriched if permitted to retain this benefit without having rendered competent legal services, unless Sidley is required to disgorge these professional fees, together with interest, back to Gainor.

WHEREFORE, Plaintiff, Mark J. Gainor, respectfully requests that this Court award compensatory damages and costs, against Sidley and such further relief as this Court deems just and proper in the premises.

### COUNT V
### (Negligent Misrepresentation)

55.    Gainor realleges paragraphs 1 through 33 as though fully set forth herein.

56.    Sidley authorized and encouraged Andersen to utilize Sidley's name and reputation as well as the promise of favorable, "more likely than not," Sidley opinion letters, in order to promote certain abusive tax shelters.

12

57.    As set forth above, Sidley, via authorized statements made by Andersen on its behalf, and in statements contained within its final opinion letters delivered to Gainor, made one or more of the false statements or omissions of material fact more specifically set forth in paragraph 28.

58.    At the time they were made, Sidley should have known that these representations of material fact were false and that these omissions of fact were material.

59.    As a result of their attorney-client relationship, Sidley and Gainor's relationship was both fiduciary and confidential in nature. Furthermore, Sidley held itself out to the public as a tax specialist with a superior knowledge of the subject matter to which these misrepresentations and omissions relate.

60.    Sidley intended that its misrepresentations and omissions of material fact induce Gainor to act in reliance thereon.

61.    Gainor justifiably relied on Sidley's misrepresentations and omissions of material fact by entering into the subject transactions and paying substantial fees and transaction costs.

62.    As a result of Sidley's negligent misrepresentations and omissions, Gainor has suffered damages including, but not limited to, over two million dollars ($2,000,000) in professional fees and transaction costs incurred in connection with the Sidley Plan, additional fees and costs incurred in connection with participation in the IRS Voluntary Disclosure Plan and related IRS dealings, exposure to millions of dollars in additional taxes, and lost opportunities for proper tax planning.

WHEREFORE, Plaintiff, Mark J. Gainor, respectfully requests that this Court award compensatory damages and costs, against Sidley and such further relief as this Court deems just and proper in the premises.

13

## COUNT VI
### (Fraudulent Misrepresentation)

63.    Gainor realleges paragraphs 1 through 33 as though fully set forth herein.

64.    Sidley authorized and encouraged Andersen to utilize the Sidley name and reputation as well as the promise of favorable, "more likely than not," Sidley opinion letters to promote certain abusive tax shelters.

65.    As set forth above, Sidley, via authorized statements made by Andersen on its behalf and in statements contained within its final opinion letters delivered to Gainor, made one or more of the false statements or omissions of material fact more specifically set forth in paragraph 28.

66.    At the time they were made, Sidley knew that these representations of material fact were false and that these omissions of fact were material.

67.    As a result of their attorney-client relationship, Sidley and Gainor's relationship was both fiduciary and confidential in nature. Furthermore, Sidley held itself out to the public as a tax specialist with a superior knowledge of the subject matter to which these misrepresentations and omissions relate.

68.    Sidley intended that its misrepresentations and omissions of material fact induce Gainor to act in reliance thereon.

69.    Gainor justifiably relied on Sidley's misrepresentations and omissions of material fact by entering into the subject transactions and paying substantial fees and transaction costs.

70.    As a result of Sidley's fraudulent misrepresentations and omissions, Gainor has suffered damages including but not limited to over two million dollars ($2,000,000) in professional fees and transaction costs incurred in connection with the Sidley Plan, additional fees and costs

14

incurred in connection with participation in the IRS Voluntary Disclosure Plan and related IRS dealings, exposure to millions of dollars in additional taxes, and lost opportunities for proper tax planning.

WHEREFORE, Plaintiff, Mark J. Gainor, respectfully requests that this Court award compensatory damages and costs, against Sidley and such further relief as this Court deems just and proper in the premises.

## COUNT VII
### (Breach of Fiduciary Duty)

71.    Gainor realleges paragraphs 1 through 33 as though fully set forth herein.

72.    As a result of their attorney-client relationship, Sidley and Gainor's relationship was fiduciary in nature in that Gainor reposed trust and confidence in Sidley and Sidley undertook such trust, and assumed a fiduciary duty to advise, counsel, and protect Gainor and to exercise loyalty and due care.

73.    Sidley breached its fiduciary duty owed to Gainor by: (1) misrepresenting the risk associated with entering into the subject transactions; (2) failing to disclose that the subject transactions should have been registered as "potentially abusive tax shelters" under 26 U.S.C. § 6111(c) and that investor lists needed to be maintained under 26 U.S.C. § 6112; (3) failing to disclose Sidley's actual role as an organizer, promoter and seller of these and other unregistered, potentially abusive tax shelters, its relationship with Andersen, and related conflicts of interest which precluded the rendering of objective and "independent" tax opinions; and (4) failing to disclose Sidley's concerns regarding Gainor's ability to say in good faith that he relied upon the advice of a tax professional.

