UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-21748-CIV-MARTINEZ

MARK J. GAINOR,

Plaintiff,

v.

SIDLEY AUSTIN BROWN & WOOD, LLP,

Defendant.

**DEFENDANT SIDLEY AUSTIN LLP'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 9(b) AND 12(b)(6) AND MEMORANDUM OF LAW IN SUPPORT THEREOF**



## TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 2

III. ARGUMENT ..... 5

A. The Fraud and Negligent Misrepresentation Claims Must Be Dismissed Because The Complaint Fails To Allege That Plaintiff Relied Upon Brown & Wood In Entering Into The Tax Strategy ..... 5

B. Plaintiff's Claims Must All Be Dismissed Because The Complaint Fails To Allege That Brown & Wood Caused Plaintiff Harm ..... 8

C. Plaintiff's Breach Of Oral Contract Claim Is Defectively Pled. ..... 9

D. Plaintiff Fails To State A Claim For Tortious Interference With An Advantageous Business Relationship ..... 10

E. Plaintiff Fails To State A Florida RICO Act Violation ..... 13

F. Plaintiff's Fraud-Based Claims Fail Pursuant To Federal Rule Of Civil Procedure 9(b) ..... 14

IV. CONCLUSION ..... 17

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Ageloff v. Kiley*,
318 F. Supp. 2d 1157 (S.D. Fla. 2004)........................................ 16

*Andre v. Gaines Berland, Inc.*,
1996 WL 383239 (S.D.N.Y. Jul. 8, 1996) ........................................ 12

*Anthony Distributors, Inc. v. Miller Brewing Co.*,
904 F.Supp. 1363 (M.D. Fla. 1995) ........................................ 15

*Anthony Distributors, Inc. v. Miller Brewing Company*,
941 F.Supp. 1567 (M.D. Fla. 1996) ........................................ 10

*Benchmark Electronics, Inc. v. J.M. Huber Corp.*,
343 F.3d 719 (5th Cir. 2003)........................................ 14

*Brooks v. Blue Cross and Blue Shield of Florida, Inc.*,
116 F.3d 1364 (11th Cir. 1997)........................................ 14

*Butterworth v. Quick & Reilly, Inc.*,
998 F.Supp. 1404 (M.D. Fla. 1998) ........................................ 8

*Dunn v. Air Line Pilots Ass'n*,
193 F.3d 1185 (11th Cir. 1999)........................................ 13

*Durham v. Business Mgmt Assoc.*,
847 F.2d 1505 (11th Cir. 1988)........................................ 13

*Filler v. Hanvit Bank*,
247 F. Supp. 2d 425 (S.D.N.Y. 2003)........................................ 6

*Gibbs v. Republic Tobacco, L.P.*,
119 F. Supp. 2d 1288 (M.D. Fla. 2000) ........................................ 16

*Harrison Enterprises, Inc. v. Moran*,
1999 WL 1211753 (S.D. Fla. Aug. 30, 1999)........................................ 14

*Hernandez v. CIBA-GEIGY Corp. USA*,
200 F.R.D. 285 (S.D. Tex. 2001)........................................ 17

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*In re Cascade Int'l Securities Litig.*,
840 F.Supp. 1558 (S.D. Fla. 1993) ........ 17

*In re Managed Care Litig.*,
150 F. Supp. 2d 1330 (S.D. Fla. 2001) ........ 16, 18

*In re Sunstar Securities Healthcare Litig.*,
173 F. Supp. 2d 1315 (M.D. Fla. 2001) ........ 16

*Jackson v. BellSouth Telecomm.*,
372 F.3d 1250 (11th Cir. 2004) ........ 13

*Jones v. Childers*,
18 F.3d 899 (11th Cir. 1994) ........ 5

*KMS Restaurant Corp. v. Wendy's International, Inc.*,
361 F.3d 1321 (11th Cir. 2004) ........ 12

*Lachmund v. ADM Investor Services, Inc.*,
191 F.3d 777 (7th Cir. 1999) ........ 15, 16

*Martinez v. Pavex Corp.*,
422 F. Supp. 2d 1284 (M.D. Fla. 2006) ........ 10

*McCulloch v. PNC Bank Inc.*,
298 F.3d 1217 (11th Cir. 2002) ........ 13

*Medical Sav. Ins. Co. v. HCA, Inc.*,
2005 WL 1528666 (M.D. Fla. Jun 24, 2005) ........ 11

*MeterLogic, Inc. v. Copier Solutions, Inc.*,
126 F. Supp. 2d 1346 (S.D. Fla. 2000) ........ 14

*Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*,
526 U.S. 344 (1999) ........ 5

*NCR Credit Corp. v. Reptron Electronics Inc.*,
155 F.R.D. 690 (M.D. Fla. 1994) ........ 15

*Pardo v. Tanning Research Lab., Inc.*,
996 F.Supp. 1222 (M.D. Fla. 1998) ........ 8

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Patterson v. Downtown Med. & Diagnostic Center, Inc.*, 866 F.Supp. 1379 (M.D. Fla. 1994) ..... 5

*Rentclub, Inc. v. Transamerica Rental Finance Corp.*, 775 F.Supp. 1460 (M.D. Fla. 1991) ..... 15

*Saporito v. Combustion Engineering*, 843 F. 2d 666 (3rd Cir. 1988)..... 17

*Shibata v. Lim*, 133 F. Supp. 2d 1311 (M.D. Fla. 2000) ..... 10

*Souran v. Travelers Ins. Co.*, 982 F.2d 1497 (11th Cir. 1993)..... 14

*T. Harris Young & Assoc., Inc. v. Marquette Electronics, Inc.*, 931 F.2d 816 (11th Cir. 1991)..... 8

*United States ex rel. Butler v. Magellan Health Servs., Inc.*, 74 F. Supp. 2d 1201 (M.D. Fla. 1999) ..... 15

*Ziemba v. Cascade International, Inc.*, 256 F.3d 1194 (11th Cir. 2001)..... 16, 17

**State Cases**

*Amstar Ins. Co. v. Cadet*, 862 So.2d 736 (Fla. 5th DCA 2003) ..... 8

*Brown v. Larkin & Shea, P.A.*, 522 So.2d 500 (Fla. 1st DCA 1988)..... 12

*De Rubbo v. Wayner Associates*, 192 A.D.2d 889 (N.Y.A.D. 3 Dept. 1993) ..... 12

*Economy Suppliers & Fabricators, Inc. v. Centennial Homes, Inc.*, 325 So.2d 421 (Fla. 4th DCA 1976) ..... 7

*Ethan Allen, Inc. v. Georgetown Manor, Inc.*, ..... 10, 11
647 So.2d 812 (Fla. 1994)).

*Ferguson Transportation, Inc. v. North American Van Lines, Inc.*, 687 So.2d 821 (Fla. 1996)..... 13

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Ferris v. South Florida Stadium Corp.*,
926 So.2d 399 (Fla. 3rd DCA 2006) ........ 12

*Goldschmidt v. Holman*,
571 So.2d 422 (Fla. 1990) ........ 7

*Goodkind v. Wolkowsky*,
180 So. 538 (Fla. 1938) ........ 13

*Gossard v. Adia Services, Inc.*,
723 So.2d 182 (Fla. 1998) ........ 10, 11

*Gracey v. Eaker*,
837 So.2d 348 (Fla. 2002) ........ 8

*Greenberg v. Mount Sinai Medical Ctr. of Greater Miami, Inc.*,
629 So.2d 252 (Fla. 3rd DCA 1993) ........ 10

*Ilgen v. Henderson Properties, Inc.*,
683 So.2d 513 (Fla. 2nd DCA 1996) ........ 7

*Insurance Concepts and Design, Inc. v. Healthplan Services Inc.*,
785 So.2d 1232 (Fla. 4th DCA 2001) ........ 10

*Izquierdo v. Hialeah Hosp. Inc.*,
709 So.2d 187 (Fla. 3rd DCA 31998) ........ 8

*Kreizinger v. Schlesinger*,
925 So.2d 431 (Fla. 4th DCA 2006) ........ 13

*M/I Schottenstein Homes, Inc. v. Azam*,
813 So.2d 91 (Fla. 2002) ........ 5

*Olmsted v. Emmanuel*,
783 So.2d 1122 (Fla. 1st DCA 2001) ........ 9

*Palmas Y Bambu, S.A. v. E.I. Dupont De Nemours & Co., Inc.*,
881 So.2d 565 (Fla. 3rd DCA 2004) ........ 8

*Pappas v. Smart Health U.S.A.*,
861 So.2d 84 (Fla. 4th DCA 2003) ........ 7

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Sarkis v. Pafford Oil Co., Inc.*,
697 So.2d 524 (Fla. 1st DCA 1997) ........ 13

*Schopler v. Smilovits*,
689 So.2d 1189 (Fla. 4th DCA 1997) ........ 6

*Scott-Steven Development Corp. v. Gables by The Sea, Inc.*,
167 So.2d 763 (Fla. 3rd DCA 1964) ........ 8

*Seminole Tribe v. Times Publishing Co.*,
780 So.2d 310 (Fla. 4th DCA 2001) ........ 10

*Smith v. Ocean State Bank*,
335 So.2d 641 (Fla. 1st DCA 1976) ........ 11

*Spence, Payne, Masington & Grossman, P.A. v. Philip M. Gerson, P.A.*,
483 So.2d 775 (Fla. 3rd DCA 1986) ........ 8

*State Farm Mut. Auto. Ins. Co. v. Novotny*,
657 So.2d 1210 (Fla. 5th DCA 1995) ........ 6

*West v. Troelstrup*,
367 So.2d 253 (Fla. 1st DCA 1979) ........ 10

**Federal Statutes**

18 U.S.C. § 1341 ........ 14

**Federal Rules**

Fed. R. Civ.P. 9(b) ........ *passim*

Fed. R. Civ.P. 12(b)(6) ........ 1

**Florida Statutes**

Fla. Statute
§ 772.101 ........ 13
§ 772.103 ........ 5, 14

Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), defendant Sidley Austin LLP ("Brown & Wood") [1] respectfully moves this Court to dismiss the Complaint filed against Brown & Wood by Plaintiff Mark J. Gainor ("Plaintiff") on the grounds that the Complaint fails to state any claims upon which relief can be granted and fails to plead fraud with particularity.

