NIGHT BOX
FILED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

0 4 2006

CLARENCE MADDOX
CLERK USDC / SDFL / MIA

MARK J. GAINOR,

      Plaintiff,

v.                         CASE NO.: 06-21748-Civ-Martinez

SIDLEY, AUSTIN, BROWN & WOOD, LLP,

      Defendant.

_____/

### AGREED MOTION TO ALLOW RE-FILING OF MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND CONFIRMING DEFENDANT'S REQUESTED EXTENSION OF TIME TO FILE REPLY BRIEF

Plaintiff, Mark J. Gainor, by and through his undersigned counsel, hereby files this agreed motion to allow the filing of his Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint ("Memorandum in Opposition") and the extension of time to Defendant to reply thereto, and as grounds therefore states:

1.      On August 31, 2006, Plaintiff timely served his Memorandum in Opposition to the Motion to Dismiss; a true and correct copy of which is attached hereto as Exhibit A.

2.      The Memorandum in Opposition to the Motion to Dismiss inadvertently carried the case number of the previously filed related action, instead of the case number for the subject action.

3.      Subsequent to the service of the Memorandum in Opposition to the Motion to Dismiss, Defendant requested and Plaintiff agreed to an extension of time for the Defendant to serve its reply memorandum.



4.    On or about September 7, 2006, Plaintiff learned that due to its having the incorrect case number, the Memorandum in Opposition had been filed in the previously filed related case, which case had been voluntarily dismissed without prejudice.

5.    Counsel for Plaintiff has conferred with counsel for the Defendant, who has graciously agreed to this motion to permit the re-filing of the Memorandum in Opposition to the Motion to Dismiss in the subject action, subject to the confirmation of the previously agreed-to extension of time for the Defendant to file its reply memorandum.

6.    Attached hereto as Exhibit B is the re-filed Memorandum in Opposition to the Motion to Dismiss with the corrected case number.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order allowing the filing of the Memorandum of Law in Opposition to Defendant's Motion to Dismiss, attached hereto as Exhibit B, in this action and further allowing Defendant until September 25, 2006, in which to file its reply memorandum.

RICHARD BENJAMIN WILKES
Florida Bar No. 267163
RICHARD W. CANDELORA
Florida Bar No. 198056
**RICHARD BENJAMIN WILKES, P.A.**
600 South Magnolia Avenue
Suite 200
Tampa, Florida 33606
Telephone:    (813) 254-6060
Facsimile:    (813) 254-6088
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by

first class U.S. Mail this _8th_ day of September, 2006, to:

Jonathan E. Altman, Esq.
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071

Katherine W. Ezell, Esq.
Podhurst Orseck, P.A.
25 W. Flagler Street, Suite 800
Miami, FL  33130

_____
Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MARK J. GAINOR,

     Plaintiff,                         Case No.: 04-22058-CIV-MORENO/Garber

v.

SIDLEY, AUSTIN, BROWN &
WOOD, LLP,

     Defendant.

_____/

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Plaintiff, Mark J. Gainor, by and through his undersigned counsel respectfully submits this Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6), and Incorporated Memorandum of Law (the "Motion to Dismiss").

**I.**     **INTRODUCTION**

Defendant's introductory statement in its Memorandum of Law, which ranges well beyond the allegations in the Complaint, is misleading in numerous respects. Before dealing with the legal points raised by Defendant, Plaintiff here addresses the overall misconceptions portrayed by the Defendant in its introductory statement.

The Complaint alleges that in the late 1990's, Sidley, a self-proclaimed expert in the field of tax planning, designed an "investment strategy" which was supposed to reduce the amount of tax payable upon the sale of a business interest that had appreciated substantially in value. Sidley's "strategy" is now more commonly referred to as an

**EXHIBIT A**

abusive tax shelter, as it has been determined to generate artificial losses lacking economic substance which are not deductible under the Internal Revenue Code.

As part of a nationwide scheme, Sidley encouraged financial advisers such as Arthur Andersen ("Andersen") to promote the "strategy" to the financial advisers' customers. Sidley and Andersen agreed to work together to induce clients such as Plaintiff to employ the strategy. Sidley authorized Andersen to advise clients that if they would employ the strategy, Sidley would provide a "more likely than not" letter opining that the transaction would satisfy Internal Revenue Service ("IRS") requirements and the losses would be deductible.

In December of 1999, Sidley learned that the IRS had issued a Notice unambiguously declaring strategies such as Sidley's to be illegal tax evasions. Nonetheless, even though Sidley knew that the purported losses would not be deductible, Sidley, through Andersen, placed Plaintiff into the illegal scheme; Andersen handled the primary client contacts for the transaction, and Sidley provided the critical tax opinion letters in which Sidley opined that it was "more likely than not" that the transactions would be upheld if challenged by the IRS. Sidley issued these letters even though Sidley knew full well before it issued the letters that the IRS had already declared the arrangement to be an abusive tax shelter whose purported losses would not be allowed as deductions under the Internal Revenue Code.

About three years later, the IRS issued an Announcement in which it encouraged taxpayers to voluntarily advise the IRS of their participation in such tax schemes in exchange for the IRS's waiver of certain penalties that would otherwise be assessed for failing to pay proper taxes on time. This program did not purport to reduce the tax bill;

rather, it merely offered to waive some of the penalties that otherwise would have been assessed on top of the tax bill.   Sidley informed Plaintiff of the program and recommended that he consult with competent counsel about the advisability of participating.   Plaintiff did consult counsel, participated in the program, and wound up with an additional tax bill of $13.7 million, millions of dollars in interest, plus hundreds of thousands of dollars in fees for  the program, in addition to the millions spent implementing the Sidley scheme. He therefore filed this suit.

Defendant's protestations to the contrary notwithstanding, the Complaint is replete with allegations of joint conduct by Sidley and Andersen, and of an agency relationship between Sidley and Andersen.   Moreover, the Complaint clearly alleges a causal relationship between Sidley's conduct and Plaintiff's losses.   Plaintiff has claimed as damages  the fees he paid for the transactions and in dealing with the IRS afterward. Sidley's letters were an essential link in the chain.   It was specifically agreed that no fee would be payable to Andersen (or Sidley) if the letters were not issued.   Thus, but for Sidley's letters, Plaintiff would not have paid a significant portion of the fees he is seeking as damages herein.   Further, absent said letters, Plaintiff would not have filed tax returns as he did, and would not have incurred the significant legal and other fees that he had to pay to deal with the IRS audit.   Finally, Sidley's misconduct, as alleged in the Complaint, well preceded the letters and in fact such misconduct is alleged to have been the very origin and precipitating cause of the entire scheme.   As a result of the scheme, Plaintiff lost the benefit of his bargain and suffered the lost opportunity costs of legitimate tax planning strategies that were foregone as a result of Sidley's misconduct.

Sidley's bold assertion that Plaintiff "came out ahead" by $1.2 million is wrong and simply reflects a misreading of the Complaint. The IRS did not come down from $17 million in taxes to $13.7 million in taxes. $17 million was merely a pre-transaction estimate of the potential tax savings. As it turned out, the actual proposed tax savings for the transaction was $13.7 million, and the IRS disallowed every dime of it. By going through the voluntary IRS program, Plaintiff did "save" the penalties that would have been piled on top of the $13.7 million tax assessment. However, to avoid these extra millions of dollars in penalties, Plaintiff had to spend hundreds of thousands of dollars on attorneys' fees and other expenditures, which were in addition to the $2.1 million Plaintiff paid in fees for the implementation of the illegal abusive tax shelters that Sidley and Andersen created. Thus, Plaintiff was required to pay all taxes that could possibly have been due on the underlying transactions, millions of dollars in interest, plus $2.1 million in fees for the Sidley scheme, plus hundreds of thousands of dollars in fees to get out of the hot water that the Sidley scheme got him in. Plaintiff did not come out ahead. He came out behind; way behind, by many millions of dollars. Sidley's recitation of the procedural background of this case, while irrelevant to the issues appropriate to a motion to dismiss, is similarly misleading[1].

