Gainor v. Sidley, Austin, Brow Doc. 66



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case No. 06-21748 CIV-MARTINEZ/BANDSTRA

MARK J. GAINOR and ELYSE GAINOR,

Plaintiffs,

v.

SIDLEY AUSTIN LLP, et al.,

Defendants.

_______________________________/

**DEFENDANT P. ANTHONY NISSLEY'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

**McDERMOTT WILL & EMERY LLP**

Michael G. Austin (FBN 0457205)
E-mail: *maustin@mwe.com*
201 South Biscayne Blvd., Ste. 2200
Miami, Florida 33131
Tel: (305) 347-6517
Fax: (305) 347-6500

*Of Counsel:*
Douglas E. Whitney
Jocelyn D. Francoeur
E-Mail: *dwhitney@mwe.com*
*jfrancoeur@mwe.com*
227 West Monroe Street
Chicago, Illinois 60606
(312) 372-2000
(312) 984-7700 FAX

*Counsel for P. Anthony Nissley*

Dockets.Justia.com

# TABLE OF CONTENTS

Page

I. INTRODUCTION ....................1

II. FACTUAL BACKGROUND ....................2

III. ARGUMENT ....................5

A. The Amended Complaint Does Not Identify A Basis For Specific Jurisdiction Under Florida's Long-Arm Statute ....................5

B. Exercising Jurisdiction Over Nissley Would Not Comport With The Due Process Clause of the Fourteenth Amendment ....................7

1. Nissley Did Not Have Sufficient Contacts With Florida ....................8

2. Exercising Jurisdiction Over Nissley Would Offend Traditional Notions of Fair Play and Substantial Justice ....................11

IV. CONCLUSION ....................12

# TABLE OF AUTHORITIES

**Page**

## Cases

*Aetna Life & Casualty Co. v. Therm-O-Disc., Inc.*,
511 So.2d 992 (Fla. 1987) ........ 7
*Alternate Energy Corp. v. Redstone*,
328 F. Supp. 2d 1379 (S.D. Fla. 2004) ........ 5, 6
*Fleming & Weiss, P.C. v. First Am. Title Co.*,
580 So.2d 646 (Fla. Ct. App. 1991) ........ 10
*Future Tech. Today, Inc. v. OSF Healthcare Sys.*,
218 F.3d 1247 (11th Cir. 2000) ........ 6
*Green v. USF & G Corp.*,
772 F. Supp. 1258 (S.D. Fla. 1991) ........ 7
*Groome v. Feyh*,
651 F. Supp. 249 (S.D. Fla. 1986) ........ 9, 12
*Kim v. Keenan*,
71 F. Supp. 2d 1228 (M.D. Fla. 1999) ........ 7, 11
*Nichols v. Paulucci*,
652 So. 2d 389 (Fla. Ct. App. 1995) ........ 5
*Oriental Imports & Exports, Inc. v. Madure & Curiel's Bank, N.V.*,
701 F.2d 889 (11th Cir. 1983) ........ 6
*Posner v. Essex Ins. Co.*,
178 F.3d 1209 (11th Cir. 1999) ........ 8
*Robinson v. Giarmarco & Bill, P.C.*,
74 F.3d 253 (11th Cir. 1996) ........ 10, 11
*Sculptchair, Inc. v. Century Arts, Ltd.*,
94 F.3d 623 (11th Cir. 1996) ........ 5, 7
*Steinhilber v. Lamoree*,
825 F. Supp. 1003 (S.D. Fla. 1992) ........ 10
*Sun Bank, N.A. v. E.F. Hutton & Co., Inc.*,
926 F.2d 1030 (11th Cir. 1991) ........ 7, 8, 9
*Wallack v. Worldwide Mach. Sales*,
278 F. Supp. 2d 1358 (M.D. Fla. 2003) ........ 11
*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980) ........ 11

## Statutes

§ 48.193 ........ 5, 6, 7

## I. INTRODUCTION

Defendant P. Anthony Nissley is an Arizona resident and accountant licensed to practice accounting and law in the state of Illinois. From 1994 through approximately June 2002, Nissley worked in the Chicago, IL office of Arthur Andersen LLP ("Andersen"). In 1999, Andersen was engaged to assist in the structuring and implementation of a tax strategy involving the sale of two Georgia entities owned or controlled by Plaintiff Mark to two Georgia entities owned or controlled by co-defendant Mark Klopfenstein (the "Gainor Strategy"). At the request of others in Andersen's Atlanta office, Nissley provided advice regarding the implementation of the Gainor Strategy, which Gainor utilized to avoid paying taxes on approximately $70 million of capital gains that otherwise would have been subject to federal and Georgia state income tax. At the time Gainor hired Andersen's Atlanta office to assist in implementing the Strategy, Gainor was a Georgia resident and Nissley was an Illinois resident.

