**EXHIBIT "1"**

Dockets.Justia.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
**Case No. 06-21748 CIV-MARTINEZ/BANDSTRA**

MARK J. GAINOR and ELYSE
GAINOR,

        Plaintiffs,

v.

SIDLEY AUSTIN LLP, et al.

        Defendants.

_____/

## DECLARATION OF P. ANTHONY NISSLEY

I, P. ANTHONY NISSLEY, declare and state as follows:

1.    I have personal knowledge of the facts stated in this declaration. I make this declaration in support of my Motion to Dismiss for Lack of Personal Jurisdiction.

2.    I am a resident of the state of Arizona and have been an Arizona resident since 1999. Prior to that, I was a resident of Illinois from 1994 to 1999.

3.    I have never been a citizen, domiciliary, or resident of the State of Florida.

4.    I have been licensed to practice as an accountant in the state of Illinois since 1994 and have been licensed to practice law in the state of Illinois since 1994.

5.    From May 11, 1981 thorough approximately June 2002, I worked in the Washington, D.C. and Chicago, Illinois offices of Arthur Andersen LLP ("Andersen"). I began as a Senior Manager in Office of Federal Tax Services and was elected to partner on September 1, 2000.

6.    From June 2002 to the present, I have been a partner at PricewaterhouseCoopers (PwC). I work principally out of PwC's Chicago as a partner in PwC's utilities tax practice.

7.    I have never worked or maintained an office in the State of Florida, and I have never been licensed to practice accounting or law in the State of Florida.

8.    I have never held any professional licenses in the State of Florida or advertised my services in the State of Florida.

9.    Since approximately 2003, I have owned jointly with other family members a house in Jacksonville, Florida in which my sister-in-law currently resides. I do not reside in that home, nor do I earn any income from that property in Florida.

10.    I do not maintain any bank accounts in the State of Florida.

11.    In the fall of 1999, Gainor engaged Andersen to assist in the structuring and implementation of a tax strategy involving the sale of two Georgia entities owned or controlled by Gainor to two Georgia entities owned or controlled by co-defendant Mark Klopfenstein (the "Gainor Strategy").

12.    In or about 1999, I was asked by others in the Atlanta office of Andersen to assist with the Gainor Strategy.   At that time, I was working out of Andersen's Chicago, Illinois office.

13.    At the time he elected to engage in the Gainor Strategy, I understand that Gainor was a Georgia resident who owned or controlled several Georgia entities.

14.    Gainor elected to retain Andersen through two of those entities, Gainor Medical USA, Inc. ("Gainor Medical") and Bryan Medical Inc. ("Bryan")  Attached as Exhibits A and B respectively are the job arrangement letters for Gainor Medical and Bryan, both of which had their principal place of business in Atlanta.

15.    My work on the Gainor Strategy consisted primarily of consulting with personnel in Andersen's Atlanta office by phone.

16.     I recall that I may have also consulted with a Gainor on one or more occasions regarding the structure and implementation Gainor Strategy. To the best of my recollection, all of my communications with Gainor regarding the structure and implementation of the Gainor Strategy were directed to Gainor in Georgia.

17.     I did not receive any fees in connection with the Gainor Strategy.

18.     To the best of my recollection, the fees Andersen received in connection with the Gainor strategy were paid by Gainor's two Georgia entities, Gainor Medical and Bryan.

19.     During the course of implementing the Strategy, Gainor Medical and Bryan were acquired by two other Georgia entities owned or controlled by Mark Klopfenstein.

20.     To the best of my knowledge, Klopfenstein was and is a Georgia resident, and he retained a Georgia law firm, Sutherland Asbill & Brennan, to assist him in connection with the Gainor Strategy.

21.     To the best of my knowledge, Gainor retained a Georgia law firm, King & Spalding, to assist him in connection with the Gainor Strategy.

22.     To the best of my knowledge, the Gainor Strategy was fully implemented in December 1999.

23.     All of the work I completed and all of the services I provided in connection with the Gainor Strategy were performed in Illinois or Georgia.

24.     To the best of my knowledge, Gainor did not change his residency from Georgia to Florida until the Gainor Strategy had been fully implemented.

25.     After Gainor established residency in the State of Florida, which I believe occurred in 2000, he chose to replace Andersen as his tax preparer with a local firm in Florida, Rachlin Cohen & Holtz.

26.    I did not ever travel to Florida to meet with Gainor in connection with the structuring or implementation of Gainor Strategy or the preparation of his tax returns. I do not recall ever communicating with Gainor while he was in Florida regarding the structuring or implementation of the Gainor Strategy or the preparation of his tax returns. I may have briefly met with Gainor on or more subsequent occasions in Florida, but these subsequent visits were not related to the structuring or implementation of the Gainor Strategy or the preparation of his tax returns.

27.    I did not participate in the preparation of any of Gainor's tax returns and was never consulted by Gainor or any of his advisor regarding any Florida tax issues.

28.    If I were required to defend myself in the courts of Florida in connection with this lawsuit, it could cause my family and me substantial hardship and inconvenience, including the disruption of my accounting practice.

