**EXHIBIT "1"**

Dockets.Justia.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
**Case No. 06-21748 CIV-MARTINEZ/BANDSTRA**

MARK J. GAINOR and ELYSE
GAINOR,

        Plaintiffs,

v.

SIDLEY AUSTIN LLP, et al.

        Defendants.

_____/

## DECLARATION OF MICHAEL S. MARX

        I, MICHAEL S. MARX, declare and state as follows:

I have personal knowledge of the facts stated in this declaration.  I make this declaration in

support of my Motion to Dismiss for Lack of Personal Jurisdiction.

        1.      I am a resident of the state of Georgia and have been a Georgia resident since

1995.

        2.      I have never been a citizen, domiciliary, or resident of the State of Florida.

        3.      I have been a licensed Certified Public Account in the state of Georgia since

November 2000.

        4.      From approximately September 1996 thorough approximately August 2000, I

worked in the Atlanta, Georgia office of Arthur Andersen LLP ("Andersen").    I began as a Staff

Accountant in September 1996 and was a Tax Manager at the time of my departure in August

2000.

        5.      I also worked at Andersen's Atlanta office as a Tax Manager from approximately

January 2002 through approximately May 2002.

6.    From May 2002 to the present, I have continued to work for accounting firms in Atlanta, Georgia. I currently work in the Atlanta office of Deloitte & Touche USA LLP as a Senior Tax Manager.

7.    I have never worked or maintained an office in the State of Florida, and I have never been licensed to practice accounting in the State of Florida.

8.    I have never held any professional licenses in the State of Florida or advertised my services in the State of Florida.

9.    I do not own or lease property in Florida, and do not maintain any bank accounts in the State of Florida.

10.    I began working on Mark Gainor's account at Andersen in or about 1999. At that time, I was a Senior Staff Accountant. Later in 1999, I was promoted to Tax Manager.

11.    In the fall of 1999, Gainor engaged Andersen to assist in the structuring and implementation of a tax strategy involving the sale of two Georgia entities owned or controlled by Gainor to two Georgia entities owned or controlled by co-defendant Mark Klopfenstein (the "Gainor Strategy").

12.    At the time he elected to engage in the Gainor Strategy, Gainor was a Georgia resident who owned or controlled several Georgia entities.

13.    Gainor elected to retain Andersen through two of those, Gainor Medical USA, Inc. ("Gainor Medical") and Bryan Medical Inc. ("Bryan") Attached as Exhibits A and B respectively are the job arrangement letters for Gainor Medical and Bryan, both of which had their principal place of business in Atlanta.

14.    Prior to Gainor electing to engage in the Gainor Strategy, I provided him with a schedule of fees that could be incurred during the implementation of the strategy. Attached as

Exhibit C is one such set of set of schedules. The fax cover sheet and fax number reflects that these schedules were faxed to Gainor's home in the Atlanta area.

15. To the best of my recollection, all of my communications with Gainor regarding the structure and implementation of the Gainor Strategy were directed to Gainor in Georgia.

16. To the best of my recollection, all of my meetings with Gainor regarding the structure and implementation of the Gainor Strategy occurred in the State of Georgia.

17. I did not receive any fees in connection with the Gainor Strategy.

18. To the best of my recollection, the fees Andersen received in connection with the Gainor strategy were paid by Gainor's two Georgia entities, Gainor Medical and Bryan.

19. During the course of implementing the Strategy, Gainor Medical and Bryan were acquired by two other Georgia entities owned or controlled by Mark Klopfenstein.

20. To the best of my knowledge, Klopfenstein was and is a Georgia resident, and he retained a Georgia law firm, Sutherland Asbill & Brennan, to assist him in connection with the Gainor Strategy.

21. To the best of my knowledge, Gainor retained a Georgia law firm, King & Spalding, to assist him in connection with the Gainor Strategy.

