UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-21748-CIV-MARTINEZ/BANDSTRA

MARK J. GAINOR and ELYSE GAINOR,

    Plaintiffs,

v.

SIDLEY AUSTIN LLP, a Delaware limited
liability partnership, f/k/a SIDLEY AUSTIN
BROWN & WOOD, f/k/a BROWN & WOOD,
R.J. RUBLE, an individual, ARTHUR
ANDERSEN, LLP an Illinois limited liability
partnership, MICHAEL S. MARX, an
individual, P. ANTHONY NISSLEY, an
individual, MERRILL LYNCH & CO., INC., a
Delaware corporation, and MARK C.
KLOPFENSTEIN, an individual,

    Defendants.
_____/

**DEFENDANT MERRILL LYNCH & CO., INC.'S [1]
MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW**

    Defendants Merrill Lynch, Pierce, Fenner & Smith Inc. ("MLPFS") and Merrill Lynch Private Finance LLC ("MLPF"), pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.1.A, respectfully moves to dismiss the Amended Complaint filed by Plaintiffs Mark J. Gainor and Elyse Gainor ("Plaintiffs") because it fails to state a claim upon which relief can be granted.

---

[1] Contemporaneous with the filing of this motion, Plaintiffs have agreed to file a substitution of parties dismissing Merrill Lynch & Co., Inc. and naming Merrill Lynch, Pierce, Fenner & Smith Inc. and Merrill Lynch Private Finance LLC as the proper defendants. For the purposes of this motion and going forward, MLPFS and MLPF, not Merrill Lynch & Co. Inc., will be referenced as defendants.

## I. INTRODUCTION

Plaintiffs' sole claim against MLPFS and MLPF is for civil conspiracy. Plaintiffs fail to state a claim upon which relief can be granted because the Amended Complaint was filed after the expiration of the statutory limitations period and fails to allege the requisite elements of a civil conspiracy claim.

Federal courts sitting in diversity will apply the conflict of laws rules of the forum state. *Grupo Televisa, S.A. v. Telemundo Communs. Group, Inc.*, 2007 U.S. App. LEXIS 11011, *16 (11th Cir. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Florida resolves tort conflict of laws questions according to the "most significant relationship test" outlined in the Restatement (Second) of Conflict of Laws. *Id.* (citing *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980)).

At all times material, Plaintiffs "resid[ed] in the State of Georgia and then later in Dade County, Florida." Am. Compl. at ¶1. In addition, contracts governing the relationship between Plaintiffs and MLPFS and MLPF call for the application of New York law.

Plaintiffs' claim fails no matter which state's law applies. Plaintiffs' civil conspiracy claim fails as a matter of New York law for failure to allege an underlying tort. Plaintiffs' claim also fails under Georgia and Florida law because they first raised their claim after both states' prescribed limitations periods expired. Furthermore, all three states' laws include knowledge of an improper purpose as a requisite element of a conspiracy claim. Plaintiffs fail to allege that MLPFS and MLPF had knowledge of any purported impropriety because they could not have gained such knowledge until three months after the conclusion of their alleged role relating to the implementation of the tax shelter at issue in this matter. In fact, Plaintiffs' own allegations render such knowledge an impossibility. Plaintiffs have failed to state

a claim against MLPFS and MLPF upon which relief can be granted. Their claim should therefore be dismissed as a matter of law.

## II.    STATEMENT OF FACTS[2]

In or about December 1998, Plaintiff Mark Gainor maintained an 81.2% interest in Gainor Medical Management, LLC ("GMM"). Am. Compl. at ¶26. At or about that time, GMM entered into an agreement to sell substantially all of its assets and subsidiaries. *Id.* at ¶29. The sale closed in January 1999, generating a total gain in excess of one hundred thirty million dollars ($130,000,000). *Id.* at ¶29. As majority owners, Plaintiffs incurred a significant tax liability upon the sale of GMM's assets.

