UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case No.: 06-21748 CIV-MARTINEZ/BANDSTRA

MARK J. GAINOR and ELYSE GAINOR,

    Plaintiffs,

v.

SIDLEY AUSTIN LLP, a Delaware limited liability
Partnership, f/k/a SIDLEY AUSTIN
BROWN & WOOD, f/k/a BROWN & WOOD,
R. J. RUBLE, an individual, ARTHUR
ANDERSEN, LLP, an Illinois limited liability
partnership, MICHAEL S. MARX, an individual,
P. ANTHONY NISSLEY, an individual,
MERRILL LYNCH & CO., INC., a Delaware
corporation, and MARK C. KLOPFENSTEIN,
an individual,

    Defendants.
_____/

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT MERRILL LYNCH & CO., INC.'S MOTION TO DISMISS**

Plaintiffs, Mark J. Gainor ("Gainor") and Elyse Gainor (together, "the Gainors"), by and through their undersigned attorneys, hereby respond to Defendant Merrill Lynch's Motion to Dismiss and Incorporated Memorandum of Law ("Merrill Lynch's MTD") as follows:

**I.    FACTUAL BACKGROUND**

This case arises from a well-planned conspiracy by Defendants Sidley, Austin, Brown & Wood, LLP ("Sidley"), R. J. Ruble, ("Ruble"), Arthur Andersen ("Andersen"), Michael S. Marx ("Marx"), P. Anthony Nissley ("Nissley"), Merrill Lynch & Co., Inc.

("Merrill Lynch"), and Mark C. Klopfenstein ("Klopfenstein"), in which the Defendants misused their substantial reputations and positions of trust to bilk Plaintiff Gainor out of millions of dollars. *Amended Complaint, ¶22.*

The scheme entailed Defendants inducing Plaintiff Gainor to believe that Defendants had a legal "tax strategy" (hereinafter "the Sidley Plan") which would yield Gainor millions of dollars in tax savings, and persuading Gainor to pay them over two million one hundred thousand dollars ($2,100,000) in fees to implement the Sidley Plan. *Amended Complaint, ¶23.*

In actuality, as Defendants well knew, the Sidley Plan was a fraudulent tax scheme certain to be condemned by the Internal Revenue Service. The result was that Gainor had to pay an additional seventeen million dollars ($17,000,000) in taxes and interest, and substantial additional amounts in professional fees and costs incurred in negotiations with the Internal Revenue Service. *Amended Complaint, ¶24.*

As more fully set forth in the Amended Complaint, in 1999, Andersen, Gainor's long-time and trusted accountants, aware that Gainor had recently sold his medical supply business for a substantial profit, induced Gainor to employ the Sidley Plan as a supposed means of minimizing capital gains taxes. Defendant Sidley was introduced to Gainor as the prestigious "independent" law firm that would issue opinion letters confirming the legitimacy and legality of the transactions. In truth and in fact, the Sidley Plan was designed by Defendant Sidley based largely on a previously discredited tax shelter known as BOSS. Sidley was in the business of partnering with accounting firms in the joint development and marketing of illegal tax shelters.

The Sidley Plan's implementation required the cooperation of certain co-conspirators: someone to act as an apparently independent third party purchaser, and someone to act as an apparently independent investment advisor. These roles were filled in this case, respectively, by Defendants Klopfenstein and Merrill Lynch. Defendants Marx and Nissley were employees of Defendant Andersen, and were instrumental in marketing the Sidley Plan to Gainor and effecting its implementation. Defendant Ruble was the Sidley partner who signed the opinion letters.

After the Sidley Plan had been implemented, Andersen prepared Plaintiffs' tax return for 1999, which claimed deductions for the losses purportedly created by the Sidley Plan transactions. Thereafter, in 2002, out of the blue, Sidley sent Plaintiffs a letter advising them of an IRS amnesty program by which taxpayers who had improperly claimed deductions for illegal tax shelters could possibly avoid penalties if they turned themselves in to the IRS. The letter suggested that the Gainors consult with professional advisors. Plaintiffs did consult with professional advisors, and upon their advice, contacted the IRS. After protracted negotiations, in January of 2006 Plaintiffs and the IRS settled the issue of Plaintiffs' 1999 tax liability by Plaintiffs agreeing to pay the IRS seventeen million dollars ($17,000,000).

