UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MARK J. GAINOR,

       Plaintiff,

v.                                             CASE NO.: 06-21748-Civ-Martinez

SIDLEY, AUSTIN, BROWN & WOOD, LLP,

       Defendant.

_____/

### PLAINTIFF'S SECOND REQUEST FOR
### PRODUCTION OF DOCUMENTS TO DEFENDANT

Plaintiff, Mark J. Gainor, by and through his undersigned counsel and pursuant to Fla.R.Civ.P. 1.350, requests that Defendant, Sidley, Austin, Brown & Wood, produce for inspection and copying at the offices of Richard Benjamin Wilkes, Attorneys at Law, 600 South Magnolia Avenue, Suite 200, Tampa, Florida, within thirty (30) days, or at such other time and place as may be agreed upon between counsel, the originals, or if the originals are unavailable, copies of all documents hereinafter described.

**I.**    **DEFINITIONS AND INSTRUCTIONS**

a.    As used herein, "Sidley" shall mean Defendant, Sidley, Austin, Brown & Wood, its affiliates, corporations, partners, agents, servants, employees, attorneys, expert witnesses, accountants, auditors, and all persons over whom Sidley has control or who have been hired, retained or employed for any purpose by Sidley, whether directly by Sidley or through any other person or entity.

b.    As used herein, "you" or "your" shall mean Defendant, Sidley, Austin, Brown & Wood, its affiliates, corporations, partners, agents, servants, employees, attorneys, expert



EXHIBIT
H

Dockets.Justia.com

witnesses, accountants, auditors, and all persons over whom Sidley has control or who have been hired, retained or employed for any purpose by Sidley whether directly by Sidley or through any other person or entity.

c.     As used herein, "Mr. Gainor" shall mean Plaintiff, Mark J. Gainor, his agents, servants, employees, attorneys and all other persons or entities acting on his behalf.

d.     As used herein, the term "document" or "documents" shall be defined to include any and all documents, memoranda (including written memoranda of telephone conversations, oral communications, discussions, agreements, acts or activities), letters, postcards, telegrams, messages (including telephone messages), facsimiles, intra- and interoffice communications, correspondence, handwritten and/or typewritten notes, pamphlets, diaries, records of any kind, sound recordings, contracts, agreements, books, letters, reports, catalogues, financial statements, receipts, invoices, billing statements (including credit card and telephone statements), purchase orders, proposals, affidavits, advertisements, solicitations, indices, data processing cards, other data processing materials, data, maps, directives, desk pads, calendars, scrap books, notebooks, drawings, diagrams, sketches, statistical records, appointment books, diaries, computer printouts, data processing input and output, computer input and output, e-mail, microfilms, other records kept by electronic, photographic or mechanical means, and writing of every kind and character, including preliminary drafts and other copies of the foregoing, however produced or reproduced. If multiple copies of a document exist, each copy which is any way not completely identical to a copy which is being produced, should also be produced.

e.    As used herein, the "Sidley Plan" shall mean the strategy designed by Defendant, Sidley, to effectuate a tax savings to Mr. Gainor relating to the sale of assets as more fully set forth in Plaintiff's Complaint.

## II.    **DOCUMENTS TO BE PRODUCED**

1.    All documents reflecting any communications between Sidley and Arthur Andersen pertaining to:

    a.    The subject tax shelters;

    b.    Sidley's representation of Mr. Gainor;

    c.    The marketing of tax shelters to Arthur Andersen clients; and

    d.    The risks associated with the subject tax shelters.

2.    All documents reflecting any communications between Sidley and Mark Klopfenstein pertaining to:

    a.    The subject tax shelters;

    b.    Sidley's representation of Mr. Gainor;

    c.    The marketing of tax shelters to Arthur Andersen clients; and

    d.    The risks associated with the subject tax shelters.

3.    All documents reflecting any communications between Sidley and Merrill Lynch pertaining to:

    a.    The subject tax shelters;

    b.    Sidley's representation of Mr. Gainor;

    c.    The marketing of tax shelters to Arthur Andersen clients; and

    d.    The risks associated with the subject tax shelters.

4.    All documents reflecting any communications between Sidley and Alex Brown pertaining to:

    a.    The subject tax shelters;

      b.  Sidley's representation of Mr. Gainor;

      c.  The marketing of tax shelters to Arthur Andersen clients; and

      d.  The risks associated with the subject tax shelters.

5.    All documents reflecting any communications between Sidley and Southern Exposition Management Company pertaining to:

      a.  The subject tax shelters;

      b.  Sidley's representation of Mr. Gainor;

      c.  The marketing of tax shelters to Arthur Andersen clients; and

      d.  The risks associated with the subject tax shelters.

6.    All agreements between Arthur Andersen and Sidley pertaining to the subject tax shelters.

7.    All agreements between Mark Klopfenstein and Sidley pertaining to the subject tax shelters.

8.    All agreements between Alex Brown and Sidley pertaining to the subject tax shelters.

9.    All agreements between Merrill Lynch and Sidley pertaining to the subject tax shelters.

10.    All documents pertaining to Sidley's knowledge of the subject tax shelters, including any risks thereof.

11.    All documents and/or communications relating to Southern Exposition Management Company.

12.    All documents pertaining to Sidley's awareness or knowledge of Arthur Andersen's presentation of the subject tax shelters to Mr. Gainor or similarly situated taxpayers.

