UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-21748-CIV-MARTINEZ/BANDSTRA

MARK J. GAINOR and ELYSE GAINOR,

    Plaintiffs,

v.

SIDLEY AUSTIN LLP, a Delaware limited
liability partnership, f/k/a SIDLEY AUSTIN
BROWN & WOOD, f/k/a BROWN & WOOD,
R.J. RUBLE, an individual, ARTHUR
ANDERSEN, LLP an Illinois limited liability
partnership, MICHAEL S. MARX, an
individual, P. ANTHONY NISSLEY, an
individual, MERRILL LYNCH & CO., INC., a
Delaware corporation, and MARK C.
KLOPFENSTEIN, an individual,

    Defendants.

_____/

## DEFENDANT MERRILL LYNCH & CO.'S REPLY
## IN SUPPORT OF ITS MOTION TO DISMISS

Plaintiffs oppose the motion to dismiss (the "Motion to Dismiss") filed by Defendant Merrill Lynch & Co. ("Merrill Lynch") by asserting that they may sustain a civil conspiracy action against Merrill Lynch, despite the untimely nature of their claim and despite their failure to allege facts sufficient to sustain such a claim. Plaintiffs are either mistaken or simply refuse to acknowledge the law applicable to their claim. As pled, the Amended Complaint does not contain plausible allegations against Merrill Lynch, and thus, must be dismissed.

## I.    STANDARD OF REVIEW

Plaintiffs seek to have this Court apply an improper and recently overruled standard to the instant motion. The Motion to Dismiss included a detailed discussion of the correct standard to be applied when considering a Rule 12(b)(6) motion. *See* Motion to Dismiss at 5-7. Nevertheless, Plaintiffs unsurprisingly continue to rely upon the more liberal and relaxed pleading standard set forth in *Conley v. Gibson,* despite the recent Supreme Court decision in *Bell Atlantic Corp. v. Twombley*, which stated that *Conley's* "'no set of facts' language has been questioned, criticized, and explained away long enough… and is best forgotten as an incomplete, negative gloss on an accepted pleading standard…." --- S.Ct. ---, 2007 U.S. LEXIS 5901 *7 (2007). As noted in the Motion to Dismiss, *Twombley* now requires Plaintiffs' Amended Complaint to include "enough facts to state a claim that is plausible on its face." *Id.* at 47.

It is worth noting that the *Twombley* decision specifically addresses civil conspiracy claims such as the one at issue in this proceeding. In doing so, the Supreme Court held that a bare assertion of conspiracy will not suffice to overcome a Rule 12(b)(6) motion:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculation level on the assumption that all of the complaint's allegations are true.

*Id.* at *4-5. In other words, Plaintiffs must actually allege a plausible set of facts against Merrill Lynch sufficient enough to suggest a right of relief. Their conclusory allegations simply fail to do so.

II.     LAW & ARGUMENT

A.     The Claims Against Merrill Lynch are Time Barred

As an initial matter, Plaintiffs argue that the statute of limitations may only be raised as a defense in an answer to a complaint, and may not be raised in a motion to dismiss. *See* Opposition at 7-8. Plaintiffs' glaring misinterpretation of the law is especially curious, considering they cite to *City of Fort Lauderdale v. Ross, Saarinen, Bolton & Wilder, Inc. and Camp, Dresser & McKee*, 815 F. Supp. 444 (S.D. Fla. 1992), which stands for the completely opposite proposition:

> …when a complaint shows on its face that the limitations period has run, **the defect may be raised by a motion to dismiss**.

815 F. Supp. at 445 (emphasis added).

Plaintiffs urge this Court to apply Florida law. While the application of Florida law is debatable, even if applicable, Plaintiffs' claims are still time barred because, absent fraud or some other statutorily enumerated provision, a cause of action for civil conspiracy or economic damages accrues when the facts giving rise to the action occur. *Armbrister v. Roland Int'l Corp.*, 667 F. Supp. 802, 809 (M.D. Fla. 1987) (ruling limitation period for conspiracy cause of action begins to run on accrual, not discovery); *Young v. Ball*, 835 So. 2d 385 (Fla. 2d DCA 2003).

