Case No. 06-21748-CIV-MARTINEZ-BANDSTRA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-21748-CIV-MARTINEZ-BANDSTRA

MARK J. GAINOR and ELYSE GAINOR,

    Plaintiffs,

v.

SIDLEY AUSTIN, LLP, a Delaware limited liability Partnership, f/k/a BROWN & WOOD, R.J. RUBLE, an individual, ARTHUR ANDERSEN, LLP, an Illinois limited liability partnership, MICHAEL S. MARX, an individual, P. ANTHONY NISSLEY, an individual, MERRILL LYNCH & CO., INC., a Delaware corporation, and MARK C. KLOPFENSTEIN, an individual,

    Defendants.

## DEFENDANT SIDLEY AUSTIN LLP'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DAMAGES

3330930.1

Case No. 06-21748-CIV-MARTINEZ-BANDSTRA

Defendant Sidley Austin LLP ("Brown & Wood") moves this Court for partial summary judgment of Plaintiffs' claim to recover, as damages, fees and expenses incurred by corporate and partnership entities involved in Plaintiffs' tax avoidance transactions.[1]

## I. INTRODUCTION

In January 1999, Plaintiff Mark Gainor made over $100 million in cash and stock when he sold his company, Gainor Medical Management. Rather than pay his taxes, Gainor undertook a series of tax avoidance transactions over a span of four months designed to generate about $70 million in capital losses ("the § 301 Transactions"). Gainor utilized two corporations, and a limited partnership that owned these corporations, to effectuate the § 301 Transactions. The limited partnership, in which Gainor served as a limited partner, subsequently sold both corporations. In 2004, the IRS disallowed Gainor's tax deductions flowing from the § 301 Transactions and required Gainor and his wife (collectively, "Plaintiffs") to pay over $17 million in back taxes and interest.

Plaintiffs have now sued Gainor's former advisors, including Brown & Wood, seeking attorney fees, accounting fees, and loan facility fees paid in connection with the § 301 Transactions. Although Plaintiffs claim that they paid these fees, the undisputed evidence shows that the two corporations Gainor used to conduct the § 301 Transactions actually paid the fees, not Plaintiffs. The law does not permit Plaintiffs to sue for fees that the corporations paid; this Court should therefore grant partial summary judgment and strike Plaintiffs' prayer for attorneys fees, accounting fees, and loan facility fees.

Plaintiffs also seek as damages the difference in value between (1) what the limited partnership that owned the two corporations received for selling them, and (2) the corporations'

---

[1] This Motion for Partial Summary Judgment seeks to eliminate certain categories of fees and expenses that Plaintiffs claim as damages, but which are not recoverable as a matter of law. We believe resolution of this Motion may significantly streamline the issues for decision in this litigation. If the evidence at the close of discovery warrants it, Brown & Wood will seek the court's permission to file a summary judgment motion disposing of the entire matter, mindful of the page limitations imposed by Local Rule 7.1.C.2.

supposed actual value. Again, Plaintiffs did not suffer these alleged damages, the partnership did, and Plaintiffs can no more sue for harm suffered by a partnership than they can sue for fees paid by a corporation. This Court should grant partial summary judgment on Plaintiffs' "difference in value" damages as well.

## II. STATEMENT OF UNDISPUTED FACTS[2]

### A. Gainor Realizes A Significant Gain And Decides To Avoid Paying His Taxes

In January 1999, Plaintiff Mark Gainor sold most of the assets of his company, Gainor Medical Management, LLC ("GMM"), to Matria, Inc. for over $100 million in cash and stock. (Separate Statement of Undisputed Facts (hereinafter "Fact") No. 1.)[3] As a result, Gainor and his wife personally owed roughly $17 million in taxes. (Fact No. 2.) Gainor asked Defendant Arthur Andersen ("Andersen"), his longtime financial advisors in Georgia, if a strategy existed that could help him reduce his taxes. (Fact No. 3.) Andersen told Gainor that by engaging in two essentially identical transactions (the "§ 301 Transactions") he could potentially avoid paying any of the $17 million in taxes. (Fact No. 4.) Gainor decided to execute the § 301 Transactions.[4] (Fact No. 5.)

