# **<u>EXHIBIT C</u>**

Dockets.Justia.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-21748-CIV-MARTINEZ

MARK J. GAINOR,

Plaintiff,

v.

SIDLEY AUSTIN BROWN & WOOD, LLP,

Defendant.

## FIRST SET OF RULE 26.1.G INTERROGATORIES

Defendant Sidley Austin LLP ("Brown & Wood") propounds the following interrogatories upon Plaintiff Mark J. Gainor ("Plaintiff") and requests that they be answered separately, fully, and under oath with thirty (30) days of service pursuant to Fed.R.Civ.P. 33 and S.D. Fla. L.R. 26.1.G.

## DEFINITIONS

(a)     The words "you," "yours" and /or "yourselves" means Plaintiff Mark J. Gainor and any agents, attorneys, investigators, accountants, representatives or other person or entity acting or purporting to act on his behalf or for his benefit including but not limited to Gainor Family Trusts; Bryan Holdings, LLC; Bryan Medical, Inc.; Bryan Ventures, Inc.; Gainor Medical USA, Inc.; Gainor Medical Management, LLC; Logos Corporation; LSI Holdings, LLC; Lucor Partners, Ltd.; Lucor Special Investments; MJG Partners, LP; MJG Ventures LLC; Palladium Financial Trust; TransStar, and any predecessor, successor, or affiliate entities, and any employees, agents, attorneys, directors, officers, investigators, accountants, representatives, or other persons acting on their behalf.

(b)     As used herein, "Brown & Wood"" means Defendant Sidley Austin LLP, including its predecessors Brown & Wood LLP and Sidley Austin Brown & Wood LLP, and any

12137832

or all of their present or former partners, attorneys, employees, agents, investigators, accountants, or representatives.

(c)     As used herein, "Arthur Andersen" means Arthur Andersen LLP, including any predecessor entities, and any or all of its present or former partners, employees, agents, attorneys, investigators, accountants, or representatives.

(d)     As used herein, the "Transaction" means the transactions that Mr. Gainor entered into beginning on or about August 3, 1999 involving the purchase and sale of Treasury Bills, such transactions being more fully described in the letter from Brown & Wood to Mr. Gainor dated December 31, 1999 (Bates labeled Gainor 53 to Gainor 99 ).

(e)     As used herein, the term "tax strategy" means any tax strategy, tax shelter, or other method of reducing tax liabilities designed to produce more than $5,000 in tax savings (other than the mortgage interest deduction).

(f)     The singular shall include the plural and vice versa; the terms "and" or "or" shall be both conjunctive and disjunctive; and the term "including" mean "including without limitation."

(g)     "Date" shall mean the exact date, month and year, if ascertainable or, if not, the best approximation of the date (based upon the relationship with other events).

(h)     The word "document" shall be construed in the broadest possible sense and shall include, without limitation, all written, reported, recorded, or graphic matter, however produced and reproduced, in your actual or construction possession, custody, care or control, which pertain directly or indirectly, in whole or in part, either to any of the subjects listed below or to any other matter relevant to the issues in this action, or which are themselves listed below as specific documents, including but not limited to:  accounts, analyses, arithmetical computations, articles, audio and video recordings (whether stored on computer disk, diskette, hard drive, electronic storage device, or any other computer medium whatsoever), books, charts, correspondence, designs, diaries, discs, drafts, drawings, drums, electronic mail, electronic presentation files, envelopes, films, financial reports, graphs, invoices, ledgers, letters, logs,

1213783 2                         - 2 -

magazines, magnetic tapes, manuals, maps, meeting minutes, minutes of all other communications, memoranda, messages (including reports, notes, and memoranda of telephone conversations and conferences), microfilm, newspapers, pamphlets, photographs, pictures, print-outs and other data compilations from which information can be obtained (translated if necessary into usable forms), punch cards, purchase orders, questionnaires and surveys, records, reports, spreadsheets, stenographic or handwritten notes, studies, surveys, tape or other recordings, telegrams, transcriptions, work papers, word processing files, writings, and reproductions of the foregoing upon which notations and writings have been made which do not appear on the originals. A draft or non-identical copy of a document is a separate document within the meaning of this term. The term "document" or "documents" includes all "writings" and "recordings," these terms having the same meaning as that set forth in Rule 1001 of the Federal Rules of Evidence.

(i)     "Agent" shall mean: any agent, employee, officer, director, attorney, independent contractor or any other person acting at the direction of or on behalf of another.

(j)     "Person" shall mean any individual, corporation, proprietorship, partnership, trust, association or any other entity.

(k)     The words "pertain to" or "pertaining to" mean: relates to, refers to, contains, concerns, describes, embodies, mentions, constitutes, constituting, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts or contradicts.

(l)     The term "action" shall mean the case entitled MARK J. GAINOR v. SIDLEY AUSTIN BROWN & WOOD, LLP, CASE NO. 06-21748-CIV-MARTINEZ, pending in the United States District Court for the Southern District of Florida.

(m)     The term "Complaint" means the Complaint filed by Plaintiff Mark J. Gainor on or about June 2, 2006, in the Circuit Court of the 11th Judicial District in and for Miami-Dade County, Florida, and removed to federal court on or about July 14, 2006.

(n)     The word "identify," when used in reference to a document, means and includes the name and address of the custodian of the document, the location of the document, and a general description of the document, including (1) the type of document (i.e., correspondence, memorandum, facsimile, etc.); (2) the general subject matter of the document; (3) the date of the document; (4) the author of the document; (5) the addressee of the document; and (6) the relationship of the author and addressee to each other.

(o)     The word "identify," when used in connection with a communication, means and includes:  (1) when and where the communication was made; (2) the identity of each person making the communication, each person to whom the communication was made and, if an oral communication, each other person present; (3) the means of communication (e.g., face-to-face meeting, telephone, letter); and (4) the subject of the communication.

(p)     The word "identify," when used in connection with a natural person, means to state the person's:  (1) full name; (2) present or last known home address; (3) present or last known business affiliation and business address; and (4) position and business affiliation at the time relevant to the interrogatory involved.

(q)     The word "identify," when used in connection with a corporation or other entity,  means to state the entity's: (1) legal name; (2) the name(s) under which it does business; (3) the address of its principal office; and (4) the addresses of any other offices relevant to the interrogatory involved.

## INSTRUCTIONS

A.     If you object to fully identifying a document or oral communication because of a privilege, you must nevertheless provide the following information pursuant to S.D. Fla. L.R. 26.1.G 6.(b), unless divulging the information would disclosure the privileged information:

(1)     the nature of the privilege claimed (including work product);

(2)      if the privilege is being asserted in connection with a claim or defense government by state law, the state privilege rule being invoked;

(3)      the date of the document or oral communication;

(4)      if a document: its type (correspondence, memorandum, facsimile etc.), custodian, location, and such other information sufficient to identify the document for a subpoena *duces tecum* or a document request, including where appropriate the author, the addressee, and, if not apparent, the relationship between the author and addressee;

(5)      if an oral communication: the place where it was made, the names of the persons present while it was made, and, if not apparent, the relationship of the persons present to the declarant; and

(6)      the general subject matter of the document or oral communication.

B.      If any document identified in response to these Interrogatories was previously in your possession, custody or control, but is no longer, for each document state the following in your response: (a) the person(s) who prepared, authored, or signed the document; (b) any person(s) to whom the document or a copy thereof was distributed or shown; (c) the date on which the document was prepared or transmitted or both; (d) the type of document (e.g. correspondence, memorandum, telex, etc.); (e) the detailed contents of the document; (f) the number of pages; (g) the number of attachments or appendices, if any; (h) the disposition of the document and the date thereof; (i) the person(s), if any, who presently possesses the document; and (j) if the document was destroyed, the circumstances of or reasons for such destruction, the person(s) requesting or authorizing the destruction, and the person(s) performing the destruction.

C.      To the extent that you are not in possession, custody, or control of any document identified in response to these Interrogatories, please indicate your lack of possession, custody, or control, or the nonexistence of the identified document in your response.

D.      These Interrogatories do not apply to nor do they purport to seek information that constitutes confidential attorney-client communications.

E.    Wherever these Interrogatories request that you quantify and/or identify damages allegedly suffered by you, the relevant time frame is as of the date of your answer to these Interrogatories.

G.    Under Fed.R.Civ.P. 26(e), you are under a continuing obligation to supplement your answers to these Interrogatories with any information learned by you subsequent to your answer which would have been included in your answer had it been available or its existence known at the time of your answer.

### INTERROGATORIES

You shall respond to these Interrogatories in accordance with the Instructions and Definitions set forth herein.

### INTERROGATORY NO. 1:

Please provide the name, address, telephone number, place of employment and job title of any person who has, claims to have or whom you believe may have knowledge or information pertaining to any fact alleged in the pleadings (as defined in Fed.R.Civ.P. 7(a)) filed in this action, or any fact underlying the subject matter of this action.

## PLEASE SEE ATTACHED

1213783 2

- 6 -

## INTERROGATORY NO. 2:

Please state the specific nature and substance of the knowledge that you believe the person(s) identified in your response to interrogatory no. 1 may have.

## PLEASE SEE ATTACHED

## INTERROGATORY NO. 3:

Please provide the name, address, telephone number, place of employment and job title of any person or entity that provided services and/or advice concerning the Transaction and/or any other tax strategy.

## PLEASE SEE ATTACHED

**INTERROGATORY NO. 4:**

   Please state the specific nature and substance of the services and/or advice that the person(s) or entities identified in your response to interrogatory no. 3 provided.

## PLEASE SEE ATTACHED

1213783 2

**INTERROGATORY NO. 5:**

Please provide the name, address, telephone number, place of employment and job title of any person with whom you communicated (including lawyers, accountants, and financial advisors) concerning the Transaction

**PLEASE SEE ATTACHED**

1213783 2

- 10 -

## INTERROGATORY NO. 6:

Please state each item of damage that you claim, whether as an affirmative claim or as a setoff, and include in your answer: the count or defense to which the item of damages relates; the category into which each item of damages falls, *i e* general damages, special or consequential damages (such as lost profits), interest, and any other relevant categories; the factual basis for each item of damages; and an explanation of how you computed each item of damages, including any mathematical formula used.

