# EXHIBIT W



## LLC SECURITY AGREEMENT
### (Gainor Medical Management, LLC)

THIS LLC SECURITY AGREEMENT ("Agreement"), dated as of October __, 1999, by and between Gainor Medical U.S.A. Inc., a California corporation ("Borrower"), and Merrill Lynch International Private Finance Limited, a Delaware corporation ("Lender"), is made with reference to the following:

A. Borrower and Lender have entered into that certain Loan and Collateral Account Agreement, dated as of October __, 1999 (as amended or otherwise modified from time to time, the "Loan Agreement"), pursuant to which Lender has agreed to provide certain Advances (as defined in the Loan Agreement) to Borrower.

B. Borrower holds 556,600 Class A membership units ("Class A Units") and 556,600 Class B membership units ("Class B Units") in Gainor Medical Management, LLC, a Georgia limited liability company (the "LLC").

C. It is a condition precedent to the making of the Advances by Lender under the Loan Agreement that Borrower shall have granted to Lender a security interest in the Class A Units and the Class B Units.

D. Capitalized terms used herein but not otherwise defined herein shall have the meanings ascribed to them in the Loan Agreement.

NOW, THEREFORE, in consideration of the foregoing and the mutual promises and agreements hereinafter contained, the parties hereto hereby agree as follows:

### ARTICLE 1

### GRANT OF SECURITY INTEREST; LLC ACKNOWLEDGEMENT

1.1  Grant of Security Interest. As security for the obligations specified in ARTICLE 2 hereof, Borrower hereby grants to Lender and each of Lender's successors, endorsees and assignees a continuing security interest in all of its right, title and interest in and to the following described property, together with any and all proceeds, increases, substitutions, replacements, repairs, additions and accessions thereof and thereto, all of the foregoing being hereinafter collectively referred to as the "LLC Collateral." With respect to each particular item of LLC Collateral, the security interest herein granted shall attach immediately upon Borrower's execution of this Agreement or as soon as Borrower acquires rights in and to such item of LLC Collateral, whichever is later:

(a)  Distributions. All of Borrower's right, title and interest in and to any and all monies, properties, payments and distributions, however described or derived, accruing to or becoming due and payable to Borrower from the LLC and arising pursuant to that certain Second Amended and Restated Operating Agreement of Gainor Medical Management, LLC, dated as of





December 31, 1997, as amended from time to time, to which Borrower is a party (the "Operating Agreement"), whether such monies, properties, payments and distributions are made by the LLC in respect of operating profits, sales, exchanges, refinancings, condemnations, or insured losses of LLC assets, the liquidation of the LLC's assets and affairs, management fees, guaranteed payments, repayments of loans, reimbursements of expenses, or otherwise (all of the foregoing being collectively referred to herein as the "Distributions").

(b)  Proceeds, Substitutions, Etc. To the extent not included in the items of LLC Collateral set forth in Section 1.1(a) hereof, any and all proceeds, products, increases, substitutions, replacements, repairs, additions and accessions to or of such items of LLC Collateral, including, without limitation, all insurance and the proceeds thereof, all condemnation proceeds or the proceeds of any other form of taking thereof and all real property, equipment, inventory, accounts, general intangibles, contract rights, documents, instruments, chattel paper, money, deposit accounts and other tangible or intangible property received upon the sale or disposition of any of the foregoing now existing or hereafter arising.

1.2  LLC Acknowledgment. Concurrently herewith, Borrower shall cause the LLC and each member except Nissho Corporation, a Japanese corporation ("Nissho") and Michael Highland ("Highland"), thereof to execute and deliver to Lender an Acknowledgment and Consent Regarding LLC Security Agreement in the form attached hereto as Exhibit "A". Concurrently herewith, and in lieu of Nissho's execution and delivery to Lender of an Acknowledgement and Consent Regarding LLC Security Agreement, Borrower shall cause Mark J. Gainor to enter into an Indemnification Agreement in favor of Lender in the form attached hereto as Exhibit "B". Concurrently herewith, and in lieu of Highland's execution and deliver to Lender of an Acknowledgment and Consent Regarding LLC Security Agreement, Borrower shall cause Mark J. Gainor to enter into an Indemnification Agreement in favor of Lender in the form attached hereto as Exhibit "C." Concurrently herewith, Borrower shall also execute and delivery to Lender a fully-executed Assignment of Economic Benefit of Membership Interest in the form attached hereto as Exhibit "D". Borrower hereby authorizes Lender, upon the occurrence of a Remedy Event to complete the appropriate Assignment of Economic Benefit of Membership Interest, and, if the assignee is not Lender, to fill in the name of the purchaser of the LLC Collateral at a sale conducted pursuant to ARTICLE 9 hereof as the assignee, and the date on which such sale was conducted, and, thereafter, to deliver one fully-executed original to each of the Management Committee Members (as defined in the Operating Agreement) and the other members of the LLC. Borrower agrees: (i) that the LLC and its constituent members shall be entitled to rely conclusively on such Assignment of Economic Benefit of Membership Interest and shall have no liability to Borrower for any loss or damage which Borrower may incur by reason of said reliance; and (ii) that this provision is expressly for the benefit of such members.