15

74.    As a result of Sidley's breach of fiduciary duty, Gainor entered into the subject transactions and has suffered damages including but not limited to over two million dollars ($2,000,000) in professional fees and transaction costs incurred in connection with the Sidley Plan, additional fees and costs incurred in connection with participation in the IRS Voluntary Disclosure Plan and related IRS dealings, exposure to millions of dollars in additional taxes, and lost opportunities for proper tax planning.

WHEREFORE, Plaintiff, Mark J. Gainor, respectfully requests that this Court award compensatory damages and costs, against Sidley and such further relief as this Court deems just and proper in the premises.

## COUNT VIII
### (Tortious Interference with an Advantageous Business Relationship)

75.    Gainor realleges paragraphs 1 through 33 as though fully set forth herein.

76.    Gainor had an established business relationship of trust and confidence with Andersen. Gainor routinely relied on Andersen to provide accounting and consulting services and to protect his financial interests while maintaining the confidentiality of sensitive financial information.

77.    Sidley had knowledge that Andersen maintained these types of relationships with clients such as Gainor and had access to such clients' confidential financial information. Sidley knew that Andersen's existing relationships with clients such as Gainor could be utilized to promote unregistered, abusive tax shelters being sold and marketed by Sidley for profit.

78.    Sidley intentionally and unjustifiably interfered with Gainor's advantageous business, confidential and fiduciary relationship with Andersen by inducing Andersen to promote the Sidley Plan to Andersen's clients, including Gainor.

16

79.    As a result of Sidley's interference, Gainor entered into the subject transactions and has suffered damages including but not limited to over two million dollars ($2,000,000) in professional fees and transaction costs incurred in connection with the Sidley Plan, additional fees and costs incurred in connection with participation in the IRS Voluntary Disclosure Plan and related IRS dealings, exposure to millions of dollars in additional taxes, and lost opportunities for proper tax planning.

WHEREFORE, Plaintiff, Mark J. Gainor, respectfully requests that this Court award compensatory damages and costs, against Sidley and such further relief as this Court deems just and proper in the premises.

## COUNT IX
### (Violations of the Florida Civil Remedies for Criminal Practices Act)

80.    Gainor realleges paragraphs 1 through 33 as though fully set forth herein.

81.    Beginning in or about January of 1996 and continuing until at least October 15, 2003, Sidley knowingly and willfully engaged in a scheme to defraud hundreds of individuals across the United States by directly or indirectly organizing and promoting unregistered, abusive tax shelters, under the guise of legitimate investment strategies, including but not limited to transactions described by the IRS and identified as "listed transactions" in Notice 99-59 (Boss), Notice 2000-44 (Son-of-Boss, BLIPS, COBRA), Notice 2001-16 (MIDCO), Notice 2001-45 (basis-shifting shelter, FLIPS/OPIS), and Notice 2002-21 (CARDS), as well as certain other transactions identified as Spread Options, Common Trust Fund, and Option Transfer that were organized, sold and implemented in conjunction with various accounting firms and investment advisors.

17

82.    These abusive tax shelters created the appearance of substantial capital losses via a series of transactions specifically designed to offset large capital gains, usually incurred as a result of the taxpayer's liquidation or sale of an investment position or business.

83.    Sidley generated millions of dollars in professional fees by repeatedly issuing favorable ("more than likely than not") tax opinion letters in connection with these abusive tax shelters.

84.    Further to its marketing of these tax shelters, Sidley recruited some of the largest accounting and financial consulting firms, including Andersen and KPMG, LLP ("KPMG"), as well as other financial institutions (hereinafter "The Marketers"), in order to identify and target prospective customers.

85.    In order to more effectively promote these abusive tax shelters, Sidley authorized and encouraged The Marketers to promise to the prospective customers that The Marketers would arrange for legal representation from Sidley, which would in turn provide favorable, "independent," more-likely-than-not opinion letters. The Marketers' ability to promise the delivery of these opinion letters from Sidley was a significant element in the promotion efforts.

86.    Sidley authorized The Marketers to represent to prospective customers that certain deductions taken as a result of taxpayers implementing these abusive tax shelters would "more likely than not" be upheld if challenged by the IRS. At the time Sidley authorized these representations, it knew that they were false.

87.    Over the course of a seven-year period, Sidley systematically issued hundreds of knowingly false and misleading, favorable opinion letters on these tax shelters that it was secretly promoting via The Marketers. These form opinion letters were false and misleading because, at the

18

time they were issued, Sidley knowingly and willfully: (1) misrepresented the <u>risks</u> associated with entering into the tax shelter; (2) failed to disclose that the subject transactions should have been registered as "potentially abusive tax shelters" under 26 U.S.C. § 6111(c) and that investor lists needed to be maintained under 26 U.S.C. § 6112; and (3) failed to disclose Sidley's actual role as an organizer, promoter and seller of these unregistered, potentially abusive tax shelters, its relationship with The Marketers, and related conflicts of interest which precluded the rendition of objective and "independent" tax opinions.