## I. INTRODUCTION

According to his Complaint, Plaintiff brings this action against Brown & Wood because his long-time, trusted accountant Arthur Andersen LLP ("Andersen") persuaded him to invest in a tax shelter that was supposed to save him $17 million in taxes. As it turns out, the IRS audited and disapproved Plaintiff's tax scheme. Plaintiff settled with the IRS, which allowed Plaintiff to keep over $3.3 million of the tax savings from the shelter, apparently putting him a net $1.2 million or more ahead on the deal after fees and costs are included.

Despite making money on his tax shelter, Plaintiff filed this lawsuit claiming fraud, tortious interference, violation of Florida's RICO statute, breach of fiduciary duty and other causes of action. Plaintiff did not name Andersen, which collapsed several years ago, but instead sued Brown & Wood, "one of the nation's largest law firms," even though Brown & Wood could not possibly have caused Plaintiff to invest in the tax shelter because Plaintiff had invested in it long before Brown & Wood ever communicated with him. Nothing in the Complaint supports Plaintiff's contrived efforts to make Brown & Wood responsible for someone else's alleged conduct.

*First*, Plaintiff fails to plead that he relied upon any statements from Brown & Wood in deciding to participate in the tax shelter. His own Complaint makes clear that Plaintiff decided to enter the transactions at Andersen's behest months before he ever received any communication from Brown & Wood. Plaintiff is therefore reduced to suggesting that even if Brown & Wood never communicated with him, Andersen acted as Brown & Wood's agent,

---

[1] Sidley Austin Brown & Wood LLP formally changed its name to Sidley Austin LLP on January 1, 2006. Sidley Austin Brown & Wood LLP was the successor to Brown & Wood as the result of a merger in 2001.

rendering Brown & Wood liable for Andersen's statements. Plaintiff, however, fails to allege any facts supporting the notion that Brown & Wood somehow controlled Arthur Andersen or that an agency relationship existed. Because reliance is an essential element of Plaintiff's fraud and negligent misrepresentation claims, and because Plaintiff fails to allege reliance, those claims fail on the face of the Complaint. For the same reasons, Plaintiff cannot show that Brown & Wood caused him to enter into the transactions, and thus the remaining claims must also be dismissed as causation is a necessary element of each of those causes of action.

*Second*, and in the alternative, Plaintiff's Florida RICO claim never identifies the supposed RICO enterprise, requiring dismissal. Likewise, Plaintiff's claims for breach of an oral contract and for tortious interference with an advantageous business relationship fail to plead the essential elements of each claim.

*Finally*, Plaintiff makes no effort to comply with the requirement of Federal Rule of Civil Procedure 9(b) that fraud be pled with particularity. Plaintiff never identifies who at Andersen allegedly induced Plaintiff to enter the transactions at issue, or when or where the so-called misrepresentations were made. He never says who at Brown & Wood supposedly gave Andersen "authority" to say or do anything on Brown & Wood's behalf, or who at Brown & Wood communicated with Andersen, or vice-versa. This mode of pleading falls well below the standard set by Rule 9(b), again requiring dismissal.

## II. STATEMENT OF FACTS[2]

In 1998, Plaintiff decided to sell his 81.2% interest in Gainor Medical Management, LLC. Compl. ¶¶ 8, 9. At that time, Andersen was Plaintiff's accountant, consultant, and financial advisor with whom he had "an established relationship of trust and confidence. . . ." *Id.* ¶ 9. Before the sale closed, someone at Andersen allegedly informed Plaintiff that "it might be

[2] Brown & Wood does not concede the accuracy of any of the facts alleged in the Complaint, but treats them as true for the purposes of this motion only.

able to recommend a certain strategy to help reduce his total tax liability on the planned sale." *Id.* ¶ 10. Plaintiff does not allege that this unidentified individual made any reference to Brown & Wood.

The sale of Plaintiff's business closed in January 1999 and resulted in a gain of over $120 million. Compl. ¶ 11. In March 1999, someone at Andersen allegedly offered Plaintiff a tax shelter that would save him approximately $17.0 million in taxes. *Id.* ¶ 12. This unidentified individual allegedly told him that he would receive "a 'more likely than not' opinion letter" indicating that the strategy "would be upheld if challenged by the Internal Revenue Service." *Id.* Although Plaintiff characterizes the strategy as the "Sidley Plan,"[3] *Id.*, he never alleges that Brown & Wood's name was so much as mentioned by the unidentified individual at Andersen, much less that Andersen told him he would receive an opinion letter from Brown & Wood.

On August 20, 1999, someone at Andersen sent Plaintiff a schedule of fees and costs for the strategy, which were approximately $2.1 million. *Id.* ¶¶ 13, 14. On September 1, 1999 Plaintiff authorized Andersen to proceed with the transaction. *Id.* ¶ 15. He does not allege that he had any contact with Brown & Wood, or was even aware of Brown & Wood, before he decided to proceed with the strategy.

After Plaintiff authorized Andersen to proceed, "a series of complex and costly transactions were conducted" to generate $70,600,000 in apparent capital losses so that Plaintiff could offset the capital gains he made on the sale of his business. *Id.* ¶ 21. The transactions concluded on December 14 and December 23, 1999. *Id.* ¶ 24. "After the transactions were finalized," Plaintiff received two "qualified" opinion letters from Brown & Wood stating that it was "more likely than not" that the transactions would be "upheld if challenged by the IRS." *Id.*

---

[3] While the complaint repeatedly characterizes the transaction strategy at issue as "the Sidley Plan," that term is obviously a fabrication by Plaintiff's counsel rather than a phrase that was used contemporaneously by anyone involved in the transaction. The opinion on which this suit is allegedly based was rendered in 1999 by Brown & Wood, which did not combine with Sidley & Austin until May 2001. None of the transaction documents refer to a "Sidley Plan," a "Brown & Wood plan," or anything of the kind.

¶ 25. Plaintiff's receipt of the Brown & Wood opinion letters, dated December 31, 1999, was the first and only time Plaintiff allegedly communicated with Brown & Wood. *Id.* Of the $2.1 million in fees and costs for the transaction, Plaintiff claims Brown & Wood received $400,000. *Id.* ¶ 52.

On December 10, 1999, the IRS released Notice 99-59 warning that transactions described therein might not generate losses deductible under the Internal Revenue Code. *Id.* ¶ 22. Plaintiff alleges that on the same day the Notice was released, some unidentified individual at Brown & Wood told some unidentified individual at Andersen that Brown & Wood "would still issue the favorable 'more likely than not' opinion letters, but that the opinions would have to address Notice 99-59." *Id.* ¶ 23. The unidentified person at Brown & Wood allegedly told the unidentified person at Andersen, however, that Notice 99-59 "would impair [Plaintiff's] ability to rely in good faith on the advice of a tax professional," which the December 31, 1999 opinion letters allegedly failed to state. *Id.* ¶ 26.

On December 22, 2001, the IRS issued Announcement 2002-2, 2002-1 C.B. 304, which encouraged taxpayers to disclose their participation in certain tax transactions in exchange for the waiver of penalties. Compl. ¶ 29. On March 14, 2002, Brown & Wood notified Plaintiff of the Announcement and recommended that he consult his tax advisor. *Id.* ¶ 30. Plaintiff thereafter voluntarily disclosed his participation in the tax shelter to the IRS and an audit commenced. *Id.* ¶ 31.

On or about June 22, 2004, Plaintiff filed suit against Brown & Wood in Florida state court. Brown & Wood removed to this Court and filed a motion to dismiss arguing that Plaintiff's claims were not ripe because Plaintiff had not resolved his IRS audit. After reviewing the motion, Plaintiff contacted Brown & Wood and agreed to dismiss his lawsuit without prejudice pending resolution of the IRS examination.

On January 20, 2006, Plaintiff apparently accepted the IRS's settlement offer, which allows him to pay only $13,670,192 in taxes instead of the $17,000,000 tax bill he would have

paid without doing the tax strategy. Compl. ¶¶ 12, 32. This settlement appears to have saved Plaintiff $3,329,808 in taxes, which more than makes up for the $2,100,000 in fees Plaintiff allegedly paid. *Id.* ¶¶ 12, 14, 32. Nevertheless, Plaintiff refiled his suit against Brown & Wood in Florida state court on June 7, 2006. His complaint alleges nine causes of action: (I) malpractice; (II) breach of oral contract; (III) breach of contract implied in fact; (IV) breach of contract implied in law or unjust enrichment; (V) negligent misrepresentation; (VI) fraudulent misrepresentation; (VII) breach of fiduciary duty; (VIII) tortious interference with an advantageous business relationship; and (IX) violations of Florida Civil Remedies for Criminal Practices Act (the "Florida RICO Act").[4]

Brown & Wood's counsel accepted service of the second action on June 13, 2006. As the parties are diverse and Plaintiff alleges an amount in controversy exceeding $75,000, Brown & Wood properly removed the case to federal court on July 12, 2006. *See Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 356 (1999).

## III. ARGUMENT

### A. The Fraud and Negligent Misrepresentation Claims Must Be Dismissed Because The Complaint Fails To Allege That Plaintiff Relied Upon Brown & Wood In Entering Into The Tax Strategy.