---

[1] Sidley's comment on page 4 of its memo that "On or about June 22, 2004, Plaintiff filed suit against Brown & Wood in Florida state court. Brown & Wood removed to this Court and filed a motion to dismiss arguing that Plaintiff's claims were not ripe because Plaintiff had not resolved his IRS audit. After reviewing the motion, Plaintiff contacted Brown & Wood and agreed to dismiss his lawsuit without prejudice pending resolution of the IRS examination . " is more than misleading. It recounts circumstances outside the pleadings, and is therefore improper  Further, it fails to mention that Plaintiff responded to Sidley's motion to dismiss with a motion to remand, making the unchallengeable argument that if Sidley were correct and the case were not "ripe," then this Court did not have subject matter jurisdiction  And if that were the case, the action had to be remanded to state court, not dismissed, because a Federal court lacks the authority to dismiss a removed claim over which it never had jurisdiction in the first instance; the Court's only authority under such circumstances is to remand the case back to state court. Faced with this dilemma, Defendant agreed that if Plaintiff would agree to defer prosecution of the claims until after

## II.    STANDARD OF REVIEW

In ruling on a motion to dismiss, a trial court must view the complaint in the light most favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232 (1974), taking all allegations of the complaint as true and construing them liberally in favor of the plaintiff. Jenkins v. McKeithen, 395 U.S. 411 (1969). As stated by the Eleventh Circuit, "[o]n a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true." Stephens v. Dep't of Health & Human Servs., 901 F. 2d 1571, 1573 (11th Cir. 1990). Moreover, a federal court may not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the plaintiff cannot prove any set of facts that would support a claim for relief. See Conley v. Gibson, 355 U.S. 41 (1957). As memorably stated by former Chief Judge John Brown in Cook & Nichol, Inc. v. The Plimsoll Club, 451 F2d 505, 506-507 (5th Cir. 1971):

> This heated controversy over air cooling the members of New Orleans' Plimsoll Club proves again that a complaint above the Plimsoll line may not be dismissed for failure to state a claim. It reminds us of the need for periodic exercise, for over and over and over again-but apparently not often enough-this Court has stated, explained, reiterated, stressed, rephrased, and emphasized one simple, long-established, well-publicized rule of Federal practice: a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would not be entitled to recover under any state of facts which could be proved in support of his claim. [citations omitted]-just to name five of the more than sixty cases which this Court alone has reversed since 1938 after a Trial Court had dismissed the complaint for failure to state a claim upon which relief could be granted. Still, with regularity, case after case comes before this Court where a complaint has been dismissed on "barebones pleadings" alone, and the casualty count continues to soar.

---

completion of the IRS examination, Defendant would (1) waive any statute of limitations or other time-based defense as long as the action was refiled within 18 months, (2 ) waive any and all claims to costs or fees associated with the 2004 action, and (3) allow Plaintiff to voluntarily dismiss a second time, if for some reason he so chose, without the second dismissal operating as an adjudication on the merits as would otherwise be the case under Fed. R. Civ. P. 41. Plaintiff would be happy to file a copy of the Interim Agreement if the Court so desires.

Where, as here, the basis for federal jurisdiction is diversity of citizenship, the forum state's law governs the substantive claims, but federal law governs the specificity with which one must allege them. <u>Caster v. Hennessey</u>, 781 F. 2d 1569, 1570 (11th Cir. 1986). State court pleading requirements are not relevant. <u>Id</u>. In Federal Court, a complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957).

### III.   RELIANCE IS PROPERLY AND ADEQUATELY ALLEGED

Sidley contends that Plaintiff's negligent misrepresentation and fraud claims (Counts V and VI) should be dismissed based on Plaintiff's purported failure to allege reliance on Sidley's misrepresentations and omissions. However, in both the negligent misrepresentation count (¶ 61) and the fraud count (¶ 69), Plaintiff alleges: "Gainor justifiably relied on Sidley's misrepresentations and omissions of material fact by entering into the subject transactions and paying substantial fees and transaction costs." Thus, Plaintiff has clearly alleged reliance.

Sidley attempts to justify its contention by making the bold assertion that Plaintiff's "only" communication with Sidley was the two opinion letters, which were not delivered until after the transactions were finalized. Therefore, according to Sidley, "it defies common sense" to suggest that Plaintiff relied on Sidley. *Motion to Dismiss*, p. 6.

What defies common sense is Sidley's unsubstantiated assertion that Plaintiff's only communication with Sidley was the two opinion letters. Does it comport with logic that the *first* communication between a law firm and a client (who paid it $400,000) would be, not one, but two fifty-page letters opining as to the tax consequences of a series

6

of highly complex transactions? How did Sidley know Plaintiff needed the letters? How did Sidley know where to deliver them? And, how did Sidley know the complex facts of Plaintiff's transactions on which it based its purported opinions? It knew because, as alleged in numerous places in the Complaint, prior to finalization of the subject transactions, Sidley was communicating with Plaintiff though Sidley's agent, Andersen, to promote these abusive tax shelters to Plaintiff.

This argument also ignores Plaintiff's allegations that Andersen's (and of course Sidley's) entitlement to professional fees was expressly conditioned upon delivery of more-likely-than-not, favorable tax opinion letters by Sidley. Compl. ¶ 20. How can it possibly be said that Plaintiff did not rely on Sidley when an express condition of Plaintiff's performance was performance by Sidley?

Finally, and in any event, a significant element of the alleged damages is payment of $2,100,000 in fees, which was expressly conditioned on Sidley's delivery of the opinion letters and which was not paid until after delivery of the letters. Thus, Plaintiff's reliance on Sidley's letters in sustaining this damage is clear − indeed unchallengeable. Additional alleged damage stems from Plaintiff's post-transaction reliance on Sidley's misrepresentations and omissions, including, but not limited to, filing tax returns and claiming losses based on Sidley's advice and directives. As a direct consequence, Plaintiff has been forced to expend considerable sums on professional fees and other expenditures in connection with the IRS Voluntary Disclosure Plan and related IRS dealings.

Sidley's assertion is also conceptually flawed. Sidley posits that because its opinion letters were not delivered until after the transactions were completed, Plaintiff

7

could not have relied on them in entering into the transactions. This is simply not the case. It was the *promise* of the letters that Plaintiff relied on in deciding to enter into the transactions, and the *delivery* of the letters that Plaintiff relied on in deciding to pay the fees that are sought as damages herein. Followed to its illogical extension, Sidley's argument would mean that such opinion letters could never be a basis for reliance, because, of course, you cannot issue an opinion on a transaction until after the facts of the transaction have occurred. In any event, Plaintiff is not only complaining about "entering into" the transactions. Plaintiff is also complaining about the <u>fees</u> he paid for the transactions. These fees were paid after delivery of the opinion letters, their payment was expressly conditioned upon delivery of the opinion letters, and they would not have been paid if the opinion letters had not been furnished. Clearly, Plaintiff relied on the opinion letters in incurring the damages alleged herein.

For the foregoing reasons, the Court should not dismiss Plaintiff's fraud and misrepresentation claims for want of detrimental reliance allegations.

## IV.    THE ALLEGATIONS OF AGENCY ARE PROPER AND SUFFICIENT

Several allegations in the Complaint allege that Arthur Andersen, LLP ("Andersen") made certain statements and took various actions on behalf of Sidley, with Sidley's express or implicit authority to do so (hereinafter the "Agency Allegations"). Compl. ¶¶ 12, 20, 40, 41, 56, 57, 64, 65, 84, 85, and 86. In its Motion to Dismiss, Sidley seeks to defeat certain elements of various causes of action, including causation and reliance, by challenging the sufficiency of Plaintiff's Agency Allegations.

Relying primarily upon a Florida Supreme Court case, <u>Goldschmidt v. Holman</u>, Sidley disavows the legal effect of any alleged actions taken, or statements made by,

8

Andersen on its behalf because, "Plaintiff pleads no 'ultimate facts that establish actual or apparent agency.'" *Motion to Dismiss*, pp. 6-7 (quoting <u>Goldsmith v. Holman</u>, 571 So. 2d 422, 423 (Fla. 1990).

While Plaintiff does not concede that the Agency Allegations in the Complaint are insufficient for heightened state court pleading requirements, the issue need not be addressed. Sidley's reliance on the <u>Goldschmidt</u> line of authority is misplaced. <u>Goldschmidt</u> is specifically interpreting the heightened pleading requirements of "Florida Rule of Civil Procedure 1.110(b)(2)." 571 So. 2d at 423. However, in this Federal Court, state court pleading requirements are inapplicable. <u>Caster v. Hennessey</u>, 781 F. 2d 1569, 1570 (11th Cir. 1986). In Federal Court, the Federal Rules of Civil Procedure govern the specificity with which one must plead. <u>Id.</u> The pleading standards of Federal Rule of Civil Procedure 8(a) merely require "fair notice [to the defendant] of what the plaintiff's claim is and the grounds upon which it rests." <u>Conley v. Gibson</u>, 355 U.S. at 47. Further, "where the agency is averred it may be done generally, without describing the authority of the agent." <u>Pacific Mutual Life Ins. Co. v. Barton</u>, 50 F.2d 362, 363 (5th Cir. 1931); <u>Commercial Financial Services Inc. v. Great American Ins. Co.</u>, 381 F.Supp 2d 291, 302 (SDNY 2005) (a conclusory allegation of actual or apparent agency is sufficient under the federal pleading rules).