The Gainor Strategy was designed for a Georgia resident, involved the sale of Georgia entities, was governed by agreements under Georgia law, affected Gainor's Georgia state income tax obligations, and was reviewed and approved by several different Georgia professionals. Nissley's consultation and advice on the Gainor Transaction occurred almost exclusively from his Chicago office, where Nissley spoke by phone to Andersen personnel and/or Gainor in Georgia. Any contact Nissley may have had with Gainor regarding the Gainor Strategy took place in Georgia. It was not until the year following the implementation of the Gainor Strategy that Gainor (presumably for tax reasons) established residency in Florida, which may have necessitated some contact between Nissley and Florida to allow for Gainor's affairs to be transitioned from Andersen's Atlanta office to a local Florida accounting firm.

Gainor and his wife filed the amended complaint in March 2007 seeking, for the first time, to drag Nissley into this Florida litigation that Gainor had first filed nearly three years

earlier. Gainor's belated claims against Nissley are deficient for several reasons. As a threshold matter, Gainor's claims against Nissley cannot support a finding that Nissley is subject to the jurisdiction of the courts of this State.[1] Gainor contends that Nissley conspired with various other defendants to induce Gainor to enter into the Gainor Strategy. As Gainor's own allegations make clear, however, any contacts Nissley had with Gainor prior to the implementation of that strategy occurred in Georgia, not Florida. Any fleeting contacts Nissley may have had with Gainor after Gainor chose to establish residency in Florida fall far short of establishing the purposeful availment necessary to support the exercise of jurisdiction in this case. As a result, Plaintiffs' amended complaint against Nissley should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).

## II. FACTUAL BACKGROUND

Nissley is a resident of the state of Arizona. (Declaration of P. Anthony Nissley ("Nissley Decl."), ¶ 2.) Nissley has been licensed to practice as an accountant and lawyer in the state of Illinois since 1994. (Nissley Decl., ¶ 4.) He presently is a Partner of PricewaterhouseCoopers, with his principal offices in Chicago, Illinois. (Nissley Decl., ¶ 6.)

Nissley has never lived or worked in the state of Florida. (*Id.*, ¶ 3.) He is not licensed as an accountant or lawyer in Florida, and he has never maintained an office in Florida. (*Id.*, ¶ 7.) He has never held any professional licenses in the State of Florida or advertised his services in the State of Florida. (*Id.*, ¶ 8.)

Since approximately 2003, Nissley has jointly owned, with other family members, a house in Jacksonville, Florida. Nissley does not reside in that home or earn any income from

[1] Should the Court determine that Nissley is in fact subject to the jurisdiction of the Court, Gainor's claims against Nissley should be dismissed for the same reasons that will be set forth in the subsequently filed motions of co-defendant Andersen.

that property in Florida, and he does not maintain any bank accounts in the State of Florida. (*Id.*, ¶¶ 9-10.)

On March 7, 2007, Plaintiffs filed the First Amended Complaint ("FAC" or "Complaint"). The Complaint alleges only one claim against Nissley – namely, that Nissley conspired with Andersen, Sidley Austin, Merrill Lynch, and a number of associated professionals to induce Gainor to engage in the Gainor Strategy and pay defendants other than Nissley fees associated with the implementation of that strategy. (FAC, ¶¶ 51-97.) Gainor does not allege that Nissley received any of these fees. (FAC, ¶ 86.) In fact, he did not. (Nissley Decl., ¶ 17.)

The Complaint alleges that in late February of 1999 Nissley and another defendant, Michael Marx, "advised Gainor that it had a legitimate tax strategy" that would "substantially reduce the taxes payable" from the sale of Gainor's lucrative medical services business. (FAC, ¶ 95(a).) Gainor contends that between January and August of 1999, Nissley communicated with various other defendants regarding the Gainor Strategy. (FAC, ¶¶ 62-66.) Gainor contends that on August 20, 1999, either Nissley or Marx sent to Gainor "a schedule confirming the anticipated professional fees and transaction costs that would be incurred in implementing" the Strategy. (FAC, ¶ 68.) This schedule was faxed to Gainor's home in Georgia. (Declaration of Michael Marx at ¶ 14.[2]) Gainor alleges that between September and December, 1999, Andersen "coordinated" the activities among the defendants, and he contends that Marx and/or Nissley made a number of factual representations to Gainor regarding the Strategy on Andersen's behalf. (FAC ¶ 95.)