I declare under penalty of perjury pursuant to the laws of the State of Arizona and the United States that the foregoing is true and correct and that this Declaration was executed on May 26, 2007 in Paradise Valley, Arizona.


P. Anthony Nissley

CH399 4826069-3.065744.0026

EXHIBIT "A"



# ARTHUR ANDERSEN

PRIVILEGED AND CONFIDENTIAL

Arthur Andersen LLP

September 1, 1999

Suite 2500
133 Peachtree Street NE
Atlanta GA 30303-1846
404 658 1 76

STRICTLY CONFIDENTIAL

Gainor Medical USA, Inc.
Attn: Mark Gainor
c/o Lucor Holdings, LLC
2455 Peachtree Road, NE Ste. 777
Atlanta, Georgia 30326

Re:  Job Arrangements for Gainor Medical USA, Inc. ("GMUSA")

Dear Mark:

This letter will confirm that GMUSA is engaging Arthur Andersen LLP ("AA") to provide assistance in connection with certain tax matters. Based upon the engagement objectives provided below, we plan to provide timely consultations regarding tax issues which are relevant to GMUSA. These consultations may include proposing and implementing certain tax strategies.

This letter sets forth the arrangements under which AA, with your consent, has agreed to proceed with any projects.

## Confidentiality

It is mutually acknowledged that our work may result in communications involving GMUSA's shareholders, other advisors and ourselves, and that such communications may include or implicate project-related materials or information. AA will treat all such communications in the manner you instruct in order to aid in establishing and/or maintaining any privileged and confidential status that applies (e.g., marking correspondence, memos, and schedules prepared on your behalf as "Privileged & Confidential"). Also, access to all information in our files relating to this project will be restricted to AA and officers of GMUSA. We will notify you of any requests or needs for such material that might come to our attention in the context of judicial or administrative proceedings or professional or regulatory requirements before we would disclose same as may be required under applicable law or rules.

Please advise us in writing of any specific steps or guidelines that you wish us to follow in this regard. While AA will cooperate, as set forth herein, with respect to legal privilege and related doctrines, AA assumes no responsibility for any court or tribunal's partial or entire failure to uphold any privilege or related doctrines.

GAINO 000006

 

# ARTHUR ANDERSEN

Mark J. Gainor
Page 2
September 1, 1999

Arthur Andersen LLP

Suite 2500
133 Peachtree Street NE
Atlanta GA 30303-1846
404 658 1776

## Fees and Related Business Terms

Based upon the combination of the tax matters that may be involved and our experience in performing similar engagements, we estimate that our total fees could be as high as $600,000. However, we will provide you with an estimate of our fees on a transaction by transaction basis. This job arrangement will terminate upon the earlier of a change in control of GMUSA or one year from the date of this letter.

You may determine that a "more-likely-than-not" opinion letter, pursuant to the requirements of Internal Revenue Code Section 6662, is required from a qualified attorney with respect to one or more of the transactions that may be proposed to GMUSA. If such need develops during the course of our tax consulting, and a "more-likely-than-not" opinion letter from a qualified attorney is unattainable, then AA shall refund any and all of its fees (excluding out of pocket expenses) related to its tax consulting with respect to such non-opinionable transactions. It is understood that AA will not issue an opinion with respect to a transaction in the absence of a separate prior written agreement relating to that transaction.

GMUSA agrees with respect to any services, work product or other deliverables hereunder, or this engagement generally that AA's liability shall in no event exceed the fees it receives hereunder for the portion of the work giving rise to liability nor include any special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity), and GMUSA will upon the receipt of written notice indemnify AA, its affiliates and their partners, principals and personnel against all costs, fees, expense, damages and liabilities (including defense costs) associated with any third-party claim arising from or relating to any such services, work product or deliverables that are used or disclosed to others, or this engagement. The foregoing terms are intended to apply to the extent not contrary to applicable law, regardless of the grounds or nature of any claim asserted (including contract, statute, any form of negligence, intentional tort, strict liability or otherwise) and whether or not AA was advised of the possibility of the damage or loss asserted. Such terms shall also continue to apply after any termination of this agreement and during the period of any dispute between the parties.

This letter sets forth the entire understanding between the parties regarding the subject matter here addressed and supersedes all prior agreements, arrangements and communications, whether oral or written, with respect to such subject matter. No other agreements, representations, warranties or other matters, whether oral or written shall be deemed to bind the parties hereto with respect to such subject matter. This letter may not be modified or amended except by the mutual written agreement of both parties. Nonenforcement or delay in enforcement of any right shall not be construed as a waiver of such right, and a waiver of a

GAINO 000007



# ARTHUR ANDERSEN

Mark J. Gainor
Page 3
September 1, 1999

right in a given case shall not be construed as a waiver of the same or similar right in any other case.

Please sign in the space provided below on the attached duplicate original to indicate GMUSA's agreement with the arrangements described herein. Please return a signed copy of this letter to us. If you should have any questions regarding this arrangement, please contact me at (404) 223-7107.