22. The Gainor Strategy was fully implemented in December 1999.

23. All of the work I completed and all of the services I provided in connection with the Gainor Strategy were performed in Georgia.

24. To the best of my knowledge, Gainor did not change his residency from Georgia to Florida until the Gainor Strategy had been fully implemented.

25.     After Gainor established residency in the State of Florida, which I believe occurred in 2000, he chose to replace Andersen as his tax preparer with a local firm in Florida, Rachlin Cohen & Holtz.

26.     I made one trip to Florida in February 2000 to assist in transitioning Gainor's tax preparation and accounting work from Andersen to Rachlin Cohen & Holtz.

27.     Prior to completing this transition, however, Gainor decided to have Andersen prepare his 2000 federal and Georgia state income tax returns.

28.     I assisted in the preparation of these federal and Georgia state income tax returns. These returns were prepared in Andersen's Atlanta office and mailed them to Gainor in Florida for his review and filing.

29.     I occasionally spoke with Gainor when he was a resident in Florida.  The purpose of these calls was to facilitate the transition of Gainor's accounting work to Rachlin Cohen & Holtz and the preparation of Gainor's federal and Georgia state income tax returns.

30.     Apart from the February 2000 meeting to transition the tax preparation work from Andersen to Rachlin Cohen & Holtz I did not ever travel to Florida to meet with Gainor in connection with the Gainor Strategy or the preparation of his tax returns.  I may have briefly met with Gainor on or more subsequent occasions in Florida, but these subsequent visits were not related to the structuring or implementation of the Gainor Strategy or the preparation of his tax returns.

31.     I never worked on the preparation of any subsequent tax returns for Gainor or any of his affiliated entities and never prepared or worked on any Florida state tax returns for Gainor or any of his affiliated entities.

- 4 -

32.     If I were required to defend myself in the courts of Florida in connection with this lawsuit, it could cause my family and me substantial hardship and inconvenience, including the disruption of my accounting practice.

I declare under penalty of perjury pursuant to the laws of the State of Georgia and the United States that the foregoing is true and correct and that this Declaration was executed on May 22, 2007 in Atlanta, Georgia.

Michael S. Marx

# EXHIBIT "A"




# ARTHUR ANDERSEN

**PRIVILEGED AND CONFIDENTIAL**

Arthur Andersen LLP

September 1, 1999

Suite 2500
133 Peachtree Street NE
Atlanta GA 30303-1846
404 658 1776

**STRICTLY CONFIDENTIAL**

Gainor Medical USA, Inc.
Attn: Mark Gainor
c/o Lucor Holdings, LLC
2455 Peachtree Road, NE Ste. 777
Atlanta, Georgia 30326

Re: Job Arrangements for Gainor Medical USA, Inc. ("GMUSA")

Dear Mark:

This letter will confirm that GMUSA is engaging Arthur Andersen LLP ("AA") to provide assistance in connection with certain tax matters. Based upon the engagement objectives provided below, we plan to provide timely consultations regarding tax issues which are relevant to GMUSA. These consultations may include proposing and implementing certain tax strategies.

This letter sets forth the arrangements under which AA, with your consent, has agreed to proceed with any projects.

## Confidentiality

It is mutually acknowledged that our work may result in communications involving GMUSA's shareholders, other advisors and ourselves, and that such communications may include or implicate project-related materials or information. AA will treat all such communications in the manner you instruct in order to aid in establishing and/or maintaining any privileged and confidential status that applies (e.g., marking correspondence, memos, and schedules prepared on your behalf as "Privileged & Confidential"). Also, access to all information in our files relating to this project will be restricted to AA and officers of GMUSA. We will notify you of any requests or needs for such material that might come to our attention in the context of judicial or administrative proceedings or professional or regulatory requirements before we would disclose same as may be required under applicable law or rules.

Please advise us in writing of any specific steps or guidelines that you wish us to follow in this regard. While AA will cooperate, as set forth herein, with respect to legal privilege and related doctrines, AA assumes no responsibility for any court or tribunal's partial or entire failure to uphold any privilege or related doctrines.