In August 1999, Defendant Arthur Andersen LLP ("Andersen") offered a strategy created by Defendant Sidley Austin LLP ("Sidley") that was designed to save Plaintiffs approximately seventeen million dollars ($17,000,000) in taxes. *Id.* at ¶32. Andersen explained that the tax shelter, which Plaintiffs have named the "Sidley Plan," would be supported by an opinion letter from Sidley and that the losses and deductions to be claimed from the implementation of the strategy would likely be upheld if challenged by the IRS. *Id.* Although Plaintiffs allege that Andersen had met with MLPFS and/or MLPF personnel and that they would assist in effectuating the shelter, Plaintiffs do not allege that MLPFS or MLPF espoused any opinion, to Andersen or Plaintiffs, regarding the legality or suitability of the Sidley Plan.[3] *Id.*

On or about August 20, 1999, Andersen sent Plaintiffs a schedule confirming the anticipated professional fees and transaction costs associated with the proposed tax shelter. *Id.* at ¶33. On or about September 1, 1999, Plaintiff Mark Gainor authorized Andersen to proceed with

---

[2] MLPFS and MLPF do not concede the accuracy of any of the allegations contained within the Amended Complaint. MLPFS and MLPF will treat such allegations as true only for the purposes of the instant motion.
[3] Plaintiffs allege that neither MLPFS nor MLPF ever advised Plaintiffs of a change in their position that the losses created by the Sidley Plan were legitimately deductible. Am. Compl. at ¶48. Curiously, and very likely because such event never occurred, Plaintiffs fail to state when and under what circumstances MLPFS and/or MLPF allegedly took such position in the first place.

the tax shelter. *Id.* at ¶35. After Plaintiffs authorized the implementation of the Sidley Plan, a series of financial transactions were conducted that were designed by Sidley to generate over $70,000,000 in capital losses. *Id.* at ¶36. Plaintiffs do not allege that MLPFS or MLPF designed or participated in the design, nor controlled the transactions at issue or implemented such transactions with knowledge that they were either illegal or for an illegal purpose.

On December 10, 1999, more than three months after Plaintiffs authorized the implementation of the Sidley Plan, the IRS released Notice 99-59. *Id.* at ¶37. Notice 99-59 announced that transactions similar to the Sidley Plan generated artificial losses lacking economic substance and do not constitute the type of bona fide losses that are deductible under the Internal Revenue Code. *Id.* On December 22, 2001, the IRS published Announcement 2002-2, 2002-1 C.B. 304, which encouraged taxpayers to disclose their participation in certain tax shelters in exchange for the IRS's waiver of certain penalties. *Id.* at ¶42. Pursuant to Announcement 2002-2, 2002-1 C.B. 304, Plaintiffs voluntarily disclosed to the IRS their involvement with the Sidley Plan. *Id.* at ¶44.

On or about June 22, 2004, Plaintiffs filed suit against Sidley in Florida state court. At that time, Plaintiffs had not yet resolved the IRS examination being conducted in connection with their participation in the Sidley Plan. Plaintiffs voluntarily dismissed such suit without prejudice pending the resolution of the IRS examination.

On January 20, 2006, Plaintiffs accepted the disallowance of the tax benefits associated with the Sidley Plan. Compl. at ¶32. In its examination report, the IRS disallowed $68,350,964 of the capital losses resulting from the transactions, which resulted in a tax liability to the Plaintiffs of $13,670,192; $3,329,808 less than the $17,000,000 tax liability that Plaintiffs would have incurred had they not implemented the Sidley Plan. *Id.*

Despite the significant tax savings ultimately realized by the Sidley Plan, Plaintiffs filed suit against Sidley on June 7, 2006 in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. The Complaint, which named Sidley as the sole defendant, alleged nine causes of action: (1) professional malpractice; (2) breach of contract; (3) breach of contract implied in fact; (4) breach of contract implied in law: unjust enrichment; (5) negligent misrepresentation; (6) fraudulent misrepresentation; (7) breach of fiduciary duty; (8) tortious interference with an advantageous business relationship; and (9) violations of the Florida Remedies for Criminal Practices Act. *See generally* Compl. Sidley removed the case to this Court on July 12, 2006.