## II    ARGUMENT AND AUTHORITIES

The Amended Complaint names Defendant Merrill Lynch in one count – Count I – which alleges a civil conspiracy. Defendant Merrill Lynch has moved to dismiss Count I pursuant to Fed. R. Civ. P. 12(b)(6), contending that Count I fails to state a claim upon which relief can be granted. Merrill Lynch posits two grounds for its motion: (1) that the claim is barred by the Statute of Limitations, and (2) that it fails to properly allege a

conspiracy. Notably, although all Defendants are named in this Count, only Defendant Merrill Lynch has asserted that it fails to properly allege a conspiracy.

### A.     Standard of Review

It is familiar law that the Court should look only to the four corners of the Complaint in determining whether a motion to dismiss for failure to state a claim should be granted. O'Connor v. Kawasaki Motors Corp., U.S.A., 699 F.Supp. 1538 (S.D. Fla. 1988); Mainstreet One Financial Plaza Ltd. v. Axis Surplus Ins. Co., 2007 WL 1888311 (S.D. Fla. 2007). Further, the court must view the complaint in the light most favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232 (1974), taking all allegations of the complaint as true and drawing all reasonable inferences therefrom in favor of the plaintiff. Jenkins v. McKeithen, 395 U.S. 411 (1969); Stephens v. Dep't of Health & Human Servs., 901 F. 2d 1571, 1573 (11th Cir. 1990). Moreover, a federal court may not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the plaintiff cannot prove any set of facts that would support a claim for relief. See Conley v. Gibson, 355 U.S. 41 (1957). Accord, e.g., Cook & Nichol, Inc. v. The Plimsoll Club, 451 F.2d 505, 506-507 (5th Cir. 1971).

### B.     The Statute of Limitations Does Not Bar this Action

Based on the above principles, the Court must assume that Florida law is applicable, as the Complaint alleges in paragraph 19 that this action arose in Dade County, Florida.[1]

---

[1]     In addition, the law of the forum state is presumed applicable. E.g., Hagen v. Viney, 169 So. 391 (Fla. 1936); Hieber v. Hieber, 151, So. 2d 646 (Fla. 3d DCA 1963); Cordrey v. Cordrey, 206 So. 2d 234 (Fla. 2d DCA 1968).

Under Florida law, the statute of limitations on a conspiracy claim begins to run when the plaintiff suffers damage as a result of the conspiracy. <u>Olson v. Johnson</u>, 2007 WL 1855687 (Fla. 2d DCA 2007).

Where, as here, a person's damage depends upon a determination of his liability to a third party, damage is not sustained, and therefore a cause of action does not accrue, until the underlying or related legal proceeding has been completed upon appellate review, or a final settlement has been executed by the parties. <u>Peat, Marwick, Mitchell & Co. v. Lane</u>, 565 So. 2d 1323 (Fla. 1990) (accountant malpractice); <u>Perez-Abreu, Zamora & de La Fe, P.A. v. Taracido</u>, 790 So. 2d 1051 (Fla. 2001) (legal malpractice); <u>Castle Construction Company v. Huttig Sash & Door Company</u>, 425 So.2d 573 (Fla. 2d DCA 1982) (indemnity); <u>Cazares v. Church of Scientology of California, Inc.</u>, 444 So.2d 442 (Fla. 5th DCA 1983) (malicious prosecution).

Significantly, the mere existence of a dispute between a taxpayer and the Internal Revenue Service does not give rise to an injury sufficient to trigger the running of the statue of limitations. <u>Peat, Marwick, Mitchell & Co.</u>, <u>supra</u>. The reason for this rule is that until there has been an irrevocable settlement of the dispute between the IRS and the plaintiff, or a complete litigation of the legality of plaintiff's tax treatment, it cannot be said with the requisite certainty that the plaintiff has in fact suffered an injury, for the underlying legal proceeding could terminate in a manner that results in no harm to the plaintiff. <u>Peat, Marwick, Mitchell & Co.</u>, <u>supra</u>; <u>Fremont Indemnity Co. v. Carey, Dwyer, Eckhart, Mason & Spring, P.A.</u>, 796 So. 2d 504 (Fla. 2001).

As stated by the Florida Supreme Court in <u>Fremont (796 So.2d at 506)</u>:

[W]e reject Carey, Dwyer's claim that Fremont began sustaining damages at least by 1989 in the form of attorney's fees and costs that it had paid because it lost the opportunity to settle the state court claim within the policy limits.

* * *

[T]he present case is a classic example of why redressable harm cannot be determined until the conclusion of the litigation. Carey, Dwyer alleges that Fremont had to pay attorney's fees and costs to defend a lawsuit that it otherwise could have settled. The settlement would have cost Fremont two million dollars. As Fremont points out in its brief, prior to the conclusion of the litigation, there was the potential of a lower settlement or judgment. Hence, even including the additional costs and fees, the possibility existed that Fremont would not suffer any redressable harm.