13.    All documents relating to Sidley's design, development and marketing of the subject tax shelters.

14.    All documents pertaining to Sidley's knowledge of the risk associated with the subject tax shelters.

15.    All documents relating to the targeting of specific Arthur Andersen clients for the subject tax shelters.

16. All documents relating to the fee basis for the representation of Mr. Gainor by Sidley.

17. All documents relating to the terms of representation between Sidley and Mr. Gainor.

18. All documents pertaining to the work done by Sidley for Mr. Gainor in connection with the representation.

19. All documents reflecting the time spent by Sidley personnel in connection with the representation.

20. All documents reflecting any communications between Sidley and Arthur Andersen and/or Mr. Gainor in connection with the impact of IRS Notice 99-59 on the opinion letters, or the Sidley Plan.

21. All documents reflecting any communications between Sidley and Mark Klopfenstein and/or Mr. Gainor in connection with the impact of IRS Notice 99-59 on the opinion letters, or the Sidley Plan.

22. All documents reflecting any communications between Sidley and Merrill Lynch and/or Mr. Gainor in connection with the impact of IRS Notice 99-59 on the opinion letters, or the Sidley Plan.

23. All documents reflecting any communications between Sidley and Alex Brown and/or Mr. Gainor in connection with the impact of IRS Notice 99-59 on the opinion letters, or the Sidley Plan.

24. All documents relating to the issuance of Sidley's correspondence dated March 14, 2002, to Mr. Gainor advising of the new IRS Voluntary Disclosure Program and recommending Mr. Gainor consult with his regular tax advisor regarding the terms and implications of the voluntary disclosure program and the advisability of his participation in the program.

25. All documents relating to any assistance provided by Sidley to Mr. Gainor in connection with the IRS audit.

26. All documents relating to Sidley's decision not to assist Mr. Gainor in connection with the IRS audit.

27. All documents reflecting Sidley's knowledge that the subject tax shelter was likely to be disallowed by the IRS.

28. All documents reflecting the awareness or consideration by Sidley that the subject transaction should have been registered as potentially abusive tax shelters under 26 USC Sec. 6111(c).

29. All documents reflecting the awareness or consideration by Sidley that investor lists needed to be maintained under 26 USC Sec. 6112 in any communications with any of the related parties regarding same.

30. All documents relating to any disclosures by Sidley with respect to its role as an organizer, promoter and seller of unregistered potentially abusive tax shelters.

31. All documents relating to any disclosure by Sidley to Mr. Gainor of Sidley's relationship with Arthur Andersen and other large accounting firms pertaining to the marketing of the subject tax shelters and related tax shelters.

32. All documents reflecting any concerns by Sidley that Mr. Gainor's ability to rely in good faith upon the advice of a tax professional was impaired by Notice 99-59.

33. All documents relating to any disclosure by Sidley to Mr. Gainor that his ability to rely in good faith upon the advice of a tax professional was impaired by Notice 99-59.

34. All documents pertaining to any affirmative defenses that Sidley believes it has to the claims asserted in this action.

35. All documents relating to Sidley's denial of any of the allegations contained in the complaint.

36. All documents regarding the professional fees and transaction costs incurred in connection with the Sidley Plan.

37. All documents regarding the tax benefits that were to be realized by Mr. Gainor as a result of entering into the Sidley Plan.

38. All documents reflecting Arthur Andersen's authority to act on Sidley's behalf in connection with the implementation of the Sidley Plan.

39. All documents reflecting any concerns that Sidley had regarding the ability of the Sidley professionals involved in the Gainor representation to properly, competently, and ethically carry out of the terms of that representation.

40. All documents reflecting Sidley's involvement in the organization and promotion of the tax shelter transactions known as Boss, Sun of Boss, Blips, COBRA, MIDCO, Flips, Opis, and Cards, spread options, common trust fund and option transfer tax shelters.

41. All documents reflecting Sidley's decision to enter into and continue in the business of organizing and promoting such tax shelters.

42. All documents pertaining to Sidley's issuance of opinion letters in connection with the subject tax shelters.

43. All documents relating to any disclosure by Sidley of its role as an organizer, promoter and seller of these subject tax shelters.

44. All documents reflecting Sidley's communication with persons in Florida pertaining to the sale, organization or delivery of opinion letters with respect to potentially abusive tax shelters such as Boss, Sun of Boss, Blips, COBRA, MIDCO, Flips, Opis, and Cards, including but not limited to such persons as Peter T. Loftin and Joseph J. Jacoboni.

RICHARD BENJAMIN WILKES
Florida Bar No. 267163
**RICHARD BENJAMIN WILKES**
**ATTORNEYS AT LAW**
600 South Magnolia Avenue
Suite 200
Tampa, Florida 33606
Telephone:    (813) 254-6060
Facsimile:    (813) 254-6088
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by first class U.S. Mail this ___11___ day of October, 2006, to:

Jonathan E. Altman, Esq.
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071

Katherine W. Ezell, Esq.
Podhurst Orseck, P.A.
25 W. Flagler Street, Suite 800
Miami, FL 33130

Attorney

7