Plaintiffs argue that the statute of limitations begins to run when the plaintiff suffers damages as a result of the conspiracy. S*ee* Opposition at 5. According to the Amended Complaint, Plaintiffs paid fees to Merrill Lynch in 1999, and such fees should be, *arguendo*, the only damages claimed against Merrill Lynch.[1] *See* Amended Complaint at ¶109. Thus, because the statute of limitations begins to run on a conspiracy claim when the plaintiff suffers damages

---

[1] As discussed on page 9, *infra*, payment of back taxes and interest is not damages.

as a result of the alleged conspiracy, the instant claim accrued upon the payment of such fees to Merrill Lynch in 1999. Florida's four-year statute of limitations for civil conspiracy extinguishes Plaintiffs' untimely claim, filed in March 2007.

Moreover, the delayed discovery doctrine does not apply to civil conspiracy claims under Florida law. *Young,* 835 So. 2d at 385. Therefore, Plaintiffs cannot argue that their civil conspiracy claim did not accrue upon the payment of fees to Merrill Lynch, but rather, until they were on notice of the alleged conspiracy. Even if the delayed discovery doctrine was applicable, the allegations in the Amended Complaint demonstrate that Plaintiffs, in 1999, knew of and consented to all the transactions allegedly giving rise to civil conspiracy. Additionally, Plaintiffs voluntarily disclosed their participation in the Sidley Plan to the IRS prior to March 14, 2002, and therefore knew they would not be able to avail themselves of the tax benefits they sought. *See* Amended Complaint at ¶44. Plaintiffs were well aware, at that time, of both the fees paid in connection with the Sidley Plan and the IRS's disapproval of such plans. Thus, even if the delayed discovery doctrine applied to civil conspiracy actions, Plaintiffs' claim would have accrued, at the latest, more than four years prior to the filing of their claim in March 2007. Fla. Stat. §§ 95.11(3), 95.031(1) (West 2006), *Armbrister,* 667 F. Supp. at 809; *Timmins v. Firestone,* 283 So. 2d 63, 65 (Fla. 4th DCA 1973).

1.  **The Cases Cited By Plaintiffs Are Not Applicable To The Instant Proceeding**

Plaintiffs cite to various cases for the proposition that where a "person's damage depends upon a determination of his liability to a third party, damage is not sustained … until the underlying and related legal proceeding has been completed upon appellate review, or a final settlement has been executed by the parties." Opposition at 5. First, none of the cases cited by Plaintiffs deal with claims for civil conspiracy. Second, each of the cases Plaintiffs rely upon depends upon the resolution of an underlying legal proceeding. That is not the case here.

Plaintiffs voluntarily disclosed their participation in a disapproved transaction in 2002, and in doing so, conceded the correctness of the IRS's position. There was no underlying contested legal action to be resolved, there was no dispute between Plaintiffs and the IRS that required resolution by a court of competent jurisdiction, and there were no resulting damages (Plaintiffs paid taxes and interest, but no penalties were assed).

Plaintiffs cite to *Peat, Marwick, Mitchell & Co. v. Lane*, 565 So. 2d 1323 (Fla. 1990), arguing that the existence of a dispute between a taxpayer and the IRS does not give rise to an injury sufficient to trigger the running of a statute of limitations. Initially, it should be noted that the *Peat Marwick* case is an accounting malpractice case. It is thus inapplicable to Plaintiffs' civil conspiracy claim. Second, the facts in the *Peat Marwick* case are completely different from the facts here. In *Peat Marwick*, the plaintiffs received notice from the IRS of a tax deficiency, and appealed the IRS's determination in the United States Tax Court. *See* 565 So. 2d at 1324. Eventually, the plaintiffs agreed to the court's entry of a stipulated order, requiring them to pay a tax deficiency. *See id.* The plaintiffs subsequently sued their tax preparers for accounting malpractice more than two years after they received the notice from the IRS of a possible tax deficiency, but within two years of the entry of the stipulated order. In determining the accrual of the plaintiffs' accounting malpractice claim (for which a two-year statute of limitations applies), the court found that the claim could not have accrued upon their initial notice from the IRS. *See id.* at 1326. The court reasoned,

> We reject Peat Marwick's contention that an IRS deficiency determination conclusively establishes an injury upon which to base a professional malpractice action. If we were to accept that argument, the Lanes would have had to have filed their accounting malpractice action during the same time that they were challenging the IRS's deficiency notice in their tax court appeal. Such a course would have placed them in the wholly untenable position of having to take directly contrary positions in these two actions. In the tax

> court, the Lanes would be asserting that the deduction Peat Marwick advised them to take was proper, while they would simultaneously argue in a circuit court malpractice action that the deduction was unlawful and that Peat Marwick's advice was malpractice. To require a party to assert these two legally inconsistent positions in order to maintain a cause of action for professional malpractice is illogical and unjustified.