### B. Corporations Paid All Of Gainor's Legal and Accounting Fees

The § 301 Transactions involved the use of corporate entities -- Bryan Medical, Inc. ("Bryan Medical") and Lucor Special Investments, Inc. ("Lucor").[5] (Fact No. 6.) Both Bryan Medical and Lucor were owned by MJG Partners, a limited partnership in which Gainor serves as a limited partner (the general partner is a limited liability company owned by Mark and Elyse Gainor). (Fact Nos. 7, 15.) Bryan Medical and Lucor, not Gainor, entered into written contracts with Defendants Andersen and Merrill Lynch, and Bryan Medical and Lucor paid the fees and

---

[2] Brown & Wood accepts these facts as undisputed for purposes of this motion only

[3] References to "Fact No. ___" refer to the numbered facts in the Separate Statement of Undisputed Facts filed concurrently herewith.

[4] The precise mechanics of the § 301 Transactions are not material to this Motion.

[5] Lucor is the successor to Gainor Medical U.S.A., Inc. ("GMUSA"). (Fact No. 8.) Lucor and Bryan are Georgia corporations. (Fact No. 6.) MJG Partners was also formed in Georgia. (Fact No. 7.)

transaction costs that Plaintiffs now seek to recover in this litigation. (Fact Nos. 9,10,11,13, 22-27, 31.) Gainor has admitted as much to the IRS under penalty of perjury. (Fact No. 31.)

MJG Partners and its corporate entities executed the § 301 Transactions from September through December 1999. (Fact Nos. 9-18, 20.) As part of the transactions, Bryan Medical and Lucor purchased U.S. Treasury bills with funds borrowed from Merrill Lynch. (Fact Nos. 12, 14.) Gainor neither personally borrowed money from Merrill Lynch nor paid any of the fees and transaction costs associated with the Merrill Lynch loans. (Fact Nos. 11-14, 24-27, 31.)

On September 28, 1999, Bryan Medical entered into a margin loan agreement with Merrill Lynch. (Fact No. 11.) Merrill Lynch agreed to extend credit of up to $48 million to Bryan Medical. (Fact No. 11.) Bryan Medical then borrowed $38.1 million and used it to acquire over $40 million in U.S. Treasury bills, which secured the loan. (Fact No. 12.) On October 18, 1999, Lucor entered into a margin loan agreement with Merrill Lynch for a credit facility of up to $33 million (Fact No. 13.) Lucor borrowed $28.6 million and purchased over $30 million in U.S. Treasury bills, which secured this loan. (Fact No. 14.) Gainor signed the loan agreements on behalf of Bryan Medical and Lucor, not on his own behalf. (Fact Nos. 11, 13.)

Once Bryan Medical and Lucor had obtained the Merrill Lynch loans and bought the Treasury bills, MJG Partners sold both corporations to a company called Palladium, Inc. and its subsidiaries, Bryan Holdings and LSI Holdings; Palladium paid $767,165 for Bryan Medical and $987,759 for Lucor.[6] (Fact Nos. 17-21.)

In January 2000, Bryan Medical and Lucor paid all the fees owed to Andersen and Brown & Wood out of funds drawn from the Bryan Medical and Lucor brokerage accounts with Merrill Lynch. (Fact Nos. 22, 23, 31.) On January 6, Bryan Medical and Lucor paid Andersen $392,000 and $300,000 respectively. (Fact No. 22.) On January 25, Bryan Medical and Lucor each paid Brown & Wood $200,000 for legal opinions concerning the § 301 Transactions. (Fact No. 23.)

---

[6] Defendant Mark Klopfenstein owned Palladium.

Merrill Lynch charged a loan facility fee and interest in conjunction with its loans to Bryan Medical and Lucor. (Fact No. 24.) On December 17, 1999 -- three days after MJG Partners sold Bryan Medical -- the corporation repaid its loan to Merrill Lynch with interest. (Fact No. 25.). On December 29, 1999 -- one week after MJG Partners sold Lucor -- the corporation repaid its loan to Merrill Lynch with interest. (Fact No. 26.). Altogether, Bryan Medical paid $605,598 and Lucor paid $432,848 in fees and interest to Merrill Lynch.[7] (Fact No. 24.) Bryan Medical also paid a $10,000 flat fee to Merrill Lynch's attorneys, Loeb & Loeb, while Lucor paid a $6,000 flat fee to Loeb & Loeb. (Fact No. 27.)