## PLEASE SEE ATTACHED

<u>**INTERROGATORY NO. 7:**</u>

Please identify each document pertaining to each item of damages stated in your response to interrogatory no. 6 above.

**PLEASE SEE ATTACHED**

<u>**INTERROGATORY NO. 8:**</u>

With regard to the allegations in the Complaint that Brown & Wood breached a contract or agreement with you, please provide the following information:

       (a)     each and every term of the alleged contract or agreement, including but not limited to the persons or entities who were parties to the alleged contract or agreement;

       (b)     the date that Brown & Wood purportedly entered into the alleged contract or agreement;

       (c)     the date that Brown & Wood purportedly breached the alleged contract or agreement; and

       (d)     the terms of the alleged contract or agreement that were purportedly breached by Brown & Wood.

**PLEASE SEE ATTACHED**

1213783 2

- 13 -

**INTERROGATORY NO. 9:**

With regard to the allegations in the Complaint that Brown & Wood misrepresented certain facts or information to you, please provide the following information with respect to each such alleged misrepresentation:

(a)     the substance of each such alleged misrepresentation and if the misrepresentation is alleged to be contained in the opinion letters sent by Brown & Wood to you, which exact statements in the letters you contend are false;

(b)     for each alleged misrepresentation stated in response to subparagraph (a), above, state the date on which each such alleged misrepresentation was communicated to you and the method by which it was communicated to you (*i.e.*, by telephone, in person, by letter, etc.);

(c)     for each alleged misrepresentation stated in response to subparagraph (a), above, identify the employee, agent, or representative of Brown & Wood that made the alleged misrepresentation;

(d)     for each alleged misrepresentation stated in response to subparagraph (a), above, identify all documents that evidence or concern each such alleged misrepresentation; and

(e)     for each alleged misrepresentation stated in response to subparagraph (a), above, state each fact upon which you base your contention that Brown & Wood was or should have been aware of the falsity of the alleged misrepresentation at the time it was made.

**PLEASE SEE ATTACHED**

1213783 2                           - 14 -

**INTERROGATORY NO. 10:**

With regard to the allegations in the Compliant that Brown & Wood omitted certain facts or information to you, please provide the following information with respect to each such alleged misrepresentation:

        (a)    the substance of each such alleged omission;

        (b)    for each alleged omission stated in response to subparagraph (a), above, state the date on which each such alleged omission was made or the date upon which you assert Brown & Wood should have communicated the allegedly omitted facts to you;

        (c)    for each alleged omission stated in response to subparagraph (a), above, identify the employee, agent, or representative of Brown & Wood that made the alleged omission;

        (d)    for each alleged omission stated in response to subparagraph (a), above, identify all documents that evidence or concern each such alleged misrepresentation; and

        (e)    for each alleged omission stated in response to subparagraph (a), above, state each fact upon which you base your contention that Brown & Wood was or should have been aware of the omission at the time it was made.

**PLEASE SEE ATTACHED**

1213783 2

- 15 -

**INTERROGATORY NO. 11:**

Please provide the following information with respect to every alleged misrepresentation you contend that Arthur Andersen made to you in connection with the Transaction:

    (a)    the substance of each such alleged;

    (b)    for each alleged misrepresentation stated in response to subparagraph (a), above, state the date on which each such alleged misrepresentation was communicated to you and the method by which it was communicated to you (*i e.*, by telephone, in person, by letter, etc.);

    (c)    for each alleged misrepresentation stated in response to subparagraph (a), above, identify the employee, agent, or representative of Arthur Andersen that made the alleged misrepresentation; and

    (d)    for each alleged misrepresentation stated in response to subparagraph (a), above, identify all documents that evidence or concern each such alleged misrepresentation.

## PLEASE SEE ATTACHED

1213783 2

**INTERROGATORY NO. 12:**

Please identify any and all investment(s) or tax strategies that you decided not to invest in or otherwise pursue, including the alleged "lost opportunities for proper tax planning" discussed in paragraph 38 of your Complaint, once a decision was made to implement the Transaction. For each such strategy or investment, provide the name, address, and telephone number of the person with whom you discussed that investment or tax strategy.

**PLEASE SEE ATTACHED**

1213783 2                                         - 17 -

**INTERROGATORY NO. 13:**

Please identify each and every person you believe was present at any meetings or phone calls between you and any person and/or entity in which the Transaction or any other tax strategy was discussed.

**PLEASE SEE ATTACHED**

**INTERROGATORY NO. 14:**

      Please describe in detail all facts upon which you base your contention that Arthur Andersen was Brown & Wood's agent, that Arthur Andersen had actual authority to act on Brown & Wood's behalf, and/or that Arthur Andersen had apparent authority to act on Brown & Wood's behalf as described in the Complaint at paragraphs 20, 40, 41, 56, 57, 64, 65 and elsewhere.

**PLEASE SEE ATTACHED**

1213783.2

- 19 -

_____
Mark J. Gainor

STATE OF _____

COUNTY OF _____

I HEREBY CERTIFY that on this day personally appeared before me, MARK J. GAINOR, who is personally known to me or who has produced _____ as identification, who did take an oath, deposed and said that he has answered the interrogatories directed to him and that he has read the foregoing answers and that the same are true and correct to the best of his knowledge and belief.

IN WITNESS WHEREOF, my hand and seal in the state and county aforesaid, this _____ day of _____, 2007.

*See Attached*
NOTARY PUBLIC

_____
(Print or Type Notary Name)

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**

State of California

County of *Los Angeles* } ss.

On *1-11-2007* before me, *Eric Brown, Notary Public*
Date                              Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared *Mark J. Gainor*
Name(s) of Signer(s)

☐ personally known to me
☒ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

ERIC BROWN
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 1695168
LOS ANGELES COUNTY
My Comm. Exp. September 21, 2010

WITNESS my hand and official seal.

*Eric Brown*
Signature of Notary Public

───────────── **OPTIONAL** ─────────────
*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: *Interrogatories*

Document Date: *1-11-07*                    Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer**

Signer's Name: _____

☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

| RIGHT THUMBPRINT OF SIGNER |
| Top of thumb here |

© 1999 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org    Prod. No. 5907    Reorder: Call Toll-Free 1-800-876-6827

EXHIBIT "A"

## GENERAL OBJECTIONS AND RESPONSES

1.      Plaintiff objects to Definition (a), the definition of "'you,' 'yours' and/or 'yourselves'" as being overbroad, overly burdensome and attempting to impose duties upon Plaintiff beyond those required by the applicable rules of procedure.  Plaintiff has no obligation to respond to any interrogatory on behalf of "any agents, attorneys, investigators, accountants, representatives or other person or entity acting or purporting to act on his behalf or for his benefit including but not limited to Gainor Family Trusts; Bryan Holdings, LLC; Bryan Medical, Inc.; Bryan Ventures, Inc.; Gainor Medical USA, Inc.; Gainor Medical Management, LLC; Logos Corporation; LSI Holdings, LLC; Lucor Partners, Ltd.; Lucor Special Investments; MJG Partners, LP; MJG Ventures LLC; Palladium Financial Trust; TransStar, and any predecessor, successor, or affiliate entities, and any employees, agents, attorneys, directors, officers, investigators, accountants, representatives or other persons acting on their behalf." Plaintiff will provide such relevant information as is known to Mr. Gainor.

2.      Plaintiff objects to Definition (b), the definition of "Brown & Wood," as being overbroad and overly burdensome and attempting to impose duties upon Plaintiff beyond those required by the Federal Rules of Civil Procedure.  Plaintiff does not know "Brown & Wood LLP and Sidley Austin Brown and Wood LLP's predecessors, and any and all of their present or former partners, attorneys, employees, agents, investigators, accountants, or representatives," and will not provide information within these definitions.

3.      Plaintiff objects to Definition (c), the definition of "Arthur Andersen," as being overbroad and overly burdensome and attempting to impose duties upon Plaintiff

beyond those required by the Federal Rules of Civil Procedure. Plaintiff does not know Arthur Andersen's "predecessor entities, and any and all of its present or former partners, attorneys, employees, agents, attorneys, investigators, accountants, or representatives," and will not provide information within these definitions.

4. Plaintiff objects to Definitions (n), (o), (p) and (q) on the grounds that they are overly burdensome and attempt to impose duties beyond those required by the Federal Rules of Civil Procedure.

5. Plaintiff objects to Instruction No. A on the grounds that it attempts to impose obligations on the Plaintiff greater than those imposed by the Federal Rules of Civil Procedure and cannot be reconciled with Instruction D. With respect to the identification of any document or oral communication withheld under the grounds of privilege or work product, Plaintiff will supply a standard privilege log in due course.

6. Plaintiff objects to Instruction B, C and G to the extent that they attempt to impose obligations on the Plaintiff greater than those imposed by the Federal Rules of Civil Procedure.

7. Plaintiff objects to the Interrogatories and to each Interrogatory contained therein, to the extent that they seek information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection from disclosure. Plaintiff intends to and does claim privilege with respect to all such information and declines to provide any such information. Any inadvertent disclosure of privileged or protected information is not an express waiver of any privilege or protection from disclosure.

8.    Plaintiff objects to the Interrogatories to the extent they seek confidential or proprietary information and/or private information of third parties. Such information will be provided only pursuant to the terms of an appropriate confidentiality agreement.

9.    Plaintiff's discovery and investigation in this matter is continuing. The responses set forth below represent information ascertained by Plaintiff after a diligent inquiry and reasonable search, and are limited to the information known to Plaintiff at this time. Although Plaintiff undertakes no obligation to supplement any of his responses, Plaintiff reserves the right to amend or supplement his responses at any time, and to introduce additional evidence during any hearing or at any other time.