1.3  No Assumption by Lender. Nothing in this Agreement shall be deemed to constitute an assumption by Lender of any liability or obligation of Borrower with respect to any of the LLC Collateral.



2

GAINO 002676



## ARTICLE 2

### SECURITY FOR OBLIGATIONS

This Agreement secures, and the LLC Collateral is security for, the prompt payment or performance in full when due (including the payment of amounts which would become due but for the operation of the automatic stay under Section 362(a) of the Bankruptcy Code, 11 U.S.C. § 362(a)) of all obligations now or hereafter arising under the Loan Agreement, whether for principal or interest (including, without limitation, interest which, but for the filing of a petition in bankruptcy with respect to Borrower, would accrue on such obligations) or payments of fees, expenses or otherwise, and all obligations now or hereafter arising under this Agreement (all such obligations being the "Secured Obligations").

## ARTICLE 3

### BORROWER REMAINS LIABLE

Anything herein to the contrary notwithstanding, Borrower shall remain liable under the Operating Agreement to perform all of its obligations thereunder to the same extent as if this Agreement had not been executed, and the exercise by Lender of any of its rights hereunder shall not release Borrower from any of its obligations under the Operating Agreement. Lender shall not have any obligation or liability under the Operating Agreement by reason of this Agreement, nor shall Lender be obligated to perform any of the obligations of Borrower thereunder or to take any action to collect or enforce any claim for payment assigned hereunder.



## ARTICLE 4

### REPRESENTATIONS AND WARRANTIES

Borrower hereby represents and warrants to Lender that:

4.1   Due Organization; Good Standing. The Borrower is a corporation and the LLC is a limited liability company, in each case duly formed, validly existing and in good standing under the laws of its jurisdiction of incorporation or formation. Each of the Borrower and the LLC has all requisite power to own, lease and operate its assets, properties and business and to carry on its business as now conducted and as proposed to be conducted. True and complete copies of the Articles of Incorporation and Amended Bylaws of the Borrower and the Certificate of Formation and the Operating Agreement of the LLC have been delivered to Lender. The Operating Agreement has been duly authorized, executed and delivered by the parties thereto, has not been further amended except by that certain Amendment to Second Amended and Restated Operating Agreement of Gainor Medical Management, LLC dated as of January 28, 1998 and that certain Second Amendment to Second Amended and Restated Operating Agreement of Gainor Medical Management, LLC dated as of December 12, 1998 or otherwise modified, is in full force and effect, and is the legal, valid and binding obligation of the parties thereto, enforceable in accordance with its terms. There exists no default under the Operating Agreement by any party thereto.



3



4.2    **Rights to Distributions.** Borrower's rights to the Distributions are genuine, are enforceable under the Operating Agreement in accordance with its terms and are not subject to any defense, offset, counterclaim or contingency whatsoever.

4.3    **Good Title; No Liens.** Except for the security interest granted herein, Borrower has, and will at all times during the term hereof have, good and marketable title to all and every part of the LLC Collateral, free and clear of any mortgage, pledge, lien, security interest, encumbrance, adverse claim, conditional sale contract, lease or other title retention agreement, except as otherwise permitted in Section 6.1 hereof.

4.4    **Perfection and Priority.** Upon the execution and delivery of this Agreement by Borrower and the filing of appropriate financing statements with the appropriate governmental agencies, Lender shall have a perfected security interest in and to the LLC Collateral having first priority for the full amount of all of the Secured Obligations.

4.5    **Valid and Enforceable Agreement.** This Agreement has been duly authorized and constitutes the legal, valid and binding obligation of Borrower enforceable against Borrower in accordance with its terms.