88.    Sidley's attorney-client relationships with Gainor and other similarly situated tax shelter customers were both fiduciary and confidential in nature. Furthermore, Sidley held itself out to the public as a tax specialist with superior knowledge of the subject matter as to which these intentional misrepresentations and omissions related.

89.    Sidley intended that its misrepresentations and omissions of material fact induce Gainor and other similarly situated clients to act in reliance thereon.

90.    Gainor justifiably relied on Sidley's misrepresentations and omissions of material fact by entering into the subject transactions and paying substantial fees and transaction costs.

91.    Sidley knowingly and willfully engaged in a systematic course of conduct by promoting abusive tax shelters and repeatedly delivering knowingly false and misleading, form opinion letters to Florida residents with the criminal intent to obtain monies from one or more persons by false or fraudulent pretenses, representations, and/or promises.

92.    Sidley's conduct in repeatedly and knowingly promoting abusive tax shelters and delivering false and misleading opinion letters to Florida residents via U.S. mail constitutes a pattern

19

of criminal activity and is unlawful pursuant to Fla. Stat. §§ 817.034 (a) and (b), and/or Title 18 U.S.C. § 1341.

93.    While engaging in this scheme to defraud and in furtherance thereof, Sidley, on multiple occasions, communicated with persons located within the state of Florida, via U.S. mail, with the intent to obtain monies from such persons, including the occasions specifically set forth below:

a.    On or about June 15, 1998, Sidley delivered to Peter T. Loftin in Florida, via U.S. Mail, one of its knowingly false and misleading, form opinion letters. This letter opined that deductions taken as a result of certain investment transactions, similar in nature to those transactions later described by the IRS and identified as "listed transactions" in Notice 2000-45 (FLIPS), would more likely than not be upheld if challenged by the IRS.

b.    On or about August 31, 1998, Sidley delivered to Joseph J. Jacoboni in Florida, via U.S. Mail, one of its knowingly false and misleading, form opinion letters. This letter opined that deductions taken as a result of certain investment transactions similar in nature to those transactions later described by the IRS and identified as "listed transactions" in Notice 2000-45 (FLIPS), would more likely than not be upheld if challenged by the IRS.

c.    On or about December 31, 1999, Sidley delivered to Peter T. Loftin in Florida, via U.S. Mail, one of its knowingly false and misleading, form opinion letters. This letter opined that deductions taken as a result of certain investment transactions similar in nature to those transactions later described by the IRS and

20

identified as "listed transactions" in Notice 2000-44 (BLIPS), would more likely than not be upheld if challenged by the IRS.

    d.    On or about December 31, 1999, Sidley delivered to Gainor in Florida, via U.S. Mail, one of its knowingly false and misleading, form opinion letters. This letter opined that deductions taken as a result of certain investment transactions similar in nature to those transactions described by the IRS and identified as "listed transactions" in Notice 99-59 (BOSS), would more likely than not be upheld if challenged by the IRS.

    e.    On or about December 31, 1999, Sidley again delivered to Gainor in Florida, via U.S. Mail, another of its knowingly false and misleading, form opinion letters. This letter opined that deductions taken as a result of certain other investment transactions similar in nature to those transactions described by the IRS and identified as "listed transactions" in Notice 99-59 (BOSS), would more likely than not be upheld if challenged by the IRS.

94.    As a result of its criminal actions, Sidley has received substantial payments, including but not limited to, payments for each of the knowingly false and misleading opinion letters referenced in paragraph 93 above.

95.    Sidley has used or invested, directly or indirectly, the proceeds of these payments in the acquisition of title to or a right or equity in real property, or in the establishment or operation of an enterprise.

96.    Sidley's actions are unlawful pursuant to § 772.103, Fla. Stat.

21

97.    As a result of Sidley's actions, Gainor entered into the subject transactions and has suffered damages including but not limited to over two million dollars ($2,000,000) in professional fees and transaction costs incurred in connection with the Sidley Plan, additional fees and costs incurred in connection with participation in the IRS Voluntary Disclosure Plan and related IRS dealings, exposure to millions of dollars in additional taxes, and lost opportunities for proper tax planning.

98.    Gainor has been forced to retain the undersigned counsel and is obligated to pay them a reasonable fee for legal services.

WHEREFORE, Plaintiff, Mark J. Gainor, respectfully requests that this Court award treble damages, statutory damages, costs, and attorneys fees pursuant to § 772.104, Fla. Stat., against Sidley and such further relief as this Court deems just and proper in the premises.

## DEMAND FOR JURY TRIAL

Gainor demands a jury trial on all issues so triable.


RICHARD BENJAMIN WILKES
Florida Bar No. 267163
RICHARD BENJAMIN WILKES, P.A.
600 South Magnolia Avenue, Suite 200
Tampa, Florida  33606
Telephone:     (813) 254-6060
Facsimile:     (813) 254-6088
rwilkes@rbwilkes.com
Attorneys for Plaintiff

22