Plaintiff's own allegations defeat his claims for fraud and negligent misrepresentation (Counts V and VI) because they conclusively negate detrimental reliance, which is an essential element of these causes of action. *See Patterson v. Downtown Med. & Diagnostic Center, Inc.*, 866 F.Supp. 1379, 1383 (M.D. Fla. 1994) (reliance essential element of fraud and negligent misrepresentation); *M/I Schottenstein Homes, Inc. v. Azam*, 813 So.2d 91, 94-95 (Fla. 2002) (reliance on the alleged false statement is an essential element of a fraud claim).

[4] Gainor alleges violations of Florida Statute § 772.103 of the Civil Remedies for Criminal Practices Act. Compl. ¶ 96. This is Florida's Civil RICO provision. *See Jones v. Childers,* 18 F.3d 899, 910 (11th Cir. 1994).

Here, Plaintiff's Complaint makes clear that he did *not* rely on Brown & Wood when he decided to enter into the tax strategy. Indeed, Plaintiff's *only communication from Brown & Wood* – two opinion letters – were not delivered until "[a]fter the transactions were finalized." Compl. ¶ 25 (emphasis added). It defies common sense to suggest that Plaintiff could have relied on Brown & Wood's after-the-fact letters in deciding to participate in the tax shelter. *See Schopler v. Smilovits*, 689 So.2d 1189, 1190 (Fla. 4th DCA 1997) (dismissing fraud claim for lack of reliance where the allegedly fraudulent "representation was made after the transaction had already taken place"); *State Farm Mut. Auto. Ins. Co. v. Novotny*, 657 So.2d 1210, 1213-14 (Fla. 5th DCA 1995) (dismissing action for fraudulent misrepresentation because at the time alleged misrepresentation was made, plaintiff had "already made the decision" to change her position and thus could not have acted to her detriment in reliance on the misrepresentation); *see also Williams v. Sidley Austin Brown & Wood LLP, et al.*, slip op. at 10 Supreme Court of the State of New York, Index No. 600808/05 (March 13, 2006), attached hereto as Exhibit A (dismissing fraud and negligent misrepresentation claims where opinion letters were sent after the decision to enter transaction was made and "plaintiffs do not allege any direct misrepresentations of fact by the [Brown & Wood] defendants ... prior to the agreement to enter into the [tax strategy].")[5]

Recognizing this deficiency, Plaintiff urges that Andersen somehow made its statements to Plaintiff as Brown & Wood's "agent." According to Plaintiff, the supposed agency relationship makes Brown & Wood liable for Andersen's alleged misrepresentations. This argument also fails as a matter of law, however, because Plaintiff pleads no "ultimate facts that

---

[5] *See also Filler v. Hanvit Bank*, 247 F. Supp. 2d 425, 430 (S.D.N.Y. 2003) ("For the plaintiffs to allege reliance, as required for actionable fraud under both federal and common law, plaintiffs must allege with particularity that defendants made false statements *prior to* [the plaintiffs' act of detrimental reliance]"), *vacated on other grounds at* 2003 WL 21729978 (S.D.N.Y. July 25, 2003).

establish either actual or apparent agency." *Goldschmidt v. Holman*, 571 So.2d 422, 423 (Fla. 1990).

The essential elements of an agency relationship are "(1) acknowledgement by the principal that the agent will act for him; (2) the agent's acceptance of the undertaking; and (3) *control by the principal over the actions of the agent*." *Ilgen v. Henderson Properties, Inc.*, 683 So.2d 513, 515 (Fla. 2d DCA 1996) (dismissing for failure to plead first element) (emphasis added).

Plaintiff never alleges (and could not honestly allege) that Brown & Wood controlled Andersen. This should surprise no one since, by Plaintiff's own admission, (1) Andersen, not Brown & Wood, had a relationship with Plaintiff; (2) Andersen, not Brown & Wood, chose which tax strategies to suggest to him; (3) Andersen, not Brown & Wood, made the representations at issue; and (4) Andersen, not Brown & Wood, received $1.7 million of the $2.1 million in fees. Compl. ¶¶ 12, 41; *see also id.* ¶¶ 20, 40, 56-57, 64-65. Where Andersen exercised so high a level of independent control, no actual agency can exist. *See Economy Suppliers & Fabricators, Inc. v. Centennial Homes, Inc.*, 325 So.2d 421, 422 (Fla. 4th DCA 1976) (dismissing agency allegation because by definition an agent is not "free from control with regard to the details of the engagement") (citation omitted).

Moreover, according to the Complaint, Brown & Wood authorized Andersen to tell "prospective customers" only that "Andersen would arrange for the customers to get legal representation from [Brown & Wood]" for "'independent,' more likely than not opinion letters." Compl. ¶ 20. This without more is not enough to create actual agency. *See Pappas v. Smart Health U.S.A.*, 861 So.2d 84, 85 (Fla. 4th DCA 2003) ("mere permissive use of [defendant's] name did not create an agency relationship").

Nor does Plaintiff fare better under an apparent agency theory. The essential elements of an apparent agency relationship are "1) there was a representation by the principal; 2) the injured party relied on that representation; and 3) the injured party changed position in reliance upon the

representation and suffered detriment." *Amstar Ins. Co. v. Cadet*, 862 So.2d 736, 742 (Fla. 5th DCA 2003). "The focus is on the appearance created by the *principal*, and not the appearance created by the *agent*." *Pardo v. Tanning Research Lab., Inc.*, 996 F.Supp. 1222, 1226 (M.D. Fla. 1998) (emphasis in original); *Izquierdo v. Hialeah Hosp. Inc.*, 709 So.2d 187, 188 (Fla. 3rd DCA 1998) ("apparent authority exists only where the principal creates the appearance of an agency relationship." (quoting *Spence, Payne, Masington & Grossman, P.A. v. Philip M. Gerson, P.A.*, 483 So.2d 775, 777 (Fla. 3rd DCA 1986)). Plaintiff's Complaint never alleges that Brown & Wood made any representation whatsoever, much less one that created the appearance that Andersen was its agent.

**B. Plaintiff's Claims Must All Be Dismissed Because The Complaint Fails To Allege That Brown & Wood *Caused* Plaintiff Harm.**

Plaintiff's professional malpractice, breach of fiduciary duty, breach of contract (however formed),[6] tortious interference in an advantageous business relationship, and Florida RICO claims similarly fail for lack of causation, which is an essential element of each of these claims.[7] Plaintiff cursorily alleges that "[a]s a result of" Brown & Wood's "breaches and deviations, [he]

---

[6] Plaintiff's contract based claims are, in reality, nothing more than claims for professional malpractice. *Compare* ¶¶ 36, 37 (professional malpractice) with ¶ 42 (breach of oral contract), ¶¶ 48, 49 (breach of contract implied in fact) and ¶¶ 53, 54 (breach of contract implied in law).

[7] *See Olmsted v. Emmanuel*, 783 So.2d 1122, 1125 (Fla. 1st DCA 2001) (essential element of legal malpractice is causing loss); *Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002) (causation is element for breach of fiduciary duty); *Scott-Steven Development Corp. v. Gables by The Sea, Inc.*, 167 So.2d 763, 764 (Fla. 3rd DCA 1964) (the law remedies those breaches of contract "only for such wrongful acts *as result in injury or damage*") (emphasis added); *Palmas Y Bambu, S.A. v. E.I. Dupont De Nemours & Co., Inc.*, 881 So.2d 565, 570 (Fla. 3rd DCA 2004) (holding causation is an element of Florida's RICO statute); *T. Harris Young & Assoc., Inc. v. Marquette Electronics, Inc.*, 931 F.2d 816, 825-26 (11th Cir. 1991) (tortious interference with a business relationship requires causation). Causation is also an element of plaintiff's fraud and negligent misrepresentation claims. *See Butterworth v. Quick & Reilly, Inc.*, 998 F.Supp. 1404, 1411 (M.D. Fla. 1998) (plaintiff's claims of fraudulent inducement and negligent misrepresentation both failed for lack of causation).

entered into the subject transactions." Compl. ¶ 38; *see also id.* ¶¶ 44, 50, 62, 70, 79. His specific allegations, however, flatly contradict this conclusory assertion.

Plaintiff specifically alleges that he decided to enter into the tax shelter and pay the fees based *solely* on advice and communications from Andersen *before* he ever had any contact with Brown & Wood. Compl. ¶ 25. As noted previously, because Plaintiff already had decided to invest, and indeed had completed the transaction, before receiving any communication from Brown & Wood, Brown & Wood's December 1999 opinion letters could not have caused Plaintiff to enter into a transaction that happened in September 1999. In other words, Plaintiff's own Complaint forecloses any showing that he based his decision to engage in the transactions on communications from Brown & Wood. As a consequence, Plaintiff's claims, which all require causation as an essential element, should be dismissed.[8]

**C. Plaintiff's Breach Of Oral Contract Claim Is Defectively Pled.**

Plaintiff attempts to state a claim for breach of oral contract (1) even though he never spoke to anyone at Brown & Wood, and (2) even though he fails to allege that Brown & Wood breached an express term of the purported contract.

In an attempt to remedy the first defect, Plaintiff alleges that Andersen acted as Brown & Wood's "agent." Compl. ¶¶ 40-41. As already discussed, the Complaint fails to allege facts sufficient to establish an agency relationship.