The Complaint in this case is replete with allegations that satisfy this standard. For example, Plaintiff specifically alleges: "Andersen, with Sidley's actual or implicit authority, offered to Gainor a [tax shelter] strategy." Compl. ¶ 12. "Sidley authorized and encouraged Andersen to promise the prospective [tax shelter] customers that Andersen would arrange for the customers to get legal representation from Sidley", who

9

would in turn provide to them favorable, more-likely-than-not opinion letters . Compl. ¶20. "At all times material, Andersen had actual or apparent authority to act on behalf of Sidley in connection with implementation of the Sidley Plan." Compl. ¶ 40. "Sidley authorized and encouraged Andersen to utilize Sidley's name and reputation as well as the promise of favorable, 'more likely than not' letters." Compl. ¶¶ 56, 64. These allegations of agency are more than adequate under federal pleading rules.

Federal law, not state law, governs the specificity with which Plaintiff must allege an agency relationship. Under federal law, generally averring an agency relationship is sufficient. Plaintiff has done this and more.

Relying again on state court cases, Sidley complains, at page 7, that Plaintiff doesn't specifically allege that Sidley controlled Andersen. Again, Sidley's reliance is misplaced. Under the "notice pleading" principles applicable in Federal court, pleading evidentiary details is not required. Pacific Mutual Life Ins. Co. v. Barton, 50 F.2d 362, 363 (5th Cir. 1931); Sequel Capital, L.L.C. v. Rothman, 2003 WL 22757758, pp. 10-11 (rejecting contention that complaint should be dismissed because principal's right to control agent was not specifically alleged).

Sidley's argument (at pp. 7-8) that apparent authority is not adequately alleged is similarly misplaced. The Complaint is replete with acts by Sidley creating the appearance that Andersen was authorized to act and speak on Sidley's behalf. Andersen said Sidley would deliver opinion letters; Sidley did. Andersen said Sidley's fee would be $400,000, and that is exactly what Sidley took – and kept. Finally, Sidley could not have issued two 50-page opinion letters opining on the tax consequences of complex financial

10

transactions without knowledge of the underlying facts, which vividly demonstrates that Andersen was a conduit of information to Sidley and acting on Sidley's behalf.

## V.    CAUSATION IS PROPERLY AND ADEQUATELY ALLEGED

Sidley seeks to dismiss the professional malpractice, breach of fiduciary duty, breach of contract, tortious interference and RICO Counts based on Plaintiff's purported failure to allege causation. However, in all these Counts, Plaintiff alleges that

> As a result of Sidley's [misconduct], Gainor entered into the subject transactions and has suffered damages including, but not limited to, over two million dollars ($2,000,000) in professional fees and transaction costs incurred in connection with the Sidley Plan, additional fees and costs incurred in connection with participation in the IRS Voluntary Disclosure Plan and related IRS dealings, exposure to millions of dollars in additional taxes, and lost opportunities for proper tax planning.

See ¶¶ 38, 44, 50, 74, 79 and 97. Thus, Plaintiff has clearly alleged causation.

Sidley attempts to justify its contention by making the bold assertion that Plaintiff, "specifically alleges that he decided to enter the tax shelter and pay the fees … before he had any contact with" Sidley. Thus, according to Sidley, it could not have caused the damage Plaintiff claims.

This position is erroneous on several levels. First, the Complaint does not say what Sidley claims it says. The Complaint is replete with allegations that Sidley, through its agent Andersen, had contact with Plaintiff prior to issuance of the opinion letters. See, e.g., ¶¶ 12, 20, 40, 41, 56, 57, 64, 65, 84, 85, and 86. The Complaint alleges over and over again that, prior to the delivery of any opinion letter, Sidley was interacting with Plaintiff through its authorized agent, Andersen.

Secondly, Sidley's reading of the Complaint fails to afford Plaintiff the liberal construction and benefit of all reasonable inferences to which he is entitled. See Jenkins

11

v. McKeithen, 395 U.S. 411 (1969); Stephens v. Dep't of Health & Human Servs., 901 F.

2d 1571, 1573 (11th Cir. 1990). It does not comport with logic that the *first*

communication between a law firm and a client (who paid it $400,000) would be two

fifty-page letters opining as to the tax consequences of a series of highly complex

transactions. How did Sidley know Plaintiff needed the letters? How did Sidley know

where to send them? And how did Sidley know the facts of Plaintiff's transactions on

which it based its purported opinions? The unmistakable inference from these

circumstances is that there were communications between Plaintiff and Sidley prior to

issuance of the opinion letters.

Thirdly, even assuming that Sidley's only involvement was the delivery of the

opinion letters, the Complaint still alleges compensable damages proximately caused by

such conduct. Andersen expressly conditioned its (and Sidley's) entitlement to

professional fees upon delivery of more-likely-than-not, favorable tax opinion letters

from Sidley. Compl. ¶ 20. But for Sidley's delivery of the opinion letters, Plaintiff

would not have incurred the very substantial fees which are a part of his damage claims.

Additional amounts of Plaintiff's alleged damages occurred after delivery of the

opinion letters and stem directly from Plaintiff's post-transaction reliance on Sidley's

misrepresentations and omissions in the opinion letters, including, but not limited to,

filing tax returns and claiming losses based on Sidley's advice and directives. As a direct

consequence, Plaintiff has been forced to expend considerable sums on professional fees

and other expenditures in connection with the IRS Voluntary Disclosure Plan and related

IRS dealings.

Finally, Sidley's assertion is again conceptually flawed. Sidley posits that because its opinion letters were not delivered until after the transactions were completed, they could not have caused Plaintiff to enter into the transactions. This is simply not the case. It was the *promise* of the letters that induced the transaction, and the *delivery* of the letters that caused the damages sought herein. Followed to its illogical extension, Sidley's argument would mean that such opinion letters could never be a cause of damage, because, of course, you cannot issue an opinion on a transaction until after the facts of the transaction have occurred. In any event, Plaintiff is not only complaining about "entering into" the transactions. Plaintiff is also complaining about the <u>fees</u> he paid for the transactions. These fees were paid after delivery of the opinion letters, their payment was expressly conditioned upon delivery of the opinion letters, and they would not have been paid if the opinion letters had not been furnished. Clearly, the opinion letters themselves caused significant amounts of the damage alleged herein; and the scheme itself, of which Sidley was the author, including the promised delivery of opinion letters, caused the remaining damages sought herein.

## VI.    BREACH OF ORAL CONTRACT IS PROPERLY PLED

Sidley contends that Plaintiff's breach of oral contract Count (Count II) does not state a claim because it charges breach of "an implied covenant ... to exercise ordinary skill and knowledge in the rendition of legal professional services", which, according to Sidley, cannot be done without alleging breach of an express term. Sidley's argument misapplies inappropriate concepts. This is a contract between a lawyer and a client. It is well-settled Florida law that in every such contract, the lawyer implicitly represents that he has - and will exercise – the expert skill and judgment necessary for the representation

13

undertaken. Stake. V. Harlan, 529 So. 2d 1183 (Fla. 2d DCA 1988). Precisely this is alleged in ¶ 42 of the Complaint. Further, this implicit representation becomes an express obligation of the attorney under the contract, and if the lawyer does not possess the necessary expertise, or if he fails to perform at the level such expertise mandates, he is legally liable. Weekley v. Knight, 156 So. 625, 626 (Fla. 1934) ("there can be no question that one has a cause of action ex contractu against an attorney who neglects to perform the services which he agrees to perform for a client or which by implication he agrees to perform when he accepts employment by a client").

Plaintiff has alleged that Sidley did not exercise appropriate skill and knowledge. Sidley knew that such schemes had been declared abusive tax shelters by the IRS, but nonetheless gave a favorable tax opinion. This is a breach of Sidley's duty under the contract. Solodky v. Wilson, 474 So. 2d 1231 (Fla 5th DCA 1985) (attorney who gives improper or erroneous advice breaches his duty); Atkin v. Tuttle & Tuttle, 730 So. 2d 376 (Fla. 3d DCA 1999) (attorney who failed to determine that zoning prohibited intended use of property liable for breach of implied duty to use reasonable care and skill); Home Furniture Depot, Inc. v. Entevor A.B., 753 So2d 653 (Fla. 4th DCA 2000) (attorney liable for failure to advise client of need to comply with statutory requirements in sale of assets because "A lawyer owes to the client a duty to exercise the degree of reasonable knowledge and skill which lawyers of ordinary ability and skill possess and exercise").