[2] The declaration of Michael Marx is submitted in support of Marx's Motion To Dismiss For Lack of Personal Jurisdiction, which is being filed simultaneously with this motion.

Gainor makes no specific allegation regarding any action taken by Nissley after October 5, 1999 nor does he allege that Nissley committed any specific act in – or directed toward – Florida. (*See* FAC, ¶ 95(c).) Gainor does not allege that any specific conversations described above occurred in the state of Florida, nor does Gainor allege any specific actions that Nissley directed to Gainor after Gainor became a resident of Florida.

In fact, Nissley's communications with Gainor regarding the structure and implementation of the Strategy were directed to Gainor in Georgia, not Florida. On September 1, 1999, Andersen's job arrangement letters were addressed from Andersen's Atlanta office to Gainor's Georgia entities, both of which had their principal place of business in Atlanta (Nissley Decl., ¶ 14, Exs. A, B.) Because Gainor was residing in Georgia at the time, any communication that Nissley had with Gainor regarding implementation of the Strategy occurred in that state. (Nissley Decl., ¶ 16.) The last specific contact that Gainor alleges he had with Nissley was on October 5, 1999 (FAC, ¶ 95(c)), when Gainor was still a resident of the state of Georgia. (Nissley Decl., ¶ 24.)

The Gainor Strategy was completed by the end of December, 1999, and Gainor sought to establish residency the following year in Florida. (FAC, ¶¶ 77-78; Nissley Decl., ¶¶ 22, 24-25.) After Gainor relocated to Florida , Gainor decided that he wanted to replace Andersen, which had been serviung as the tax preparer for Gainor and his entities, with a local Florida accounting firm, and Gainor eventually retained Rachlin Cohen & Holtz for that purpose. (Nissley Decl., ¶ 25.)

Prior to completing this transition, Gainor decided to have Andersen prepare his 2000 federal and Georgia state income tax returns. Nissley did not participate in the preparation of any of Gainor's tax returns, nor was he ever consulted by Gainor or any of Gainor's advisors

regarding any Florida tax issues. (Nissley Decl., ¶ 27.) Nissley does not recall ever communicating with Gainor in Florida regarding the Gainor Strategy or his corresponding taxes. (*Id.*, ¶ 26.) Although Nissley may have subsequently visited Gainor in Florida, these visits were unrelated to the Gainor Strategy or Gainor's Florida taxes. (*Id.*)

## III. ARGUMENT

In order to establish personal jurisdiction over Nissley, Gainor must meet both prongs of a two-part test set forth by the Eleventh Circuit. First, Gainor's complaint must identify a specific basis for jurisdiction under Florida's long-arm statute. *Alternate Energy Corp. v. Redstone*, 328 F. Supp. 2d 1379, 1381 (S.D. Fla. 2004) (citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996)). Second, Gainor must establish that "the defendant has established sufficient minimum contacts with the state, such that the exercise of jurisdiction will satisfy the Fourteenth Amendment's due process requirement by comporting with "traditional notions of fair play and substantial justice." *Alternate Energy*, 328 F. Supp. 2d at 1381-82. As demonstrated more fully below, Gainor cannot fulfill either of these requirements.

### A. The Amended Complaint Does Not Identify A Basis For Specific Jurisdiction Under Florida's Long-Arm Statute.

Gainor makes no allegation that Nissley is subject to the general jurisdiction of Florida courts.[3] Rather, he contends that jurisdiction over Nissley is appropriate under Florida's long-arm statute, Fla. Stat. § 48.193, because the instant action arises from "one or more" of a series of acts allegedly made by Nissley acting individually or "collectively with the other Defendants." (FAC, ¶ 20.)

[3] The mere fact that Nissley, together with other family members, owns property in Florida is insufficient to confer jurisdiction. "By itself, ownership of property is insufficient to subject a nonresident defendant to the jurisdiction of the courts of this state, unless the cause of action arose out of such ownership." *Nichols v. Paulucci*, 652 So. 2d 389, 392-93 n.5 (Fla. Ct. App. 1995).