Very truly yours,

ARTHUR ANDERSEN LLP

By
    Wesley G. Scheibel

Agreed:

Gainor Medical USA, Inc.

By:

Date:

**EXHIBIT "B"**




# ARTHUR ANDERSEN

**PRIVILEGED AND CONFIDENTIAL**

Arthur Andersen LLP

September 1, 1999

Suite 2500
133 Peachtree Street NE
Atlanta GA 30303 1846
404 658 1776

**STRICTLY CONFIDENTIAL**

Bryan Medical Inc.
Attn: Mark Gainor
c/o Lucor Holdings, LLC
2455 Peachtree Road, NE Ste. 777
Atlanta, Georgia 30326

Re:  Job Arrangements for Bryan Medical, Inc. ("Bryan")

Dear Mark:

This letter will confirm that Bryan is engaging Arthur Andersen LLP ("AA") to provide assistance in connection with certain tax matters. Based upon the engagement objectives provided below, we plan to provide timely consultations regarding tax issues which are relevant to Bryan. These consultations may include proposing and implementing certain tax strategies.

This letter sets forth the arrangements under which AA, with your consent, has agreed to proceed with any projects.

<u>Confidentiality</u>

It is mutually acknowledged that our work may result in communications involving Bryan's shareholders, other advisors and ourselves, and that such communications may include or implicate project-related materials or information. AA will treat all such communications in the manner you instruct in order to aid in establishing and/or maintaining any privileged and confidential status that applies (e.g., marking correspondence, memos, and schedules prepared on your behalf as "Privileged & Confidential"). Also, access to all information in our files relating to this project will be restricted to AA and officers of Bryan. We will notify you of any requests or needs for such material that might come to our attention in the context of judicial or administrative proceedings or professional or regulatory requirements before we would disclose same as may be required under applicable law or rules.

Please advise us in writing of any specific steps or guidelines that you wish us to follow in this regard. While AA will cooperate, as set forth herein, with respect to legal privilege and related doctrines, AA assumes no responsibility for any court or tribunal's partial or entire failure to uphold any privilege or related doctrines.

GAINO 000003

 

# ARTHUR ANDERSEN

Mark J. Gainor
Page 2
September 1, 1999

## Fees and Related Business Terms

Based upon the combination of the tax matters that may be involved and our experience in performing similar engagements, we estimate that our total fees could be as high as $600,000. However, we will provide you with an estimate of our fees on a transaction by transaction basis. This job arrangement will terminate upon the earlier of a change in control of Bryan or one year from the date of this letter.

You may determine that a "more-likely-than-not" opinion letter, pursuant to the requirements of Internal Revenue Code Section 6662, is required from a qualified attorney with respect to one or more of the transactions that may be proposed to Bryan. If such need develops during the course of our tax consulting, and a "more-likely-than-not" opinion letter from a qualified attorney is unattainable, then AA shall refund any and all of its fees (excluding out of pocket expenses) related to its tax consulting with respect to such non-opinionable transactions. It is understood that AA will not issue an opinion with respect to a transaction in the absence of a separate prior written agreement relating to that transaction.

Bryan agrees with respect to any services, work product or other deliverables hereunder, or this engagement generally that AA's liability shall in no event exceed the fees it receives hereunder for the portion of the work giving rise to liability nor include any special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity), and Bryan will upon the receipt of written notice indemnify AA, its affiliates and their partners, principals and personnel against all costs, fees, expense, damages and liabilities (including defense costs) associated with any third-party claim arising from or relating to any such services, work product or deliverables that are used or disclosed to others, or this engagement. The foregoing terms are intended to apply to the extent not contrary to applicable law, regardless of the grounds or nature of any claim asserted (including contract, statute, any form of negligence, intentional tort, strict liability or otherwise) and whether or not AA was advised of the possibility of the damage or loss asserted. Such terms shall also continue to apply after any termination of this agreement and during the period of any dispute between the parties.

This letter sets forth the entire understanding between the parties regarding the subject matter here addressed and supersedes all prior agreements, arrangements and communications, whether oral or written, with respect to such subject matter. No other agreements, representations, warranties or other matters, whether oral or written shall be deemed to bind the parties hereto with respect to such subject matter. This letter may not be modified or amended except by the mutual written agreement of both parties. Nonenforcement or delay in enforcement of any right shall not be construed as a waiver of such right, and a waiver of a




# ARTHUR ANDERSEN

Mark J. Gainor
Page 3
September 1, 1999

Arthur Andersen LLP

Suite 2500
133 Peachtree Street NE
Atlanta GA 30303-1846
404-658-1776

right in a given case shall not be construed as a waiver of the same or similar right in any other case.

Please sign in the space provided below on the attached duplicate original to indicate Bryan's agreement with the arrangements described herein. Please return a signed copy of this letter to us. If you should have any questions regarding this arrangement, please contact me at (404) 223-7107.

Very truly yours,

ARTHUR ANDERSEN LLP

By _____
Wesley G. Scheibel

Agreed:

Bryan Medical, Inc.

By: _____

Date: _____

GAINO 000005