  

# ARTHUR ANDERSEN

Mark J. Gainor
Page 2
September 1, 1999

Arthur Andersen LLP

Suite 2500
133 Peachtree Street NE
Atlanta GA 30303-1846
404 658 1776

## Fees and Related Business Terms

Based upon the combination of the tax matters that may be involved and our experience in performing similar engagements, we estimate that our total fees could be as high as $600,000. However, we will provide you with an estimate of our fees on a transaction by transaction basis. This job arrangement will terminate upon the earlier of a change in control of GMUSA or one year from the date of this letter.

You may determine that a "more-likely-than-not" opinion letter, pursuant to the requirements of Internal Revenue Code Section 6662, is required from a qualified attorney with respect to one or more of the transactions that may be proposed to GMUSA. If such need develops during the course of our tax consulting, and a "more-likely-than-not" opinion letter from a qualified attorney is unattainable, then AA shall refund any and all of its fees (excluding out of pocket expenses) related to its tax consulting with respect to such non-opinionable transactions. It is understood that AA will not issue an opinion with respect to a transaction in the absence of a separate prior written agreement relating to that transaction.

GMUSA agrees with respect to any services, work product or other deliverables hereunder, or this engagement generally that AA's liability shall in no event exceed the fees it receives hereunder for the portion of the work giving rise to liability nor include any special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity), and GMUSA will upon the receipt of written notice indemnify AA, its affiliates and their partners, principals and personnel against all costs, fees, expense, damages and liabilities (including defense costs) associated with any third-party claim arising from or relating to any such services, work product or deliverables that are used or disclosed to others, or this engagement. The foregoing terms are intended to apply to the extent not contrary to applicable law, regardless of the grounds or nature of any claim asserted (including contract, statute, any form of negligence, intentional tort, strict liability or otherwise) and whether or not AA was advised of the possibility of the damage or loss asserted. Such terms shall also continue to apply after any termination of this agreement and during the period of any dispute between the parties.

This letter sets forth the entire understanding between the parties regarding the subject matter here addressed and supersedes all prior agreements, arrangements and communications, whether oral or written, with respect to such subject matter. No other agreements, representations, warranties or other matters, whether oral or written shall be deemed to bind the parties hereto with respect to such subject matter. This letter may not be modified or amended except by the mutual written agreement of both parties. Nonenforcement or delay in enforcement of any right shall not be construed as a waiver of such right, and a waiver of a

GAINO 000007



# ARTHUR ANDERSEN

Mark J. Gainor
Page 3
September 1, 1999

right in a given case shall not be construed as a waiver of the same or similar right in any other case.

Please sign in the space provided below on the attached duplicate original to indicate GMUSA's agreement with the arrangements described herein. Please return a signed copy of this letter to us. If you should have any questions regarding this arrangement, please contact me at (404) 223-7107.

Very truly yours,

ARTHUR ANDERSEN LLP

By Wesley G. Scheibel

Agreed:

Gainor Medical USA, Inc.

By:

Date:

GAINO 000008

# EXHIBIT "B"



# ARTHUR ANDERSEN



**PRIVILEGED AND CONFIDENTIAL**

Arthur Andersen LLP

September 1, 1999

Suite 2500
133 Peachtree Street NE
Atlanta GA 30303-1846
404 658 1776

**STRICTLY CONFIDENTIAL**

Bryan Medical Inc.
Attn: Mark Gainor
c/o Lucor Holdings, LLC
2455 Peachtree Road, NE Ste. 777
Atlanta, Georgia 30326

Re:   Job Arrangements for Bryan Medical, Inc. ("Bryan")

Dear Mark:

This letter will confirm that Bryan is engaging Arthur Andersen LLP ("AA") to provide assistance in connection with certain tax matters. Based upon the engagement objectives provided below, we plan to provide timely consultations regarding tax issues which are relevant to Bryan. These consultations may include proposing and implementing certain tax strategies.