On March 7, 2007, Plaintiffs filed their Amended Complaint, adding civil conspiracy as a cause of action and naming as additional defendants R.J. Ruble, Arthur Andersen, LLP, Michael S. Marx, P. Anthony Nissley, Mark Klopfenstein and MLPFS and MLPF

### III.    ARGUMENT

**A.    Standard For Dismissal**

Plaintiffs' claim against MLPFS and MLPF must be dismissed as a matter of law for failure to provide sufficient grounds for entitlement to relief. A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if it is apparent from the face of the complaint that the allegations do not state a claim upon which relief may be granted. *See Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 (11th Cir. 2005). When considering a motion to dismiss, federal courts view the allegations of the complaint in the light most favorable to the plaintiffs, consider the allegations in the complaint as true, and accept all reasonable inferences therefrom. *See id.*

Plaintiffs' claim fails both under the oft-cited minimum pleading standard established by the United States Supreme Court in *Conley v. Gibson*, and under the more stringent pleading standard recently handed down in *Bell Atlantic Corp. v. Twombly*. *See Bell Atlantic Corp. v. Twombly*, --- S.Ct. ---, 2007 U.S. LEXIS 5901 (2007) (citing *Conley v. Gibson*, 355 U.S. 41 (1957)). The *Conley* Court determined that a statement of claim must provide fair notice of the grounds for entitlement to relief, and it can only be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46. The Supreme Court very recently revisited the *Conley* decision when considering the adequacy of the *Twombly* complaint. *See Twombly*, 2007 U.S. LEXIS at *31. The *Twombly* Court retired the "no set of facts" phrase from the original standard, holding that "[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Id.* at *35. To survive a Rule 12(b)(6) motion to dismiss, a statement of claim must now provide "enough facts to state a claim to relief that is *plausible on its face.*" *Id.* at *47 (emphasis added). Plaintiffs have failed to support their claim against MLPFS and MLPF with plausible facts; in fact, Plaintiffs contradict themselves, and in doing so, establish facts that make their claim implausible on its face. Applying the current *Twombly* holding, and even under the broader *Conley* standard, Plaintiffs' claim fails as a matter of law.

Plaintiffs' only claim against MLPFS and MLPF is for civil conspiracy. Am. Compl. ¶¶51-97. This claim was first alleged in the Amended Complaint on March 7, 2007, at which time Plaintiffs added MLPFS and MLPF as parties. *Id.* Under Georgia and Florida law, Plaintiffs' claim against MLPFS and MLPF for civil conspiracy is time-barred. Furthermore, Plaintiffs have failed to allege all the elements of a viable civil conspiracy claim under Georgia, Florida, and New York law. Viewing the allegations of the Amended Complaint in the light

most favorable to Plaintiffs, and considering such allegations to be true, it is apparent that Plaintiffs' claim against MLPFS and MLPF fails as a matter of law.

**B.     Plaintiffs' Claim Against Merrill Lynch Is Time-Barred**

In diversity cases, a federal court is bound to look to the choice of law rules of the state in which it sits to determine whether the state courts of that state would apply their own statute of limitations or the statute of limitations of some other state. *Ellis v. Great Southwestern Corp.*, 646 F.2d 1099, 1102 (5th Cir. 1981). In determining the appropriate statute of limitation for a tort claim, Florida courts apply the "significant relationships test" as set forth in the Restatement (Second) of Conflict of Laws §§145-146. *State Farm Mutual Automobile Insurance Co. v. Roach*, et al., 945 So. 2d 1160, 1163 (Fla. 2006). In determining which state's statute of limitation should apply, the "significant relationships test" takes into consideration (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. Restatement (Second) Conflict of Laws §§145-146 (1971).

According to the Amended Complaint "at all times material, [Plaintiffs] resid[ed] in the State of Georgia and then later in Dade County, Florida." Amended Complaint at ¶1. Based on the foregoing, it appears that Plaintiffs resided in Georgia during the relevant time period, and accordingly, that the injury about which Plaintiffs now complain occurred there. Moreover, if Plaintiffs lived in Georgia during the relevant time period, Georgia would also be the place where the relationship between the parties was centered. Therefore, Georgia's statute of limitations for Plaintiffs' civil conspiracy claim should apply. However, Plaintiffs do not specify the date they moved to Florida. If Plaintiffs moved to Florida prior to the

implementation of the Sidley Plan, the foregoing logic would apply Florida's statute of limitations.