A number of cases have recognized, in the context of a taxpayer dealing with an IRS audit, that the cause of action does not accrue until a final resolution of the dispute between the taxpayer and the IRS is reached. Perhaps most notable is this Court's opinion in <u>Loftin v. KPMG LLP</u>, 2003 WL 22225621 (S.D. Fla. 2002) authored by Judge Ryskamp. In <u>Loftin</u>, the plaintiff, a shareholder in a regional telecommunications company, sold his stock in a transaction that netted him $30,000,000. At the urging of his banker, plaintiff Loftin contacted the accounting firm of KPMG LLP, which induced him to adopt a "tax planning strategy" that required him to employ an investment firm and entailed issuance of a "more likely than not" opinion letter by Sidley Austin Brown & Wood. The Internal Revenue Service audited the plaintiff's tax return, which KPMG had prepared, and while the audit was still in progress, Loftin filed suit against the accounting firm KPMG and Sidley and others, alleging that they fraudulently induced him to enter into the strategy. He asserted causes of action for, *inter alia*, malpractice, fraud, and negligent misrepresentation.

The defendants moved to dismiss, asserting, *inter alia,* that such causes of action had not yet arisen because Loftin, who was still negotiating with the IRS at the time the action was filed, had not yet suffered the essential element of damage. Judge Ryskamp agreed, saying:

> Loftin has failed to state claims for fraud and negligent misrepresentation because he has not established that he suffered any injury stemming from Defendants' alleged misconduct. The Amended Corrected Complaint merely establishes that Loftin is in the midst of a dispute with the IRS. According to the Complaint, "Loftin's 1997, 1999 and 2000[tax] returns are under audit by the Internal Revenue Service ('IRS') ... [he] is currently in negotiations with the IRS ... and may be assessed significant penalties." (ACC ¶ 5.) Loftin also alleges that he "has now committed to pursue settling his tax liability with the IRS and will likely have to pay substantial tax repayments, plus undetermined interest and is subject to potential penalties." (ACC ¶ 55.) Loftin argues that he has suffered an injury because he "has committed to settle with the IRS and is just waiting to be told the ultimate number." (Response to KPMG's Motion to Dismiss at 15.) Loftin speculates that he will have to pay the IRS a "hefty sum" as a settlement. (Id.) Until and unless Loftin and the IRS reach a final resolution of the dispute, it is impossible to determine whether Loftin actually suffered damages from Defendants' alleged misconduct.

As more fully set forth above, it was not until January of 2006, when the Plaintiffs settled with the IRS and subsequently wrote a check to the IRS for $17,000,000, that the Plaintiffs sustained any pecuniary loss. Accordingly, Plaintiffs did not suffer redressable harm until January of 2006, and therefore the statute of limitations did not commence running until then. Olson v. Johnson, 2007 WL 1855687 (Fla. 2d DCA 2007). Thus, Plaintiffs' conspiracy action is timely under the applicable four-year limitations statute (Fla. Stat §95.11(3)(p)).

Defendant Merrill Lynch also suggests that Count I may be barred under Georgia law. However, this suggestion is unavailing. Rule 8(c) of the Federal Rules of Civil Procedure states that the defense of the statute of limitations is an affirmative defense

which is to be raised in an answer to the complaint, not in a motion under Rule 12(b). City of Fort Lauderdale v. Ross, Saarinen, Bolton & Wilder, Inc., 815 F.Supp. 444 (S.D. Fla. 1992). The only exception to this rule is where the limitations defense affirmatively appears on the face of the complaint. Id. As more fully set forth above, the limitations defense asserted by Andersen does not appear on the face of the Complaint. Plaintiffs did not suffer damage until January of 2006, and they commenced this action against Merrill Lynch well within the limitations period measured from that date.[2] Accordingly, since the statute of limitations defense cannot be demonstrated from the face of the complaint, Merrill Lynch must raise the issue of Georgia law, if at all, in its Answer, not in a Rule 12(b)(6) motion to dismiss.

In any event, this action is timely under Georgia law. Merrill Lynch contends that a cause of action for conspiracy arises under Georgia law when the last overt act of the conspiracy occurs. However, the case Merrill Lynch cites, Service Stages, Inc. v. Greyhound Corporation, 170 F.Supp 482 (N.D. Ga. 1959), wherein the plaintiff was asserting a claim under federal antitrust law, does not support the proposition Merrill Lynch posits. Rather, Greyhound specifically says that, while the Georgia statute of limitations applies, the question as to when the cause of action accrued is governed by federal law, not Georgia law.