*Id.* The facts in this case stand in stark contrast to the *Peat Marwick* case. Plaintiffs here conceded the correctness of the IRS's position prior to March 2002, when they voluntarily disclosed their participation in the Sidley Plan. Had Plaintiffs brought their lawsuit at such time, they would not have been asserting two legally inconsistent positions. Furthermore, the *Peat Marwick* court distinguished its decision from the case of *Sawyer v. Earle*, 541 So. 2d 1232 (Fla. 2d DCA 1989), a legal malpractice claim by a client against his former lawyer. In *Sawyer*, the plaintiff's claim accrued when "the client understood and believed that his representation had not been proper...." *See Peat Marwick*, 565 So. 2d at 1324. The facts in this case are strikingly similar. Plaintiffs in this case clearly understood and believed that the advice they received in connection with the design and implementation of the Sidley Plan was not proper when they voluntarily disclosed their participation to the IRS. Thus, even if the *Peat Marwick* case could be considered precedent with respect to Plaintiffs' civil conspiracy claim, it establishes that Plaintiffs' civil conspiracy claim accrued, at the very latest, at the time they disclosed their participation in the Sidley Plan to the IRS prior to March 2002. Additionally, *Peat Marwick* also cites the *Sawyer* case for the proposition that a plaintiff's inability to determine the exact amount or full extent of damages at the time does not toll the statute of limitations. *See id.* at 1326. Thus, Plaintiffs' civil conspiracy claim is untimely even under the rationale in the *Peat Marwick* case.

*Perez-Abreu, Zamora & de La Fe P.A. v. Taracido*, 790 So. 2d 1051 (Fla. 2001), is equally inapplicable to the instant proceeding. In such case, the court essentially applied the

accounting malpractice reasoning of *Peat Marwick* to legal malpractice, with little additional reasoning. Similar to *Peat Marwick*, the plaintiffs' legal malpractice claims in *Perez-Abreu* were dependent on the outcome of an underlying action to determine liability. Such is not the case here.

The other two cases cited by Plaintiffs, *Castle Construction Co. v. Huttig Sash & Door Co.*, 425 So. 2d 573 (Fla. 2d DCA 1982) and *Cazares v. Church of Scientology of California, Inc.*, 444 So. 2d 442 (Fla. 5th DCA 1983) respectively deal with indemnity and malicious prosecution claims. Like *Peat Marwick* and *Perez-Abreu*, they do not pertain to civil conspiracy claims.

All of the cases cited by Plaintiffs have one common element that is not present in the instant proceeding. Each deals with claims where the result of a prior case is an element of the cause of action. The claims for professional negligence in connection with accounting or legal services in the cited cases depended upon unfavorable results in underlying accounting or legal actions. Indemnity claims are triggered by an unfavorable result in the prior case. Malicious prosecution claims require a favorable result in the prior case. In all of the aforementioned cases, the claim could not have accrued while the prior case was still ongoing. Such is not the case here because, in March 2002, Plaintiffs consented to liability by participating in the IRS's amnesty program.

**B.     The Elements for Civil Conspiracy Have Not Been Pled as to Merrill Lynch**

Assuming Plaintiffs are able to overcome issues relating to the statute of limitations, they have failed to allege the requisite elements of a civil conspiracy claim against Merrill Lynch. Florida, Georgia, and New York law uniformly require Plaintiffs to allege that a party intended to commit an unlawful act. *Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d

490, 502 (Fla. 3d DCA 1994); *Darraugh v. Carrington*, 34 N.Y.S.2d 742, 742-43 (N.Y. App. Div. 1942); and *Woodruff v. Hughes*, 58 S.E. 551, 553 (Ga. Ct. App. 1907).