On its 1999 tax returns, MJG Partners reported a $39,972,278 capital loss from the sale of the shares of Bryan Medical. (Fact No. 28.) MJG Partners reported a $30,596,521 capital loss on the sale of the shares of Lucor. (Fact No. 28.) MJG Partners' losses passed through to Plaintiffs' 1999 personal federal tax return. (Fact No. 28.)

The IRS audited Plaintiffs' 1999 federal tax return. (Fact No. 29.) On January 20, 2006, Plaintiffs settled with the IRS and paid $17 million in back taxes and interest. (Fact No. 30.) Plaintiffs paid no penalties. (Fact No. 30.)

### III. PROCEDURAL BACKGROUND

In 2006, Gainor brought suit against Brown & Wood in Florida state court, seeking the fees discussed above, as well as all of his back taxes and interest, a figure in excess of $17 million. Brown & Wood removed the case to federal court on diversity grounds. On March 2, 2007, Gainor amended his complaint to add his wife, Elyse Gainor as a plaintiff, and Andersen, Merrill Lynch ("Merrill"), Mark Klopfenstein, R.J. Ruble, Michael Marx, and Anthony Nissley as defendants.

On December 6, 2006, Brown & Wood served its first set of interrogatories on Gainor. (Plaintiff Mark Gainor's Responses to Defendant Brown & Wood's First Set of Rule 26.1.G

---

[7] According to Merrill Lynch documents provided by Plaintiffs' counsel, Bryan Medical paid $510,348 in interest and a $92,500 facility fee; Lucor paid $361,348 in interest and a $71,500 facility fee. (Fact No. 24.)

Case No. 06-21748-CIV-MARTINEZ-BANDSTRA

Interrogatories, Exh. C.) Interrogatory No. 6 asked: "Please state each item of damage that you claim . . ." *Id.* at 11. On January 11, 2007, Gainor served his response in the form of a table. (Damages Summary, Exh. D.) Gainor indicated that he seeks:

- $400,000 in attorneys fees paid to Brown & Wood;
- $692,000 in accounting fees paid to Andersen;
- $1,038,446 in and fees and interest paid to Merrill; and
- $1,167,500 paid to Palladium, Inc. (formerly TransStar), an amount Gainor described as the "[d]ifference between purchase price and value of securities conveyed."

## IV. <u>ARGUMENT</u>

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial." *Int'l Stamp Art, Inc. v. U.S. Postal Serv.*, 456 F.3d 1270, 1273-74 (11th Cir. 2006) (citation and quotation marks omitted). Where, as here, a case involves a complicated fact pattern and multiple causes of action, "summary judgment may be proper as to some causes of action but not as to others, or as to some issues but not as to others . . . .". *Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir. 1981).

### A. <u>As A Matter Of Law, Plaintiffs Cannot Recover Fees Paid By Bryan Medical And Lucor Because Plaintiffs Did Not Pay Those Fees</u>

Plaintiffs seek as damages the fees paid to Brown & Wood, Andersen, and Merrill, as well as interest paid to Merrill. There is no dispute, however, that *Plaintiffs did not pay these fees and interest*, Bryan Medical and Lucor did. It is axiomatic that "the owner of a corporation and the corporation are treated as separate entities. This is so even though the owner uses the corporation or controls it to promote [his] own ends." *United States v. Fidelity Capital Corp.*, 888 F.2d 1344, 1348 (11th Cir. 1989) (citation and quotation marks omitted) (applying Georgia

law).[8] Thus, the owner of a corporation "in his individual capacity cannot pursue a claim on behalf of [the corporation]." *KMS Rest. Corp. v. Wendy's Int'l*, 361 F.3d 1321, 1324 (11th Cir. 2004) (applying Florida law).