10.    Plaintiff objects to all Interrogatories to the extent that they purport to impose upon Plaintiff any obligations in addition to those imposed by applicable law and rules of court.

11.    Plaintiff objects to the Interrogatories to the extent that they seek information unknown to Plaintiff.

12.    By agreeing to provide information Plaintiff may have in response to any particular Interrogatory, Plaintiff does not concede or intend to suggest that there in fact exists any information responsive to that Interrogatory. Plaintiff will provide information only to the extent it exists, is responsive and not privileged, and is known to Plaintiff.

13.    The foregoing objections apply to each of the Interrogatories, and are incorporated into the responses set forth below, which are not to be deemed a waiver, either in whole or in part, of any of those objections.

Richard Benjamin Wilkes
As to Objections

3

## RESPONSE TO INTERROGATORY NO. 1:

| Individual | Last Known Address |
|---|---|
| Appel, David | Rachlin Cohen Holtz<br>One SE Third Avenue, 10th Floor<br>Miami, FL  33131<br>(305) 377-4228 |
| Astren, Stephen | Arthur Andersen<br>133 Peachtree St, NE<br>Suite 2500<br>Atlanta, GA  30303<br>(404) 658-1776 |
| Austin, Paul | Goldman, Sachs<br>85 Broad Street<br>New York, NY  10004<br>(212) 902-1000 |
| Balestreire, Thomas | Arthur Andersen<br>133 Peachtree St, NE<br>Suite 2500<br>Atlanta, GA  30303<br>(404) 658-1776 |
| Bang, Benjamin | King & Spalding<br>1180 Peachtree St.<br>Atlanta, GA 30309<br>(404) 572-1600 |
| Bass, Scott | Donaldson, Lufkin & Jenrette<br>1202 W Peachtree St. NE<br>Suite 3650<br>Atlanta, GA  30309<br>(404) 897-3300 |
| Bokman, David | King & Spalding<br>1180 Peachtree St.<br>Atlanta, GA 30309<br>(404) 572-1600 |
| Representative of Bryan Holdings, LLC | 6300 Powers Ferry Rd.<br>Suite 600<br>Atlanta, GA  30339<br>(404) 760-2606 |
| Rep. of Bryan Ventures, Inc. f/k/a Bryan Medical, Inc. | 6300 Powers Ferry Rd.<br>Suite 600<br>Atlanta, GA  30339<br>(404) 760-2606 |

4

| Individual | Last Known Address |
|---|---|
| Crowley, Cameron | Goldman, Sachs<br>3414 Peachtree Road, NE<br>Atlanta, GA  30326<br>(404) 846-7236 |
| Davidson, Joe M. | Allen Matkins Leck<br>18400 Von Karman<br>4th Floor<br>Irvine, CA  92612<br>(949) 553-1313 |
| Denney, Thomas | c/o David Dreary, Esq.<br>2515 McKinney Avenue<br>Suite 1565<br>Dallas, TX  75201<br>(214) 360-9622 |
| Edwards, Steve | Morgan Stanley<br>3455 Peachtree Rd, NE<br>Suite 800<br>Atlanta, GA  30326<br>(404) 949-4143 |
| Esposito, Joseph | Commodities Corporation (a Division of Goldman Sachs)<br>457 N Harrison St<br>Princeton, NJ 08540 |
| Etheridge, Chelsea | Donaldson, Lufkin & Jenrette<br>1202 W Peachtree St. NE<br>Suite 3650<br>Atlanta, GA  30309<br>(404) 897-3300 |
| Fanning, Debbie | Merrill Lynch<br>9595 Wilshire Blvd.<br>Suite 1000<br>Beverly Hills, CA  90212<br>(310) 385-6200 |
| Fletcher, Susanne | Morgan Stanley<br>3455 Peachtree Rd, NE<br>Suite 800<br>Atlanta, GA  30326<br>(404) 949-4143 |
| Frederick, Erin | Merrill Lynch International Private Finance Limited<br>9595 Wilshire Blvd.<br>Suite 1000<br>Beverly Hills, CA  90212<br>(310) 385-6200 |

| Individual | Last Known Address |
|---|---|
| Gainor, Mark J. | 7463 Fisher Island Drive<br>Miami Beach, FL 33109<br>(305) 531-2700 |
| Grover, Anuj | Arthur Andersen LLP<br>133 Peachtree St, NE<br>Suite 2500<br>Atlanta, GA 30303<br>(404) 658-1776 |
| Hayworth, Andi | Sutherland, Asbill & Brennan LLP<br>999 Peachtree Street, NE<br>Atlanta, GA 30309-3996 |
| Hudgins, Samuel | Palladium Financial Trust<br>6300 Powers Ferry Rd.<br>Suite 600<br>Atlanta, GA 30339<br>(404) 760-2606 |
| Hunt, Roger | Donaldson, Lufkin & Jenrette<br>1202 W Peachtree St. NE<br>Suite 3650<br>Atlanta, GA 30309<br>(404) 897-3300 |
| Hunter, Jeffrey | Merrill Lynch<br>9595 Wilshire Blvd.<br>Suite 1000<br>Beverly Hills, CA 90212<br>(310) 385-6200 |
| Klokow, Anne E. | Allen Matkins Leck<br>18400 Von Karman<br>4th Floor<br>Irvine, CA 92612<br>(949) 553-1313 |
| Klopfenstein, Mark | Logos Corporation<br>6300 Powers Ferry Rd.<br>Suite 600<br>Atlanta, GA 30339<br>(404) 760-2606 |
| Llorens, Hector | King & Spalding<br>1180 Peachtree St.<br>Atlanta, GA 30309<br>(404) 572-1600 |
| Representative of International Air Leases, Inc. | c/o Andrew Hellinger, Esq.<br>200 South Biscayne Blvd<br>#3000<br>Miami, FL 33131<br>(305) 358-6363 |

6

| Individual | Last Known Address |
|---|---|
| Loftin, Peter T. | c/o Brad Friedman, Esq.<br>One Pennsylvania Plaza<br>New York, NY 10019<br>(212) 594-5300 |
| Representative of LSI Holdings, LLC | 6300 Powers Ferry Rd.<br>Suite 600<br>Atlanta, GA 30339<br>(404) 760-2606 |
| Rep. of Lucor Partners, Ltd. f/k/a MJG Partners, LP | 7463 Fisher Island Drive<br>Miami Beach, FL 33109<br>(305) 531-2700 |
| Marx, Michael | Arthur Andersen LLP<br>133 Peachtree St, NE<br>Suite 2500<br>Atlanta, GA 30303<br>(404) 658-1776 |
| Meshanko, Patricia | Commodities Corporation (a Division of Goldman Sachs)<br>457 N Harrison St<br>Princeton, NJ 08540 |
| Miles, Phillip E. | Arthur Andersen LLP<br>133 Peachtree St, NE<br>Suite 2500<br>Atlanta, GA 30303<br>(404) 658-1776 |
| Moise, Phil | Sutherland Asbill & Brennan LLP<br>999 Peachtree Street, NE<br>Atlanta, GA 30309-3996 |
| Nicoll, Eric | Arthur Andersen<br>133 Peachtree St, NE<br>Suite 2500<br>Atlanta, GA 30303<br>(404) 658-1776 |
| Nissley, Anthony | Arthur Andersen<br>Chicago |
| Representative of Palladium Financial Trust | 6300 Powers Ferry Road<br>Suite 600<br>Atlanta, GA 30339<br>(404) 760-2606 |
| Pearl, Diane | Morgan Stanley & Co<br>3455 Peachtree Rd, NE<br>Suite 800<br>Atlanta, GA 30326<br>(404) 949-4143 |

7

| Individual | Last Known Address |
|---|---|
| Pickett, Phillip A. | Arthur Andersen LLP<br>133 Peachtree St, NE<br>Suite 2500<br>Atlanta, GA 30303<br>(404) 658-1776 |
| Poche, Philip A. | Arthur Andersen LLP<br>133 Peachtree St, NE<br>Suite 2500<br>Atlanta, GA 30303<br>(404) 658-1776 |
| Rayle, Bert A. | Goldman, Sachs<br>3414 Peachtree Road, NE<br>Suite 600<br>Atlanta, GA 30326<br>(404) 846-7220 |
| Riley, Rob | Donaldson, Lufkin & Jenrette<br>1202 W Peachtree St. NE<br>Suite 3650<br>Atlanta, GA 30309<br>(404) 897-3300 |
| Rubin, Blake | Arnold & Porter LLP<br>555 Twelfth Street, NW<br>Washington, DC 20004<br>(202) 942-5828 |
| Ruble, R.J. | c/o Stuart Abrams, Esq. |
| Sanders, Jay D. | Loeb & Loeb LLP<br>1000 Wilshire Blvd., #1800<br>Los Angeles, CA 90017 |
| Scheibel, Wesley | Arthur Andersen LLP<br>133 Peachtree St, NE<br>Suite 2500<br>Atlanta, GA 30303<br>(404) 658-1776 |
| Seippel, William H | c/o Blair Fensterstock, Esq.<br>30 Wall Street<br>9th Floor<br>New York, NY 10005<br>(212) 785-4100 |
| Shackley, Victoria | Arthur Andersen LLP<br>133 Peachtree St, NE<br>Suite 2500<br>Atlanta, GA 30303<br>(404) 658-1776 |

| Individual | Last Known Address |
|---|---|
| Representative of Sidley Austin Brown & Wood | |
| Smallwood, Stephanie | Goldman, Sachs 3414 Peachtree Road, NE Suite 600 Atlanta, GA 30326 (404) 846-7246 |
| Stoner, Janet | WSW Capital, Inc. Address Unknown |
| Swartz, Theodore C. | Address Unknown |
| Taff, Bayly | Goldman, Sachs 3414 Peachtree Road, NE Suite 600 Atlanta, GA 30326 (404) 846-7230 |
| Taylor, Joy | Arnold & Porter LLP 555 Twelfth Street, NW Washington, DC 20004 (202) 942-5828 |
| Thorpe, A.P. | c/o James Gilreath, Esq. P. O. Box 2147 Greenville, NC 29602 (864) 242-4727 |
| Wisniewski, David | Nelson Mullins Riley 999 Peachtree St., NE Suite 1400 Atlanta, GA 30309 (404) 817-6000 |