4.6    **No Required Authorizations.** No authorization, approval or other action by, and no notice to or filing with, any governmental authority or regulatory body is required either (i) for the grant by Borrower of a security interest in the LLC Collateral pursuant to this Agreement or for the execution, delivery or performance of this Agreement by Borrower or (ii) for the exercise by Lender of the rights provided in this Agreement or the remedies in respect of the LLC Collateral pursuant to this Agreement (except as may be required in connection with any sale or disposition thereof by laws affecting the offering and sale of securities generally, all of which authorizations, approvals, notices or filings have been, or upon request of Lender will be, made).

4.7    **Place of Business.** The principal place of business of Borrower is in the State of Georgia and the place where Borrower keeps its books and records concerning the LLC Collateral and a true, complete and conformed copy of the Operating Agreement is and will remain at 2317 Forest Drive, Jonesboro, Georgia 30236-4075 or at such other address within the United States as Borrower may designate by at least thirty (30) days' prior written notice to Lender. None of the LLC Collateral is evidenced by a promissory note or other instrument.

4.8    **Credit Information.** Any and all credit or other information heretofore furnished to Lender by Borrower in connection with the Secured Obligations, the financial condition, assets, liabilities, business and prospects of the LLC and the value or condition of the LLC Collateral is true and correct, and all such information hereafter furnished to Lender by Borrower will be true and correct when furnished.

4.9    **No Litigation.** There is no action, legal administrative or other proceeding pending or threatened against Borrower's title to the LLC Collateral or seeking damages against Borrower under the Operating Agreement or alleging that Borrower is in default thereunder, and Borrower does not know of any basis for the assertion of any such claims.



4

GAINO 002678

.



## ARTICLE 5

### COVENANTS OF BORROWER

5.1   **Protection of Security and Legal Proceedings.** Borrower shall, at its own expense, take any and all actions necessary to preserve, protect and defend the security interests of Lender in the LLC Collateral and the perfection and priority thereof against all adverse claims, including appearing in and defending any and all actions and proceedings which purport to affect any of the foregoing. Borrower shall promptly reimburse Lender for all sums, including costs, expenses and actual attorneys' fees, which Lender may pay or incur in defending, protecting or enforcing its security interests in the LLC Collateral or the perfection or priority thereof, or in discharging any prior to subsequent lien or adverse claim against the LLC Collateral or any part thereof, or by reason of becoming or being made a party to or intervening in any action or proceeding affecting the LLC Collateral or the rights of Lender therein, all of which actions Borrower hereby agrees that Lender shall have the right to take in its sole and absolute discretion.

5.2   **Operating Agreement.** Borrower shall, at its own expense, perform and observe all of the terms and provisions of the Operating Agreement to be performed or observed by it, maintain the Operating Agreement in full force and effect, enforce the Operating Agreement in accordance with its terms, and take all actions to any such end as may be from time to time reasonably requested by Lender; Borrower shall promptly deliver to Lender any notice of default which Borrower receives with respect to the Operating Agreement.



5.3   **Notification.** Borrower shall promptly notify Lender in writing of any event which affects the value of the LLC Collateral, the ability of Borrower or Lender to dispose of the LLC Collateral or the rights and remedies of Lender in relation thereto, including, but not limited to, the levy of any legal process against the LLC Collateral and the adoption of any order, arrangement or procedure affecting the LLC Collateral, whether governmental or otherwise; Borrower shall also promptly notify Lender in writing of any event which adversely affects the financial condition, assets, liabilities, business, operations or prospects of the LLC in any material respect.

5.4   **Further Assurances.** Borrower shall at any time and from time to time, at the expense of Borrower, promptly execute and deliver all further instruments and documents, and take all further action, that may be necessary or desirable, or that Lender may request, in order to perfect and protect any security interest granted or purported to be granted hereby or to enable Lender to exercise and to enforce its rights and remedies hereunder with respect to any of the LLC Collateral.

5.5   **Compliance With Laws; Payment of Taxes.** Borrower shall comply with all laws, statutes and regulations pertaining to its ownership of the LLC Collateral. Borrower shall pay or cause to be paid all taxes and other levies with respect to the LLC Collateral when the same become due and payable except such as are being contested in good faith by appropriate proceedings, where the effect of such proceedings is to stay any enforcement in respect of such unpaid taxes, and provided that, in any such case, Borrower shall set aside on its books reserves deemed by Lender to be adequate to protect against liability for such taxes.