As to the second defect, Gainor alleges that Brown & Wood violated the so-called oral contract by breaching "an implied covenant . . . to exercise ordinary skill and knowledge in the rendition of legal professional services" and an "implied covenant of good faith and fair dealing." Compl. ¶¶ 42, 43. Under Florida law, however, a "cause of action for breach of the implied covenant cannot be maintained . . . in the absence of breach of an express term of the

[8] For the reasons discussed above with respect to reliance, Gainor cannot rely on alleged misrepresentations or omissions by Andersen to satisfy the causation element because he has failed to plead facts sufficient to establish that Andersen was acting as Brown & Wood's agent.

underlying contract." *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1318 (M.D. Fla. 2000). Plaintiff is trying to do exactly what Florida law forbids: state a claim for breach of implied covenant without alleging breach of an express term. *Insurance Concepts and Design, Inc. v. Healthplan Services Inc.*, 785 So.2d 1232, 1234 (Fla. 4th DCA 2001). Count II for breach of oral contract should be dismissed on this alternative and independent ground as well.

**D. Plaintiff Fails To State A Claim For Tortious Interference With An Advantageous Business Relationship.**

Plaintiff's Tortious Interference with an Advantageous Business Relationship claim fails on every level. Indeed, Plaintiff actually alleges facts that conclusively foreclose his claim.

The elements of a claim for tortious interference with an advantageous business relationship are: "(1) the existence of a business relationship... (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Gossard v. Adia Services, Inc.*, 723 So.2d 182, 184 (Fla. 1998) (quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814 (Fla. 1994)).

Plaintiff has failed to plead interference, much less intentional and unjustified interference. "Either a 'breach' or 'termination'" of a business relationship is necessary to establish 'interference.'" *Martinez v. Pavex Corp.*, 422 F. Supp. 2d 1284, 1297 (M.D. Fla. 2006); *Anthony Distributors, Inc. v. Miller Brewing Company,* 941 F.Supp. 1567, 1572 (M.D. Fla. 1996) (citing *Smith v. Ocean State Bank,* 335 So.2d 641, 643 (Fla. 1st DCA 1976); *Ethan Allen,* 647 So.2d at 814; *Greenberg v. Mount Sinai Medical Ctr. of Greater Miami, Inc.*, 629 So.2d 252 (Fla. DCA 3d 1993); *West v. Troelstrup,* 367 So.2d 253 (Fla. 1st DCA 1979)); *see also Seminole Tribe v. Times Publishing Co.*, 780 So.2d 310, 315 (Fla. 4th DCA 2001) (holding "interference" occurs when the defendant induces the third party "not to deal with" the plaintiff).

Plaintiff alleges that he had a business relationship with Arthur Andersen and that Brown & Wood interfered with that relationship by "inducing Andersen to promote the Sidley Plan to

Andersen's clients, including Gainor." Compl. ¶ 78. Plaintiff fails to allege (because he cannot) that his relationship with Arthur Andersen was "breached" or "terminated" or that Brown & Wood induced Andersen "not to deal with" Plaintiff. Indeed, Plaintiff alleges the exact opposite; that as a result of Brown & Wood's actions Plaintiff did *more* business with Arthur Andersen and entered into the tax strategy at issue. Compl. ¶ 79. Without an allegation of a breached or terminated relationship, Gainor's claim for tortious interference fails.

Further, Plaintiff's relationship with Arthur Andersen, his accountant and financial advisor, does not suffice to establish the "business relationship" element. In most, if not all cases, the plaintiff alleging tortious interference sues because the defendant purportedly stole or otherwise interfered with his clients or customers. Our research discloses no case where a *client*, like Plaintiff, has successfully sued for tortious interference with its relationship with the person it is paying to provide it services (*e.g.*, a lawyer, accountant, advisor, house painter, etc.). This cause of action is meant to protect businesses from losing business, not clients who are dissatisfied with the services they received.

Even if the relationship could work backwards and a client could sue, Plaintiff still has not alleged the necessary "business relationship" element. "[A]n action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Gossard v. Adia Services, Inc.*, 723 So.2d 182, 184 (Fla. 1998) (quoting *Ethan Allen, Inc.* 647 So.2d at 815). Just because two parties have had a history of past dealings does not establish a business relationship going forward. *See Ethan Allen, Inc.* 647 So.2d at 815 (holding that "[t]he mere hope that some of its past customers may choose to buy again cannot be the basis for a tortious interference claim." *Id.*; *see also Medical Sav. Ins. Co. v. HCA, Inc.*, No. 2:04CV156FTM, 2005 WL 1528666, at *9 (M.D. Fla. Jun 24, 2005) (dismissing tortious interference claim brought by medical insurer who complained defendants

induced insurers' customers not to renew their policies because a past relationship with a customer does not mean the insurer will have a prospective relationship with that customer).

Here, all Plaintiff has alleged is that *in the past* he had relied upon Arthur Andersen for accounting and related-services. Compl. ¶ 76. He makes no allegation of any identifiable understanding or agreement that any relationship between Andersen and Plaintiff would continue in the future. Further, even if such an agreement existed, it would be terminable at-will by either party and would provide nothing more than a "bare expectancy, rather than a legal right, that the relationship would continue." *Brown v. Larkin & Shea, P.A.*, 522 So.2d 500, 501 (Fla. 1st DCA 1988) (holding attorney-client relationship was terminable "at-will" and there was no claim for tortious interference where one law firm induced another law firm's clients to switch their representation); *see also Kreizinger v. Schlesinger* 925 So.2d 431, 433 (Fla. DCA 4th. 2006) (same); *Goodkind v. Wolkowsky*, 180 So. 538, 540 (Fla. 1938) (holding agreement that accountant would represent a client in a tax proceeding was terminable at-will); *Ferris v. South Florida Stadium Corp.*, 926 So.2d 399, 401-02 (Fla. 3rd DCA 2006) (holding that "[t]he general rule is that an action for tortious interference will not lie where a party interferes with an at will contract").[9]

Finally, Plaintiff never alleges that Brown & Wood knew of his *specific* business relationship with Andersen and targeted it. *See KMS Restaurant Corp. v. Wendy's International, Inc.*, 361 F.3d 1321, 1325 (11th Cir. 2004) (holding under Florida law that tortious interference claim required plaintiff KMS to establish defendant "Wendy's knowledge of the business relationship between KMS and Citicorp."). Instead, he pleads only that Brown & Wood knew "that Andersen maintained *these types of relationships* with *clients such as Gainor*." Compl.

---

[9] *See also Andre v. Gaines Berland, Inc.*, No. 95Civ 10524 (DC) 1996 WL 383239, *2 (S.D.N.Y. Jul. 8, 1996) (holding that "on-going professional services relationship is terminable at-will by either party" unless there is a specific agreement to the contrary); *De Rubbo v. Wayner Associates*, 192 A.D.2d 889, 891 (N.Y.A.D. 3 Dept. 1993) (holding that "a continuing professional services relationship with defendant involving accounting, tax and advisory services ...would be terminable at will by either party").

¶ 77 (emphasis added). The cases make clear that alleging Brown & Wood intended only to affect Andersen's relationship with its clients *generally* cannot sustain Plaintiff's tortious interference claim. *See Dunn v. Air Line Pilots Ass'n,* 193 F.3d 1185, 1191 (11th Cir. 1999) (holding that a tortious interference claim requires "a relationship with a particular party"); *Ferguson Transportation, Inc. v. North American Van Lines, Inc.*, 687 So.2d 821, 821 (Fla. 1996) (holding that "in order to establish the tort of tortious interference with a business relationship, the plaintiff must prove a business relationship with identifiable customers."); *Sarkis v. Pafford Oil Co., Inc.*, 697 So.2d 524 (Fla. 1st DCA 1997) (affirming dismissal on this ground). Without an allegation that Brown & Wood knew Plaintiff in particular had a relationship with Andersen, Plaintiff has failed to adequately allege the "knowledge" element of a tortious interference claim.

Because Plaintiff would have to contradict the allegations of his Complaint to save his tortious interference with advantageous business relationship claim, this claim should be dismissed with prejudice.

**E. Plaintiff Fails To State A Florida RICO Act Violation.**

Plaintiff's attempt to assert a claim for violations of the Florida RICO Act, Florida Statute § 772.101 *et seq.*, is equally unavailing. In addition to the Complaint's failure to satisfy the particularity requirements of Fed. R. Civ. P. 9(b) (as described immediately below), Plaintiff never identifies the core element of his RICO claim, the "enterprise."

Description of the alleged RICO enterprise constitutes an "[e]ssential" and "basic requirement[]" of a RICO claim.[10] *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1264 (11th Cir. 2004); *see also McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1225 (11th Cir. 2002) ("To state a RICO claim, a plaintiff must plead … an 'enterprise'"); *Durham v. Business Mgmt Assoc.*,

[10] The Florida RICO Act was patterned after the federal RICO statute, *see Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263-64 (11th Cir. 2004). As a result, case law interpreting the Federal RICO statute informs the interpretation of Florida's Act. *See id.*

847 F.2d 1505, 1511 (11th Cir. 1988) (same). Here Plaintiff never even attempts to explain the nature of the RICO enterprise supposedly at issue. In fact, the word "enterprise" is used only once in the Complaint and that is where Plaintiff parrots back the statutory language of Florida Statute § 772.103. Compl. ¶95. ("Sidley has used or invested ... the proceeds of these payments in ... the establishment or operation of an enterprise."). Nowhere does Plaintiff develop or explain the alleged "enterprise." This failure dooms his claim.

**F. <u>Plaintiff's Fraud-Based Claims Fail Pursuant To Federal Rule Of Civil Procedure 9(b)</u>.**

Finally, Plaintiff's claims against Brown & Wood for fraudulent misrepresentation, negligent misrepresentation, and violations of the Florida RICO Act should also be dismissed because the Complaint utterly fails to state "the circumstances of fraud. . . with particularity" as required by Fed. R. Civ. P. 9(b).[11]

To satisfy the requirements of Rule 9(b), a plaintiff must allege:

> (1) the precise statements, documents or misrepresentations made; (2) the time, place and person responsible for the statement; (3) the content and manner in which these statement misled the Plaintiffs; and (4) what the defendants gained as a consequence of the fraud.