Plaintiff has also alleged that Sidley failed to inform him of facts material to the decision to go forward with the transaction, such as the impact of the 1999 IRS ruling and Sidley's actual involvement with the strategy. This is a separate ground of breach of duty. F.D.I.C. v. Martin, 801 F. Supp 617 (M.D. Fla. 1992) (attorney has implicit duty to

14

inform client of all matters material to the representation); <u>Resolution Trust Corporation v. Holland & Knight</u>, 832 F. Supp 1528 (S.D. Fla. 1993) (same); <u>Home Furniture Depot, Inc. v. Entevor A.B.,</u> 753 So. 2d 653 (Fla. 4th DCA 2000).

Thus, the Complaint clearly alleges numerous actionable breaches of Sidley's duty to Plaintiff under their oral and implied contract. The motion to dismiss this count should thus be denied.

## VII.   <u>TORTIOUS INTERFERENCE IS ADEQUATELY PLED</u>

Sidley also asserts that the Complaint fails to state a claim for tortious interference. However, Sidley's motion belies its position. In its motion (at pp. 10-11), Sidley says:

> Plaintiff alleges that he had a business relationship with Arthur Andersen and that [Sidley] interfered with that relationship by 'inducing Andersen to promote the Sidley Plan to Andersen's clients, including Gainor.

Under the "notice pleading" standard applicable in Federal Court, a complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." <u>Conley v. Gibson,</u> 355 U.S. 41, 47 (1957). The above quote from Sidley's memo demonstrates that Plaintiff's Complaint has done this.

Plaintiff is contending that he had an ongoing business relationship with Andersen as his accountant and financial advisor, relying on Andersen for sound tax and other financial advice. However, Sidley "corrupted" Andersen by persuading Andersen to foist this abusive tax shelter upon Plaintiff rather than give Plaintiff sound tax advice, apparently hoping that the IRS wouldn't notice. But the IRS did notice. And as a result of Andersen's breach of its obligation to give Plaintiff sound tax advice, a breach induced by Sidley, Plaintiff suffered millions of dollars in damages in the form of lost tax

planning opportunities, improperly charged fees, and the appropriate fees necessary to try to correct the damage induced by Sidley.

All the elements of tortious interference are set forth in the Complaint. The business relationship (¶ 76); knowledge by Sidley (¶ 77); intentional and unjustified interference (¶ 78 ); and resultant damage (¶ 79). Sidley's preparation and delivery of the two tax opinion letters demonstrates that Sidley knew of the relationship between Andersen and Gainor and that Andersen was working with Sidley to get Plaintiff into the abusive tax shelter.

## VIII.  THE FLORIDA RICO CLAIM IS PROPERLY PLED

Defendant seeks dismissal of Plaintiff's Florida RICO Count on the sole basis the Plaintiff never identifies the "enterprise." Presumably, as Plaintiff does specify the existence of the enterprise at issue, Defendant is asserting that the allegation does not contain sufficient detail. In support of its argument, Defendant cites three cases, Jackson v. BellSouth Telecomm., 372 F.3d 1250 (11th Cir. 2004); McCulloch v. PNC Bank Inc., 298 F.3d 1217 (11th Cir. 2002); and Durham v. Business Mgmt Assoc., 847 F.2d 1505 (11th Cir. 1988). None of these cases contains any requirement that Plaintiff do more, at the pleading stage, than simply allege the existence of the enterprise. Indeed, the Jackson case specifically holds that a RICO enterprise exists where a group of persons, formally or informally, have the purpose of conducting illegal activity. The Durham case, also cited by Defendant, specifically cautions that the requirement to plead fraud with particularity must not abrogate the concept of notice pleading.

In any event, none of the citations relied upon by Defendant support its claim that the existence of an enterprise must be pled with any more particularity then that alleged

16

by the Plaintiff. The enterprise itself is well described in the Complaint. In paragraph 19, Plaintiff pleads the agreement between Sidley and Plaintiff's accounting firm (Andersen) to work together to develop, organize and promote abusive tax shelters, with Andersen taking the role of identifying and targeting prospective customers. In paragraph 20, Plaintiff pleads Sidley's encouragement to Andersen in promising Andersen's clients that appropriate opinion letters to support the abusive tax shelters would be forthcoming. The description of the enterprise is more fully elicited in specific paragraphs of Count IX (violations of the Florida Civil Remedies for Criminal Practices Act). Paragraph 81 sets forth the time period during which Sidley engaged in its scheme to promote unregistered and abusive tax shelters. Paragraph 84 notes Sidley's recruitment of other parties, including Arthur Andersen and KPMG in order to identify and target prospective customers. Sidley's arrangements with accounting firm in the furtherance of this illegal enterprise are identified in paragraphs 85, 86 and 87. These allegations go well beyond the requirements of notice pleading and Defendant cannot legitimately complain that it is unaware of the nature of the allegations against it. This is sufficient and none of the authorities cited by Defendant contradict this.

IX.     **FRAUD HAS BEEN PLED WITH THE REQUISITE PARTICULARITY**

Finally, Sidley contends that Plaintiff has not pled fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. Again Sidley is incorrect.

Plaintiff has alleged the precise misrepresentations made in ¶ 28, which is incorporated into ¶ 65 of the fraud count. Plaintiff has identified the time and place – alleging that the misrepresentations were made in or omitted from the opinion letters (see ¶¶ 28 and 65), and person responsible: the signatory of the letters. Plaintiff has set forth

17

the manner in which the misrepresentations misled him; he has alleged that they caused him to enter into the abusive tax shelters and incur the fees and other damages sought to be recovered herein. (see ¶¶ 69, 21, 24, 31 and 32). And Plaintiff has alleged what Sidley gained as a result of the fraud – its $400,000 fee. (see ¶¶ 14 and 70). Thus, all the requirements of Rule 9(b) are met.

Sidley erroneously asserts (at page 15) that for the "fraud-based" claims, "the nature of the agency relationship alleged must be pled with particularity." As set forth earlier, under federal notice pleading, agency may be alleged generally. Pacific Mutual Life Ins. Co. v. Barton, 50 F.2d 362, 363 (5th Cir. 1931); Commercial Financial Services Inc. v. Great American Ins. Co., 381 F. Supp 2d 291, 302 (SDNY 2005). In general, this is true even where the agency relationship is intertwined with a fraud claim. Guaranty Residential Lending, Inc. v. International Mortgage Center, Inc., 305 F. Supp 2d 846, 853 (N.D. Ill. 2004) ("an agency relationship establishing vicarious liability for fraud generally does not have to be pleaded with particularity"). The one exception is where the same acts that constitute the fraud are also the alleged basis for the agency relationship. As stated by the court in Sequel Capital, L.L.C. v. Rothman, 2003 WL 22757758, p. 10:

> The requirements of pleading agency in fraud cases is dependent on whether the "same circumstances" are used to establish the alleged fraud and the agency relationship. See Lachmund v. ADM Investor Servs. Inc., 191 F.3d 777, 783 (7th Cir.1999). If the same circumstances are used to plead both fraud and agency, then the particularized pleading requirements of Rule 9(b) "apply with equal force to the issue of agency and to the underlying fraud claim." Id.

> In Lachmund, the plaintiff attempted to show an agency relationship between a corporation registered with the Commodities Futures Trading Commission ("CFTC") as a Futures Commission Merchant and a

18

partnership registered by the CFTC as an introducing broker. *Id.* at 780. After concluding that status as an introducing broker itself was insufficient for an agency relationship, the court noted that the plaintiff relied on his allegations of conspiracy in his complaint to allege an agency relationship. *Id.* The court, therefore, applied the heightened Rule 9(b) requirements because plaintiff's claim "depend[ed] ... on the substantive allegations of fraud to establish the agency relationship." *Id.* (emphasis added)

Applying the *Lachmund* standard here, the court sees nothing in the Complaint to suggest that the same circumstances are used to establish both the agency relationship and the fraud. The Complaint alleges that Rothman and Chakos acted "at the request of, and with the full knowledge, authority and acquiescence of Colon and Manta in soliciting Sequel's participation in the equity rights offering." (Compl.¶ 21.) This allegation is separate from the circumstances where Sequel alleges fraud, and the agency relationship itself is not dependent on the allegations of fraud. Moreover, this situation is not comparable to that in *Lachmund* where the agency allegations relied on the allegations of conspiracy. *Lachmund*, 191 F.3d at 783. Accordingly, the heightened pleading standard is not required for the agency claims here. To properly plead agency Sequel was only required to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a).