As an initial matter, even Gainor's general description of the acts purportedly giving rise to jurisdiction are inaccurate, and thus insufficient, under Florida's long-arm statute. Gainor alleges, for example, that Nissley and/or other defendants "caus[ed] injury to persons or property within the State of Florida arising out of an act or omission outside of Florida." (FAC, ¶ 20(c).) This allegation cannot provide jurisdiction under § 48.193, which specifically provides that causing an injury to persons or property in the State of Florida only gives rise to personal jurisdiction if, "at or about the time of the injury, either: (1) The defendant was engaged in solicitation or service activities within this state; or (2) Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use." Fla. Stat. § 48.193(f). Similarly, Gainor's allegation that Nissley and/or other defendants "breach[ed] a contract in the State of Florida" (FAC, ¶ 20(d)) does not give rise to jurisdiction under Florida's long-arm statute, which provides jurisdiction only when a defendant breaches a contract in Florida "by failing to perform acts required by the contract to be performed in [Florida]." Fla. Stat. § 48.193(g).

Even if Gainor had accurately identified potential bases for jurisdiction under the long-arm statute, his complaint would fare no better. Gainor bears the burden of justifying use of the long-arm statute (*Oriental Imports & Exports, Inc. v. Madure & Curiel's Bank, N.V.*, 701 F.2d 889, 890-91 (11th Cir. 1983)), and he cannot meet this burden by simply parroting the language of Florida's long-arm statute. Rather, Gainor must "plead *facts* that establish the basis for jurisdiction." *Alternate Energy*, 328 F. Supp. 2d at 1382 (citing *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (emphasis added)). Gainor plainly has not done so.

Gainor has pled *no facts* supporting a conclusion that Nissley engaged in business in Florida, committed a tortious act in Florida, caused injury to persons or property within the State of Florida while soliciting services or selling products in the State,[4] breached a contract in Florida by failing to perform certain acts in Florida, or actively engaged in the solicitation of Florida residents for the provision of professional services. Absent such specific factual allegations, Gainor's invocation of Florida's long-arm statute must fail. *Green v. USF & G Corp.*, 772 F. Supp. 1258, 1261 (S.D. Fla. 1991) ("The Florida long-arm statute is to be strictly construed to guarantee compliance with due process requirements.")

Gainor has accordingly failed to identify any proper basis for specific jurisdiction under Florida's long-arm statute.[5]

### B. Exercising Jurisdiction Over Nissley Would Not Comport With The Due Process Clause of the Fourteenth Amendment.

Even if Gainor could successfully plead a basis for jurisdiction under Florida's long-arm statute, the constitutional guarantee of due process would still prevent the exercise of jurisdiction over Nissley. The Fourteenth Amendment's Due Process Clause necessitates a two-part inquiry. *See Kim v. Keenan*, 71 F. Supp. 2d 1228, 1235 (M.D. Fla. 1999). First, a court must determine whether a defendant has sufficient "minimum contacts" with the relevant forum. *Id.* Second, a court must assess whether the exercise of jurisdiction in that forum would offend "traditional notions of fair play and substantial justice." *Id.* (citing *Sculptchair*, 94 F.3d 623). Here, neither standard is (or can be) met.

---

[4] Notably, the Florida Supreme Court has held that purely economic injuries are insufficient to confer jurisdiction over a defendant under § 48.193(f). *Sun Bank*, 926 F.2d at 1033 (citing *Aetna Life & Casualty Co. v. Therm-O-Disc., Inc.*, 511 So.2d 992 (Fla. 1987).)

[5] Gainor does not allege that jurisdiction would be appropriate under any other provisions of Florida's long-arm statute, including Fla. Stat. § 48.193(2). Such an allegation could not succeed because Nissley's contacts with Florida – as demonstrated above – have been sporadic at best. *Compare* Fla. Stat. § 48.193(2) (authorizing jurisdiction if defendant engaged in "substantial and not isolated activity within this state").

**1. Nissley Did Not Have Sufficient Contacts With Florida.**

The Eleventh Circuit utilizes a three-part test for determining whether a defendant has sufficient contacts with a forum to support the exercise of jurisdiction:

> First, the contacts must be related to the plaintiff's cause of action . . . Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum[ ]. Third, the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there.

*Keenan*, 71 F. Supp. at 1235 (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1220 (11th Cir. 1999)). Ultimately, "[t]he key to any constitutional inquiry into personal jurisdiction is forseeability." *Sun Bank, N.A. v. E.F. Hutton & Co., Inc.*, 926 F.2d 1030 (11th Cir. 1991).