This letter sets forth the arrangements under which AA, with your consent, has agreed to proceed with any projects.

<u>Confidentiality</u>

It is mutually acknowledged that our work may result in communications involving Bryan's shareholders, other advisors and ourselves, and that such communications may include or implicate project-related materials or information. AA will treat all such communications in the manner you instruct in order to aid in establishing and/or maintaining any privileged and confidential status that applies (e.g., marking correspondence, memos, and schedules prepared on your behalf as "Privileged & Confidential"). Also, access to all information in our files relating to this project will be restricted to AA and officers of Bryan. We will notify you of any requests or needs for such material that might come to our attention in the context of judicial or administrative proceedings or professional or regulatory requirements before we would disclose same as may be required under applicable law or rules.

Please advise us in writing of any specific steps or guidelines that you wish us to follow in this regard. While AA will cooperate, as set forth herein, with respect to legal privilege and related doctrines, AA assumes no responsibility for any court or tribunal's partial or entire failure to uphold any privilege or related doctrines.

GAINO 000003





# ARTHUR ANDERSEN

Mark J. Gainor
Page 2
September 1, 1999

### Fees and Related Business Terms

Based upon the combination of the tax matters that may be involved and our experience in performing similar engagements, we estimate that our total fees could be as high as $600,000. However, we will provide you with an estimate of our fees on a transaction by transaction basis. This job arrangement will terminate upon the earlier of a change in control of Bryan or one year from the date of this letter.

You may determine that a "more-likely-than-not" opinion letter, pursuant to the requirements of Internal Revenue Code Section 6662, is required from a qualified attorney with respect to one or more of the transactions that may be proposed to Bryan. If such need develops during the course of our tax consulting, and a "more-likely-than-not" opinion letter from a qualified attorney is unattainable, then AA shall refund any and all of its fees (excluding out of pocket expenses) related to its tax consulting with respect to such non-opinionable transactions. It is understood that AA will not issue an opinion with respect to a transaction in the absence of a separate prior written agreement relating to that transaction.

Bryan agrees with respect to any services, work product or other deliverables hereunder, or this engagement generally that AA's liability shall in no event exceed the fees it receives hereunder for the portion of the work giving rise to liability nor include any special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity), and Bryan will upon the receipt of written notice indemnify AA, its affiliates and their partners, principals and personnel against all costs, fees, expense, damages and liabilities (including defense costs) associated with any third-party claim arising from or relating to any such services, work product or deliverables that are used or disclosed to others, or this engagement. The foregoing terms are intended to apply to the extent not contrary to applicable law, regardless of the grounds or nature of any claim asserted (including contract, statute, any form of negligence, intentional tort, strict liability or otherwise) and whether or not AA was advised of the possibility of the damage or loss asserted. Such terms shall also continue to apply after any termination of this agreement and during the period of any dispute between the parties.

This letter sets forth the entire understanding between the parties regarding the subject matter here addressed and supersedes all prior agreements, arrangements and communications, whether oral or written, with respect to such subject matter. No other agreements, representations, warranties or other matters, whether oral or written shall be deemed to bind the parties hereto with respect to such subject matter. This letter may not be modified or amended except by the mutual written agreement of both parties. Nonenforcement or delay in enforcement of any right shall not be construed as a waiver of such right, and a waiver of a

GAINO 000004





# ARTHUR ANDERSEN

Mark J. Gainor
Page 3
September 1, 1999

Arthur Andersen LLP

Suite 2500
133 Peachtree Street NE
Atlanta GA 30303-1846
404-658-1776

right in a given case shall not be construed as a waiver of the same or similar right in any other case.

Please sign in the space provided below on the attached duplicate original to indicate Bryan's agreement with the arrangements described herein. Please return a signed copy of this letter to us. If you should have any questions regarding this arrangement, please contact me at (404) 223-7107.