Georgia and Florida both apply four-year statutes of limitation to civil conspiracy claims. Thus, the application of either Georgia's or Florida's statute of limitations operates to the same effect.[4]

### 1. Plaintiffs' Claim Is Time-Barred In Florida And Georgia For Failure To Raise It Within The Applicable Four-Year Period

Florida and Georgia law provide a four-year limitations period for civil conspiracy claims, accruing when the last element constituting the cause of action occurs. Fla. Stat. § 95.11(3) (2006); Fla. Stat. § 95.031(1) (2006); O.C.G. § 9-3-25 (2007); *Serv. Stages, Inc. v. Greyhound Corp.*, 170 F. Supp. 482, 484 (N.D. Ga. 1959) (applying Georgia state law). In Georgia, a cause of action for civil conspiracy accrues upon the last **overt** act by the alleged conspirator. *Serv. Stages, Inc.*, 170 F. Supp. at 487. Therefore, Plaintiffs' civil conspiracy claim accrued, at the latest, upon the implementation of the Sidley Plan, not when Plaintiffs knew or should have known of the alleged conspiracy.

Civil conspiracy requires an agreement between two or more persons to achieve an illegal objective or a legal objective by illegal means, one or more overt acts pursuant to that agreement, and a resulting injury. *See generally* 10 Fla Jur Conspiracy – Civil Aspects § 1; *see also Renpak, Inc. v. Oppenheimer*, 104 So. 2d 642, 646 (Fla. 2d DCA 1958); *see also Woodruff v. Hughes*, 58 S.E. 551, 553 (Ga. Ct. App. 1907) (quoting 1 Eddy on Combinations, § 365 at

---

[4] There is no applicable limitations period in New York because no underlying tort has been alleged. As more fully discussed *infra*, under New York law, civil conspiracy is not an independent tort, but rather "stands or falls with the underlying tort." *Romano v. Romano*, 767 N.Y.S.2d 841, 842 (N.Y. App. Div. 2003). The limitations period for conspiracy claims is governed by the applicable period for the underlying tort. *Linden v. Moskowitz*, 743 N.Y.S.2d 65, 67 (N.Y. App. Div. 2002). When no underlying tort is asserted, a claim for civil conspiracy fails entirely. *Id.* Plaintiffs have not asserted any tort claims against MLPFS and MLPF that are separate and apart from their claim for civil conspiracy. Therefore, under New York law, Plaintiffs' civil conspiracy claim entirely fails as a matter of law.

238) (defining the elements of civil conspiracy as the combining together of two or more persons for the purpose of doing something unlawful or oppressive, or immoral, as a means or an end). Considering the allegations in the Amended Complaint as true, MLPFS and MLPF conspired to do either an unlawful act or a lawful act by unlawful means, through overt acts in furtherance of such conspiracy between March of 1999 and August 1999. Am. Compl. ¶93. Plaintiffs further allege that they authorized Andersen to proceed with the implementation of the Sidley Plan on or about September 1, 1999. Am. Compl. ¶35. The implementation of the Sidley Plan allegedly resulted in damages to Plaintiffs. Am. Compl. ¶96-97. The last element of Plaintiffs' civil conspiracy cause of action therefore occurred on or about September 1, 1999. Am. Compl. ¶35. Accordingly, under Florida's and Georgia's four-year limitations periods, Plaintiffs had until September 1, 2003 to bring their claim for civil conspiracy. Such claim was not brought until March 7, 2007, and is thus untimely.

C. **Plaintiffs Have Failed To Plead All The Elements Of A Claim For Conspiracy Under All Potentially Applicable States' Laws**

1. **Civil Conspiracy Claims In New York And Georgia Should Be Dismissed For Failure To Allege An Underlying Tort**

Under both New York and Georgia state law, conspiracy is not an independent tort. *See Romano*, 767 N.Y.S.2d at 842; *see also McCrary v. A A Music Serv., Inc.*, 153 S.E.2d 643, 646 (Ga. Ct. App. 1967). Claims for civil conspiracy must allege all the elements of the underlying tort that the defendants allegedly conspired to commit. Plaintiffs have not asserted any tort claims against MLPFS and MLPF that are separate and distinct from their claim for civil conspiracy. To the extent that New York or Georgia law controls, Plaintiffs' claim against MLPFS and MLPF fails as a matter of law.