Under Georgia law, a cause of action for conspiracy lies not in the conspiracy itself, but in the underlying tort. Dyer v. Honea, 557 S.E.2d 20 (Ga. App. 2001). Accordingly, a conspiracy action requires proof of all the essential elements of the underlying tort. Akin v. PAFAC, Ltd., 991 F.2d 1550 (11th Cir. 1993 (applying Georgia law). In this case, the

---

[2] Indeed, Defendant concedes at pages 7 and 8 of its memo that the face of the complaint does not demonstrate that Georgia law is applicable.

underlying tort is fraud. Under Georgia law, damages are an essential element of a fraud claim. Garcia v. Unique Realty & Property Management Co., Inc., 205 Ga. App. 876 (1992); Limoli v. First Georgia Bank, 147 Ga. App. 755 (1978). Accordingly, a cause of action for conspiracy did not accrue until Plaintiffs suffered damage. Akin, supra. As more fully demonstrated above, Plaintiffs did not suffer legally redressable harm until January of 2006. Accordingly, the conspiracy claim, asserted in March of 2007, is timely under Georgia's four-year statute of limitations, Georgia Statutes §9-3-31.

Indeed, the Eleventh Circuit rejected the very argument Merrill Lynch makes in the Akin case. There the Eleventh Circuit, applying Georgia law, said:

> The gist of the Akins' conspiracy claim in not the conspiracy but the underlying fraud, and the claim therefore requires proof of all the essential elements of a fraud action under Georgia law. *See, Mobley v. Coast House, Ltd.,* 182 Ga. App. 305, 355; S.E. 2d 686, 688 (1987). Because the damages are an essential element of a fraud action, the fraud claim did not accrue until the allegedly fraudulent judgment was entered. *See Garcia v. Unique Realty & Property Management Co., Inc.,* 205 Ga. App. 876, 424 S.E.2d 14, 16 (1992) (plaintiff must have damages to successfully maintain fraud action); *Limoli v. First Georgia Bank,* 147 Ga. App. 755, 250 S.E.2d 155, 156 (1978) (fraud claim accrues on date when suit on the claim can first be successfully maintained).

**C. The Amended Complaint Properly Alleges An Actionable Conspiracy**

Merrill Lynch's contention that Plaintiffs have failed to plead all the elements of a claim for conspiracy under New York and Georgia law is without merit.

Merrill Lynch asserts (at page 9 of its motion) that "under both New York and Georgia law state law, ... [c]laims for conspiracy must allege all the elements of the underlying tort that the defendants allegedly conspired to commit." Plaintiffs agree. However, Plaintiffs strongly disagree with Merrill Lynch's further assertion that the Amended Complaint fails to do this.

9

"A conspiracy upon which a civil action for damages may be founded is a combination between two or more persons either to do some act which is a tort, or else to do some lawful act by methods which constitute a tort." Cook v. H. Robinson, et al., 216 Ga. 328 (Ga. 1960); accord, Litras v. Litras, 681 N.Y.2d 545 (N.Y. 1998). The requirement is that the collective actions of the co-conspirators, when combined together, constitute a recognized tort, and that each participant in the conspiracy intentionally agreed to be involved in what is known to be an illegal agreement. Stated another way, if the combined acts of the co-conspirators would amount to a recognized tort if performed by a single person, then a cause of action for conspiracy is properly alleged, if all participants are alleged to have agreed to combine their activities in what they knew to be tortious conduct. The conspiracy makes the act of any one conspirator the acts of all. See Cook, supra.

Thus, in order to properly allege a claim for civil conspiracy, the count merely must allege the elements of the underlying tort, and the Defendants' agreement to act together. McCrary v. AA Music Service, Inc., 115 Ga.App. 65 (Ga. App. 1967); accord, Bowman Import v. F.J. Elsner North America Ltd., 799 N.Y.2d 158 (N.Y. 2004. The Amended Complaint does this.