      In a conclusory fashion, Plaintiffs' Opposition states that Merrill Lynch had the requisite level of knowledge to satisfy the intent requirement for a civil conspiracy claim. However, when actually detailing the relevant facts, there is scarce, if any, detailed factual allegations concerning Merrill Lynch's intent to commit an unlawful act or participate in a scheme to accomplish an unlawful goal. Plaintiffs go into elaborate detail describing the actions of Arthur Anderson and Sidley Austin in developing and implementing the Sidley Plan. Opposition at 9-11. According to the Amended Complaint, both Arthur Anderson and Sidley Austin advised Plaintiffs on tax matters, provided ongoing tax-related services, developed the Sidley Plan, and then marshaled the services of necessary third parties to implement the Sidley Plan. Plaintiffs do not allege that Merrill Lynch was instrumental in designing the Sidley Plan, was a tax expert or specialist, provided tax advice, or advertised the Sidley Plan. The only thing Merrill Lynch did was provide a loan and execute the purchase of the T-bills. Amended Complaint at ¶71.

      Plaintiffs' allegations with respect to Merrill Lynch's intent are simply not sufficient to survive a motion to dismiss under the *Twombley* standard. Plaintiffs' Opposition points to the allegations that Defendants "knew that the conspiracy had an improper purpose, as each knew that the Sidley Plan was not a legitimate tax avoidance strategy, but rather, was an illegal tax evasion scheme." Opposition at 11. As previously noted, however, IRS Notice 99-59 was not published until after Merrill Lynch's alleged involvement had concluded. For Plaintiffs to argue that Merrill Lynch should have known of the Sidley Plan's illegality because they "are the supposed experts" is ridiculous. Opposition at 12. Merrill Lynch is not in the business of

providing accounting or legal services, and Plaintiffs make no allegation that Merrill Lynch rendered any opinion with respect to the tax implications of the transactions at issue. Further, Plaintiffs do not allege that Merrill Lynch knew enough about the Sidley Plan such that they could have known of its illegality, nor do they make any plausible allegation that Merrill Lynch knew or could have known of the problems inherent in the Sidley Plan. Plaintiffs' weak assertion that Merrill Lynch should have known of the plans illegality, without more, is simply a desperate attempt to cure the fatal deficiencies in the Amended Complaint. Plaintiffs have made no plausible allegations, as they must, that Merrill Lynch had knowledge of the defects in the Sidley Plan.

Florida, Georgia, and New York law also uniformly require Plaintiffs to allege damages as a necessary element to their civil conspiracy claim. Plaintiffs claim that their damages consist of the alleged $17,000,000 tax liability resulting from their IRS settlement. To this end, Plaintiffs spend a significant amount of time trying to analogize *Loftin v. KPMG*, 2002 U.S. Dist LEXIS 26909 (S.D. Fla. 2002) to the instant case. First, there are no claims for civil conspiracy in *Loftin*. Second, Plaintiffs conveniently ignore the portion of the opinion that states, "if Loftin's settlement payment amounts to nothing more than payment for back taxes and interest, he **will not have suffered an injury**."[2] *Loftin*, 2002 U.S. Dist LEXIS at *24 (emphasis added). In other words, back taxes and interest are not considered damages. Thus, to the extent that Plaintiffs rely upon their payment of back taxes as a necessary element of their civil conspiracy claim, Plaintiffs fall short of alleging a plausible set of facts to support the claims against Merrill Lynch.[3]

---

[2] Coincidentally, this sentence occurs once sentence after the long block quote found on page 7 of the Opposition.
[3] In light of *Loftin*, Plaintiffs cannot rely upon their payment of taxes as the damages element of their claim. The damages element of their claim thus must be the fees paid to Merrill Lynch in 1999 and the alleged professional fees incurred in connection with their voluntary disclosure to the IRS in 2002.

To the extent that New York or Georgia law is controlling, claims for civil conspiracy must allege all the elements of an underlying tort that the defendants allegedly conspired to commit. *Romano v. Romano*, 767 N.Y.S.2d 841, 842 (N.Y. App. Div. 2003); *McCrary v. AA Music Serv., Inc.*, 153 S.E.2d 643, 646 (Ga. Ct. App. 1967). Yet, the only claim pending against Merrill Lynch is for civil conspiracy. Despite Plaintiffs' assertion that the underlying tort is fraud, Plaintiffs fail to allege it in a separate count, with no explanation for their failure to do so.