Because it is undisputed that Bryan Medical and Lucor, not Gainor, paid the fees at issue here, this Court should grant partial summary judgment in favor of Brown & Wood and hold that Plaintiffs cannot recover as damages attorneys fees, accounting fees, loan fees, and interest or any other amounts claimed as damages that Bryan Medical and Lucor paid to Brown & Wood, Andersen, and Merrill.

### B. As A Matter Of Law, Plaintiffs Cannot Recover The Difference Between The Purchase Price Palladium Paid For Bryan Medical and Lucor And The Value Of The Securities Conveyed To Palladium Because MJG Partners, Not Plaintiffs, Owned Bryan Medical and Lucor

Plaintiffs allege that they suffered injury when Palladium bought Bryan Medical and Lucor at a discount. They calculate their damages as the "[d]ifference between purchase price and value of securities conveyed" (*see* Exh. D), and allege that they received $1,167,500 less than they should have. *Id.*

Again, Plaintiffs' theory fails because Plaintiffs did not own any shares of Bryan Medical or Lucor at the time Palladium bought them; instead, MJG Partners owned 100% of both corporations. Although Gainor served as a limited partner in MJG Partners, he has no right to sue directly for injuries the partnership suffers. *Goldome Sav. Bank v. Wulsin*, 530 So.2d 291, 293 (Fla. 1988) (holding that under the Uniform Limited Partnership Act ("ULPA"), which was adopted by both Florida and Georgia, "limited partners ordinarily cannot sue" on behalf of the partnership); *see* Ga. Code § 14-9-1001 (adopting revised ULPA); Fla. Stat. § 620.2002 (same).

---

[8] Georgia law applies as the two corporations and one partnership at issue, Bryan Medical, Lucor, and MJG Partners, were all formed in Georgia. *See Peller v. Southern Co.*, 911 F.2d 1532, 1536 (11th Cir. 1990) (law of state of incorporation governs rights of corporation and its shareholders). Regardless, Florida law is identical. *See In re Miner*, 185 B.R. 362, 366 (N.D. Fl. 1995) ("The law of Florida is that corporations, even closely held corporations, are distinct legal entities from their stockholders.") (citing *111 Properties, Inc. v. Lassiter*, 605 So.2d 123, 126 (Fla. 4th DCA 1992)), *aff'd sub nom. Miner v. Bay Bank & Trust Co.*, 83 F.3d 436 (11th Cir. 1996).

Case No. 06-21748-CIV-MARTINEZ-BANDSTRA

"[A] limited partner's power to vindicate a wrong done to the limited partnership and to enforce redress for the loss or diminution in value of his interest is no greater than that of a stockholder of a corporation." *Strain v. Seven Hills Assoc.*, 75 A.D.2d 360, 371, 429 N.Y.S.2d 424, 432 (1980) (interpreting New York and Ohio partnership law, both of which are modeled after the same ULPA).

Because, as a matter of law, Plaintiffs cannot sue individually for injuries to MJG Partners, this Court should grant partial summary judgment in Brown & Wood's favor on Plaintiffs' claim for damages based on the difference between the price paid for Bryan Medical and Lucor and the value of the securities conveyed.

## V. CONCLUSION

For the foregoing reasons, Brown & Wood respectfully requests that this Court grant partial summary judgment and strike Plaintiffs' claims for attorneys fee paid to Brown & Wood, accounting fees paid to Andersen, loan facility fees paid to Merrill, and damages Plaintiffs describe as the difference between the purchase price of Bryan Medical and Lucor and the value of the securities conveyed.

DATED: July 26, 2007

MUNGER, TOLLES & OLSON LLP
355 S. Grand Ave., 35th Floor
Los Angeles, CA 90071
(213) 683-9100 / Fax (213)687-3702

By: _____
Jonathan E. Altman
Admitted Pro Hac Vice
Gabriel.Sanchez@mto.com

*Attorneys for Defendant Sidley Austin LLP*

Case No. 06-21748-CIV-MARTINEZ-BANDSTRA

DATED: July 24th, 2007

PODHURST ORSECK, P.A.
City National Bank Building
25 West Flagler Street, Suite 800
Miami, FL 33130
(305) 358-2800 / Fax (305) 358-2382

By: /s/ Katherine W. Ezell
Katherine W. Ezell
Florida Bar No. 114771
kezell@podhurst.com

*Attorneys for Sidley Austin LLP*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy was sent via the Southern District of Florida's CM/ECF System and/or electronic mail to all counsel of record and by U.S. Mail to the pro se parties identified on the attached Service List this 26th day of July, 2007.