**RESPONSE TO INTERROGATORY NO. 2**:

| Individual | Subject About Which the Individuals Are Believed to Have Some Knowledge |
|---|---|
| Appel, David | Expenses incurred with the implementation of the Sidley Plan |
| Astren, Stephen | (1) Plaintiff's reliance on Sidley's representations; (2) relationship between Arthur Andersen and Sidley Austin; (3) marketing and presentation of Sidley Plan to Plaintiff; (4) Sidley's representation of Mr. Gainor; (5) Mr. Gainor's relationship with Arthur Andersen; (6) fees paid to Sidley Austin; (7) fees incurred in |

9

| Individual | Subject About Which the Individuals Are Believed to Have Some Knowledge |
|---|---|
| | implementing Sidley Plan; (8) marketing of Sidley Plan to Mr. Gainor; (9) discussions between Sidley Austin and Arthur Andersen regarding the impact of Notice 99-59 on the Sidley Plan; (10) Sidley's development of opinion letters to Mr. Gainor |
| Austin, Paul | Implementation of Sidley Plan |
| Balestreire, Thomas | (1) Plaintiff's reliance on Sidley's representations; (2) relationship between Arthur Andersen and Sidley Austin; (3) marketing and presentation of Sidley Plan to Plaintiff; (4) Sidley's representation of Mr. Gainor; (5) Mr. Gainor's relationship with Arthur Andersen; (6) fees paid to Sidley Austin; (7) fees incurred in implementing Sidley Plan; (8) marketing of Sidley Plan to Mr. Gainor; (9) discussions between Sidley Austin and Arthur Andersen regarding the impact of Notice 99-59 on the Sidley Plan; (10) Sidley's development of opinion letters to Mr. Gainor |
| Bang, Benjamin | Purchase of Bryan Medical and Lucor Special Investments by Palladium Financial Trust |
| Bass, Scott | Implementation of Sidley Plan |
| Bokman, David | Purchase of Bryan Medical and Lucor Special Investments by Palladium Financial Trust |
| Rep. of Bryan Holdings, LLC | Purchase of Bryan Medical and Lucor Special Investments by Palladium Financial Trust; |
| Rep. of Bryan Ventures, Inc. f/k/a Bryan Medical, Inc. | Purchase of Bryan Medical and Lucor Special Investments by Palladium Financial Trust |
| Crowley, Cameron | Implementation of Sidley Plan |
| Davidson, Joe M. | Implementation of Sidley Plan |
| Denney, Thomas | Sidley's marketing and implementation of similar schemes |
| Edwards, Steve | Implementation of Sidley Plan |
| Esposito, Joseph | Implementation of Sidley Plan |
| Etheridge, Chelsea | Implementation of Sidley Plan |
| Fanning, Debbie | Implementation of Sidley Plan |

10

| Individual | Subject About Which the Individuals Are Believed to Have Some Knowledge |
|---|---|
| Fletcher, Susanne | Implementation of Sidley Plan |
| Frederick, Erin | Implementation of Sidley Plan |
| Gainor, Mark J. | (1) Plaintiff's reliance on Sidley's representations; (2) damages; (3) mitigation of damages (4) Sidley's representation of Mr. Gainor; (5) Mr. Gainor's relationship with Arthur Andersen; (6) fees paid to Sidley Austin; (7) marketing of Sidley Plan to Mr. Gainor; (8) discussions between Sidley Austin and Arthur Andersen regarding the impact of Notice 99-59 on the Sidley Plan; (9) Sidley's development of opinion letters to Mr. Gainor; (10) Sidley's notification to Mr. Gainor of the IRS voluntary disclosure program; (11) Mr. Gainor's participation in IRS voluntary disclosure program and settlement with IRS; (12) Sidley's refusal to assist Mr. Gainor or to advise Mr. Gainor in connection with tax problems arising from his participation in the Sidley Plan |
| Grover, Anuj | (1) Plaintiff's reliance on Sidley's representations; (2) relationship between Arthur Andersen and Sidley Austin; (3) marketing and presentation of Sidley Plan to Plaintiff; (4) Sidley's representation of Mr. Gainor; (5) Mr. Gainor's relationship with Arthur Andersen; (6) fees paid to Sidley Austin; (7) fees incurred in implementing Sidley Plan; (8) marketing of Sidley Plan to Mr. Gainor; (9) Sidley's development of opinion letters to Mr. Gainor |
| Hayworth, Andi | Implementation of Sidley Plan |
| Hudgins, Samuel | Purchase of Bryan Medical and Lucor Special Investments by Palladium Financial Trust |
| Hunt, Roger | Implementation of Sidley Plan |
| Hunter, Jeffrey | Implementation of Sidley Plan |
| Klokow, Anne E. | Implementation of Sidley Plan |

| Individual | Subject About Which the Individuals Are Believed to Have Some Knowledge |
|---|---|
| Klopfenstein, Mark | Purchase of Bryan Medical and Lucor Special Investments by Palladium Financial Trust; implementation of Sidley Plan |
| Llorens, Hector | Purchase of Bryan Medical and Lucor Special Investments by Palladium Financial Trust |
| Representative of International Air Leases, Inc. | Sidley's marketing and implementation of similar schemes |
| Loftin, Peter T. | Sidley's marketing and implementation of similar schemes |
| Rep. of LSI Holdings, LLC | Purchase of Bryan Medical and Lucor Special Investments by Palladium Financial Trust; |
| Rep. of Lucor Partners, Ltd. f/k/a MJG Partners, LP | Purchase of Bryan Medical and Lucor Special Investments by Palladium Financial Trust; |
| Marx, Michael | (1) Plaintiff's reliance on Sidley's representations; (2) relationship between Arthur Andersen and Sidley Austin; (3) marketing and presentation of Sidley Plan to Plaintiff; (4) Sidley's representation of Mr. Gainor; (5) Mr. Gainor's relationship with Arthur Andersen; (6) fees paid to Sidley Austin; (7) fees incurred in implementing Sidley Plan; (8) marketing of Sidley Plan to Mr. Gainor; (9) discussions between Sidley Austin and Arthur Andersen regarding the impact of Notice 99-59 on the Sidley Plan; (10) Sidley's development of opinion letters to Mr. Gainor |
| Meshanko, Patricia | Implementation of Sidley Plan |

| Individual | Subject About Which the Individuals Are Believed to Have Some Knowledge |
|---|---|
| Miles, Phillip E. | (1) Plaintiff's reliance on Sidley's representations; (2) relationship between Arthur Andersen and Sidley Austin; (3) marketing and presentation of Sidley Plan to Plaintiff; (4) Sidley's representation of Mr. Gainor; (5) Mr. Gainor's relationship with Arthur Andersen; (6) fees paid to Sidley Austin; (7) fees incurred in implementing Sidley Plan; (8) marketing of Sidley Plan to Mr. Gainor; (9) Sidley's development of opinion letters to Mr. Gainor |
| Moise, Phil | Implementation of Sidley Plan |
| Nicoll, Eric | (1) Plaintiff's reliance on Sidley's representations; (2) relationship between Arthur Andersen and Sidley Austin; (3) marketing and presentation of Sidley Plan to Plaintiff; (4) Sidley's representation of Mr. Gainor; (5) Mr. Gainor's relationship with Arthur Andersen; (6) fees paid to Sidley Austin; (7) fees incurred in implementing Sidley Plan; (8) marketing of Sidley Plan to Mr. Gainor; (9) Sidley's development of opinion letters to Mr. Gainor |
| Nissley, Anthony | (1) Plaintiff's reliance on Sidley's representations; (2) relationship between Arthur Andersen and Sidley Austin; (3) marketing and presentation of Sidley Plan to Plaintiff; (4) Sidley's representation of Mr. Gainor; (5) Mr. Gainor's relationship with Arthur Andersen; (6) fees paid to Sidley Austin; (7) fees incurred in implementing Sidley Plan; (8) marketing of Sidley Plan to Mr. Gainor; (9) discussions between Sidley Austin and Arthur Andersen regarding the impact of Notice 99-59 on the Sidley Plan; (10) Sidley's development of opinion letters to Mr. Gainor |
| Representative of Palladium Financial Trust | Purchase of Bryan Medical and Lucor Special Investments by Palladium Financial Trust |
| Pearl, Diane | Implementation of Sidley Plan |

13

| Individual | Subject About Which the Individuals Are Believed to Have Some Knowledge |
|---|---|
| Pickett, Phillip A. | (1) Plaintiff's reliance on Sidley's representations; (2) relationship between Arthur Andersen and Sidley Austin; (3) marketing and presentation of Sidley Plan to Plaintiff; (4) Sidley's representation of Mr. Gainor; (5) Mr. Gainor's relationship with Arthur Andersen; (6) fees paid to Sidley Austin; (7) fees incurred in implementing Sidley Plan; (8) marketing of Sidley Plan to Mr. Gainor; (9) Sidley's development of opinion letters to Mr. Gainor |
| Poche, Philip A. | (1) Plaintiff's reliance on Sidley's representations; (2) relationship between Arthur Andersen and Sidley Austin; (3) marketing and presentation of Sidley Plan to Plaintiff; (4) Sidley's representation of Mr. Gainor; (5) Mr. Gainor's relationship with Arthur Andersen; (6) fees paid to Sidley Austin; (7) fees incurred in implementing Sidley Plan; (8) marketing of Sidley Plan to Mr. Gainor; (9) Sidley's development of opinion letters to Mr. Gainor |
| Rayle, Bert A. | Implementation of Sidley Plan |
| Riley, Rob | Implementation of Sidley Plan |
| Rubin, Blake | (1) mitigation of damages caused by the Sidley Plan; (2) Sidley's failure to comply with the applicable Standard of Care; (3) Mr. Gainor's participation in IRS voluntary disclosure program and settlement with IRS; (4) Sidley's refusal to assist Mr. Gainor or to advise Mr. Gainor in connection with tax problems arising from his participation in the Sidley Plan |
| Ruble, R.J. | (1) Development, implementation and marketing of Sidley Plan; (2) Sidley's relationship with Arthur Andersen; (3) Sidley's representation of Mr. Gainor; (4) fees paid to Sidley Austin; (5) Sidley's organization and promotion of unregistered abusive tax shelters; (6) discussions between Sidley Austin and |