5



5.6     Inspection. Borrower shall give Lender such information as may be requested concerning the LLC Collateral and permit Lender and its agents and representatives to enter upon any premises upon which Borrower's records concerning the LLC Collateral or the LLC are located for the purpose of inspecting and auditing the same. Borrower shall also cause the LLC to permit Lender and its agents and representatives full access upon request to all properties and records of the LLC for the purpose of inspecting and auditing the same.

5.7     Other Documents. Borrower shall promptly deliver to Lender such documents and information pertaining to the status or condition of the LLC, the LLC Collateral and Lender's security interests therein as Lender may request from time to time.

5.8     Maintenance of Existence and Licenses. Borrower shall do or cause to be done all things necessary to preserve in full force and effect its existence, properties, rights, licenses and qualifications to carry on business in all applicable jurisdictions.

5.9     Conduct of Business. Borrower shall cause LLC to (i) comply with all laws, statutes and regulations pertaining to its use and ownership of its properties and its conduct of its business; (ii) care for and maintain all of its properties in good condition, free of misuse, abuse, waste and deterioration, reasonable wear and tear of intended use excepted; (iii) observe and perform promptly all contracts or agreements to which it is a party or by which any of its properties is bound, and (iv) carry on its business in the ordinary course.



5.10    Maintenance of Insurance. Borrower shall cause LLC to keep its properties and businesses insured against loss by fire, theft and other extended coverage hazards for the full replacement value thereof and against such losses, casualties and contingencies (including public liability and property damage), of such types and in such amounts as is customary in the case of persons of established reputation engaged in the same or similar business as the LLC.

ARTICLE 6

TRANSFERS AND OTHER LIENS; DISPOSITIONS;
MODIFICATION OF AGREEMENTS

6.1     No Transfers, Liens or Dispositions. Borrower shall not (i) sell, assign, transfer, exchange, lease, lend or dispose of (directly or indirectly, voluntarily, involuntarily, by operation of law or otherwise), or grant any option with respect to, any of the LLC Collateral or (ii) create or permit to exist any Lien on or with respect to the LLC Collateral, except for the Lien in favor of Lender. The inclusion of "proceeds" as a component of the LLC Collateral shall not be deemed a consent by Lender to any sale, assignment, transfer, exchange, lease, loan, granting of an option with respect to or disposition of all or any part of the LLC Collateral.

6.2     No Modification of Agreements. Borrower shall not (i) cause, suffer or permit the Operating Agreement to be amended or terminated; (ii) waive, postpone or modify its rights to receive any Distributions under the Operating Agreement; or (iii) waive any default or breach of the Operating Agreement, or give any other consent, waiver or approval thereunder, or take any other action in connection with the Operating Agreement which would impair the value of the interests or rights of Borrower thereunder or which would impair the interests or rights of

GAINO 002680



Lender. Any such proposed action shall be submitted in writing to Lender at least twenty (20) business days prior to its execution.

6.3   <u>Transactions By LLC</u>. Borrower shall not cause, suffer or permit the LLC (i) to become a party to any transaction whereby all or a substantial part of the LLC's properties, undertakings or assets would become refinanced or become the property of any other person or entity whether by way of liquidation, dissolution, reorganization, merger, transfer, sale, lease, sale and leaseback or any other disposition; or (ii) to make any material change in the character of its business as conducted on the date hereof.

ARTICLE 7

<u>RIGHTS OF BORROWER WITH RESPECT TO LLC COLLATERAL</u>

7.1   <u>Prior to Remedy Event</u>. So long as no Remedy Event under the Loan Agreement shall have occurred:

(a)   Borrower shall be entitled to exercise any and all voting and other consensual rights pertaining to the LLC Collateral, or any part thereof, for any purpose not inconsistent with the terms of this Agreement, the Loan Agreement or any other Loan Document; provided, however, that Borrower shall not exercise or refrain from exercising any such right if it would result in a Remedy Event; and

(b)   Borrower shall be entitled to receive and (to the degree not inconsistent with the Loan Agreement) to retain and use any and all Distributions.