*In re Managed Care Litig.*, 150 F. Supp. 2d 1330, 1346 (S.D. Fla. 2001) (J. Moreno) (internal quotation marks and citation omitted). Where, as here, the defendant is an organization, a

---

[11] In addition to Plaintiff's claim for fraudulent misrepresentation, Rule 9(b) applies to the Florida RICO Act claim, which is premised on mail fraud under 18 U.S.C. § 1341 (see Compl. ¶ 92), and the negligent misrepresentation claim. *See Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997) (applying Rule 9(b) to mail fraud allegation in RICO action); *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) (9(b) applies to negligent misrepresentation claim if based on the same alleged facts as fraudulent misrepresentation); *Harrison Enterprises, Inc. v. Moran*, No. 97-4362-CIV, 1999 WL 1211753, *3 (S.D. Fla. Aug. 30, 1999) (recognizing that under Florida law, "an action for negligent misrepresentation sounds in fraud rather than negligence," and therefore the pleading requirements of Rule 9(b) apply) (quoting *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1511 (11th Cir. 1993); *MeterLogic, Inc. v. Copier Solutions, Inc.*, 126 F. Supp. 2d 1346, 1360 (S.D. Fla. 2000) (applying Rule 9(b) to negligent misrepresentation claim).

plaintiff must also identify the individual(s) within the organization who made the allegedly false or misleading statements. *United States ex rel. Butler v. Magellan Health Servs., Inc.*, 74 F. Supp. 2d 1201, 1216 (M.D. Fla. 1999). Furthermore, the nature of the agency relationship alleged must be pled with particularity "when the plaintiff relies upon the same circumstances to establish both the alleged fraud and the agency relationship." *Lachmund v. ADM Investor Services, Inc.*, 191 F.3d 777, 782-83 (7th Cir. 1999) (applying Rule 9(b)).

Plaintiff's Complaint violates Rule 9(b) in every way. It does not identify who at Brown & Wood allegedly gave Andersen "express or implicit authority" to act on its behalf in dealing with Plaintiff, Compl. ¶ 12; who allegedly "authorized and encouraged" Andersen to use its name as part of an "agree[ment] to work together" on tax shelters, *id.* ¶¶ 19, 20, 56; who purportedly admitted to Andersen that Plaintiff could not rely "on the advice of a tax professional," *id.* ¶ 23; or who issued the allegedly misleading opinion letters. *See, e.g.*, *Rentclub, Inc. v. Transamerica Rental Finance Corp.*, 775 F.Supp. 1460, 1462 (M.D. Fla. 1991) (requiring plaintiff to re-plead because he "should specifically identify the individuals who made the alleged misrepresentations[,]… [and] their specific statements to organize, orchestrate, and commence the alleged plan"); *Anthony Distributors, Inc. v. Miller Brewing Co.*, 904 F.Supp. 1363, 1365 (M.D. Fla. 1995) (noting requirement to "specifically identify the individuals").

Further, the Complaint does not identify who at Andersen allegedly "offered" the strategy to Plaintiff, Compl. ¶ 12; misled him about "the actual risk associated" with the transaction, *id.* ¶¶ 28(a), 57; or was told about the purported impact of Notice 99-59 on Plaintiff's ability to rely on the advice of tax professionals. *Id.* ¶ 23. *See, e.g.*, *NCR Credit Corp. v. Reptron Electronics Inc.*, 155 F.R.D. 690, 693 (M.D. Fla. 1994) (dismissing complaint under Rule 9(b) for failure to identify agents who made alleged misrepresentations). Nor does the Complaint set forth what the unidentified person at Andersen told Plaintiff about the tax strategy or when the alleged misrepresentations were made. Finally, the Complaint fails to allege "the manner in which [the

misrepresentations] misled" Plaintiff. *Ziemba v. Cascade International, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *see* Compl. ¶¶ 28, 57 & 65 (both incorporating ¶ 28).

In an effort to cure Plaintiff's inability to allege causation and reliance on Brown & Wood's Opinion Letters (as described in detail above), Plaintiff obliquely refers to Brown & Wood's "preliminary advice and directives." Compl. ¶ 28. Nowhere in the Complaint, however, does Plaintiff ever detail these supposed communications, identify who at Brown & Wood purportedly gave them, state when they were provided, or describe the impact on Plaintiff.

Plaintiff's Florida RICO Act claim suffers from similar defects. Plaintiff groups Andersen and the accounting firm KPMG LLP with unidentified "accounting and financial consulting firms" and "other financial institutions" as "The Marketers." Compl. ¶ 84. He fails, however, to identify any individuals at any of "The Marketers" who were allegedly authorized by Brown & Wood to make the representations to other taxpayers, *id.* ¶¶ 85, 86, or who made representations to any of the taxpayers identified in the Complaint. This failure requires dismissal. *See In re Managed Care*, 150 F. Supp. 2d at 1347 (*citing Saporito v. Combustion Engineering,* 843 F.2d 666, 675 (3rd Cir. 1988)). Further, he fails to allege who at Brown & Wood "authorized and encouraged The Marketers" to make promises to "prospective customers" *id.*, ¶ 85, or "authorized" them to make representations regarding the tax consequences of certain deductions they might take if they implemented the tax strategies. *Id.* ¶ 86; *see Ageloff v. Kiley*, 318 F. Supp. 2d 1157, 1159 (S.D. Fla. 2004) (a civil RICO complaint must plead all of the elements of each alleged predicate act with particularity).

To the extent Plaintiff purports to allege specific "material omissions," Compl. ¶ 28, he fails to allege how the purported omissions misled him, or facts establishing circumstances that would require such disclosures. Rule 9(b) "requires" him to set forth "*where* the statement was, or should have been, made" as well as "*when* the statement was, or should have been, made." *In re Sunstar Securities Healthcare Litig.*, 173 F. Supp. 2d 1315, 1318 (M.D. Fla. 2001) (emphasis added); *see also Gibbs v. Republic Tobacco, L.P.*, 119 F. Supp. 2d 1288, 1294 (M.D.

Fla. 2000) (plaintiff should plead "the time and place" of misstatement or omission); *Hernandez v. CIBA-GEIGY Corp. USA,* 200 F.R.D. 285, 291 (S.D. Tex. 2001) (dismissing fraud claim under Rule 9(b) because plaintiff "fail[ed] to allege the circumstances that would necessitate making such disclosures, such as when and where these disclosures should have been made"). Plaintiff fails to identify any affirmative representations by either Andersen or Brown & Wood that were misleading because of the alleged omissions or explain how these omissions misled him. *See, e.g.*, *In re Cascade Int'l Securities Litig.*, 840 F.Supp. 1558, 1574 (S.D. Fla. 1993) (for omissions to be actionable, plaintiff must allege the "manner in which [he was] misled").

Because, as set forth above, Plaintiff fails to plead fraud with the required specificity, his claims for negligent misrepresentation (Count V), fraudulent misrepresentation (Count VI), and violation of Florida's civil RICO statute (Count IX) should be dismissed.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Complaint should be dismissed.

DATED: July 19, 2006.

Respectfully submitted,

By: Katherine W. Ezell

Katherine W. Ezell (SBN 114771)
kezell@podhurst.com
PODHURST ORSECK, P.A.
25 West Flagler Street, Ste. 800
Miami, Florida 33130
Tel: (305) 358-2800/ Fax: (305) 358-2382

Of Counsel:

MUNGER, TOLLES & OLSON LLP
Jonathan E. Altman
Aaron M. May
355 S. Grand Ave., 35th Floor
Los Angeles, CA 90071
(213) 683-9100 / Fax (213)687-3702

*Attorneys for Sidley Austin LLP*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by first class U.S. mail to **Richard B. Wilkes, Esq.**, at Richard B. Wilkes P.A. 600 South Magnolia Ave., Suite 200, Tampa, FL 33606 on July 19, 2006.

Katherine W. Ezell (SBN 114771)
kezell@podhurst.com
PODHURST ORSECK, P.A.
25 West Flagler Street, Ste. 800
Miami, Florida 33130
Tel: (305) 358-2800/ Fax: (305) 358-2382

Of Counsel:

MUNGER, TOLLES & OLSON LLP
Jonathan E. Altman
Aaron M. May
355 S. Grand Ave., 35th Floor
Los Angeles, CA 90071
(213) 683-9100 / Fax (213)687-3702

*Attorneys for Sidley Austin LLP*

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: BERNARD J. FRIED, J.S.C.

PART 60

Index Number : 600808/2005

WILLIAMS, E. ROGER

vs

SIDLEY AUSTIN BROWN & WOOD LLP

Sequence Number : 007

DISM ACTION/INCONVENIENT FORUM

INDEX NO. ______

MOTION DATE ______

MOTION SEQ. NO. ______

MOTION CAL. NO. ______

The following papers, numbered 1 to ______ were read on this motion to/for ______

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | |
| Answering Affidavits — Exhibits ______ | |
| Replying Affidavits ______ | |

Cross-Motion: ☐ Yes ☐ No

Upon the foregoing papers, it is ordered that this motion

This motion is decided in accordance with the accompanying memorandum decision.

SO ORDERED

Dated: 3/13/06

[signature]

BERNARD J. FRIED, J.S.C.