Here Plaintiff is not relying on the substantive allegations of fraud to establish the agency relationship. To the contrary, the substantive allegations of fraud are statements (or omissions) from Sidley directly to Plaintiff in Sidley's letters to Plaintiff; Andersen is not a party to them. The allegations of agency are entirely separate and distinct, and virtually identical to the ones set forth in Guaranty Residential Lending that were held to be sufficient. Thus, Plaintiff has properly alleged its "fraud-based" claims.

## X.    CONCLUSION

For the foregoing reasons, the Court should deny Sidley's Motion to Dismiss in its entirety.

19

RICHARD BENJAMIN WILKES
Florida Bar No. 267163
**RICHARD BENJAMIN WILKES, P.A.**
600 South Magnolia Avenue
Suite 200
Tampa, Florida 33606
Telephone:    (813) 254-6060
Facsimile:    (813) 254-6088
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by first class U.S. Mail this 30th day of August , 2006, to:

Katherine W. Ezell, Esq.
Podhurst Orseck, P.A.
25 West Flagler Street, Suite 800
Miami, FL 33130

Jonathan E. Altman, Esq.
Aaron M. May, Esq.
Munger, Tolles & Olson, LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071

Attorney

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

MARK J. GAINOR,

        Plaintiff,                       CASE NO.:  06-21748-Civ-Martinez

v.

SIDLEY, AUSTIN, BROWN &
WOOD, LLP,

        Defendant.

_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Plaintiff, Mark J. Gainor, by and through his undersigned counsel respectfully submits this Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6),  and Incorporated Memorandum of Law (the "Motion to Dismiss").

**I.**      **INTRODUCTION**

Defendant's introductory statement in its Memorandum of Law, which ranges well beyond the allegations in the Complaint, is misleading in numerous respects.  Before dealing with the legal points raised by Defendant, Plaintiff here addresses the overall misconceptions portrayed by the Defendant in its introductory statement.

The Complaint alleges that in the late 1990's, Sidley, a self-proclaimed expert in the field of tax planning, designed an "investment strategy" which was supposed to reduce the amount of tax payable upon the sale of a business interest that had appreciated substantially in value.  Sidley's "strategy" is now more commonly referred to as an

**EXHIBIT B**

abusive tax shelter, as it has been determined to generate artificial losses lacking economic substance which are not deductible under the Internal Revenue Code.

As part of a nationwide scheme, Sidley encouraged financial advisers such as Arthur Andersen ("Andersen") to promote the "strategy" to the financial advisers' customers. Sidley and Andersen agreed to work together to induce clients such as Plaintiff to employ the strategy. Sidley authorized Andersen to advise clients that if they would employ the strategy, Sidley would provide a "more likely than not" letter opining that the transaction would satisfy Internal Revenue Service ("IRS") requirements and the losses would be deductible.

In December of 1999, Sidley learned that the IRS had issued a Notice unambiguously declaring strategies such as Sidley's to be illegal tax evasions. Nonetheless, even though Sidley knew that the purported losses would not be deductible, Sidley, through Andersen, placed Plaintiff into the illegal scheme; Andersen handled the primary client contacts for the transaction, and Sidley provided the critical tax opinion letters in which Sidley opined that it was "more likely than not" that the transactions would be upheld if challenged by the IRS. Sidley issued these letters even though Sidley knew full well before it issued the letters that the IRS had already declared the arrangement to be an abusive tax shelter whose purported losses would not be allowed as deductions under the Internal Revenue Code.

About three years later, the IRS issued an Announcement in which it encouraged taxpayers to voluntarily advise the IRS of their participation in such tax schemes in exchange for the IRS's waiver of certain penalties that would otherwise be assessed for failing to pay proper taxes on time. This program did not purport to reduce the tax bill;

rather, it merely offered to waive some of the penalties that otherwise would have been assessed on top of the tax bill. Sidley informed Plaintiff of the program and recommended that he consult with competent counsel about the advisability of participating. Plaintiff did consult counsel, participated in the program, and wound up with an additional tax bill of $13.7 million, millions of dollars in interest, plus hundreds of thousands of dollars in fees for the program, in addition to the millions spent implementing the Sidley scheme. He therefore filed this suit.

Defendant's protestations to the contrary notwithstanding, the Complaint is replete with allegations of joint conduct by Sidley and Andersen, and of an agency relationship between Sidley and Andersen. Moreover, the Complaint clearly alleges a causal relationship between Sidley's conduct and Plaintiff's losses. Plaintiff has claimed as damages the fees he paid for the transactions and in dealing with the IRS afterward. Sidley's letters were an essential link in the chain. It was specifically agreed that no fee would be payable to Andersen (or Sidley) if the letters were not issued. Thus, but for Sidley's letters, Plaintiff would not have paid a significant portion of the fees he is seeking as damages herein. Further, absent said letters, Plaintiff would not have filed tax returns as he did, and would not have incurred the significant legal and other fees that he had to pay to deal with the IRS audit. Finally, Sidley's misconduct, as alleged in the Complaint, well preceded the letters and in fact such misconduct is alleged to have been the very origin and precipitating cause of the entire scheme. As a result of the scheme, Plaintiff lost the benefit of his bargain and suffered the lost opportunity costs of legitimate tax planning strategies that were foregone as a result of Sidley's misconduct.

3

Sidley's bold assertion that Plaintiff "came out ahead" by $1.2 million is wrong and simply reflects a misreading of the Complaint. The IRS did not come down from $17 million in taxes to $13.7 million in taxes. $17 million was merely a pre-transaction estimate of the potential tax savings. As it turned out, the actual proposed tax savings for the transaction was $13.7 million, and the IRS disallowed every dime of it. By going through the voluntary IRS program, Plaintiff did "save" the penalties that would have been piled on top of the $13.7 million tax assessment. However, to avoid these extra millions of dollars in penalties, Plaintiff had to spend hundreds of thousands of dollars on attorneys' fees and other expenditures, which were in addition to the $2.1 million Plaintiff paid in fees for the implementation of the illegal abusive tax shelters that Sidley and Andersen created. Thus, Plaintiff was required to pay all taxes that could possibly have been due on the underlying transactions, millions of dollars in interest, plus $2.1 million in fees for the Sidley scheme, plus hundreds of thousands of dollars in fees to get out of the hot water that the Sidley scheme got him in. Plaintiff did not come out ahead. He came out behind; way behind, by many millions of dollars. Sidley's recitation of the procedural background of this case, while irrelevant to the issues appropriate to a motion to dismiss, is similarly misleading[1].

---

[1] Sidley's comment on page 4 of its memo that "On or about June 22, 2004, Plaintiff filed suit against Brown & Wood in Florida state court. Brown & Wood removed to this Court and filed a motion to dismiss arguing that Plaintiff's claims were not ripe because Plaintiff had not resolved his IRS audit. After reviewing the motion, Plaintiff contacted Brown & Wood and agreed to dismiss his lawsuit without prejudice pending resolution of the IRS examination …" is more than misleading. It recounts circumstances outside the pleadings, and is therefore improper. Further, it fails to mention that Plaintiff responded to Sidley's motion to dismiss with a motion to remand, making the unchallengeable argument that if Sidley were correct and the case were not "ripe," then this Court did not have subject matter jurisdiction. And if that were the case, the action had to be remanded to state court, not dismissed, because a Federal court lacks the authority to dismiss a removed claim over which it never had jurisdiction in the first instance; the Court's only authority under such circumstances is to remand the case back to state court. Faced with this dilemma, Defendant agreed that if Plaintiff would agree to defer prosecution of the claims until after

4

II.    **STANDARD OF REVIEW**

In ruling on a motion to dismiss, a trial court must view the complaint in the light most favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232 (1974), taking all allegations of the complaint as true and construing them liberally in favor of the plaintiff. Jenkins v. McKeithen, 395 U.S. 411 (1969). As stated by the Eleventh Circuit, "[o]n a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true." Stephens v. Dep't of Health & Human Servs., 901 F. 2d 1571, 1573 (11th Cir. 1990). Moreover, a federal court may not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the plaintiff cannot prove any set of facts that would support a claim for relief. See Conley v. Gibson, 355 U.S. 41 (1957). As memorably stated by former Chief Judge John Brown in Cook & Nichol, Inc. v. The Plimsoll Club, 451 F2d 505, 506-507 (5th Cir. 1971):

> This heated controversy over air cooling the members of New Orleans' Plimsoll Club proves again that a complaint above the Plimsoll line may not be dismissed for failure to state a claim. It reminds us of the need for periodic exercise, for over and over and over again-but apparently not often enough-this Court has stated, explained, reiterated, stressed, rephrased, and emphasized one simple, long-established, well-publicized rule of Federal practice: a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would not be entitled to recover under any state of facts which could be proved in support of his claim. [citations omitted]-just to name five of the more than sixty cases which this Court alone has reversed since 1938 after a Trial Court had dismissed the complaint for failure to state a claim upon which relief could be granted. Still, with regularity, case after case comes before this Court where a complaint has been dismissed on "barebones pleadings" alone, and the casualty count continues to soar.