In the present case, each of the contacts related to Gainor's claim against Nissley occurred in Georgia, not Florida. Nissley discussed the structure and implementation of the Strategy with Gainor in Georgia; the job arrangement letters with Gainor's Georgia entities were sent from Andersen's Atlanta office to those entities in Georgia; and all of the steps necessary to implement the Gainor Strategy were completed prior to Gainor's establishment of residency in Florida. (Nissley Decl., ¶¶ 13-16, 22-24.) Although Nissley may have communicated with Gainor once Gainor relocated to Florida, Gainor's conspiracy claim – which specifically alleges that Nissley and the other defendants induced Gainor "to believe that Defendants had crafted a legal 'tax strategy'" (FAC, ¶ 85) – arose, if at all, from contacts that Nissley had with Gainor in Georgia.

Nor can it be said that Nissley purposefully conducted activities within Florida such that he could have reasonably anticipated being haled into court in Florida. Nissley did not reach out to Gainor, solicit Gainor, or initiate an accountant-client relationship when Gainor was a Florida resident. Rather, Nissley's extremely limited involvement in the Gainor Strategy all took place

in Illinois or Georgia. (Nissley Decl., ¶ 16.) The fact that Nissley may have had some incidental communications with Gainor after Gainor relocated his residence to Florida cannot be construed as activity purposefully directed to the state of Florida; rather, it constitutes incidental activity that fortuitously landed in the state after a Georgia resident unilaterally decided to establish residence in Florida.

This interpretation is consistent with binding precedent. For example, in *Sun Bank*, the Eleventh Circuit rejected efforts to assert personal jurisdiction over a defendant whose contacts with the forum "occurred not because [defendant] purposefully availed himself of the privilege of conducting activities within Florida, nor even because [he] 'purposefully directed' his activities at Florida residents . . . but because [defendant's] Massachusetts customer moved to Florida, sought a loan from a Florida bank, and told that bank to call [defendant] in Massachusetts." 926 F.2d at 1034. Here, as in *Sun Bank*, Gainor's unilateral decision to seek residency in Florida (and the corresponding tax benefits) cannot be imputed to Nissley or used as a basis to support jurisdiction over him.

Should Nissley's contacts with Gainor after he moved to Florida be construed as constitutionally sufficient minimum contacts, every accountant and lawyer who eases the transition for a relocating client must fear the possibility of defending a lawsuit in a foreign jurisdiction. This result, which would arise solely from a client's unilateral decision to relocate, cannot be reconciled with the constitutional requirement that a *defendant* direct substantial and purposeful acts toward the forum state. *See Groome v. Feyh*, 651 F. Supp. 249, 254 (S.D. Fla. 1986) ("[it] is the defendant's contacts and not the 'unilateral activity' of the plaintiff that bear significance") (citation omitted).

Courts have rejected jurisdiction over out-of-state professional service providers in circumstances similar to these. *See, e.g., Steinhilber v. Lamoree*, 825 F. Supp. 1003, 1006 (S.D. Fla. 1992) (court-ordered appearance at a mediation in Florida insufficient to constitute minimum contacts for an out-of-state lawyer); *Fleming & Weiss, P.C. v. First Am. Title Co.*, 580 So.2d 646 (Fl. Ct. App. 1991) (insufficient minimum contacts when defendant "was a New York law firm retained by a New York client to render a legal opinion pursuant to New York law" and subsequently sent that opinion to a Florida resident).

It would be a different matter if Gainor had asked, and Nissley had agreed, to advise him regarding Florida tax issues. Such post-relocation transformation of the accountant-client relationship and purposeful availment of Florida laws and standards would alter the jurisdictional analysis. *See Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253 (11th Cir. 1996) (where client relocated to Florida and requested that defendant out-of-state attorneys prepare a will and amended trust *under Florida law*, "[t]he nature of the professional services rendered was such that the defendants were fully aware that their actions or omissions would have a substantial effect in Florida" and should have "reasonably anticipated the possibility of a suit arising from conduct directed" toward the client); *Keenan*, 71 F. Supp. 2d at 1235 (minimum contacts established where out-of-state attorneys "secured a co-counsel relationship" with a Florida attorney and entered into a contingent fee contract written "in accordance with Florida law"). But absent any allegations – or facts – to indicate that Nissley ever prepared Gainor's Florida returns or otherwise provided any advice to Gainor regarding his Florida tax obligations, there is no basis to conclude that Nissley purposefully availed himself of the benefits of Florida law.