Very truly yours,

ARTHUR ANDERSEN LLP

By _____
     Wesley G. Scheibel

Agreed:

Bryan Medical, Inc.

By: _____

Date: _____

GAINO 000005

**EXHIBIT "C"**

Mar. 20. 2007  1:06PM   RICHARD BENJAMIN WILKES P.A.                No. 2626   P. 2
FROM ARTHUR ANDERSEN TAX           404 215 7575        1999.08-20   16:37   0979 P.01/11



# ARTHUR ANDERSEN

_Facsimile_

Privileged or Confidential Information may be contained in this facsimile and is intended only for the use of the addressee. If you are not the addressee, or person responsible for delivering it to the person addressed, you may not copy or deliver this to anyone else. If you receive this facsimile by mistake, please notify us immediately by telephone. Thank you.

Atlanta

Suite 2500
133 Peachtree Street NE
Atlanta GA 30303-1846
404 658 1776  Telephone
404 223 7155  Facsimile

To (name) _Mark Gainor_   From (name) _Michael Marx_

At (company/office) _Home_   Date _8/20/99_

Facsimile number _770-472-1444_   No. of pages to follow _10_

IF UNREADABLE OR INCOMPLETE PLEASE CALL   (404) 223-7186

FAX OPERATOR SPECIAL INSTRUCTIONS

Return Delivery Information

Room no. _3030-E_   Mail folder _No_

Executive Assistant's name   Ann Graves Wampler   Ext. _7186_

Subject / Comments

Merrill 1 + BT 1 (crossed out)

Merrill 2 + BT 2

GAINOR2025

Mar. 29. 2007  1:07PM    RICHARD BENJAMIN WILKES P.A.                    No. 2626    P. 3

FROM :ARTHUR ANDERSEN TAX          404 216 7675          1999.08-20    15:38    #579 P.02/11

## Mark Gainor
### Leveraged Distribution Assumptions

|  | Tax Basis | FMV |
|---|---|---|
| Fair Market Value of P/S Int | $54,700,000 | $54,700,000 |
| Interest Rate on 6 Month T-Bills | 0.000% | |
| Interest Rate on Margin Loan | 6.610% | LIBOR + 3/4 |
| Commission Per T-Bill | 0.0500% | |
| Financing Fee | 0.500% | |
| Premium on T-Bills | ($1,585,000) | |
| Legal Fees | $10,000 | |
| Sales Price For Bryan Shares | $0 | |
| Term of Margin Loan | 4 months | |
| Margin Requirement | 6.000% | |
| Fee% | 2.500% | |
| Corporate Tax Rate | 38.000% | |
| Individual Tax Rate | 25.000% | |

6.6100%

Merrill 2

GAINOR2026

Mar. 20. 2007  1:07PM    RICHARD BENJAMIN WILKES P.A.    No. 2626  P. 4
FROM (ARTHUR ANDERSEN TAX    404 218 7675    1999-08-28    15:38    #879 P.03/11

| | Mark Gainor's Initial Basis In LP |
|---|---|
| MG Initial Contribution to LP | $53,950,641 |
| Trust Contribution to LP* | $7,745,401 |
| Basis in Bryan Shares Contributed to LP | $0 |
| Distributions | ($18,495,753) |
| Net Basis in LP | $43,200,289 |

GAINOR2027

Mar. 20. 2007  1:07PM    RICHARD BENJAMIN WILKES P.A.              No. 2626    P. 5
FROM :ARTHUR ANDERSEN TAX         404 215 7575         1999.08-20   15:38   #979 P.04/11

Tax Basis in P/S Int.