Applying New York law, causes of action for conspiracy are "properly dismissed" if unsupported by an underlying tort "because conspiracy is not recognized as an independent

tort in New York." *Bell v. Alden Owners, Inc.*, 750 N.Y.S.2d 27, 29 (N.Y. App. Div. 2002). In addition, a conspiracy claim fails if an underlying tort is only alleged against a party's co-defendants, but not against the party itself. *Yerushalmi v. Monroe*, 587 N.Y.S.2d 376 (N.Y. App. Div. 1992) (dismissing the conspiracy count against one defendant where the underlying tort was found to be baseless against that particular defendant); *see also Ferguson v. Meridian Dist. Servs., Inc.*, 548 N.Y.S.2d 233, 234 (N.Y. App. Div. 1989) (dismissing conspiracy claim against defendant against whom no underlying substantive tort claims were pleaded). Plaintiffs have not asserted any tort claims against MLPFS or MLPF that are separate and distinct from their claim for civil conspiracy. Though the Amended Complaint alleges various torts against Sidley and Andersen, it is conspicuously devoid of any allegation that MLPFS or MLPF conspired to commit any tort; rather, they allege MLPFS and MLPF simply engaged in a civil conspiracy.

Pursuant to Georgia law, claims for conspiracy must include all the necessary elements of a separate and distinct tort to survive a motion to dismiss. *McCrary*, 153 S.E.2d at 646. The essence of a cause of action for conspiracy "is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage." *Nat'l City Bank v. Graham*, 125 S.E.2d 223, 228 (Ga. Ct. App. 1962) (quoting *Vanditch v. Alverson*, 183 S.E. 105, 106 (Ga. Ct. App. 1935)). "It is essential that there be a wrong upon which the conspirators acted to the damage of another for the conspiracy to be actionable." *Id.* Therefore, Plaintiffs' claim fails on its face because they have not alleged the elements of an underlying tort. Under either New York or Georgia law, Plaintiffs' civil conspiracy claim cannot stand alone and must be dismissed as a matter of law.

### 2. Plaintiffs' Claim Must Be Dismissed Because They Have Failed To Allege That Merrill Lynch Had The Requisite Intent To Achieve An Unlawful Purpose

Even if Plaintiffs had both timely filed the Amended Complaint and alleged an underlying tort, Plaintiffs' claim for civil conspiracy against MLPFS and MLPF would still fail as a matter of law. Florida, Georgia and New York uniformly require plaintiffs bringing a civil conspiracy to allege the defendant's intent to do something unlawful. *See Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490, 502 (Fla. 3d DCA 1994) (dismissing conspiracy claim where the defendants could not have intended an illegal purpose, because under Florida state law, "[a] conspiracy is only unlawful if there is an intent to achieve an unlawful goal."); *see also Darraugh v. Carrington*, 34 N.Y.S.2d 742, 742-43 (N.Y. App. Div. 1942) (holding that a complaint for civil conspiracy fails under New York law if there is no allegation that the defendant had the requisite knowledge of the unlawful purpose or the unlawful means); *see also Woodruff*, 58 S.E. at 553 (determining that Georgia state law dictates that an essential element of a claim for conspiracy is the intent to do something unlawful). Plaintiffs have failed to allege that MLPFS and MLPF knew, or could have known, that any alleged goal of the purported conspiracy was unlawful. Absent that essential element, Plaintiffs' civil conspiracy claim must be dismissed.

Plaintiffs allege that MLPFS and MLPF "agreed to join the conspiracy at some point in time between June and August of 1999." Am. Compl. ¶88. Plaintiffs further allege that "between March of 1999 and August of 1999," MLPFS and MLPF "took numerous acts in furtherance of the conspiracy, including . . . recommending the implementation of certain securities transactions in order to carry out the Sidley Plan, and then implementing those transactions." *Id.* at ¶93. Plaintiffs assert that the Sidley Plan was an illegal tax scheme that resulted in Plaintiffs' losses. *Id.* at ¶¶23-24. However, as Plaintiffs acknowledge and

incorporate in their Amended Complaint, "[o]n December 10, 1999, the IRS released Notice 99-59," which warned that transactions similar to the Sidley Plan "do not constitute the type of bona fide losses that are deductible under the Internal Revenue Code." *Id.* at ¶37.