The underlying tort is fraud. The elements are: a misrepresentation of material fact, scienter, reasonable reliance, and damages. Bowman, supra. The Amended Complaint pleads all of these elements. Material misrepresentations are pled in paragraph 95; scienter is pled in paragraphs 85-90; reliance is pled in paragraph 96; and damage is pled in

paragraph 97. The agreement to join together in the scheme to defraud is pled in paragraphs 85-90. Clearly, the Amended Complaint states a claim for conspiracy.[3]

Merrill Lynch's final argument is that the Amended Complaint should be dismissed as against it because Plaintiffs failed to allege that Merrill Lynch had the requisite intent to achieve an unlawful purpose. This contention is unsustainable. In paragraph 85 of the Amended Complaint, Plaintiffs allege that Defendants agreed with each other to combine their activities in order to induce Plaintiff Gainor to believe the Defendants had crafted a legal tax strategy which would yield Gainor over $17,000,000 in tax savings. Paragraph 86 alleges that the purpose of this conspiracy was to cause Plaintiffs to pay Defendants over $2,100,000 in fees to implement the plan. Paragraph 88 alleges that Defendant Merrill Lynch agreed to join the conspiracy at some point in time between June and August of 1999. Paragraph 90 alleges that "at the time the Defendants agreed to combine together to induce Gainor to implement the Sidley Plan, they knew that the conspiracy had an improper purpose, as each knew that the Sidley plan was not a legitimate tax avoidance strategy, but rather was an illegal tax evasion scheme." (emphasis added). Thus, the Amended Complaint alleges that Defendants agreed to combine their activities to induce Plaintiff Gainor to employ a tax strategy which they knew, at the time they agreed, was not a legitimate tax avoidance strategy but rather was an illegal tax evasion scheme. This unquestionably adequately alleges intent.

Merrill Lynch suggests that, because IRS Notice 99-59 did not come out until December of 1999, somehow this means the Defendants could not have earlier known that their scheme was an illegal tax shelter. The fact that the IRS did not publicly condemn the

---

[3] This likewise disposes of Merrill Lynch's argument that the Amended Complaint does not plead facts entitling Plaintiffs to relief.

11

plan until December of 1999 does not mean that the Defendants did not earlier know it was condemnable. After all, they are the supposed experts in this area. While the general public likely would not have known earlier, the experts certainly should have; it's their duty to know. In any event, a Complaint should not be dismissed for failure to state their claim unless the Plaintiff can prove no set of facts to support it. Such is not the case here. Accordingly, the Motion to Dismiss should be denied.

### III.   CONCLUSION

Accordingly, Merrill Lynch's motion to dismiss must be denied.

Respectfully submitted,

_____
RICHARD BENJAMIN WILKES
Florida Bar No. 267163
**RICHARD BENJAMIN WILKES**
**ATTORNEYS AT LAW**
600 South Magnolia Avenue, Suite 200
Tampa, Florida  33606
E-Mail:        rwilkes@rbwilkes.com
Telephone:   (813) 254-6060
Facsimile:    (813) 254-6088
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of July, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Richard W. Candelora

## SERVICE LIST

Katherine W. Ezell, Esq.
KEzell@podhurst.com
Podhurst Orseck, P.A.
25 W. Flagler Street, Suite 800
Miami, FL 33130
**Counsel for Sidley Austin**

Jonathan E. Altman, Esq.
Jonathan.Altman@mto.com
Aaron May, Esq.
Aaron.May@mto.com
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071
**Counsel for Sidley Austin**

Coren Stern, Esq.
CStern@bressler.com
Bennett Falk, Esq.
BFalk@bressler.com
Bressler, Amery & Ross
2801 S.W. 149th Avenue
Miramar, FL 33027
**Counsel for Merrill Lynch**

Stuart E. Abrams, Esq.
SAbrams@frankelabrams.com
Frankel & Abrams
230 Park Avenue, Suite 3330
New York, NY 10169
**Counsel for Ruble**

R. J. Ruble
1517 Avalon Square
Glen Cove, NY 11542

Douglas E. Whitney, Esq.
DWhitney@mwe.com
McDermott Will & Emery
227 West Monroe Street
Chicago, IL 60606-5096
**Counsel for Arthur Andersen,
  Nissley and Marx**

Michael G. Austin, Esq.
MAustin@mwe.com
McDermott Will & Emery
201 South Biscayne Boulevard
Suite 2200
Miami, FL 33131
**Counsel for Arthur Andersen,
  Nissley and Marx**

Richard A. Morgan, Esq.
Richard.Morgan@bipc.com
Buchanan Ingersoll & Rooney, P.C.
Bank of America Tower
100 S.E. 2nd Street, 34th Floor
Miami, FL 33131
**Counsel for Klopfenstein**

Stephen J. Anderson, Esq.
Anderson@andersondailey.com
Anderson Dailey LLP
2002 Summit Boulevard, Suite 1250
Atlanta, GA 30319
**Counsel for Klopfenstein**

R.J. Ruble
65 Duck Pond Road
Glen Cove, NY 11542