Finally, Plaintiffs' attempt at attaching fraud allegations as to Merrill Lynch fails because they have made no such allegations. Even their general allegations of fraud are defective because they must be plead with specificity. *See Pafumi et al. v. Davidson et al.*, 2007 U.S. Dist. LEXIS 43138, *8 (S.D. Fla. 2007) ("When alleging fraud, a complaint must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b)."). It is difficult to imagine that a plaintiff who pleads fraud by implication, as Plaintiffs here attempt to do, can satisfy such a heightened pleading requirement.

### III.   CONCLUSION

The Amended Complaint is fundamentally flawed, and cannot be cured by repleading. Thus, for the reasons stated above and the reasons stated in the Motion to Dismiss, Merrill Lynch respectfully requests that this Court dismiss, with prejudice, Plaintiffs' Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,

Bressler, Amery & Ross, P.C.
Counsel for Defendants Merrill
   Lynch, Pierce, Fenner &
   Smith Inc. and Merrill Lynch
   Private Finance LLC
2801 S.W. 149th Avenue, Suite 300

Miramar, FL  33027
Telephone:    954-499-7979
Facsimile:    954-499-7969
Email:        cstern@bressler.com

/s/Coren H. Stern
Bennett Falk
Fla. Bar No. 208884
Coren H. Stern
Fla. Bar No. 0644218

860585-3                    11

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing *Defendant Merrill Lynch & Co., Inc.'s Reply In Support of Its Motion to Dismiss* has been served this 23rd day of July, 2007 to all parties on the attached service list via the Court's CM/ECF system or if such person(s) is not subscribed to the same, via U.S. Mail.

/s/Coren H. Stern

## SERVICE LIST

| | |
|---|---|
| Richard Benjamin Wilkes, Esq.<br>Richard W. Candelora, Esq.<br>Richard Benjamin Wilkes, P.A.<br>600 South Magnolia venue<br>Suite 200<br>Tampa, Florida 33606<br>rwilkes@rbwilkes.com<br>**Attorneys for Plaintiffs** | Richard A. Morgan, Esq.<br>Buchanan Ingersoll & Rooney, P.C.<br>Bank of America Tower, 34th Floor<br>100 S.E. Second Street<br>Miami, Florida 33131<br>**Attorneys for Mark C. Klopfenstein** |
| Stephen J. Anderson, Esq.<br>Anderson Dailey LLP<br>2002 Summit Boulevard, Suite 1250<br>Atlanta, Georgia 30319<br>**Attorneys for Mark C. Klopfenstein** | Katherine W. Ezell, Esq.<br>Podhurst Orseck, P.A.<br>25 W. Flagler Street, Suite 800<br>Miami, Florida 33130<br>kezell@podhurst.com |
| Jonathan E. Altman, Esq.<br>Aaron M. May, Esq.<br>Gabriel P. Sanchez, Esq.<br>Munger, Tolles & Olson, LLP<br>355 South Grand Avenue, 35th Floor<br>Los Angeles, California 90071<br>jonathan.altman@mto.com<br>aaron.may@mto.com<br>gabriel.sanchez@mto.com<br>**Attorneys for Sidley Austin LLP** | Douglas E. Whitney, Esq.<br>McDermott Will & Emery<br>227 West Monroe Street<br>Chicago, Illinois 60606-5096<br>dwhitney@mwe.com<br>**Attorneys for Arthur Anderson, LLP** |
| Stuart E. Abrams, Esq.<br>Frankel & Abrams<br>230 Park Avenue, Suite 3330<br>New York, New York 10169<br>sabrams@frankelabrams.com | R.J. Ruble<br>1517 Avalon Square<br>Glen Cover, New York 11542<br>and<br>62 Duck Pond Road<br>Glen Voce, New York 11542 |
| P. Anthony Nissley<br>350 Melrose Avenue<br>Kenilworth, Illinois 60643 | Michael S. Marx<br>110 Townbridge Road<br>Atlanta, Georgia 30350 |