        Respectfully submitted,

        PODHURST ORSECK, P.A.
        25 West Flagler Street, Suite 800

        Tel. (305) 358-2800 / Fax (305) 358-238
        kezell@podhurst.com


        By: s/Katherine W. Ezell
            KATHERINE W. EZELL
            Fla. Bar No. 114771

        And

        MUNGER, TOLLES & OLSON, LLP
        Jonathan E. Altman, Esq.
        jonathan.altman@mto.com
        Aaron M. May, Esq.
        Aaron.may@mto.com
        Gabriel P. Sanchez, Esq
        gabriel.sanchez@mto.com
        355 South Grand Avenue, 35th Floor
        Los Angeles, CA 90071-1560
        (613) 683-9100/Fax (613) 683-5136

        Attorneys for Defendant Sidley Austin, LLP

**SERVICE LIST**

Richard Benjamin Wilkes, Esq.
Richard W. Candelora, Esq.
Richard Benjamin Wilkes, P.A.
600 South Magnolia Avenue, Suite 200
Tampa, FL 33606
Tel. #: (813) 254-6060
Fax #: (813) 254-6088
E-Mail: rwilkes@rbwilkes.com
Attorneys for Plaintiffs

Stephen J. Anderson, Esq.
2002 Summit Blvd., Suite 1250
Atlanta, GA 30319
Tel. #: (404) 442-1800
Fax #: (404) 442-1820
E-mail: Anderson@andersondailey.com
Attorneys for Mark C. Klopfenstein

Richard A. Morgan, Esq.
E-mail: richard.morgan@bipc.com
Kelly A. McGovern, Esq.
E-mail: kelly.mcgovern@bipc.com
Buchanan Ingersoll & Rooney, PC
Bank of America Tower, 34th Floor
100 Southeast Second Street
Miami, FL 33131
Tel. #: (305) 347-4080
Fax #: (305) 347-4089
Attorneys for Mark C. Klopfenstein

Bennett Falk, Esq.
E-mail: bfalk@bressler.com
Coren Harris Stern, Esq.
E-mail: cstern@bressler.com
Bressler, Amery & Ross
2801 S.W. 149th Ave.
Miramar, Fl 33027
Tel #: (954) 499-7979
Fax #: (954) 499-7969
Attorneys for Merrill Lynch & Co., Inc.

Douglas E. Whitney, Esq.
McDermott Will & Emery
227 West Monroe Street
Chicago, IL 60606-5096
Tel. #: (312) 372-2000
Fax #: (312) 984-7700
E-mail: dwhitney@mwe.com
Attorneys for Arthur Andersen, LLP,
 P. Anthony Nissley and Michael S. Marx

Michael G. Austin, Esq.
McDermott Will & Emery
201 South Biscayne Boulevard, Suite 2200
Miami, FL 33131
Tel. #: (305) 347-6517
Fax #: (305) 347-6500
E-mail: maustin@mwe.com
Attorneys for Arthur Andersen, LLP,
 P. Anthony Nissley and Michael S. Marx

Jocelyn d. Francoeur, Esq.
McDermott Will & Emery, LLP
227 W. Monroe St., Suite 4400
Chicago, IL 60606-5096
Tel. #: (312) 372-2000
Fax #.: (312) 984-7700
E-mail: jfrancoeur@mwe.com
Attorneys for Arthur Andersen, LLP,
 P. Anthony Nissley and Michael S. Marx

Stuart E. Abrams, Esq.
Frankel & Abrams
230 Park Avenue, Suite 3330
New York, NY 10169
Tel. #: (212) 661-5000
Fax #: (212) 661-5007
E-mail: sabrams@frankelabrams.com

R.J. Ruble
1517 Avalon Square
Glen Cove, NY 11542