14

| Individual | Subject About Which the Individuals Are Believed to Have Some Knowledge |
|---|---|
|  | Arthur Andersen regarding the impact of Notice 99-59 on the Sidley Plan; (7) Sidley's development of opinion letters to Mr. Gainor; (8) Sidley's notification to Mr. Gainor of the IRS voluntary disclosure program |
| Sanders, Jay D. | Implementation of Sidley Plan |
| Scheibel, Wesley | (1) Plaintiff's reliance on Sidley's representations; (2) relationship between Arthur Andersen and Sidley Austin; (3) marketing and presentation of Sidley Plan to Plaintiff; (4) Sidley's representation of Mr. Gainor; (5) Mr. Gainor's relationship with Arthur Andersen; (6) fees paid to Sidley Austin; (7) fees incurred in implementing Sidley Plan; (8) marketing of Sidley Plan to Mr. Gainor; (9) discussions between Sidley Austin and Arthur Andersen regarding the impact of Notice 99-59 on the Sidley Plan; (10) Sidley's development of opinion letters to Mr. Gainor |
| Seippel, William H | Sidley's marketing and implementation of similar schemes |
| Shackley, Victoria | (1) Plaintiff's reliance on Sidley's representations; (2) relationship between Arthur Andersen and Sidley Austin; (3) marketing and presentation of Sidley Plan to Plaintiff; (4) Sidley's representation of Mr. Gainor; (5) Mr. Gainor's relationship with Arthur Andersen; (6) fees paid to Sidley Austin; (7) fees incurred in implementing Sidley Plan; (8) marketing of Sidley Plan to Mr. Gainor; (9) Sidley's development of opinion letters to Mr. Gainor |
| Representative of Sidley Austin Brown & Wood | (1) Sidley's relationship with Arthur Andersen; (2) development and marketing of Sidley Plan; (3) Sidley's representation of Mr. Gainor; (4) fees paid to Sidley Austin; (5) Sidley's organization and promotion of unregistered abusive tax shelters; (6) marketing of Sidley Plan to Mr. Gainor; (7) Sidley's development of |

15

| Individual | Subject About Which the Individuals Are Believed to Have Some Knowledge |
|---|---|
| | opinion letters to Mr. Gainor; (8) Sidley's notification to Mr. Gainor of the IRS voluntary disclosure program |
| Smallwood, Stephanie | Implementation of Sidley Plan |
| Stoner, Janet | Implementation of Sidley Plan |
| Swartz, Theodore C. | Sidley's marketing and implementation of similar schemes |
| Taff, Bayly | Implementation of Sidley Plan |
| Taylor, Joy | (1) mitigation of damages caused by the Sidley Plan; (2) Sidley's failure to comply with the applicable Standard of Care; (3) Mr. Gainor's participation in IRS voluntary disclosure program and settlement with IRS; (4) Sidley's refusal to assist Mr. Gainor or to advise Mr. Gainor in connection with tax problems arising from his participation in the Sidley Plan |
| Thorpe, A.P. | Sidley's marketing and implementation of similar schemes |
| Wisniewski, David | Implementation of Sidley Plan |

**RESPONSE TO INTERROGATORY NO. 3:**

Plaintiff objects to this interrogatory with respect to its being overbroad as to "any other tax strategy."

Richard Benjamin Wilkes

Subject to and without waiving this objection, Plaintiff states:

| Individual | Last Known Address |
|---|---|
| Appel, David | Rachlin Cohen  Holtz<br>One SE Third Avenue, 10th Floor<br>Miami, FL  33131<br>(305) 377-4228 |
| Astren, Stephen | Arthur Andersen<br>133 Peachtree St, NE<br>Suite 2500<br>Atlanta, GA  30303<br>(404) 658-1776 |

16

| Individual | Last Known Address |
|---|---|
| Austin, Paul | Goldman, Sachs<br>85 Broad Street<br>New York, NY 10004<br>(212) 902-1000 |
| Balestreire, Thomas | Arthur Andersen<br>133 Peachtree St, NE<br>Suite 2500<br>Atlanta, GA 30303<br>(404) 658-1776 |
| Bang, Benjamin | King & Spalding<br>1180 Peachtree St.<br>Atlanta, GA 30309<br>(404) 572-1600 |
| Bass, Scott | Donaldson, Lufkin & Jenrette<br>1202 W Peachtree St. NE<br>Suite 3650<br>Atlanta, GA 30309<br>(404) 897-3300 |
| Bokman, David | King & Spalding<br>1180 Peachtree St.<br>Atlanta, GA 30309<br>(404) 572-1600 |
| Representative of Bryan Holdings, LLC | 6300 Powers Ferry Rd.<br>Suite 600<br>Atlanta, GA 30339<br>(404) 760-2606 |
| Representative of Bryan Ventures, Inc. f/k/a Bryan Medical, Inc. | 6300 Powers Ferry Rd.<br>Suite 600<br>Atlanta, GA 30339<br>(404) 760-2606 |
| Crowley, Cameron | Goldman, Sachs<br>3414 Peachtree Road, NE<br>Atlanta, GA 30326<br>(404) 846-7236 |
| Davidson, Joe M. | Allen Matkins Leck<br>18400 Von Karman<br>4th Floor<br>Irvine, CA 92612<br>(949) 553-1313 |
| Edwards, Steve | Morgan Stanley<br>3455 Peachtree Rd, NE<br>Suite 800<br>Atlanta, GA 30326<br>(404) 949-4143 |

17

| Individual | Last Known Address |
|---|---|
| Esposito, Joseph | Commodities Corporation (a Division of Goldman Sachs) 457 N Harrison St Princeton, NJ 08540 |
| Etheridge, Chelsea | Donaldson, Lufkin & Jenrette 1202 W Peachtree St. NE Suite 3650 Atlanta, GA 30309 (404) 897-3300 |
| Fanning, Debbie | Merrill Lynch 9595 Wilshire Blvd. Suite 1000 Beverly Hills, CA 90212 (310) 385-6200 |
| Fletcher, Susanne | Morgan Stanley 3455 Peachtree Rd, NE Suite 800 Atlanta, GA 30326 (404) 949-4143 |
| Frederick, Erin | Merrill Lynch International Private Finance Limited 9595 Wilshire Blvd. Suite 1000 Beverly Hills, CA 90212 (310) 385-6200 |
| Grover, Anuj | Arthur Andersen LLP 133 Peachtree St, NE Suite 2500 Atlanta, GA 30303 (404) 658-1776 |
| Hayworth, Andi | Sutherland, Asbill & Brennan LLP 999 Peachtree Street, NE Atlanta, GA 30309-3996 |
| Hudgins, Samuel | Palladium Financial Trust 6300 Powers Ferry Rd. Suite 600 Atlanta, GA 30339 (404) 760-2606 |
| Hunt, Roger | Donaldson, Lufkin & Jenrette 1202 W Peachtree St. NE Suite 3650 Atlanta, GA 30309 (404) 897-3300 |

| Individual | Last Known Address |
|---|---|
| Hunter, Jeffrey | Merrill Lynch<br>9595 Wilshire Blvd.<br>Suite 1000<br>Beverly Hills, CA 90212<br>(310) 385-6200 |
| Klokow, Anne E. | Allen Matkins Leck<br>18400 Von Karman<br>4th Floor<br>Irvine, CA 92612<br>(949) 553-1313 |
| Klopfenstein, Mark | Logos Corporation<br>6300 Powers Ferry Rd.<br>Suite 600<br>Atlanta, GA 30339<br>(404) 760-2606 |
| Llorens, Hector | King & Spalding<br>1180 Peachtree St.<br>Atlanta, GA 30309<br>(404) 572-1600 |
| Rep. of LSI Holdings, LLC | 6300 Powers Ferry Rd.<br>Suite 600<br>Atlanta, GA 30339<br>(404) 760-2606 |
| Marx, Michael | Arthur Andersen LLP<br>133 Peachtree St, NE<br>Suite 2500<br>Atlanta, GA 30303<br>(404) 658-1776 |
| Meshanko, Patricia | Commodities Corporation (a Division of Goldman Sachs)<br>457 N Harrison St<br>Princeton, NJ 08540 |
| Miles, Phillip E. | Arthur Andersen LLP<br>133 Peachtree St, NE<br>Suite 2500<br>Atlanta, GA 30303<br>(404) 658-1776 |
| Moise, Phil | Sutherland Asbill & Brennan LLP<br>999 Peachtree Street, NE<br>Atlanta, GA 30309-3996 |
| Nicoll, Eric | Arthur Andersen<br>133 Peachtree St, NE<br>Suite 2500<br>Atlanta, GA 30303<br>(404) 658-1776 |