7.2   <u>After Remedy Event</u>. Upon the occurrence of a Remedy Event under the Loan Agreement:

(a)   Lender shall have the right to have the LLC Collateral transferred into the name of Lender;

(b)   all rights of Borrower to receive the Distributions which it would otherwise be authorized to receive and retain pursuant to Section 7.1(b) above shall cease, and Lender shall thereafter have the sole right to receive one hundred percent (100%) of all Distributions, which may be held and/or applied by Lender against the Secured Obligations in such order and manner as Lender, in its sole and absolute discretion, determines; and

(c)   all Distributions which are received by Borrower contrary to the provisions of (b) of this Section 7.2 shall be received in trust for the benefit of Lender, shall be segregated from other funds of Borrower, and forthwith shall be paid over to Lender as pledged LLC Collateral in the same form as received (with any necessary endorsements).

7

GAINO 002681



## ARTICLE 8

### LENDER MAY PERFORM

If Borrower fails to perform any agreement contained herein, Lender may itself perform or cause the performance of such agreement, and the expenses of Lender incurred in connection therewith, plus interest at the rate specified in the Loan Agreement from the date of such advance to the date of reimbursement, shall be payable by Borrower under ARTICLE 15 below. However, nothing in this Agreement shall obligate Lender to act.

## ARTICLE 9

### LENDER APPOINTED ATTORNEY-IN-FACT

Borrower hereby appoints Lender Borrower's attorney-in-fact with full authority in the place and stead of Borrower and in the name of Borrower or otherwise, from time to time (whether before or after a Remedy Event) in Lender's sole and absolute discretion, to take any action and to execute any instrument which Lender may deem necessary or advisable to accomplish the purposes of this Agreement, including, without limitation, to receive, indorse and collect all instruments made payable to Borrower representing any Distribution in respect of the LLC Collateral or any part thereof and to give full discharge for the same.

## ARTICLE 10



### REASONABLE CARE

Lender shall be deemed to have exercised reasonable care in the custody and preservation of any LLC Collateral in its possession if the LLC Collateral is accorded treatment substantially equal to that which Lender accords its own property, it being understood that Lender shall not have responsibility for (i) ascertaining or taking action with respect to calls, conversions, exchanges, maturities, tenders or other matters relative to any LLC Collateral, whether or not Lender has or is deemed to have knowledge of such matters, or (ii) taking any necessary steps to preserve rights against any parties with respect to any LLC Collateral.

## ARTICLE 11

### REMEDIES UPON DEFAULT

If any Remedy Event shall have occurred:

11.1  <u>Exercise of Rights</u>.  Lender may exercise in respect of the LLC Collateral, in addition to other rights and remedies provided for herein or otherwise available to it, all the rights and remedies of a secured party under the Uniform Commercial Code (the "Code") in effect in the State of New York at that time, and Lender may also without notice except as specified below sell the LLC Collateral or any part thereof in one or more parcels at public or private sale, at any exchange, broker's board or at any of Lender's offices or elsewhere, for cash, on credit or for future delivery, and upon such other terms as Lender in its sole and absolute discretion may deem commercially reasonable. Borrower agrees that, to the extent notice of sale



8

GAINO 002682



shall be required by law, at least ten (10) days' notice to Borrower of the time and place of any public sale or the time after which any private sale is to be made shall constitute reasonable notification. Lender shall not be obligated to make any sale of LLC Collateral regardless of notice of sale having been given. Lender may adjourn any public or private sale from time to time by announcement at the time and place fixed therefor, and such sale may, without further notice, be made at the time and place to which it was so adjourned. Borrower hereby waives any claims against Lender arising by reason of the fact that the price at which any LLC Collateral may have been sold at such a private sale was less than the price which might have been obtained at a public sale, even if Lender accepts the first offer received and does not offer such LLC Collateral to more than one offeree, and in all events such sale shall be deemed to be commercially reasonable. At any such public or private sale, Lender may be the purchaser of the LLC Collateral.

11.2    Securities Laws. Borrower recognizes that, by reason of certain prohibitions contained in the Securities Act of 1933, as amended (the "Securities Act"), and applicable state securities laws, Lender may be compelled, with respect to any sale of all or any part of the LLC Collateral, to limit purchasers to those who will agree, among other things, to acquire the LLC Collateral for their own account, for investment and not with a view to the distribution or resale thereof. Borrower acknowledges that any such private sale may be at prices and on terms less favorable to Lender than those obtainable through a public sale without such restrictions (including, without limitation, a public offering made pursuant to a registration statement under the Securities Act), and, notwithstanding such circumstances, agrees that any such private sale shall be deemed to have been made in a commercially reasonable manner and that Lender shall have no obligation to engage in public sales and no obligation to delay the sale of any LLC Collateral for the period of time necessary to permit the issuer thereof to register it for a form of public sale requiring registration under the Securities Act or under applicable state securities laws, even if Borrower would agree to do so.