Check one: ☐ FINAL DISPOSITION ☐ NON-FINAL DISPOSITION

Check if appropriate: ☐ DO NOT POST ☐ REFERENCE

...REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK : I.A.S. PART 60

---X

E. ROGER WILLIAMS, NORMANDY TRADING, INC. and NORMANDY INVESTMENT TRUST,

Plaintiffs,

Index No. 600808/05

-against-

SIDLEY AUSTIN BROWN & WOOD, L.L.P; RAYMOND J. RUBLE; MULTINATIONAL STRATEGIES, LLC; KEVIN M. KOPS; MICHAEL N. SCHWARTZ; COASTAL TRADING, LLC; ENTERPRISE FINANCIAL SERVICES INC., f/k/a ENTERPRISE BANK; DEERHURST MANAGEMENT COMPANY, N.C.; BRAXTON MANAGEMENT, INC; BRADONTON MANAGEMENT, INC.; NORTHBRIDGE CAPITAL MANAGEMENT, INC. BECKENHAM TRADING COMPANY, INC.; PETER MOLYNEUX; ANDREW KRIEGER; REFCO CAPITAL MARKETS, LTD.; HVB US FINANCE INC.; and DAVID A. SCHWARTZ,

Defendants.

---X

**APPEARANCES:**

Plaintiffs:

Kane Kessler, P.C.
1350 Avenue of the Americas
New York, New York 10019
(Jeffrey H. Daichman, Esq.)

Whatley Drake LLC
2323 2nd Avenue North
Birmingham AL 35203
(Joe R. Whatley, Jr., Esq.)

Defendants:

*Attorneys for defendant Sidley Austin Brown & Wood LLP*
Covington & Burlington
1330 Avenue of the Americas
New York, NY 10019
(Aaron R. Marcu, Esq. Andrew Ruffino, Esq., Phillip A. Irwin Esq., Jason P. Criss, Esq.)

Of Counsel:
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
(Richard E. Drooyan, Esq.)

*Attorneys for Raymond J. Ruble*
*William J. Brady, III, Esq.*
Frankel & Abrams
230 Park Avenue
New York, New York 10169
(Stuart E. Abrams, Esq.
William J. Brady, III, Esq.)

*Attorneys for Defendant HVB US Finance Inc. f/k/a HVB Structured Finance Inc.:*
Fulbright & Jaworski, LLP
555 S. Flower Street
Los Angeles, California 90071
(Helen L. Duncan, Esq.,
Dinh Ha, Esq.)
and
666 Fifth Avenue
New York, New York 10103
(Sarah E. O'Connell, Esq.)

**FRIED, J.:**

Motion sequence numbers 007, 008 and 009 are consolidated for determination.

In this action, plaintiffs, E. Roger Williams and his affiliated entities, assert thirteen causes of action against the defendants, who are alleged to have acted in concert to structure and facilitate a series of transactions leading to plaintiffs' investment in the Coastal Common Trust Fund Series III Fund (the Coastal III Fund). Plaintiffs allege that defendants made fraudulent or negligent misrepresentations, concealed the nature of their relationships, breached their fiduciary duty, and committed professional malpractice to induce plaintiffs to enter into these transactions, and to claim $8,033,250.77 in ordinary losses generated by the Fund as a deduction against income on their 2001 U.S. federal and state income tax returns. Plaintiffs seek both declaratory relief and damages, including the interest, penalties and late fees paid when, subsequently, the deductions were disallowed by the Internal Revenue Service (IRS).

Under motion sequence 007 and 008, the law firm defendants, Sidley Austin Brown & Wood LLP (Sidley) and attorney Raymond J. Ruble (together the Sidley defendants) move to dismiss plaintiffs' amended complaint pursuant to CPLR 3211 (a) (1) & (7) and CPLR 3016 (b), relying, in part upon alleged "documentary evidence" to demonstrate that Sidley made no representations to plaintiffs prior to their investment in the Coastal III Fund. Under motion sequence 009 defendant HVB US Finance Inc.(HVB) moves to dismiss plaintiffs'



KANE KESSLER FAX:212-245-3009 Mar 14 2006 15:54 P.05

complaint, pursuant to CPLR 3211 (a) (7) for failure to state a cause of action, and allege that plaintiffs have no standing to seek a declaratory judgment.[1]

For purposes of these CPLR 3211 motions, the following facts, as alleged in plaintiffs' complaint, are accepted as true, and given the benefit of every possible favorable inference (EBC I, Inc. V Goldman, Sachs & Co., 5 NY3d 11, 19 [2005]; Sokoloff v Harriman Estates Development Corp., 96 NY2d 409, 414 [2001]; P.T. Bank Central Asia v ABN AMRO Bank N.V., 301 AD2d 373, 375-6 [1st Dept 2003]).

Plaintiff E. Roger Williams was introduced to defendant Multi National Strategies, LLC, and its principals, Michael N. Schwartz, Kevin M. Kops and David Schwartz (collectively, the Multi National defendants) in October 2001 for the purpose of obtaining tax advice in connection with a substantial amount of "phantom equity" imputed to Williams as a result of the sale of one of his businesses. Defendants Schwartz and Kops, both certified public accountants, represented that they were experts in the field with substantial experience in creating, marketing and selling tax advantaged products to corporations and high net worth individuals. They advised Williams to invest in a "common trust fund" (CTF), which Schwartz and Kops represented was a lawful tax strategy with tremendous tax benefits. Schwartz and Kops explained that a CTF transaction was materially different from other tax strategies previously challenged by the IRS, and that the transaction would be accompanied by an opinion letter from defendant Sidley, which the

1 The motion to dismiss interposed by defendant Ronald G. Menaker, Esq. on behalf of the deceased defendant Peter Molyneux, who died in November 2005, was denied with leave to renew, by order dated January 30, 2006.

Multi National defendants represented was an independent, international and highly reputable tax law firm. The Multi-National defendants represented to Mr. Williams that because Sidley was an independent, international and reputable law firm, the opinion letter would shield plaintiffs from accuracy penalties in the event of an adverse determination by the IRS, and that an adverse determination was unlikely because the CTF involved fewer investors than other tax strategies, making it unlikely to attract IRS attention. The Multi National defendants represented that the CTF transaction they were marketing met the "economic substance" and "clear business purpose" tests used by the IRS to measure the legitimacy of a transaction, and assured Williams that Sidley would provide him with an opinion letter stating that it was "more likely than not" that the transaction would be acceptable to the IRS. The Multi National defendants also advised Williams that it was absolutely essential that Williams obtain a Sidley opinion letter before making use of the CTF transaction losses when filing U.S. federal income tax returns for 2001.

As further assurance of the legitimacy and safety of a CTF investment, Multi National highlighted the participation of Deerhurst Management Company, Inc., which Multi National asserted was one of the premier experts in the field of options and foreign currency trading, and HVB, a subsidiary of Germany's second largest bank, Bayerische Hypo-und Vereinsbank AG. Multi National represented that HVB understood the nature of CTF investments, and would work closely with Multi National and the other defendants named in the amended complaint to implement the strategy.

The Multi National defendants advised Williams that under the Tax Code, the only way a tax sheltered investment in a CTF could be made was through the use of a trust. Thus,

in order to facilitate Williams' investment in the Coastal III Fund, the Multi National defendants assisted Williams in setting up plaintiff Normandy Trading, Inc. (Normandy Trading), a subchapter S corporation wholly owned by Williams in order to limit Williams' personal liability exposure, and plaintiff Normandy Investment Trust (the Normandy Trust). One of the individual Multi National defendants was named as Secretary of Normandy Trading, and defendant Enterprise Financial Services, Inc. was named as Trustee of Normandy Trust. According to the Sidley Opinion Letter, which is annexed to Sidley's moving papers as Exhibit 3 (the Opinion Letter), the use of these investment entities was in accordance with the prospectus issued for the Coastal III Fund.[2]

The next step in making this investment was for Williams to establish an account with defendant Deerhurst. Williams opened the account with Deerhurst on November 21, 2001 with an initial investment of $1.2 million. Deerhurst used those funds to purchase two put options on Japanese Yen for $8,040,426, and $8,000,000 respectively, with both puts

---

2

According to plaintiffs' amended complaint, as confirmed by the Opinion Letter, the Coastal III Fund was established by defendant Enterprise Financial Services, Inc. f/k/a Enterprise Bank (Enterprise) by establishing two charitable remainder uni-trusts. These two trusts were used to make initial contributions of $48,000 apiece to the Coastal III Fund. The monies contributed to the Coastal III Fund were invested by defendant Deerhurst on or about November 27, 2001 in a series of foreign currency options which were intended to and did create what is known as a "straddle" and "strangle" position with a $95,467.05 margin, using both a call option and a corresponding put option on the same currency. The Straddle transaction generated both losses and offsetting gains. As structured, losses incurred by the Coastal III Fund were to be allocated to the investors, and the gains were to be allocated to the charitable trusts on a monthly basis. Investors were expected to participate in the Coastal III Fund for a minimum of five (5) years, with substantial penalties incurred for early withdrawl. At the end of the first allocation period, November 30, 2001, the Coastal III Fund recognized a $120,663,915 gain after the sale of the options, along with losses that would not be realized until the subsequent period.



P. 06 Mar 14 2006 13:54 FAX:212-249-2009 KANE KESSLER

maturing in November 22, 2002. Defendant Refco Capital Markets acted as the counter-party on the option transactions. Williams' portfolio was then transferred to Normandy Trading. To cover the options defendant Braxton Management, Inc. (Braxton), a Deerhurst affiliate, borrowed $8 million from Hypo Vereinsbank Structured Finance, of which defendant HVB is the United States counterpart. Braxton loaned the $8 million to Williams, who in turn loaned the $8 Million to Normandy Trading. Normandy Trading then contributed $1.2 million in cash and loaned $8 million to Normandy Trust, which in turn purchased a $9,200,000.00 position in the Coastal III Fund, giving Normandy Trust a 6.6% position in the fund.

The Coastal III Fund then used the $8 million to acquire a foreign currency linked variable rate of return structured note from defendant Bradonton, Inc., another Deerhurst affiliate. According to the Sidley Opinion Letter, Brandonton, in turn "lent" the money to Hypo Vereinsbank Structured Finance. Plaintiffs' amended complaint alleges that Bradonton's loan to HVB was in repayment of the $8 million borrowed by Williams through Braxton, and seeks a declaratory judgment that plaintiffs are not obligated to repay those funds. Plaintiffs' amended complaint also alleges that in addition to lending the $8 million, HVB facilitated the movement of the funds between the various entities, and that all of these transaction were an anticipated and integral part of the overall Coastal III Fund transaction.