---

completion of the IRS examination, Defendant would (1) waive any statute of limitations or other time-based defense as long as the action was refiled within 18 months, (2 ) waive any and all claims to costs or fees associated with the 2004 action, and (3) allow Plaintiff to voluntarily dismiss a second time, if for some reason he so chose, without the second dismissal operating as an adjudication on the merits as would otherwise be the case under Fed. R. Civ. P. 41. Plaintiff would be happy to file a copy of the Interim Agreement if the Court so desires.

Where, as here, the basis for federal jurisdiction is diversity of citizenship, the forum state's law governs the substantive claims, but federal law governs the specificity with which one must allege them. Caster v. Hennessey, 781 F. 2d 1569, 1570 (11th Cir. 1986). State court pleading requirements are not relevant. Id. In Federal Court, a complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957).

## III.    RELIANCE IS PROPERLY AND ADEQUATELY ALLEGED

Sidley contends that Plaintiff's negligent misrepresentation and fraud claims (Counts V and VI) should be dismissed based on Plaintiff's purported failure to allege reliance on Sidley's misrepresentations and omissions. However, in both the negligent misrepresentation count (¶ 61) and the fraud count (¶ 69), Plaintiff alleges: "Gainor justifiably relied on Sidley's misrepresentations and omissions of material fact by entering into the subject transactions and paying substantial fees and transaction costs." Thus, Plaintiff has clearly alleged reliance.

Sidley attempts to justify its contention by making the bold assertion that Plaintiff's "only" communication with Sidley was the two opinion letters, which were not delivered until after the transactions were finalized. Therefore, according to Sidley, "it defies common sense" to suggest that Plaintiff relied on Sidley. *Motion to Dismiss*, p. 6.

What defies common sense is Sidley's unsubstantiated assertion that Plaintiff's only communication with Sidley was the two opinion letters. Does it comport with logic that the *first* communication between a law firm and a client (who paid it $400,000) would be, not one, but two fifty-page letters opining as to the tax consequences of a series

6

of highly complex transactions?  How did Sidley know Plaintiff needed the letters?  How did Sidley know where to deliver them?  And, how did Sidley know the complex facts of Plaintiff's transactions on which it based its purported opinions?  It knew because, as alleged in numerous places in the Complaint, prior to finalization of the subject transactions, Sidley was communicating with Plaintiff though Sidley's agent, Andersen, to promote these abusive tax shelters to Plaintiff.

This argument also ignores Plaintiff's allegations that Andersen's (and of course Sidley's) entitlement to professional fees was expressly conditioned upon delivery of more-likely-than-not, favorable tax opinion letters by Sidley.  Compl. ¶ 20.  How can it possibly be said that Plaintiff did not rely on Sidley when an express condition of Plaintiff's performance was performance by Sidley?

Finally, and in any event, a significant element of the alleged damages is payment of $2,100,000 in fees, which was expressly conditioned on Sidley's delivery of the opinion letters and which was not paid until after delivery of the letters.  Thus, Plaintiff's reliance on Sidley's letters in sustaining this damage is clear – indeed unchallengeable.  Additional alleged damage stems from Plaintiff's post-transaction reliance on Sidley's misrepresentations and omissions, including, but not limited to, filing tax returns and claiming losses based on Sidley's advice and directives.  As a direct consequence, Plaintiff has been forced to expend considerable sums on professional fees and other expenditures in connection with the IRS Voluntary Disclosure Plan and related IRS dealings.

Sidley's assertion is also conceptually flawed.  Sidley posits that because its opinion letters were not delivered until after the transactions were completed, Plaintiff

7

could not have relied on them in entering into the transactions. This is simply not the case. It was the *promise* of the letters that Plaintiff relied on in deciding to enter into the transactions, and the *delivery* of the letters that Plaintiff relied on in deciding to pay the fees that are sought as damages herein. Followed to its illogical extension, Sidley's argument would mean that such opinion letters could never be a basis for reliance, because, of course, you cannot issue an opinion on a transaction until after the facts of the transaction have occurred. In any event, Plaintiff is not only complaining about "entering into" the transactions. Plaintiff is also complaining about the <u>fees</u> he paid for the transactions. These fees were paid after delivery of the opinion letters, their payment was expressly conditioned upon delivery of the opinion letters, and they would not have been paid if the opinion letters had not been furnished. Clearly, Plaintiff relied on the opinion letters in incurring the damages alleged herein.

For the foregoing reasons, the Court should not dismiss Plaintiff's fraud and misrepresentation claims for want of detrimental reliance allegations.

## IV.    THE ALLEGATIONS OF AGENCY ARE PROPER AND SUFFICIENT

Several allegations in the Complaint allege that Arthur Andersen, LLP ("Andersen") made certain statements and took various actions on behalf of Sidley, with Sidley's express or implicit authority to do so (hereinafter the "Agency Allegations"). Compl. ¶¶ 12, 20, 40, 41, 56, 57, 64, 65, 84, 85, and 86. In its Motion to Dismiss, Sidley seeks to defeat certain elements of various causes of action, including causation and reliance, by challenging the sufficiency of Plaintiff's Agency Allegations.

Relying primarily upon a Florida Supreme Court case, <u>Goldschmidt v. Holman</u>, Sidley disavows the legal effect of any alleged actions taken, or statements made by,

8

Andersen on its behalf because, "Plaintiff pleads no 'ultimate facts that establish actual or apparent agency.'" *Motion to Dismiss*, pp. 6-7 (quoting <u>Goldsmith v. Holman</u>, 571 So. 2d 422, 423 (Fla. 1990).

While Plaintiff does not concede that the Agency Allegations in the Complaint are insufficient for heightened state court pleading requirements, the issue need not be addressed. Sidley's reliance on the <u>Goldschmidt</u> line of authority is misplaced. <u>Goldschmidt</u> is specifically interpreting the heightened pleading requirements of "Florida Rule of Civil Procedure 1.110(b)(2)." 571 So. 2d at 423. However, in this Federal Court, state court pleading requirements are inapplicable. <u>Caster v. Hennessey</u>, 781 F. 2d 1569, 1570 (11th Cir. 1986). In Federal Court, the Federal Rules of Civil Procedure govern the specificity with which one must plead. <u>Id.</u> The pleading standards of Federal Rule of Civil Procedure 8(a) merely require "fair notice [to the defendant] of what the plaintiff's claim is and the grounds upon which it rests." <u>Conley v. Gibson</u>, 355 U.S. at 47. Further, "where the agency is averred it may be done generally, without describing the authority of the agent." <u>Pacific Mutual Life Ins. Co. v. Barton</u>, 50 F.2d 362, 363 (5th Cir. 1931); <u>Commercial Financial Services Inc. v. Great American Ins. Co.</u>, 381 F.Supp 2d 291, 302 (SDNY 2005) (a conclusory allegation of actual or apparent agency is sufficient under the federal pleading rules).

The Complaint in this case is replete with allegations that satisfy this standard. For example, Plaintiff specifically alleges: "Andersen, with Sidley's actual or implicit authority, offered to Gainor a [tax shelter] strategy." Compl. ¶ 12. "Sidley authorized and encouraged Andersen to promise the prospective [tax shelter] customers that Andersen would arrange for the customers to get legal representation from Sidley", who

9

would in turn provide to them favorable, more-likely-than-not opinion letters . Compl. ¶20. "At all times material, Andersen had actual or apparent authority to act on behalf of Sidley in connection with implementation of the Sidley Plan." Compl. ¶ 40. "Sidley authorized and encouraged Andersen to utilize Sidley's name and reputation as well as the promise of favorable, 'more likely than not' letters." Compl. ¶¶ 56, 64. These allegations of agency are more than adequate under federal pleading rules.

Federal law, not state law, governs the specificity with which Plaintiff must allege an agency relationship. Under federal law, generally averring an agency relationship is sufficient. Plaintiff has done this and more.