**2. Exercising Jurisdiction Over Nissley Would Offend Traditional Notions of Fair Play and Substantial Justice.**

When determining fair play and substantial justice, a court should consider the "burden on the Defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Keenan*, 71 F. Supp. 2d at 1236. A court must also consider "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

Here, neither Gainor nor the state of Florida has a compelling interest in litigating this case in Florida. Gainor was a Georgia resident at the time the Gainor Strategy was designed and implemented, and Gainor implemented the Strategy by selling two Georgia entities. Gainor used the strategy to shield roughly $70 million of income earned in Georgia from federal and Georgia state income tax. Although Nissley may have had some minimal contact with Gainor after he relocated to Florida, he did not provide professional services to a Florida resident concerning assets located in Florida or income earned or to be reported in Florida. *Compare Robinson*, 74 F.3d at 259. Nor will Florida law apply to a dispute in which the alleged causes of action arose in Georgia. *Cf. Wallack v. Worldwide Mach. Sales*, 278 F. Supp. 2d 1358, 1371 (M.D. Fla. 2003) (granting motion to dismiss and noting "Florida has little interest in this dispute insofar as . . . the laws of Louisiana and/or Mississippi may control other legal issues such as statute of limitations"). The only apparent interest that Gainor has in adjudicating this dispute in Florida is one of his own personal convenience, which arises from his tax-advantaged decision to establish his residency in Florida.

Of course, Gainor's convenience is Nissley's burden. Nissley now faces the prospect of extensive travel to defend a lawsuit in a foreign jurisdiction. This is significant for an individual

who neither resides nor conducts business in the state of Florida, and it has the potential to impose undue burden on Nissley, his family, and his accounting practice. (*See* Nissley Decl., ¶ 28.) In light of the limited interest of both Gainor and Florida in pursuing this action in the courts of Florida, the concepts of fair play and substantial justice further support the dismissal of this action against Nissley. The burdens on Nissley surely "outweigh the convenience to the plaintiff of suing in Florida merely because his residence is here." *See Groome*, 651 F. Supp. at 256.

## IV. CONCLUSION

For all of the foregoing reasons, Nissley respectfully requests that this Court dismiss Gainor's complaint against him pursuant to Federal Rule of Civil Procedure 12(b)(2).

**McDERMOTT WILL & EMERY LLP**

By: *s/: Michael G. Austin*
Michael G. Austin (FBN 0457205)
E-mail: *maustin@mwe.com*
201 South Biscayne Blvd., Ste. 2200
Miami, Florida 33131
Tel: (305) 347-6517
Fax: (305) 347-6500

*Of Counsel:*

Douglas E. Whitney
Jocelyn D. Francoeur
**McDERMOTT WILL & EMERY LLP**
227 West Monroe Street
Chicago, Illinois 60606
Tel: (312) 372-2000
Fax: (312) 984-7700
E-Mail: *dwhitney@mwe.com*
*jfrancoeur@mwe.com*

*Counsel for P. Anthony Nissley*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 22, 2007, I electronically filed the forgoing with the Clerk of Court using the CM/ECF system, which automatically sends an electronic notification to CM/ECF participants. The foregoing document was also served on those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing identified on the attached Service List via first-class U.S. mail.

*s/ Michael G. Austin*
Michael G. Austin

Mark J. Gainor v. Sidley, Austin, Brown & Wood, LLP and Arthur Andersen LLP

**SERVICE LIST**

Richard Benjamin Wilkes
Attorneys at Law
600 S. Magnolia Ave, Suite 200
Tampa, Florida 33606
813-254-6060
Fax: 813-254-6088
*Attorney for Plaintiff*

Johathan E. Altman
Aaron M. May
MUNGER, TOLLES & OLSON LLP
355 S. Grand Avenue, 35th Floor
Los Angeles, California 90071
613-683-9100
Fax: 613-683-3702

and

Katherine Warthen Ezell
PODHURST ORSECK JOSEFSBERG, ET AL.
25 W. Flagler Street, Suite 800
City National Bank Bldg.
Miami, Florida 33130-1780
305-358-2800
Fax: 305-358-2382
*Counsel for Sidley, Austin, Brown & Wood, LLP*

Stephen J. Anderson
ANDERSON DAILEY LLP
The Prominence Building
3475 Piedmont Road N.E.,
Suite 1820
Atlanta, Georgia 30305
404 442 1800
Fax: 404 442 1820
*Attorney for Marc C. Klopfenstein*

Bennett Falk
Bressler, Amery & Ross P.C.
2801 S.W. 149th Ave.
Miramar, Florida 33027
954-499-7979
*Attorney for Merrill Lynch & Co., R.J. Ruble*