Target Equity

LP's Initial Basis in
Boyup Medical

$54,700,000

$11,397,500

GAINOR2028

Mar. 20. 2007  1:07PM    RICHARD BENJAMIN WILKES P.A.    No. 2626    P. 6
FROM (ARTHUR ANDERSEN TAX    404 215 7675    1999.03-20    15:39    #979 P.05/11



## Merrill Lynch

| Transaction Costs | | |
|---|---|---|
| Financing Cost | | $326,830 |
| Legal Fees | | $10,000 |
| Amortization of Premium | | ($1,056,667) |
| Interest Expense | $1,439,348 | $1,439,348 |
| Interest Income | $0 | |
| Net Interest Expense | | $0 |
| Commission on T-Bill Trades | | $32,683 |
| | | |
| Merrill Lynch Fees | | $751,974 |
| Brown and Wood Fee | | $200,000 |
| AA Fee | | $683,750 |
| Transtar Fee | | $683,750 |
| Total Fees | | $2,119,474 |
| | | |
| Fee as a % of Loss | | 3.87% |
| Fee as a % of Savings | | 15.50% |

GAINOR2029

Mar. 20. 2007  1:07PM   RICHARD BENJAMIN WILKES P.A.          No. 2626   P. 7
FROM : ARTHUR ANDERSEN TAX        404 216 7676        1999.09-20   15:39   #979 P.06/11

Bryan Medical
Balance Sheet

| | Tax Basis Pre-Contribution | Tax Basis Post-Contribution | Tax Basis Post-Distribution | Tax Basis Post-Merger/Loan | Tax Basis Post-Distribution | Pre-Sale Balance Sheet |
|---|---|---|---|---|---|---|
| **Assets:** | | | | | | |
| Cash | | | | | | |
| Investment in LLC | $0 | $52,445,401 | $52,445,401 | $52,445,401 | $52,445,401 | $52,445,401 |
| PSB Interest | | $0 | $0 | $0 | $0 | $0 |
| Investment in CPLI | | $0 | $0 | $4,050,000 | $3,066,000 | $0 |
| Investment in CPHS | | $0 | $0 | $0 | $0 | $0 |
| Cash@Merc Brown | | $0 | $0 | $95,325,977 | $0 | $4,268,025 |
| Investment in T-Bills | | | | | $0 | $0 |
| **Total Assets** | $0 | $52,445,401 | $52,445,401 | $152,771,378 | $97,465,401 | $100,852,427 |
| **Liabilities:** | | | | | | |
| Margin Loan | | | | $85,325,977 | | $86,326,977 |
| Due to Brown and Wood | | | | | | $200,000 |
| Due to A.A. | | | | | | $250,750 |
| Due to Merril | | | | | | $0 |
| Deferred Tax Liability | | | | | | $0 |
| **Total Liabilities** | $0 | $0 | $0 | $85,325,977 | $0 | $86,575,977 |
| **Net Equity** | $0 | $52,445,401 | $52,445,401 | $67,445,401 | $97,465,401 | $14,109,977 |
| **Target Equity** | $0 | | | | | $562,750 |

Mar. 20. 2007  1:07PM    RICHARD BENJAMIN WILKES P.A.               No. 2626   P. 8
FROM :ARTHUR ANDERSEN TAX          404 216 7575          1999.08-20    15:39   #979 P.07/11

**Mark Gainor**
**Leveraged Distribution**
**Assumptions**

| | Tax Basis | FMV |
|---|---|---|
| Fair Market Market Value of PIS Int | $54,700,000 | $54,700,000 |
| Interest Rate on 6 Month T-Bills | 5.875% | |
| Interest Rate on Margin Loan | 8.360% | LIBOR + 1/2 |
| Commission Per T-Bill | 0.5000% | |
| Financing Fee | 1.000% | |
| Premium on T-Bills | $119,700 | |
| Sales Price For Bryant Shares | $0 | |
| Term of Margin Loan | 4  months | |
| Margin Requirement | 10.000% | |
| Fee% | 2.500% | |
| Corporate Tax Rate | 38.000% | |
| Individual Tax Rate | 25.000% | |