According to the allegations in the Amended Complaint, MLPFS's and MLPF's actions in furtherance of the alleged conspiracy concluded in September 1999, at least three months prior to the IRS's release of Notice 99-59. *Id.* at ¶95. The bottom line is this - Plaintiffs allege that MLPFS and MLPF *intentionally* engaged in a conspiracy prior to the IRS's publication of the information necessary to form such intent. This contradictory and impossible premise leads to one possible conclusion. Taking the allegations in the Amended Complaint in the light most favorable to Plaintiffs, the acts alleged by Plaintiffs cannot establish a viable claim for civil conspiracy. Therefore, Plaintiffs' claim against MLPFS and MLPF must be dismissed.

### 3. Plaintiffs' General Allegations Of Conspiracy Do Not Plead Facts That Entitle Them To Relief

Plaintiffs' conclusory statement imputing knowledge of the Sidley Plan's impropriety to MLPFS and MLPF does not satisfy the notice pleading standard of Federal Rule of Civil Procedure 8(a) because the alleged facts cannot entitle Plaintiffs to relief. *See Leavitt v. Cole*, 291 F. Supp. 2d 1338, 1341 (M.D. Fla. 2003) (applying federal pleading requirements in diversity cases). Federal courts will accept as true only *well-pleaded* factual allegations. *See Washington v. United States*, 2006 U.S. Dist. LEXIS 61985, *8 (M.D. Fla. 2006). "[C]onclusory allegations and unsupported conclusions of fact are not sufficient to withstand a dismissal under Rule 12(b)(6)." *Id.* (citing *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004)). Moreover, though a conclusory statement may have satisfied the previous notice pleading standard established in *Conley v. Gibson*, the Supreme Court now requires that allegations be more than simply "conceivable." Rather, Plaintiffs' allegations must contain

"enough facts to state a claim to relief that is *plausible* on its face." *Twombly*, 2007 U.S. LEXIS at * 47 (emphasis added).

Plaintiffs have failed to meet the pleading requirements for civil conspiracy against MLPFS and MLPF because the general facts that they allege regarding their knowledge of any purportedly illegal purpose are conclusory and contradictory. Merely pleading that all defendants had general knowledge of impropriety fails to satisfy the heightened pleading requirement for a particular defendant's personal knowledge. *See In re: Sensormatic Elecs. Corp. Sec. Litig.*, 2002 U.S. Dist. LEXIS 10715, *15-16 (S.D. Fla. 2002) (granting motion to dismiss defendant outside directors in securities fraud case requiring heightened pleadings where plaintiffs' sole facts supporting scienter element only pertained to defendant inside directors).

The Amended Complaint makes only one reference to MLPFS's and MLPF's alleged intent to achieve an illegal purpose:

> At the time the Defendants agreed to combine together to induce Gainor to implement the Sidley Plan, they knew that the conspiracy had an improper purpose, as each knew that the Sidley Plan was not a legitimate tax avoidance strategy but rather was an illegal tax evasion scheme.

Am. Compl. at ¶90. Plaintiffs cannot support their conspiracy claim against MLPFS and MLPF purely by relying on the alleged facts pertaining to Defendants Sidley and Andersen's knowledge of any purported impropriety in the Sidley Plan. Furthermore, Plaintiffs have contradicted their own claims by illustrating that MLPFS and MLPF could only have known of this purported impropriety after the IRS published Notice 99-59, well after their alleged involvement in the conspiracy. *Id.* at ¶37.

Plaintiffs have thus concluded that MLPFS and MLPF agreed to join a conspiracy with an improper purpose, yet they fail to support their argument with a single specific allegation

of MLPFS's and MLPF's knowledge of this supposed impropriety. In fact, even taken in the light most favorable to Plaintiffs, they assert the opposite; Plaintiffs' allegations indicate that MLPFS and MLPF *could not have known* of the allegedly illegal nature of the tax scheme because the Sidley Plan was arranged before the IRS advised that such arrangements would not be tax deductible. The conclusory statements in the Amended Complaint fail to assert all the elements of a claim for conspiracy, and therefore fail to meet the threshold pleading requirement upon which relief may be granted under Rule 8(a). Fed. R. Civ. P. 8(a). As such, Plaintiffs' claim must be dismissed with prejudice.