19

| Individual | Last Known Address |
|---|---|
| Nissley, Anthony | Arthur Andersen<br>Chicago |
| Rep. of Palladium Financial Trust | 6300 Powers Ferry Road<br>Suite 600<br>Atlanta, GA  30339<br>(404) 760-2606 |
| Pearl, Diane | Morgan Stanley & Co<br>3455 Peachtree Rd, NE<br>Suite 800<br>Atlanta, GA  30326<br>(404) 949-4143 |
| Pickett, Phillip A. | Arthur Andersen LLP<br>133 Peachtree St, NE<br>Suite 2500<br>Atlanta, GA  30303<br>(404) 658-1776 |
| Poche, Philip A. | Arthur Andersen LLP<br>133 Peachtree St, NE<br>Suite 2500<br>Atlanta, GA  30303<br>(404) 658-1776 |
| Rayle, Bert A. | Goldman, Sachs<br>3414 Peachtree Road, NE<br>Suite 600<br>Atlanta, GA  30326<br>(404) 846-7220 |
| Riley, Rob | Donaldson, Lufkin & Jenrette<br>1202 W Peachtree St. NE<br>Suite 3650<br>Atlanta, GA  30309<br>(404) 897-3300 |
| Rubin, Blake | Arnold & Porter LLP<br>555 Twelfth Street, NW<br>Washington, DC 20004<br>(202) 942-5828 |
| Ruble, R.J. | c/o Stuart Abrams, Esq. |
| Sanders, Jay D. | Loeb & Loeb LLP<br>1000 Wilshire Blvd., #1800<br>Los Angeles, CA  90017 |
| Scheibel, Wesley | Arthur Andersen LLP<br>133 Peachtree St, NE<br>Suite 2500<br>Atlanta, GA  30303<br>(404) 658-1776 |

| Individual | Last Known Address |
|---|---|
| Shackley, Victoria | Arthur Andersen LLP<br>133 Peachtree St, NE<br>Suite 2500<br>Atlanta, GA 30303<br>(404) 658-1776 |
| Representative of Sidley Austin Brown & Wood | |
| Smallwood, Stephanie | Goldman, Sachs<br>3414 Peachtree Road, NE<br>Suite 600<br>Atlanta, GA 30326<br>(404) 846-7246 |
| Stoner, Janet | WSW Capital, Inc.<br>Address unknown |
| Taff, Bayly | Goldman, Sachs<br>3414 Peachtree Road, NE<br>Suite 600<br>Atlanta, GA 30326<br>(404) 846-7230 |
| Taylor, Joy | Arnold & Porter LLP<br>555 Twelfth Street, NW<br>Washington, DC 20004<br>(202) 942-5828 |
| Wisniewski, David | Nelson Mullins Riley<br>999 Peachtree St., NE<br>Suite 1400<br>Atlanta, GA 30309<br>(404) 817-6000 |

## RESPONSE TO INTERROGATORY NO. 4:

| Individual | Subject About Which the Individuals Are Believed to Have Some Knowledge |
|---|---|
| Appel, David | Expenses incurred with the implementation of the Sidley Plan |
| Astren, Stephen | (1) Plaintiff's reliance on Sidley's representations; (2) relationship between Arthur Andersen and Sidley Austin; (3) marketing and presentation of Sidley Plan to Plaintiff; (4) Sidley's representation of Mr. Gainor; (5) Mr. Gainor's relationship with Arthur Andersen; (6) fees paid to Sidley Austin; (7) fees incurred in implementing Sidley Plan; (8) marketing of |

| Individual | Subject About Which the Individuals Are Believed to Have Some Knowledge |
|---|---|
| | Sidley Plan to Mr. Gainor; (9) discussions between Sidley Austin and Arthur Andersen regarding the impact of Notice 99-59 on the Sidley Plan; (10) Sidley's development of opinion letters to Mr. Gainor |
| Austin, Paul | Implementation of Sidley Plan |
| Balestreire, Thomas | (1) Plaintiff's reliance on Sidley's representations; (2) relationship between Arthur Andersen and Sidley Austin; (3) marketing and presentation of Sidley Plan to Plaintiff; (4) Sidley's representation of Mr. Gainor; (5) Mr. Gainor's relationship with Arthur Andersen; (6) fees paid to Sidley Austin; (7) fees incurred in implementing Sidley Plan; (8) marketing of Sidley Plan to Mr. Gainor; (9) discussions between Sidley Austin and Arthur Andersen regarding the impact of Notice 99-59 on the Sidley Plan; (10) Sidley's development of opinion letters to Mr. Gainor |
| Bang, Benjamin | Purchase of Bryan Medical and Lucor Special Investments by Palladium Financial Trust |
| Bass, Scott | Implementation of Sidley Plan |
| Bokman, David | Purchase of Bryan Medical and Lucor Special Investments by Palladium Financial Trust |
| Rep. of Bryan Holdings, LLC | Purchase of Bryan Medical and Lucor Special Investments by Palladium Financial Trust; |
| Rep. of Bryan Ventures, Inc. f/k/a Bryan Medical, Inc. | Purchase of Bryan Medical and Lucor Special Investments by Palladium Financial Trust |
| Crowley, Cameron | Implementation of Sidley Plan |
| Davidson, Joe M. | Implementation of Sidley Plan |
| Edwards, Steve | Implementation of Sidley Plan |
| Esposito, Joseph | Implementation of Sidley Plan |
| Etheridge, Chelsea | Implementation of Sidley Plan |
| Fanning, Debbie | Implementation of Sidley Plan |
| Fletcher, Susanne | Implementation of Sidley Plan |
| Frederick, Erin | Implementation of Sidley Plan |

22

| Individual | Subject About Which the Individuals Are Believed to Have Some Knowledge |
|---|---|
| Gainor, Mark J. | (1) Plaintiff's reliance on Sidley's representations; (2) damages; (3) mitigation of damages (4) Sidley's representation of Mr. Gainor; (5) Mr. Gainor's relationship with Arthur Andersen; (6) fees paid to Sidley Austin; (7) marketing of Sidley Plan to Mr. Gainor; (8) discussions between Sidley Austin and Arthur Andersen regarding the impact of Notice 99-59 on the Sidley Plan; (9) Sidley's development of opinion letters to Mr. Gainor; (10) Sidley's notification to Mr. Gainor of the IRS voluntary disclosure program; (11) Mr. Gainor's participation in IRS voluntary disclosure program and settlement with IRS; (12) Sidley's refusal to assist Mr. Gainor or to advise Mr. Gainor in connection with tax problems arising from his participation in the Sidley Plan |
| Grover, Anuj | (1) Plaintiff's reliance on Sidley's representations; (2) relationship between Arthur Andersen and Sidley Austin; (3) marketing and presentation of Sidley Plan to Plaintiff; (4) Sidley's representation of Mr. Gainor; (5) Mr. Gainor's relationship with Arthur Andersen; (6) fees paid to Sidley Austin; (7) fees incurred in implementing Sidley Plan; (8) marketing of Sidley Plan to Mr. Gainor; (9) Sidley's development of opinion letters to Mr. Gainor |
| Hayworth, Andi | Implementation of Sidley Plan |
| Hudgins, Samuel | Purchase of Bryan Medical and Lucor Special Investments by Palladium Financial Trust |
| Hunt, Roger | Implementation of Sidley Plan |
| Hunter, Jeffrey | Implementation of Sidley Plan |
| Klokow, Anne E. | Implementation of Sidley Plan |
| Klopfenstein, Mark | Purchase of Bryan Medical and Lucor Special Investments by Palladium Financial Trust; implementation of Sidley Plan |
| Llorens, Hector | Purchase of Bryan Medical and Lucor Special Investments by Palladium Financial Trust |
| Representative of LSI Holdings, LLC | Purchase of Bryan Medical and Lucor Special Investments by Palladium Financial Trust; |
| Marx, Michael | (1) Plaintiff's reliance on Sidley's representations; (2) relationship between Arthur Andersen and Sidley Austin; (3) marketing and |

23

| Individual | Subject About Which the Individuals Are Believed to Have Some Knowledge |
|---|---|
| | presentation of Sidley Plan to Plaintiff; (4) Sidley's representation of Mr. Gainor; (5) Mr. Gainor's relationship with Arthur Andersen; (6) fees paid to Sidley Austin; (7) fees incurred in implementing Sidley Plan; (8) marketing of Sidley Plan to Mr. Gainor; (9) discussions between Sidley Austin and Arthur Andersen regarding the impact of Notice 99-59 on the Sidley Plan; (10) Sidley's development of opinion letters to Mr. Gainor |
| Meshanko, Patricia | Implementation of Sidley Plan |
| Miles, Phillip E. | (1) Plaintiff's reliance on Sidley's representations; (2) relationship between Arthur Andersen and Sidley Austin; (3) marketing and presentation of Sidley Plan to Plaintiff; (4) Sidley's representation of Mr. Gainor; (5) Mr. Gainor's relationship with Arthur Andersen; (6) fees paid to Sidley Austin; (7) fees incurred in implementing Sidley Plan; (8) marketing of Sidley Plan to Mr. Gainor; (9) Sidley's development of opinion letters to Mr. Gainor |
| Moise, Phil | Implementation of Sidley Plan |
| Nicoll, Eric | (1) Plaintiff's reliance on Sidley's representations; (2) relationship between Arthur Andersen and Sidley Austin; (3) marketing and presentation of Sidley Plan to Plaintiff; (4) Sidley's representation of Mr. Gainor; (5) Mr. Gainor's relationship with Arthur Andersen; (6) fees paid to Sidley Austin; (7) fees incurred in implementing Sidley Plan; (8) marketing of Sidley Plan to Mr. Gainor; (9) Sidley's development of opinion letters to Mr. Gainor |
| Nissley, Anthony | (1) Plaintiff's reliance on Sidley's representations; (2) relationship between Arthur Andersen and Sidley Austin; (3) marketing and presentation of Sidley Plan to Plaintiff; (4) Sidley's representation of Mr. Gainor; (5) Mr. Gainor's relationship with Arthur Andersen; (6) fees paid to Sidley Austin; (7) fees incurred in implementing Sidley Plan; (8) marketing of Sidley Plan to Mr. Gainor; (9) discussions between Sidley Austin and Arthur Andersen regarding the impact of Notice 99-59 on the |