11.3    Further Information. If Lender determines to exercise its right to sell any or all of the LLC Collateral, upon written request, Borrower shall and shall cause each issuer of any LLC Collateral to be sold hereunder from time to time to furnish to Lender all such information as Lender may request in order to determine the degree to which the LLC Collateral may be sold by Lender as exempt transactions under the Securities Act and the rules of the Securities and Exchange Commission thereunder, as the same are from time to time in effect.

11.4    Cash LLC Collateral. Any cash held by Lender as LLC Collateral and all cash proceeds received by Lender in respect of any sale of, collection from, or other realization upon all or any part of the LLC Collateral may, in the discretion of Lender, be held by Lender as collateral for, and/or then or at any time thereafter applied (after payment of any amounts payable to Lender pursuant to ARTICLE 15) in whole or in part by Lender against, all or any part of the Secured Obligations in such order as Lender shall elect. After such application and after payment by Lender of any other amount required by law, including, without limitation Section 9-504(1)(c) of the Code, any surplus of such cash or cash proceeds held by Lender and remaining after payment in full of all the Secured Obligations shall be paid over to Borrower or to whomsoever may be lawfully entitled to receive such surplus. In a like manner, Borrower shall pay to Lender, without demand, whatever amount of the Secured Obligations remains unpaid after the LLC Collateral has been sold and the proceeds applied as aforesaid, together



GAINO 002683



with interest thereon from the date of demand at the highest rate specified in the Note, which interest shall also constitute a part of the Secured Obligations.

11.5 <u>Other Remedies</u>. Lender shall not be obligated to resort to its rights or remedies with respect to any other security for or guaranty or payment of the Secured Obligations before resorting to its rights and remedies against Borrower hereunder. All rights and remedies of Lender shall be cumulative and not in the alternative.

### ARTICLE 12

### NO MEMBER

Notwithstanding anything to the contrary contained herein, neither Lender nor any successor thereto shall, regardless of whether such Person has acquired the LLC Collateral following the occurrence of an Event of Default, be deemed to be a member in the LLC for any purposes. The security interests granted to Lender herein are LLC Collateral assignments only, serving as security for the Secured Obligations.

### ARTICLE 13

### LIABILITY AND INDEMNIFICATION

Lender shall not be liable to Borrower for any act or omission by Lender unless Lender's conduct constitutes willful misconduct or gross negligence. Borrower agrees to indemnify and hold Lender harmless from and against all losses, liabilities, claims, damages, costs and expenses (including actual attorneys' fees and disbursements) with respect to (i) any action taken or any omission by Lender with respect to this Agreement, provided that Lender's conduct does not constitute willful misconduct or gross negligence, and (ii) any claims arising out of Borrower's ownership of the LLC Collateral or Lender's security interest therein.

### ARTICLE 14

### CONTINUING SECURITY INTEREST; ASSIGNMENT OF OBLIGATIONS

This Agreement shall create a continuing security interest in the LLC Collateral and shall (i) remain in full force and effect until payment in full of the Secured Obligations, (ii) be binding upon Borrower, its successors and assigns, (iii) inure, together with the rights and remedies of Lender hereunder, to the benefit of Lender and its successors, transferees and assigns, (iv) constitute, along with the Loan Agreement, the Note, and other Loan Documents to which it is a party, the entire agreement between Borrower and Lender and (v) be severable in the event that one or more of the provisions herein is determined to be illegal or unenforceable. Without limiting the generality of the foregoing clause (iii), Lender may assign or otherwise transfer any Secured Obligation to any other person or entity, and such other person or entity shall thereupon become vested with all the benefits in respect thereof granted to Lender herein or otherwise.



GAINO 002684

## ARTICLE 15

### EXPENSES



Borrower will upon demand pay to Lender the amount of any and all expenses, including the fees and expenses of its counsel and of any experts and agents, which Lender may incur in connection with (i) the administration of this Agreement, (ii) the custody or preservation of, or the sale of, collection from, or other realization upon, any of the LLC Collateral, (iii) the exercise or enforcement of any of the rights of Lender hereunder and (vi) the failure by Borrower to perform or observe any of the provisions of this Agreement.