In moving to dismiss plaintiffs' amended complaint, the Sidley defendants rely on an unsigned copy of a Letter of Engagement (the "Engagement Letter") dated December 12, 2001, which purportedly was forwarded to Williams after the CTF transactions were completed. Pursuant to the Engagement Letter, Sidley was to act as "Special U.S. Federal

Income Tax Counsel," and would provide Williams with income tax advice, including the Opinion Letter, in relation to the CTF transactions. The Engagement Letter advised Williams that changes in the law could occur after completion of Sidley's engagement which could impact his future rights and liabilities, and that Sidley would have no further obligation unless specifically retained for that purpose. Under the terms of the Engagement Letter, Sidley's fee for providing these services was $50,000 "regardless of the amount of time or disbursements actually incurred payable on delivery of the Opinion Letter." In addition, the Engagement Letter contained a conflict of interest disclosure stating that Sidley represented persons affiliated with Coastal Trading LLC, that it might continue to do so in the future, and that in the event of a conflict of interest, Williams agreed that Sidley would represent the "other client."

On or about December 28, 2001, the Coastal III Fund allocated $8,033,250.77 in ordinary losses to Normandy trading. Several months later, on or about March 8, 2001, Sidley forwarded the 113 page Opinion Letter to Williams. The letter advised Williams that there was a fifty (50%) percent likelihood that the tax treatment of the CTF transactions would be upheld if challenged by the IRS, with a disclaimer stating that Sidley's opinion was "not binding on the IRS or a court of law," and that accordingly, there could be "no assurance" that following an audit, the IRS would not take a position contrary to Sidley's, or that its position would be sustained by the courts. Plaintiffs' complaint alleges that Williams relied upon the Opinion Letter, and IRS K-1 and 1120S forms prepared and provided by Multi National, in preparing income tax returns for Williams and Normandy Trading, and in claiming a $8,033,250.77 loss to offset income for the 2001 tax year.

Three years later, on July 16, 2003, the IRS issued Notice 2003-54 entitled "Common Trust Fund Straddle Tax Shelter" to " alert taxpayers and their representatives that the claimed tax benefits purportedly generated by these transactions are not allowable for federal income tax purposes...." Around the same time, the Multi National defendants informed Williams that there were problems with the CTF transactions, and that the IRS had taken the position that the transaction was a "tax shelter" and had identified it as a "listed transaction" under the relevant provisions of the Income Tax Regulations, based upon a finding that the offsetting positions did not serve any non-tax objectives. Upon learning of the IRS ruling, Williams retained new counsel and accountants to amend plaintiffs' 2001 federal and Connecticut income tax returns, and upon refiling, was required to pay interest to both taxing authorities, as well as late filing penalties to the IRS. Plaintiffs also incurred substantial penalties from having to withdrew from the Coastal III fund.

Addressing the merits of the motions, and notwithstanding the liberal construction to be accorded plaintiffs' pleadings pursuant to CPLR 3211 (EBC I, Inc. V Goldman, Sachs & Co., supra, 5 NY3d at 19; (Sokoloff v Harriman Estates Development Corp., supra 96 NY2d at 414), the allegations of plaintiffs' amended complaint fail to state a cause of action for fraudulent inducement or fraudulent concealment against the attorney defendants, or against HVB, with respect to plaintiffs' determination to invest in the Costal III Fund. To plead a viable cause of action for fraud, plaintiffs must allege: that the defendants made misrepresentations of material existing fact, which were false and known to be false by the defendants when made, for the purpose of inducing plaintiffs' reliance; justifiable reliance on the alleged misrepresentation or omission by the plaintiffs; and injury (Lama Holding



MARC MCCOLLER FAX:212-742-0005 MAR 14 2006 15:33 P.11

Company v Smith Barney, Inc., 88 NY2d 413 [1996], as; New York University v Continental Ins. Co., 87 NY2d 308, 318 [1995]; Friedman v Anderson, 23 AD3d 163, 166 [1st Dept 2005]). In addition, CPLR 3016 (b) requires that the complaint set forth the misconduct complained of in sufficient detail to clearly inform each defendant of what their respective roles were in the incidents complained of (see P.T. Bank Central Asia v ABN AMRO Bank, 301 AD2d 373, 377 [1st Dept 2003]; Abrahami v UPC Construction Co., Inc., 176 AD2d 180 [1st Dept 1991]); but c.f. Lanzi v Brooks, 43 NY2d 778, 780 [1977]). Mere recitation of the elements of fraud is insufficient to state a cause of action (Friedman v Andersen, supra, 23 AD3d at 166, quoting National Union Fire Ins. Co. of Pittsburgh PA v Robert Christopher Assoc., 257 AD2d 1, 9 [1st Dept 1999]).

In this case, plaintiffs do not allege any direct misrepresentations of fact by the Sidley defendants or by HVB prior to their agreement to enter into the CTF transactions (see Linden v Moskowitz, 294 AD2d 114 [1st Dept 2002]; Abrahami v UPC Construction Co., Inc., supra, 176 AD2d 180), nor do plaintiffs plead facts with sufficient particularity from which to infer that either HVB or the Sidley defendants were in an agency relationship with Multi National, or had sufficient control over the Multi National defendants to allow the purported representations to be imputed to them (CPLR 3016 [b]; see First Nationwide Bank v 965 Amsterdam, Inc., 212 AD2d 469 [1st Dept 1995]; Abrahami v UPC Construction Co., Inc., supra, 176 AD2d 180; National Westminister Bank USA v Weksel, 124 AD2d 144, 147 [1st Dept], app denied, 70 NY2d 604 [1987]). Plaintiffs' amended complaint makes blanket statements that all of the defendants authorized and participated in advancing the alleged scheme without any specific delineation, in large measure, as to their respective roles. While

plaintiff need not allege and prove that each defendant committed every element of fraud, plaintiff must establish facts that support an inference that defendants knowingly agreed to cooperate in a fraudulent scheme, or shared a perfidious purpose and, when scienter is lacking, the mere fact that a defendants' otherwise lawful activities may have assisted another in pursuit of guileful objectives is not a sufficient basis for a finding that they conspired to defraud (Snyder v Puente de Brooklyn Realty Corp., 297 AD2d 432 [3rd Dept 2002]; National Westminister Bank USA v Weksel, supra 124 AD2d at 147).

The alleged misrepresentations regarding the purported safety and viability of the Coastal III Fund as a tax sheltered investment fall within the category of predictions or expressions of future events, which are neither affirmations of events that when made, the defendants knew would not occur, nor assertions of present facts that were exclusively within the defendants' knowledge (Channel Master Corp. V Aluminum Limited Sales, 4 NY2d 403, 407-8 [1958]; Beltrone v General Schuyler & Co., 223 AD2d 938, 941 [3rd Dept 1996]; Wilsen Associates Real Estate Corp. Inc. v Pizilly, 204 AD2d 777 [3rd Dept 1994]; Lane v McCallion, 166 AD2d 688 [2d Dept 1990]; see e.g. Lama Holding Company v Smith Barney, Inc., supra, 88 NY 2d at 421-22). Predictions and expressions of future events cannot form the basis for a fraud cause of action (SRG Partners v Asch, 270 AD2d 4 [1st Dept 2000]; Auchincloss v Allen, 211 AD2d 417 [1st Dept 1995]). In this case, the CTF transactions were not determined by the IRS to be inappropriate until three years after the deductions were claimed. Facts regarding positions taken by the IRS in similar instances or with similar types of transactions were not exclusively within the defendant's knowledge, and it may be inferred from the allegations contained within the four corners of the amended

complaint that plaintiffs understood the risks, took a gamble that the CTF transactions would achieve the desired tax savings, and lost (see e.g. Pace Communications, Inc. v Amsale Aberra, LLC, 6 Misc 3d 1022[A] [Sup Ct, NY County 2005]; but see Seippel v Jenkens & Gilchrist, P.C., 341 F Supp 2d 363 [SDNY], amended 2004 WL 240391 [SDNY 2004]).

To the extent that the complaint alleges that Sidley made negligent representations to Multi National knowing that those representations would be used to market Coastal products (see Finova Capital Corp. v Berger, 18 AD3d 256 [1st Dept 2005]), or that Sidley and HVB failed to disclose their relationship with Coastal or the other transactional defendants, prior to the time Sidley entered into an attorney-client relationship with Williams, there was no privity of contract between plaintiff and Sidley, or between plaintiffs and HVB; and there are no allegations in plaintiffs' amended complaint from which to infer the existence of any contractual or fiduciary relationship between plaintiffs and the moving defendants that would give rise to a duty to disclose prior to or during the execution of the CTF transactions (see Credit Alliance Corp. v Arthur Andersen & Co., 65 NY2d 536, 545-48 [1985]; Rovello v Klein, 304 AD2d 638 [2d Dept], lv. denied, 100 NY2d 509 [2003]; Conti v Polizzotto, 243 AD2d 672 [2d Dept 1997]; Mayes v UVI Holdings, Inc., 280 AD2d 153, 161-2 [1st Dept 2001]; Singer v Whitman, 83 AD2d 862, 863 [2d Dept 1981]; National Westminister Bank v Weksel, supra, 124 AD2d at 148; Banque Arabe et Intematinal D'Investissement v Maryland Natl. Bank, 57 F 3d 158 [2d Cir 1995]). Defendant HVB's participation was limited to making a loan to Braxton Management, Inc. There are no allegations that the loan transaction was illegal or fraudulent, and a lawful act done in a lawful way cannot be the basis for a claim of fraudulent conspiracy (Callahan v Gutowski,

111 AD2d 464 [3rd Dept 1985], citing Dalury v Rezinas, 183 App Div 456 [1st Dept 1918], affd 229 NY 513 [1920]; see also National Westminister Bank v Weksel, supra, 124 AD 2d at 148; Banque Arabe et Internatinal D'Investissement v Maryland Natl. Bank, 57 F.3d 158 [2d Cir 1995]). The allegations in plaintiffs' amended complaint are insufficient to support the inference of fraud in the inducement or fraudulent concealment against these defendants, and plaintiffs' broad, blunderbuss allegations, that all of the participants in the CTF transactions were engaged in a fraudulent scheme or conspiracy, lack specificity (CPLR 3016 [b]; Abrahami v UPC Construction Co., Inc., supra, 176 AD2d 180; see also Northshore Environmental Solutions, Inc. v Glass, 17 AD3d 427, 428 [2d Dept 2005]).