Relying again on state court cases, Sidley complains, at page 7, that Plaintiff doesn't specifically allege that Sidley controlled Andersen. Again, Sidley's reliance is misplaced. Under the "notice pleading" principles applicable in Federal court, pleading evidentiary details is not required. Pacific Mutual Life Ins. Co. v. Barton, 50 F.2d 362, 363 (5th Cir. 1931); Sequel Capital, L.L.C. v. Rothman, 2003 WL 22757758, pp. 10-11 (rejecting contention that complaint should be dismissed because principal's right to control agent was not specifically alleged).

Sidley's argument (at pp. 7-8) that apparent authority is not adequately alleged is similarly misplaced.  The Complaint is replete with acts by Sidley creating the appearance that Andersen was authorized to act and speak on Sidley's behalf. Andersen said Sidley would deliver opinion letters; Sidley did. Andersen said Sidley's fee would be $400,000, and that is exactly what Sidley took – and kept. Finally, Sidley could not have issued two 50-page opinion letters opining on the tax consequences of complex financial

transactions without knowledge of the underlying facts, which vividly demonstrates that Andersen was a conduit of information to Sidley and acting on Sidley's behalf.

## V.    CAUSATION IS PROPERLY AND ADEQUATELY ALLEGED

Sidley seeks to dismiss the professional malpractice, breach of fiduciary duty, breach of contract, tortious interference and RICO Counts based on Plaintiff's purported failure to allege causation. However, in all these Counts, Plaintiff alleges that

> As a result of Sidley's [misconduct], Gainor entered into the subject transactions and has suffered damages including, but not limited to, over two million dollars ($2,000,000) in professional fees and transaction costs incurred in connection with the Sidley Plan, additional fees and costs incurred in connection with participation in the IRS Voluntary Disclosure Plan and related IRS dealings, exposure to millions of dollars in additional taxes, and lost opportunities for proper tax planning.

See ¶¶ 38, 44, 50, 74, 79 and 97. Thus, Plaintiff has clearly alleged causation.

Sidley attempts to justify its contention by making the bold assertion that Plaintiff, "specifically alleges that he decided to enter the tax shelter and pay the fees … before he had any contact with" Sidley. Thus, according to Sidley, it could not have caused the damage Plaintiff claims.

This position is erroneous on several levels. First, the Complaint does not say what Sidley claims it says. The Complaint is replete with allegations that Sidley, through its agent Andersen, had contact with Plaintiff prior to issuance of the opinion letters. See, e.g., ¶¶ 12, 20, 40, 41, 56, 57, 64, 65, 84, 85, and 86. The Complaint alleges over and over again that, prior to the delivery of any opinion letter, Sidley was interacting with Plaintiff through its authorized agent, Andersen.

Secondly, Sidley's reading of the Complaint fails to afford Plaintiff the liberal construction and benefit of all reasonable inferences to which he is entitled. See Jenkins

11

v. McKeithen, 395 U.S. 411 (1969); Stephens v. Dep't of Health & Human Servs., 901 F. 2d 1571, 1573 (11th Cir. 1990).   It does not comport with logic that the *first* communication between a law firm and a client (who paid it $400,000) would be two fifty-page letters opining as to the tax consequences of a series of highly complex transactions.  How did Sidley know Plaintiff needed the letters? How did Sidley know where to send them?  And how did Sidley know the facts of Plaintiff's transactions on which it based its purported opinions?   The unmistakable inference from these circumstances is that there were communications between Plaintiff and Sidley prior to issuance of the opinion letters.

Thirdly, even assuming that Sidley's only involvement was the delivery of the opinion letters, the Complaint still alleges compensable damages proximately caused by such conduct.   Andersen expressly conditioned its (and Sidley's) entitlement to professional fees upon delivery of more-likely-than-not, favorable tax opinion letters from Sidley.  Compl. ¶ 20.  But for Sidley's delivery of the opinion letters, Plaintiff would not have incurred the very substantial fees which are a part of his damage claims.

Additional amounts of Plaintiff's alleged damages occurred after delivery of the opinion letters and stem directly from Plaintiff's post-transaction reliance on Sidley's misrepresentations and omissions in the opinion letters, including, but not limited to, filing tax returns and claiming losses based on Sidley's advice and directives.  As a direct consequence, Plaintiff has been forced to expend considerable sums on professional fees and other expenditures in connection with the IRS Voluntary Disclosure Plan and related IRS dealings.

Finally, Sidley's assertion is again conceptually flawed. Sidley posits that because its opinion letters were not delivered until after the transactions were completed, they could not have caused Plaintiff to enter into the transactions. This is simply not the case. It was the *promise* of the letters that induced the transaction, and the *delivery* of the letters that caused the damages sought herein. Followed to its illogical extension, Sidley's argument would mean that such opinion letters could never be a cause of damage, because, of course, you cannot issue an opinion on a transaction until after the facts of the transaction have occurred. In any event, Plaintiff is not only complaining about "entering into" the transactions. Plaintiff is also complaining about the <u>fees</u> he paid for the transactions. These fees were paid after delivery of the opinion letters, their payment was expressly conditioned upon delivery of the opinion letters, and they would not have been paid if the opinion letters had not been furnished. Clearly, the opinion letters themselves caused significant amounts of the damage alleged herein; and the scheme itself, of which Sidley was the author, including the promised delivery of opinion letters, caused the remaining damages sought herein.

## VI.    BREACH OF ORAL CONTRACT IS PROPERLY PLED

Sidley contends that Plaintiff's breach of oral contract Count (Count II) does not state a claim because it charges breach of "an implied covenant ... to exercise ordinary skill and knowledge in the rendition of legal professional services", which, according to Sidley, cannot be done without alleging breach of an express term. Sidley's argument misapplies inappropriate concepts. This is a contract between a lawyer and a client. It is well-settled Florida law that in every such contract, the lawyer implicitly represents that he has - and will exercise – the expert skill and judgment necessary for the representation

13

undertaken. Stake. V. Harlan, 529 So. 2d 1183 (Fla. 2d DCA 1988). Precisely this is alleged in ¶ 42 of the Complaint. Further, this implicit representation becomes an express obligation of the attorney under the contract, and if the lawyer does not possess the necessary expertise, or if he fails to perform at the level such expertise mandates, he is legally liable. Weekley v. Knight, 156 So. 625, 626 (Fla. 1934) ("there can be no question that one has a cause of action ex contractu against an attorney who neglects to perform the services which he agrees to perform for a client or which by implication he agrees to perform when he accepts employment by a client").

Plaintiff has alleged that Sidley did not exercise appropriate skill and knowledge. Sidley knew that such schemes had been declared abusive tax shelters by the IRS, but nonetheless gave a favorable tax opinion. This is a breach of Sidley's duty under the contract. Solodky v. Wilson, 474 So. 2d 1231 (Fla 5th DCA 1985) (attorney who gives improper or erroneous advice breaches his duty); Atkin v. Tuttle & Tuttle, 730 So. 2d 376 (Fla. 3d DCA 1999) (attorney who failed to determine that zoning prohibited intended use of property liable for breach of implied duty to use reasonable care and skill); Home Furniture Depot, Inc. v. Entevor A.B., 753 So2d 653 (Fla. 4th DCA 2000) (attorney liable for failure to advise client of need to comply with statutory requirements in sale of assets because "A lawyer owes to the client a duty to exercise the degree of reasonable knowledge and skill which lawyers of ordinary ability and skill possess and exercise").

Plaintiff has also alleged that Sidley failed to inform him of facts material to the decision to go forward with the transaction, such as the impact of the 1999 IRS ruling and Sidley's actual involvement with the strategy. This is a separate ground of breach of duty. F.D.I.C. v. Martin, 801 F. Supp 617 (M.D. Fla. 1992) (attorney has implicit duty to

14

inform client of all matters material to the representation); <u>Resolution Trust Corporation</u> <u>v. Holland & Knight</u>, 832 F. Supp 1528 (S.D. Fla. 1993) (same); <u>Home Furniture Depot, Inc. v. Entevor A.B.</u>, 753 So. 2d 653 (Fla. 4th DCA 2000).

Thus, the Complaint clearly alleges numerous actionable breaches of Sidley's duty to Plaintiff under their oral and implied contract. The motion to dismiss this count should thus be denied.

## VII. TORTIOUS INTERFERENCE IS ADEQUATELY PLED

Sidley also asserts that the Complaint fails to state a claim for tortious interference. However, Sidley's motion belies its position. In its motion (at pp. 10-11), Sidley says:

> Plaintiff alleges that he had a business relationship with Arthur Andersen and that [Sidley] interfered with that relationship by 'inducing Andersen to promote the Sidley Plan to Andersen's clients, including Gainor.