BT 2

Mar. 20. 2007  1:07PM    RICHARD BENJAMIN WILKES P.A.                    No. 2626   P. 9
FROM :ARTHUR ANDERSEN TAX         404 215 7575        1999.08-20    16:39    #979 P.08/11

| | Mark Gainor's Initial Basis in LP |
| --- | --- |
| MG Initial Contribution to LP | $53,950,641 |
| Trust Contribution to LP* | $7,745,401 |
| Basis in Bryan Shares Contributed to LP | $0 |
| Distributions | ($18,495,753) |
| Net Basis in LP | $43,200,289 |

GAINOR2032

Mar. 20. 2007 1:07PM    RICHARD BENJAMIN WILKES P.A.    No. 2626    P. 10

FROM (ARTHUR ANDERSEN TAX    404 218 7575    1999.08-20    16:39    #979 P.09/11

| | LP's Initial Basis in Bryan Medical |
|---|---|
| Tax Basis in PJS Int. | $54,700,000 |
| Basis in Bryan Medical Shares | $54,700,000 |
| Less Distributions | $0 |
| Net Basis Before Sale | $54,700,000 |
| Target Equity | $1,387,500 |

GAINOR2033

**BT Alex Brown Fees**

| | Transaction Costs |
|---|---|
| Financing Cost | |
| Amortization of Premium | |
| Interest Expense | $1,376,012 |
| Interest Income | $1,271,081 |
| Net Interest Expense | $849,082 |
| Commission on T-Bill Trades | $93,133 |
| | $104,932 |
| | $324,531 |
| BT Alex Brown Fees | $1,171,659 |
| Brown and Wood Fee | $200,000 |
| AA Fee | $583,760 |
| Transfer Fee | $583,760 |
| Total Fees | $2,539,169 |
| Fee as a % of Loss | 4.64% |
| Fee as a % of Savings | 18.57% |

GAINOR2034

Mar. 20. 2007  1:08PM    RICHARD BENJAMIN WILKES P.A.    No. 2626  P. 12

FROM : ARTHUR ANDERSEN TAX       404 215 7575         1999.09-20    15:48    #979 P.11/11

Bryan McNeal
Balance Sheet

| | Tax Basis Pre-Contribution | Tax Basis Post-Contribution | Tax Basis Post-Contribution II | Tax Basis Post-Merger Loan | Tax Basis Post-Distribution | Pre-Sale Balance Sheet |
|---|---|---|---|---|---|---|
| **Assets:** | | | | | | |
| Cash | $0 | $0 | $0 | $0 | $0 | $0 |
| Investment in LLC | $0 | $52,445,401 | $52,445,401 | $52,445,401 | $52,445,401 | $52,445,401 |
| FMI Interest | | $0 | $0 | $0 | $0 | $0 |
| Investments @DU | | $0 | $0 | $0 | $0 | $0 |
| Investments @MB | | $0 | $0 | $0 | $0 | $0 |
| Cash @ Wachovia | | $0 | $0 | $5,000,000 | $0 | $0 |
| Investment in T-Bills | | $0 | $0 | $64,908,342 | $64,908,342 | $0 |
| **Total Assets** | $0 | $52,445,401 | $52,445,401 | $122,353,843 | $117,445,401 | $65,273,152 |
| **Liabilities:** | | | | | | |
| Margin Loan | | | | | | $0 |
| Due to Brown and Wood | | | | $64,908,342 | $64,908,242 | $64,908,242 |
| Due to AA | | | | | | $200,000 |
| Due to Harrell | | | | | | $64,750 |
| Deferred Tax Liability | | | | | | $0 |
| **Total Liabilities** | $0 | $0 | $0 | $64,908,342 | $64,908,242 | $65,049,992 |
| **Net Equity** | $0 | $52,445,401 | $52,445,401 | $57,445,401 | $52,559,159 | $56,949,962 |
| | | | | | | $0 |
| Target Equity | | | | | | $361,750 |
| | | | | | | $360,750 |

GAINOR2035