## IV. <u>CONCLUSION</u>

As fully established above, Plaintiffs' single untimely and improperly pleaded claim against MLPFS and MLPF for civil conspiracy fails under all potentially applicable law. Therefore, as a matter of law, Plaintiffs' civil conspiracy claim against MLPFS and MLPF must be dismissed with prejudice.

WHEREFORE, Defendants MLPFS and MLPF respectfully request the Court to dismiss Plaintiffs' claim with prejudice, and ask the Court to retain jurisdiction to award MLPFS and MLPF their attorneys' fees and costs in defending this action, and for any other further relief the Court deems just and proper.

Respectfully submitted,

Bressler, Amery & Ross, P.C.
Counsel for Defendants Merrill
    Lynch, Pierce, Fenner &
    Smith Inc. and Merrill Lynch
    Private Finance LLC
2801 S.W. 149th Avenue, Suite 300
Miramar, FL  33027
Telephone:    954-499-7979
Facsimile:    954-499-7969
Email:    cstern@bressler.com

/s/Coren H. Stern
Bennett Falk
Fla. Bar No. 208884
Coren H. Stern
Fla. Bar No. 0644218

CASE NO. 06-21748-CIV-MARTINEZ/BANDSTRA

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing *Defendant Merrill Lynch & Co., Inc.'s Motion to Dismiss and Incorporated Memorandum of Law* has been served this 29th day of May, 2007 to all parties on the attached service list via the Court's CM/ECF system or if such person(s) is not subscribed to the same, via U.S. Mail.

/s/Coren H. Stern

CASE NO. 06-21748-CIV-MARTINEZ/BANDSTRA

**SERVICE LIST**

| | |
|---|---|
| Richard Benjamin Wilkes, Esq.<br>Richard W. Candelora, Esq.<br>Richard Benjamin Wilkes, P.A.<br>600 South Magnolia venue<br>Suite 200<br>Tampa, Florida 33606<br>rwilkes@rbwilkes.com<br>**Attorneys for Plaintiffs** | Richard A. Morgan, Esq.<br>Buchanan Ingersoll & Rooney, P.C.<br>Bank of America Tower, 34th Floor<br>100 S.E. Second Street<br>Miami, Florida 33131<br>**Attorneys for Mark C. Klopfenstein** |
| Stephen J. Anderson, Esq.<br>Anderson Dailey LLP<br>2002 Summit Boulevard, Suite 1250<br>Atlanta, Georgia 30319<br>**Attorneys for Mark C. Klopfenstein** | Katherine W. Ezell, Esq.<br>Podhurst Orseck, P.A.<br>25 W. Flagler Street, Suite 800<br>Miami, Florida 33130<br>kezell@podhurst.com |
| Jonathan E. Altman, Esq.<br>Aaron M. May, Esq.<br>Gabriel P. Sanchez, Esq.<br>Munger, Tolles & Olson, LLP<br>355 South Grand Avenue, 35th Floor<br>Los Angeles, California 90071<br>jonathan.altman@mto.com<br>aaron.may@mto.com<br>gabriel.sanchez@mto.com<br>**Attorneys for Sidley Austin LLP** | Douglas E. Whitney, Esq.<br>McDermott Will & Emery<br>227 West Monroe Street<br>Chicago, Illinois 60606-5096<br>dwhitney@mwe.com<br>**Attorneys for Arthur Anderson, LLP** |
| Stuart E. Abrams, Esq.<br>Frankel & Abrams<br>230 Park Avenue, Suite 3330<br>New York, New York 10169<br>sabrams@frankelabrams.com | R.J. Ruble<br>1517 Avalon Square<br>Glen Cover, New York 11542<br>and<br>62 Duck Pond Road<br>Glen Voce, New York 11542 |
| P. Anthony Nissley<br>350 Melrose Avenue<br>Kenilworth, Illinois 60643 | Michael S. Marx<br>110 Townbridge Road<br>Atlanta, Georgia 30350 |