| Individual | Subject About Which the Individuals Are Believed to Have Some Knowledge |
|---|---|
|  | Sidley Plan; (10) Sidley's development of opinion letters to Mr. Gainor |
| Representative of Palladium Financial Trust | Purchase of Bryan Medical and Lucor Special Investments by Palladium Financial Trust |
| Pearl, Diane | Implementation of Sidley Plan |
| Pickett, Phillip A. | (1) Plaintiff's reliance on Sidley's representations; (2) relationship between Arthur Andersen and Sidley Austin; (3) marketing and presentation of Sidley Plan to Plaintiff; (4) Sidley's representation of Mr. Gainor; (5) Mr. Gainor's relationship with Arthur Andersen; (6) fees paid to Sidley Austin; (7) fees incurred in implementing Sidley Plan; (8) marketing of Sidley Plan to Mr. Gainor; (9) Sidley's development of opinion letters to Mr. Gainor |
| Poche, Philip A. | (1) Plaintiff's reliance on Sidley's representations; (2) relationship between Arthur Andersen and Sidley Austin; (3) marketing and presentation of Sidley Plan to Plaintiff; (4) Sidley's representation of Mr. Gainor; (5) Mr. Gainor's relationship with Arthur Andersen; (6) fees paid to Sidley Austin; (7) fees incurred in implementing Sidley Plan; (8) marketing of Sidley Plan to Mr. Gainor; (9) Sidley's development of opinion letters to Mr. Gainor |
| Rayle, Bert A. | Implementation of Sidley Plan |
| Riley, Rob | Implementation of Sidley Plan |
| Rubin, Blake | (1) mitigation of damages caused by the Sidley Plan; (2) Sidley's failure to comply with the applicable Standard of Care; (3) Mr. Gainor's participation in IRS voluntary disclosure program and settlement with IRS; (4) Sidley's refusal to assist Mr. Gainor or to advise Mr. Gainor in connection with tax problems arising from his participation in the Sidley Plan |
| Ruble, R.J. | (1) Development, implementation and marketing of Sidley Plan; (2) Sidley's relationship with Arthur Andersen; (3) Sidley's representation of Mr. Gainor; (4) fees paid to Sidley Austin; (5) Sidley's organization and promotion of unregistered abusive tax shelters; (6) discussions between Sidley Austin and Arthur Andersen regarding the impact of Notice 99-59 on the |

25

| Individual | Subject About Which the Individuals Are Believed to Have Some Knowledge |
|---|---|
| | Sidley Plan; (7) Sidley's development of opinion letters to Mr. Gainor; (8) Sidley's notification to Mr. Gainor of the IRS voluntary disclosure program |
| Sanders, Jay D. | Implementation of Sidley Plan |
| Scheibel, Wesley | (1) Plaintiff's reliance on Sidley's representations; (2) relationship between Arthur Andersen and Sidley Austin; (3) marketing and presentation of Sidley Plan to Plaintiff; (4) Sidley's representation of Mr. Gainor; (5) Mr. Gainor's relationship with Arthur Andersen; (6) fees paid to Sidley Austin; (7) fees incurred in implementing Sidley Plan; (8) marketing of Sidley Plan to Mr. Gainor; (9) discussions between Sidley Austin and Arthur Andersen regarding the impact of Notice 99-59 on the Sidley Plan; (10) Sidley's development of opinion letters to Mr. Gainor |
| Shackley, Victoria | (1) Plaintiff's reliance on Sidley's representations; (2) relationship between Arthur Andersen and Sidley Austin; (3) marketing and presentation of Sidley Plan to Plaintiff; (4) Sidley's representation of Mr. Gainor; (5) Mr. Gainor's relationship with Arthur Andersen; (6) fees paid to Sidley Austin; (7) fees incurred in implementing Sidley Plan; (8) marketing of Sidley Plan to Mr. Gainor; (9) Sidley's development of opinion letters to Mr. Gainor |
| Representative of Sidley Austin Brown & Wood | (1) Sidley's relationship with Arthur Andersen; (2) development and marketing of Sidley Plan; (3) Sidley's representation of Mr. Gainor; (4) fees paid to Sidley Austin; (5) Sidley's organization and promotion of unregistered abusive tax shelters; (6) marketing of Sidley Plan to Mr. Gainor; (7) Sidley's development of opinion letters to Mr. Gainor; (8) Sidley's notification to Mr. Gainor of the IRS voluntary disclosure program |
| Smallwood, Stephanie | Implementation of Sidley Plan |
| Stoner, Janet | Implementation of Sidley Plan |
| Taff, Bayly | Implementation of Sidley Plan |

| Individual | Subject About Which the Individuals Are Believed to Have Some Knowledge |
|---|---|
| Taylor, Joy | (1) mitigation of damages caused by the Sidley Plan; (2) Sidley's failure to comply with the applicable Standard of Care; (3) Mr. Gainor's participation in IRS voluntary disclosure program and settlement with IRS; (4) Sidley's refusal to assist Mr. Gainor or to advise Mr. Gainor in connection with tax problems arising from his participation in the Sidley Plan |
| Wisniewski, David | Implementation of Sidley Plan |

## RESPONSE TO INTERROGATORY NO. 5:

Please see Plaintiff's response to interrogatory No. 1 above.

## RESPONSE TO INTERROGATORY NO. 6:

Please see Plaintiff's Damages Summary attached hereto as an exhibit.

## RESPONSE TO INTERROGATORY NO. 7:

Plaintiff has already provided all such documents responsive to this interrogatory in his possession, custody or control.

## RESPONSE TO INTERROGATORY NO. 8:

(a)    The express terms of the agreement were that Sidley, Austin, Brown & Wood had designed a tax strategy that would result in a tax savings to the Plaintiff of approximately $17,000,000, and would provide an opinion letter confirming the propriety of this strategy after it was implemented and that the Plaintiff would pay Sidley, Austin, Brown & Wood $400,000 for these services. In addition, there were implied terms of the agreement, including that Sidley, Austin, Brown & Wood would exercise reasonable care and diligence in its work, that it would comport with all of its ethical responsibilities and that it would use that level of skill and care applicable to lawyers holding themselves out

27

as tax planning specialists. The parties to this contract and agreement were Mark Gainor,

Sidley, Austin, Brown & Wood, Bryan Medical, Inc.; Lucor Special Investments, Inc.;

and Gainor Medical U.S.A., Inc.

      (b)    Mark Gainor originally entered into this agreement with representatives of

Arthur Andersen, acting on behalf of Sidley, Austin, Brown & Wood, in August of 1999.

      (c)    Sidley, Austin, Brown & Wood was in breach of the agreement from its

inception, although that was not known at the time by Mark Gainor.

      (d)    Sidley, Austin, Brown & Wood breached each and every term of the

agreement.

## RESPONSE TO INTERROGATORY NO. 9:

      (a)    Sidley, Austin, Brown & Wood misrepresented the nature of the

transaction. It was said to be a safe, legal tax saving strategy. Instead, it was an abusive

tax shelter. Sidley, Austin, Brown & Wood misrepresented the risk of entering the

transaction. It was said to be a safe, legal tax saving strategy. Instead, it was an abusive

tax shelter destined to result in paying the highest taxes possible plus penalties and

interest. Sidley, Austin, Brown & Wood misrepresented that the subject transactions and

consequent deductions claimed would more likely than not be upheld if challenged by the

Internal Revenue Service. In addition, there are additional misrepresentations set forth in

Sidley, Austin, Brown & Wood's opinion letters of December 31, 1999. In the opinion

letters themselves, Sidley, Austin, Brown & Wood also misrepresented its overall

description of the transactions, and specifically that Bryan's and GMUSA's decisions to

invest in the United States Treasury bills were based upon the advice of Merrill Lynch,

that the investments were made for substantial non-tax business reasons, that Mr. Gainor

28

contributed all of his shares of Bryan to MJG in an effort to consolidate all of his investments in his family limited partnership. They misrepresented the reasons for the purchase of T-bills on margin. They misrepresented the circumstances surrounding and the reasons why the T-bills were purchased through Merrill Lynch. They misrepresented the circumstances surrounding and the reasons for Palladium's acquisitions of Bryan and GMUSA. They misrepresented the reason for distributing the treasury bills to MJG, and GMUSA's interest in Gainor Medical Management, LLC to Mark Gainor. They misrepresented that Mr. Gainor had made representations that GMUSA and Gainor invested in the United States Treasury bills for substantial non-tax business reasons, that the sale of shares of Bryan and GMUSA was made for substantial non-tax business reasons, that the distributions of the T-bills and the LLC interest were made for substantial non-tax business reasons, and that GMUSA, Gainor, Bryan and its shareholders were not obligated to engage in any transaction upon the completion of any other transaction, when Sidley, Austin, Brown & Wood in fact knew that all of the transactions were part of its own overall tax strategy. They misrepresented that they were assuming that MJG, Bryan, GMUSA or Gainor entered into arrangements that voided the economic effects of any of the transactions. They misrepresented that they were making an assumption that MJG, Bryan, Gainor and GMUSA each had a bona fide expectation of profit or other commercial reason for participating in the transactions in the manner in which they were done. They misrepresented that they did not believe that the steps in the instant transactions would be found to be mutually interdependent. They misrepresented that each of the transactions undertaken by the parties was supported by a reasonable expectation of profit. They misrepresented that it was more likely than not that the IRS

29

would not be successful were it to challenge the transactions under Notice 99-59. They misrepresented the reason for the transactions engaged in by GMUSA beginning in October of 1999 as described in its opinion letter of December 31, 1999. They misrepresented the reasons for GMUSA's decision to invest in United States Treasury bills. They misrepresented the reasons for GMUSA and Mark Gainor's decision to purchase the treasury bills through Merrill Lynch. They misrepresented the circumstances under which Palladium Financial Trust purchased GMUSA. They misrepresented the representations made by Mark Gainor. They misrepresented the work that they had done in connection with the rendering of their opinions. See also, response to Interrogatory 10(a) below.