## ARTICLE 16

### SECURITY INTEREST ABSOLUTE

All rights of Lender and security interests hereunder, and all Secured Obligations of Borrower hereunder, shall be absolute and unconditional irrespective of (i) any lack of validity or enforceability of the Loan Agreement, the Note, any other Loan Document or any other agreement or instrument relating thereto; (ii) any change in the time, manner or place of payment of, or in any other term of, all or any of the Secured Obligations, or any other amendment or waiver of or any consent to any departure from the Loan Agreement, the Note, any other Loan Document or any other agreement or instrument relating thereto; (iii) any exchange, release or non-perfection of any other collateral, or any release or amendment or waiver of or consent to departure from any guaranty for all or any of the Secured Obligations; or (iv) any other circumstance which might otherwise constitute a defense available to, or a discharge of, Borrower or a third party Borrower.

## ARTICLE 17

### AMENDMENTS; WAIVER

No amendment or waiver of any provision of this Agreement nor consent to any departure by Borrower herefrom shall in any event be effective unless the same shall be in writing and signed by Lender, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

## ARTICLE 18

### NOTICES



All notices and other communications provided for hereunder shall, unless otherwise stated herein, be in writing (including by telecopier) and mailed, sent or delivered to the respective parties hereto at or to their respective addresses or telecopier numbers set forth below their names on the signature pages hereof, or at or to such other address or telecopier number as shall be designated by any party in a written notice to the other party hereto. All such notices and communications shall be effective (i) if delivered by hand, upon delivery; (ii) if sent by mail, upon the earlier of the date of receipt or five Business Days after deposit in the mail, first class,

GAINO 002685

postage prepaid; and (iii) if sent by telecopy, upon receipt provided that a hard copy of such notice or other communication is sent via first class mail, postage prepaid, within one Business Day following transmission by telecopy.

## ARTICLE 19

### COUNTERPARTS

This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

## ARTICLE 20

### RETURN OF LLC COLLATERAL

Subject to any duty imposed by law or otherwise to the holder of any subordinate lien on the LLC Collateral known to Lender, and subject to the direction of a court of competent jurisdiction, upon the extinguishment of any commitment of Lender to make further advances under the Loan Agreement and the payment in full of the Secured Obligations, Borrower shall be entitled to return of the LLC Collateral in the possession of Lender; provided, however that Lender shall not be obligated to return to Borrower or deliver to the holder of any subordinate lien any such LLC Collateral until it is satisfied that all amounts with respect to the Secured Obligations are no longer subject to being recaptured under applicable bankruptcy or insolvency laws or otherwise. The return of LLC Collateral, however effected, shall be without recourse to Lender, and Lender shall be entitled to receive appropriate documentation to such effect. The return of LLC Collateral shall be effected without representation or warranty and shall not entitle Borrower to any right to any endorsement.

## ARTICLE 21

### GOVERNING LAW; TERMS

This Agreement in all respects shall be governed by and interpreted under the laws of the State of New York applicable to contracts made and to be performed wholly within such state without regard to any conflict of law provision thereof that might prevent the operation of this Article 21. Unless otherwise defined herein or in the Loan Agreement, terms defined in the Code are used herein as therein defined.

## ARTICLE 22

### SUBMISSION TO JURISDICTION

BORROWER HEREBY IRREVOCABLY SUBMITS ITSELF TO THE JURISDICTION OF THE STATE COURTS OF THE STATE OF NEW YORK IN NEW YORK COUNTY AND TO THE JURISDICTION OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK FOR THE PURPOSES OF ANY SUIT, ACTION OR OTHER PROCEEDING ARISING OUT OF OR BASED UPON THIS AGREEMENT OR THE SUBJECT MATTER HEREOF BROUGHT BY LENDER OR ITS