Plaintiffs' claim against HVB for aiding and abetting fraud must also fail, as there are no facts from which to infer that HVB was aware of plaintiffs' existence let alone affirmatively assisted or concealed the fraud, or failed to act when required to do so (c.f. compare Houbigant, Inc. v Deloitte & Touche LLP, 303 AD 2d 92 [1st Dept 2003]; to National Westminster Bank USA v Weksel, supra, 124 AD 2d at 150; and Kaufman v. Cohen, 307 AD2d 113, 126 [1st Dept 2003]). Further, in the absence of a viable underlying fraud claim, plaintiffs' cause of action for conspiracy, as asserted against these defendants, must also fail (see Small v Lorillard Tobacco Co., 94 NY2d 43, 57 [1999]; Linden v Moskowitz, 294 AD2d 114, 115 [1st Dept 2002], lv denied 99 NY2d 505[2003]). Accordingly, plaintiffs' first, ninth and twelfth causes of action, alleging fraud, aiding and abetting fraud, and civil conspiracy, as asserted against the Sidley defendants and HVB, are dismissed.

The same analysis does not apply to plaintiffs' causes action against the Sidley defendants for events or representations occurring after Sidley was retained by Williams as "Special U.S. Federal Income Tax Counsel." Once the attorney-client relationship was engaged, a fiduciary relationship came into play with all of the attendant duties and obligations, which "transcend those prevailing in the commercial market place" (Matter of Cooperman, 83 NY2d 465, 472 [1994]). Attorneys have a duty to deal fairly, honestly with their clients, with undivided loyalty which is superimposed onto the attorney-client relationship, and creates set of special and unique obligations including the avoidance of conflicts of interest, operating competently, safeguarding client property and honoring the clients' interests over their own (Matter of Cooperman, supra, 83 NY2d at 472; see also EBC I, Inc. v Goldman, Sachs & Co., supra 5 NY 3d at 19-20; Blue Chip Emerald LLC v Allied Partners Inc., 299 AD2d 278, 279-80 [1st Dept 2002]). "This is a sensitive and 'inflexible' rule of fidelity, barring not only blatant self-dealing, but also requiring avoidance of situations in which a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary duty" (Birnbaum v Birnbaum, 73 NY2d 461, 466 [1989]). A fiduciary may not have interests adverse to those of the client, and where a conflict of interest exists, nothing less than full and complete disclosure is required of the fiduciary (TPL Associates v Helmsley-Spear, Inc., 146 AD2d 468, 470 [1st Dept 1989]). If dual interests are to be served, the disclosure, to be effective, must lay bare the truth, without ambiguity or reservation, in all its stark significance. (Guice v Charles Schwab & Co., 89 NY2d 31, 45 [1996], cert denied 520 US 1118 [1997]). Thus, within the context of an attorney-client relationship, plaintiffs' claims that Sidley was acting in its own self interest, and that it did

not fully disclose the extent and nature of its relationship with the other defendants, are sufficient to support a cause of action for professional malpractice and plaintiffs' claims that the Sidley defendants knew or should have known that the transactions in issue would not withstand scrutiny by the IRS, suffice to raise the inference that the Sidley defendants did not exercise the degree of skill commonly exercised by an ordinary member of the legal community in rendering tax advise to plaintiffs (Nevelson v Carro, Spanbock, Kaster & Cuiffo, 259 AD2d 282 [1st Dept 1999]; Thaler & Thaler v Gupta, 208 AD2d 1130 [3rd Dept 1994]). Plaintiffs claim reliance on the Opinion Letter in taking the deduction, and it can be inferred that "but for" the attorneys' alleged negligence in rendering the opinion letter, plaintiff would not have incurred interest, penalties, professional fees and other damages claimed as a result of having to re-file for 2001 (see Nevelson v Carro, Spanbock, Kaster & Cuiffo, supra 259 AD2d at 284; Strook & Strook & Lavan v Beltramini, 157 AD2d 590, 591 [1st Dept 1990]). The Sidley defendants' motion to dismiss plaintiffs' seventh cause of action for professional malpractice, therefore, is denied.

With respect to such damages, however, the moving defendants properly assert that under New York law, plaintiffs are not entitled to recover interest paid to the IRS as a result of having to re-file for the 2001 tax year (see Alpert v Shea Gould Climenko & Casey (160 AD2d 67, [1st Dept 1990][equities militate in favor of barring recovery of such interest rather than allowing plaintiffs the windfall of both having used the tax money and recovering all interest thereon], citing Freschi v Grand Coal Venture, 767 F2d 1041 [2d Cir 1985], vacated on other grounds, 478 U.S. 1015 [1986] [interest upon disallowance of tax deduction by IRS not damages suffered by plaintiff, but rather, payment to IRS for use of money

plaintiff was not entitled to]; in accord see Nevelson v Carro, Spanbock, Kaster & Cuiffo, supra, 259 AD2d at 284). Accordingly, plaintiffs' demand for damages in the form of interest paid to the IRS and state taxing authorities due to the disallowance of the CTF loss deductions is stricken. The balance of the motion by the Sidley defendants to strike plaintiffs' demand for reimbursement of penalties, late fees and professional fees is denied. Sidley's assertion that it did not advise plaintiffs when to file amended tax returns appears disingenuous, and the issues, in any event, will be addressed, more appropriately, on the merits after a full development of the facts (see e.g. Lama Holding Company v Smith Barney Inc., supra, 88 NY2d at 421-2; Linden v Moskowitz, supra, 294 AD2d 114; Abrahami v UPC Construction Co., Inc., supra, 176 AD2d 180; Waterman v State of New York, 19 AD2d 264, 266 [4th Dept 1963], affd 14 NY2d 793 [1964]).

Plaintiffs' fifth, sixth and eleventh, causes of action for negligent misrepresentation, breach of fiduciary duty, and breach of the implied covenant of good faith and fair dealing, as asserted against the Sidley defendants, are dismissed as redundant of the malpractice claim (see Weil, Gotshal & Manges, LLP v Fashion Boutique of Short Hills, Inc., 10 AD3d 267, 271 [1st Dept 2004]; Schwartz v Olshan Grundman, Frome & Rosenzweig, 302 AD2d 193, 199-200 [1st Dept 2003]; Nevelson v Carro, Spanbock, Kaster & Cuiffo, supra, 290 AD2d at 400).

Plaintiffs' ninth and tenth causes of action as alleged against HVB, for aiding and abetting fraud and the alleged breaches of fiduciary duty, also are dismissed. Plaintiffs failed to allege that HVB had actual, as opposed to constructive, knowledge of the fiduciary relationships alleged, and there are no facts from which to infer that HVB knowingly induced



KANE KESSLER FAX:212-245-3009 Mar 14 2006 13:58 P.10

or participated in the alleged breach (see Kaufman v Cohen, 307 AD2d 113, 125 [1st Dept 2003]; Higgins v New York Stock Exchange, 10 Misc3d 257, 286-89 [Sup Ct, NY County 2005]).

Finally, as conceded by plaintiffs during oral argument on the motions, the eighth and eleventh causes of action asserted against the movants for declaratory relief are not ripe for determination (see Church of St. Paul and St. Andrew v Barwick, 67 NY2d 510, 518-19, cert. denied 479 US 985 [1986]). Moreover, as to defendant HVB, plaintiffs have no standing to seek a declaration of rights under a contract to which plaintiffs are not a party (see Baker v Latham Sparrowbush Assoc., 129 AD2d 667, appeal denied 70 NY2d 606 [1987]). Accordingly, the eighth and eleventh causes of action alleged in plaintiffs' amended complaint, as asserted against the Sidley defendants, and against HVB, also are dismissed.

For the reasons set forth above, it is

ORDERED that the motion by defendants Sidley Austin Brown & Wood, L.L.P. and Raymond J. Ruble under motion sequence 007 and 008 to dismiss plaintiffs' amended complaint are granted, in part, to the extent of dismissing the FIRST, FIFTH, SIXTH, EIGHTH, ELEVENTH AND TWELFTH causes of action as asserted against these defendants, and it is otherwise denied; and it is further;

ORDERED that plaintiffs' demand for damages in the form of interest paid to the IRS and state taxing authorities is stricken from the amended complaint; and it is further

ORDERED that the motion by defendant HVB Finance Inc. to dismiss plaintiffs' amended complaint, as asserted against it, is granted in its entirety. The complaint, as to

HVB is dismissed, and the Clerk is directed to enter judgment accordingly as to HVB; and it is further

ORDERED that defendants Sidley Austin Brown & Wood, L.L.P. and Raymond J. Rubel are directed to answer the balance of plaintiffs' amended complaint within 30 days of service of a copy of this order with notice of entry.

Dated: 3/13/06

BERNARD J. FRIED
J.S.C.

J.S.C.