Under the "notice pleading" standard applicable in Federal Court, a complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." <u>Conley v. Gibson,</u> 355 U.S. 41, 47 (1957). The above quote from Sidley's memo demonstrates that Plaintiff's Complaint has done this.

Plaintiff is contending that he had an ongoing business relationship with Andersen as his accountant and financial advisor, relying on Andersen for sound tax and other financial advice. However, Sidley "corrupted" Andersen by persuading Andersen to foist this abusive tax shelter upon Plaintiff rather than give Plaintiff sound tax advice, apparently hoping that the IRS wouldn't notice. But the IRS did notice. And as a result of Andersen's breach of its obligation to give Plaintiff sound tax advice, a breach induced by Sidley, Plaintiff suffered millions of dollars in damages in the form of lost tax

15

planning opportunities, improperly charged fees, and the appropriate fees necessary to try to correct the damage induced by Sidley.

All the elements of tortious interference are set forth in the Complaint. The business relationship (¶ 76); knowledge by Sidley (¶ 77); intentional and unjustified interference (¶ 78 ); and resultant damage (¶ 79). Sidley's preparation and delivery of the two tax opinion letters demonstrates that Sidley knew of the relationship between Andersen and Gainor and that Andersen was working with Sidley to get Plaintiff into the abusive tax shelter.

## VIII.  THE FLORIDA RICO CLAIM IS PROPERLY PLED

Defendant seeks dismissal of Plaintiff's Florida RICO Count on the sole basis the Plaintiff never identifies the "enterprise."  Presumably, as Plaintiff does specify the existence of the enterprise at issue, Defendant is asserting that the allegation does not contain sufficient detail.  In support of its argument, Defendant cites three cases, Jackson v. BellSouth Telecomm., 372 F.3d 1250 (11th Cir. 2004); McCulloch v. PNC Bank Inc., 298 F.3d 1217 (11th Cir. 2002); and Durham v. Business Mgmt Assoc., 847 F.2d 1505 (11th Cir. 1988).  None of these cases contains any requirement that Plaintiff do more, at the pleading stage, than simply allege the existence of the enterprise.  Indeed, the Jackson case specifically holds that a RICO enterprise exists where a group of persons, formally or informally, have the purpose of conducting illegal activity.  The Durham case, also cited by Defendant, specifically cautions that the requirement to plead fraud with particularity must not abrogate the concept of notice pleading.

In any event, none of the citations relied upon by Defendant support its claim that the existence of an enterprise must be pled with any more particularity then that alleged

16

by the Plaintiff. The enterprise itself is well described in the Complaint. In paragraph 19, Plaintiff pleads the agreement between Sidley and Plaintiff's accounting firm (Andersen) to work together to develop, organize and promote abusive tax shelters, with Andersen taking the role of identifying and targeting prospective customers. In paragraph 20, Plaintiff pleads Sidley's encouragement to Andersen in promising Andersen's clients that appropriate opinion letters to support the abusive tax shelters would be forthcoming. The description of the enterprise is more fully elicited in specific paragraphs of Count IX (violations of the Florida Civil Remedies for Criminal Practices Act). Paragraph 81 sets forth the time period during which Sidley engaged in its scheme to promote unregistered and abusive tax shelters. Paragraph 84 notes Sidley's recruitment of other parties, including Arthur Andersen and KPMG in order to identify and target prospective customers. Sidley's arrangements with accounting firm in the furtherance of this illegal enterprise are identified in paragraphs 85, 86 and 87. These allegations go well beyond the requirements of notice pleading and Defendant cannot legitimately complain that it is unaware of the nature of the allegations against it. This is sufficient and none of the authorities cited by Defendant contradict this.

## IX.    FRAUD HAS BEEN PLED WITH THE REQUISITE PARTICULARITY

Finally, Sidley contends that Plaintiff has not pled fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. Again Sidley is incorrect.

Plaintiff has alleged the precise misrepresentations made in ¶ 28, which is incorporated into ¶ 65 of the fraud count. Plaintiff has identified the time and place – alleging that the misrepresentations were made in or omitted from the opinion letters (see ¶¶ 28 and 65), and person responsible: the signatory of the letters. Plaintiff has set forth

the manner in which the misrepresentations misled him; he has alleged that they caused

him to enter into the abusive tax shelters and incur the fees and other damages sought to

be recovered herein. (see ¶¶ 69, 21, 24, 31 and 32). And Plaintiff has alleged what Sidley

gained as a result of the fraud – its $400,000 fee. (see ¶¶ 14 and 70). Thus, all the

requirements of Rule 9(b) are met.

Sidley erroneously asserts (at page 15) that for the "fraud-based" claims, "the

nature of the agency relationship alleged must be pled with particularity." As set forth

earlier, under federal notice pleading, agency may be alleged generally. Pacific Mutual

Life Ins. Co. v. Barton, 50 F.2d 362, 363 (5th Cir. 1931); Commercial Financial Services

Inc. v. Great American Ins. Co., 381 F. Supp 291, 302 (SDNY 2005). In general, this

is true even where the agency relationship is intertwined with a fraud claim. Guaranty

Residential Lending, Inc. v. International Mortgage Center, Inc., 305 F. Supp 2d 846, 853

(N.D. Ill. 2004) ("an agency relationship establishing vicarious liability for fraud

generally does not have to be pleaded with particularity"). The one exception is where

the same acts that constitute the fraud are also the alleged basis for the agency

relationship. As stated by the court in Sequel Capital, L.L.C. v. Rothman, 2003 WL

22757758, p. 10:

> The requirements of pleading agency in fraud cases is dependent on
> whether the "same circumstances" are used to establish the alleged fraud
> and the agency relationship. See Lachmund v. ADM Investor Servs. Inc.,
> 191 F.3d 777, 783 (7th Cir.1999). If the same circumstances are used to
> plead both fraud and agency, then the particularized pleading requirements
> of Rule 9(b) "apply with equal force to the issue of agency and to the
> underlying fraud claim." Id.
>
> In Lachmund, the plaintiff attempted to show an agency relationship
> between a corporation registered with the Commodities Futures Trading
> Commission ("CFTC") as a Futures Commission Merchant and a

18

partnership registered by the CFTC as an introducing broker. *Id.* at 780. After concluding that status as an introducing broker itself was insufficient for an agency relationship, the court noted that the plaintiff relied on his allegations of conspiracy in his complaint to allege an agency relationship. *Id.* The court, therefore, applied the heightened Rule 9(b) requirements because plaintiff's claim "depend[ed] ... on the substantive allegations of fraud to establish the agency relationship." *Id.* (emphasis added)

Applying the *Lachmund* standard here, the court sees nothing in the Complaint to suggest that the same circumstances are used to establish both the agency relationship and the fraud. The Complaint alleges that Rothman and Chakos acted "at the request of, and with the full knowledge, authority and acquiescence of Colon and Manta in soliciting Sequel's participation in the equity rights offering." (Compl.¶ 21.) This allegation is separate from the circumstances where Sequel alleges fraud, and the agency relationship itself is not dependent on the allegations of fraud. Moreover, this situation is not comparable to that in *Lachmund* where the agency allegations relied on the allegations of conspiracy. *Lachmund,* 191 F.3d at 783. Accordingly, the heightened pleading standard is not required for the agency claims here. To properly plead agency Sequel was only required to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a).

Here Plaintiff is not relying on the substantive allegations of fraud to establish the agency relationship. To the contrary, the substantive allegations of fraud are statements (or omissions) from Sidley directly to Plaintiff in Sidley's letters to Plaintiff; Andersen is not a party to them. The allegations of agency are entirely separate and distinct, and virtually identical to the ones set forth in Guaranty Residential Lending that were held to be sufficient. Thus, Plaintiff has properly alleged its "fraud-based" claims.

## X.  CONCLUSION

For the foregoing reasons, the Court should deny Sidley's Motion to Dismiss in its entirety.

RICHARD BENJAMIN WILKES
Florida Bar No. 267163
RICHARD W. CANDELORA
Florida Bar No. 198056
**RICHARD BENJAMIN WILKES, P.A.**
600 South Magnolia Avenue
Suite 200
Tampa, Florida 33606
Telephone:    (813) 254-6060
Facsimile:    (813) 254-6088
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by first class U.S. Mail this 8th day of September, 2006, to:

Jonathan E. Altman, Esq.
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071

Katherine W. Ezell, Esq.
Podhurst Orseck, P.A.
25 W. Flagler Street, Suite 800
Miami, FL  33130

Attorney

20