(b)    The misrepresentations set forth in subparagraph (a) began in October of 1999 and continued to be made through the issuance of Sidley, Austin, Brown & Wood's opinion letters dated December 31, 1999.

(c)    R.J. Ruble, Michael Marx, Anthony Nissley and any other employee, agent or representative of Sidley, Austin Brown & Wood with whom Plaintiff had communication, including, of course, all employees, agents or representatives of Arthur Andersen with respect to the misrepresentations contained in the opinion letters.

(d)    Documents that evidence or concern the allegations listed above:

1. The opinion letters themselves.

2. The August 20, 1999 fax from Michael Marx to Mark Gainor.

3. The September 1, 1999 engagement letters to Gainor Medical USA and to Bryan Medical.

4. The drafts of the opinion letters.

30

5.  The transaction summaries and descriptions from Arthur Andersen to Mark Gainor.

6.  The November 23, 1999 letter from Michael Marx to Mark Gainor.

7.  The Mark Gainor disposition planning charts prepared by Arthur Andersen and provided to Mark Gainor.

8.  ABA Formal Opinion 346.

9.  The December 13, 1999 memorandum to the files from Michael S. Marx at Arthur Andersen.

10. IRS Notice 99-59.

11. Treasury Circular 230.

(e)    Sidley, Austin, Brown & Wood should have been aware of the falsity of the above misrepresentations because:

1.  Sidley, Austin, Brown & Wood held itself out to the public as possessing greater than ordinary knowledge and skill in the field of tax planning.

2.  Sidley, Austin, Brown & Wood, before selling its strategy to Gainor, had already developed these strategies and was marketing them through various accounting firms.

3.  Sidley, Austin, Brown & Wood had prepared preliminary opinion letters before the transactions were ever entered into and/or consummated.

4.  Sidley, Austin, Brown & Wood told Andersen in advance that if Gainor followed its recommended strategy it would provide opinion letters saying that more likely than not the deductions arising from the implementation of their strategy would be upheld if challenged by the Internal Revenue Service.

5.  Sidley, Austin, Brown & Wood, as early as 1996, was developing, organizing and selling unregistered abusive tax shelters under the guise of legitimate complex investment strategies which were implemented in conjunction with various accounting firms and investment advisors.

6.  The opinion letters ultimately delivered to Mark Gainor were essentially form letters that Sidley, Austin, Brown & Wood had used with multiple clients in the past under similar circumstances.

31

7.  Sidley Austin, Brown & Wood was aware of IRS Notice 99-59.

8.  Sidley Austin, Brown & Wood had discussed with Arthur Andersen the impact of Notice 99-59 on the plan marketed to Mr. Gainor.

9.  Sidley, as a tax professional, was aware that the subject transactions should have been registered as potentially abusive tax shelters and that investor lists needed to be maintained pursuant to federal law.

10. Sidley Austin, Brown & Wood was an organizer, promoter and seller of unregistered, potentially abusive, tax shelters.

11. Treasury Circular 230.

12. ABA Formal Opinion 346.

## RESPONSE TO INTERROGATORY NO. 10:

(a)    The substance of the omissions include Sidley, Austin, Brown & Wood's

failure to disclose:

1.  that the subject transactions should have been registered as potentially abusive tax shelters.

2.  investor lists needed to be maintained under 26 U.S.C. 6112.

3.  that Sidley, Austin, Brown & Wood was an organizer, promoter and seller of unregistered, potentially abusive tax shelters.

4.  the existence of IRS Notice 99-59 and its relevance to the Transaction and subject tax strategy.

5.  Sidley, Austin, Brown & Wood's discussions with respect to IRS Notice 99-59.

6.  Sidley, Austin, Brown & Wood's relationship with Arthur Andersen and other large accounting firms and related conflicts of interest which precluded them from rendering objective and "independent" tax opinions.

7.  Sidley, Austin, Brown & Wood's concerns that Mr. Gainor's ability to rely in good faith upon the advice of a tax professional had been impaired by Notice 99-59.

(b)     These omissions began in October of 1999 and continued to be made through the issuance of Sidley, Austin, Brown & Wood's opinion letters on December 31, 1999.

(c)     The omissions should have been disclosed by Michael Marx, Anthony Nissley, and R.J. Ruble.

(d)     The documents that concern each of these omissions are set forth in the answer to interrogatory 9(d) above.

(e)     Please see answers to interrogatory 9(e) above.

**RESPONSE TO INTERROGATORY NO. 11:**

(a) – (d)  Please see answers to interrogatories 9 (a) - (e) and 10 (a) - (e) above.

**RESPONSE TO INTERROGATORY NO. 12:**

No such investments or tax strategies were investigated by me because I had no reason to believe that the Sidley plan was improper or defective.

**RESPONSE TO INTERROGATORY NO. 13:**

Plaintiff objects as to the reference to "any other tax strategy" as being overbroad.  Subject to this objection, the persons present at meetings or phone calls between myself and any other person and/or entity in which the transaction was discussed were Michael Marx, Anthony Nissley, Vicky Shackley, Benjamin Bang, David Bokman, Erin Frederick, Hector Llorens, Phil Miles, Phil Moise, Wesley Scheibel, and David Wisniewski; these are the people that I can recall.

Richard Benjamin Wilkes
As to the objection only.

33

**RESPONSE TO INTERROGATORY NO. 14:**

In August of 1999, someone at Arthur Andersen, I believe it was Michael Marx, told me that they had met with Merrill Lynch personnel in Phoenix and had put a deal together that would enable me to implement a tax strategy that would result in a substantial tax savings to me in connection with the capital gains arising out of the sale of my company to Matria. Later that month, Michael Marx provided to me a written schedule showing that Sidley, Austin, Brown & Wood would be providing a "more likely than not" opinion letter. This was followed up by two letters of engagement dated September 1, 1999 reflecting that if I were not able to obtain a "more likely than not" opinion letter, from a qualified attorney, then Arthur Andersen would refund my fees. By the time I had received this letter, Arthur Andersen had already represented to me that Sidley, Austin, Brown & Wood had designed the strategy and would be providing the letter that I would require. Between that time and December 31, 1999, I was furnished with additional documents reflecting that Sidley, Austin, Brown & Wood had been consulted and was involved in this matter. In approximately late November or early December of 1999, I was provided with an implementation program document by Arthur Andersen specifically referencing that they had received confirmation from Sidley, Austin, Brown & Wood that the opinion could be rendered. I was also provided with a redacted opinion from Sidley, Austin, Brown & Wood through Arthur Andersen. It thus appeared to me that Sidley, Austin, Brown & Wood had authorized Arthur Andersen to provide this to me, as it did not make any sense that this could have been done without Sidley, Austin, Brown & Wood's authorization. I also received a telephone call from Michael Marx in Atlanta advising that he had been working with Sidley, Austin, Brown

34

& Wood and that Sidley, Austin, Brown & Wood would be issuing the opinion letters. Arthur Andersen also furnished to me various drafts of opinion letters that it had received from Sidley, Austin, Brown & Wood.  In addition, the opinion letters from Sidley, Austin, Brown & Wood contained information, such as the details of my transactions, that I had provided to Arthur Andersen.

As Sidley, Austin, Brown & Wood did not directly communicate with me until the issuance of the final opinion letters, even though Sidley, Austin, Brown & Wood was obviously aware that I was to be the recipient of their opinion letters, and instead relied on Arthur Andersen to acquire from me the information Sidley, Austin, Brown & Wood needed for its opinion letters, it was clear to me that Sidley, Austin, Brown & Wood had chosen to have Arthur Andersen act on its behalf in communicating with me.

### COMPENSATORY DAMAGES SUMMARY

**I.     RESTITUTION/RELIANCE**

|  | Bryan Medical | Lucor | Total |
|---|---|---|---|
| **Attorneys' fees:** | | | |
| Sidley Austin, Brown and Wood | $ 200,000 | $ 200,000 | $ 400,000 |
| Loeb & Loeb | $ 10,000 | $ 6,000 | $ 16,000 |
| King & Spalding | | | To be determined |
| Nelson, Mullins | | | To be determined |
| Allen, Matkins | | | To be determined |
| Arnold & Porter | | | $548,646.25[*] |
| **Accounting Fees:** | | | |
| Arthur Andersen | $ 392,000 | $ 300,000 | $ 692,000 |
| **Other Transaction Costs:** | | | |
| TransStar[†] | $ 583,750 | $ 583,750 | $1,167,500 |
| Merrill Lynch (interest and fees) | $ 605,598 | $ 432,848 | $1,038,446 |
| **TOTAL TRANSACTION COSTS:** | | | $3,313,946 |
| Goldman Sachs | | | To be determined |
| Morgan Stanley | | | To be determined |
| Donaldson Lufkin | | | To be determined |

---

[*] Fees and costs are continuing in nature.
[†] Difference between purchase price and value of securities conveyed.

II. **LOST OPPORTUNITY (BENEFITS OF ALTERNATIVE TAX PLANNING)**[‡]

  A. Lucor: $3,059,652 - $6,119,304

  B. Bryan: $3,997,228 - $7,994,457

III. **BENEFIT OF THE BARGAIN**[§]

  A. Lost tax savings on Lucor: $6,119,304 with interest from April 15, 2000

  B. Lost tax savings on Bryan: $7,994,457 with interest from April 15, 2000

---

[‡] See, *Jones v Childers*, 1992 WL 300845 (M.D. Fla. 1992). The estimated loss is based upon an alternative structuring of the underlying sale transaction so that the gain would have been deferred for somewhere between five years and death; the lower figure is based upon the reduction in applicable tax rates that became effective in 2003 and the time-value of money.

[§] The Plaintiff would be entitled to either the damages under I and II, or III, but not I, II and III. *Nerman v Alexander Grant & Co*, 926 F. 2d 717 (8th Cir. 1991).