GAINO 002686



SUCCESSORS OR ASSIGNS. BORROWER, TO THE EXTENT PERMITTED BY APPLICABLE LAW, (A) HEREBY WAIVES AND AGREES NOT TO ASSERT, BY WAY OF MOTION, AS A DEFENSE OR OTHERWISE, IN ANY SUCH SUIT, ACTION OR PROCEEDING, ANY CLAIM THAT IT IS NOT SUBJECT PERSONALLY TO THE JURISDICTION OF THE ABOVE-NAMED COURTS, THAT ITS PROPERTY IS EXEMPT OR IMMUNE FROM ATTACHMENT OR EXECUTION, THAT THE SUIT, ACTION OR PROCEEDING IS BROUGHT IN AN INCONVENIENT FORUM, THAT THE VENUE OF THE SUIT, ACTION OR PROCEEDING IS IMPROPER OR THAT THIS AGREEMENT OR THE SUBJECT MATTER HEREOF MAY NOT BE ENFORCED IN OR BY SUCH COURT, AND (B) HEREBY WAIVES THE RIGHT TO ASSERT IN ANY SUCH SUIT, ACTION OR PROCEEDING ANY OFFSET OR COUNTERCLAIM, EXCEPT COUNTERCLAIMS THAT ARE COMPULSORY. BORROWER HEREBY CONSENTS TO THE SERVICE OF PROCESS BY MAIL AT ITS ADDRESS OF SUCH PARTY SET FORTH IN THE LOAN AGREEMENT. BORROWER AGREES THAT ITS SUBMISSION TO JURISDICTION AND CONSENT TO SERVICE OF PROCESS BY MAIL IS MADE FOR THE EXPRESS BENEFIT OF LENDER. FINAL JUDGMENT AGAINST BORROWER IN ANY SUCH SUIT, ACTION OR PROCEEDING SHALL BE CONCLUSIVE, AND MAY BE ENFORCED IN ANY OTHER JURISDICTION (X) BY SUIT, ACTION OR PROCEEDING ON THE JUDGMENT, A CERTIFIED OR TRUE COPY OF WHICH SHALL BE CONCLUSIVE EVIDENCE OF THE FACT AND OF THE AMOUNT OF THE INDEBTEDNESS OR LIABILITY OF BORROWER OR (Y) IN ANY OTHER MANNER PROVIDED BY OR PURSUANT TO THE LAWS OF SUCH OTHER JURISDICTION; PROVIDED, HOWEVER, THAT LENDER MAY AT ITS OPTION BRING SUIT OR INSTITUTE OTHER JUDICIAL PROCEEDINGS AGAINST BORROWER OR ANY OF ITS ASSETS IN ANY STATE OR FEDERAL COURT OF THE UNITED STATES OR OF ANY COUNTRY OR PLACE WHERE SUCH BORROWER OR SUCH ASSETS MAY BE FOUND. NOTHING IN THIS ARTICLE 22 SHALL BE DEEMED TO CONSTITUTE A WAIVER BY BORROWER OF ITS RIGHT TO APPEAL THE JUDGMENT OF ANY COURT.



## ARTICLE 23

### TRIAL BY JURY

EXCEPT TO THE EXTENT PROHIBITED BY APPLICABLE LAW WHICH CANNOT BE WAIVED, BORROWER HEREBY WAIVES AND COVENANTS THAT IT WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS AGREEMENT OR THE SUBJECT MATTER HEREOF, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING OR WHETHER IN CONTRACT OR TORT OR OTHERWISE. BORROWER ACKNOWLEDGES THAT IT HAS BEEN INFORMED BY LENDER THAT THE PROVISIONS OF THIS ARTICLE CONSTITUTE A MATERIAL INDUCEMENT UPON WHICH LENDER HAS RELIED, IS RELYING AND WILL RELY IN ENTERING INTO THIS AGREEMENT AND ANY DOCUMENT RELATED THERETO. LENDER MAY FILE AN ORIGINAL COUNTERPART OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF BORROWER TO THE WAIVER OF ITS RIGHTS TO TRIAL BY JURY.


13

GAINO 002687



IN WITNESS WHEREOF, Borrower has caused this Agreement to be duly executed and delivered by its officer thereunto duly authorized as of the date first above written.

BORROWER:

GAINOR MEDICAL U.S.A. INC., A CALIFORNIA CORPORATION

By _____
Mark J. Gainor, President

Address: 2317 Forest Drive
         Jonesboro, Georgia  30236-4075
Telecopier: (770) 472-1444

LENDER:

MERRILL LYNCH INTERNATIONAL PRIVATE FINANCE LIMITED, A DELAWARE CORPORATION



By _____

    Its _____

Address: 9595 Wilshire Boulevard, Suite 1000
         Beverly Hills, California  90212
Telecopier: (310) 859-7148

LA184954.4

14

GAINO 002688