UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case No.: 06-21748 CIV-MARTINEZ/BANDSTRA

MARK J. GAINOR and ELYSE GAINOR,

      Plaintiffs,

v.

SIDLEY AUSTIN LLP, a Delaware limited liability
Partnership, f/k/a SIDLEY AUSTIN
BROWN & WOOD, f/k/a BROWN & WOOD,
R. J. RUBLE, an individual, ARTHUR
ANDERSEN, LLP, an Illinois limited liability
partnership, MICHAEL S. MARX, an individual,
P. ANTHONY NISSLEY, an individual,
MERRILL LYNCH & CO., INC., a Delaware
corporation, and MARK C. KLOPFENSTEIN,
an individual,

      Defendants.

_____/

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT NISSLEY'S MOTION TO DISMISS**

      Plaintiffs, Mark J. Gainor ("Gainor") and Elyse Gainor (together, "the Gainors"),

by and through their undersigned attorneys, hereby respond to Defendant Anthony P.

Nissley's Motion to Dismiss for Lack of Personal Jurisdiction and Incorporated

Memorandum of Law in Support ("Nissley's MTD") as follows:

**I.     FACTUAL BACKGROUND**

      This case arises from Gainor's 1999 purchase of a tax shelter marketed by

Defendant, Arthur Andersen, LLP ("Arthur Andersen"). *See Amd. Comp. at ¶35.* The

shelter was designed by Defendant, Sidley Austin, LLP, formerly known as Brown &

Wood, ("Sidley Austin") largely based on a previously discredited shelter known as BOSS.

*See Amd. Comp. at ¶32, 53.* Sidley Austin was in the business of partnering with accounting firms in the joint development and marketing of illegal tax shelters. *See Amd. Comp. at ¶53-55.* The shelter's implementation required the cooperation of certain co-conspirators: someone to act as an apparently independent third party purchaser and someone to act as an apparently independent investment advisor. *See Amd. Comp. at ¶64.* These roles were filled in this case, respectively, by Defendants, Mark Klopfenstein ("Klopfenstein") and Merrill Lynch & Co., Inc. ("Merrill Lynch"). *See Amd. Comp. at ¶64-65.* Sidley Austin fulfilled its own pre-scripted role as the "independent" law firm issuing opinion letters. *See Amd. Comp. at ¶67.* Defendants Marx and Nissley were partners of Arthur Andersen and were instrumental in marketing the tax shelter scheme and inducing Gainor to enter into it. *Nissley Declaration, ¶5, 11, 12, 15, 16; Marx Declaration¶¶ 5, 10-14, 25-30.*

Unbeknownst to the Gainors, Defendants knew that the tax shelter transaction was unlikely to survive IRS scrutiny. *See Amd. Comp. at ¶75-77.* When the IRS later audited the Gainors, it rejected the losses the Gainors reported from the tax shelter. *See Amd. Comp. ¶ 49.* Arthur Andersen and Sidley Austin abandoned the Gainors at that point and refused to assist them in defending the IRS audits. *See Gainor Affidavit ¶ 21.* The Gainors ultimately settled with the IRS, paying back taxes in excess of $17 million, (Id. at ¶ 32) after incurring substantial additional sums in legal and accounting fees. *See Amd. Comp. ¶ 24.*

Gainor was a long-standing client of Arthur Andersen. *See Amd. Comp at ¶27.* At all times relevant to this litigation, Arthur Andersen had its main office in Chicago, Illinois and other offices throughout the country. *See Amd. Comp. at ¶7.* Nissley worked out of

Arthur Andersen's Chicago office. *See Amd. Comp. at ¶12-13*. When Nissley and Marx first informed Gainor of the tax shelter, the Gainors were living in Georgia. *See Amd. Comp. at ¶1*. By the time the scheme was completed, however, with Arthur Andersen preparing the tax returns that reflected the tax shelter losses, the Gainors had moved to Florida. *See Amd. Comp. at ¶1, 20 and Gainor Affidavit at ¶ 10*. In fact, before any of the transactions involved in the strategy were implemented, Gainor advised Andersen that Plaintiffs were moving to Florida, and Andersen advised him when to make the move. *See Gainor Affidavit at ¶¶ 8-9*. Thus, Andersen knew before the first transaction occurred that Plaintiffs would be Florida residents before the plan was fully implemented and that Plaintiffs would be Florida residents when the injury occurred. Nissley does not dispute that he continued to communicate with Gainor after he moved to Florida. *See Nissley Declaration at ¶26*. Arthur Andersen prepared the relevant tax returns for Gainor while he was living in Florida, and Arthur Andersen sent the tax returns to Gainor in Florida. *See Gainor Affidavit at ¶¶ 10-16*.

Nissley moves to dismiss the Amended Complaint against him, claiming it is unfair that he should be sued in Florida over these incidents and that this Court lacks personal jurisdiction over him. Since the Court has personal jurisdiction over Nissley's co-conspirators, and since Nissley committed a tort in Florida and has sufficient minimum contacts here to comport with due process, this Court has personal jurisdiction over Nissley and his motion must be denied.

**II    ARGUMENT AND AUTHORITIES**

      A.    <u>Standard for motion to dismiss on personal jurisdiction grounds</u>

If the Court does not conduct an evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, Plaintiffs must establish a prima facie case of personal jurisdiction over the nonresident defendant. Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829 (11th Cir. 1990). "'A prima facie case is established if the plaintiff presents sufficient evidence to defeat a motion for directed verdict.'" Id. at 855. "'The district court must accept the facts alleged in the complaint as true, to the extent that they are uncontroverted by the defendant's affidavits.'" Id. "'Where the parties' affidavit and deposition evidence conflict, the district court must construe all reasonable inferences in favor of the plaintiff.'" Id.; see also Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino, 447 F.3d 1357, 1360 (11th Cir. 2006) (same).

"A defendant's filing of an affidavit contesting jurisdictional allegations shifts the burden back to the plaintiff (to support those allegations with evidence) only when the defendant's affidavit is legally sufficient to effect the shift." Whitney Information Network, Inc. v. Xcentric Venture, LLC, 199 Fed. Appx. 738, 743 (11th Cir. 2006). In this instance Nissley has not sufficiently controverted Plaintiffs' allegation that he committed a tort in Florida so the burden does not shift to Plaintiffs to prove up personal jurisdiction. See Amd. Comp. at ¶ 20(b). Moreover, many of the statements in Nissley's declaration are based only on the 'best of his knowledge or belief.' See Nissley Declaration at ¶¶ 18, 20-22, 24. Such contentions, not being based on personal knowledge, are insufficient to establish the purported facts contained therein. See Pace v. Capabianco, 283 F.3d 1275, 1278 (11th Cir. 2001) (affidavits based on information and belief not sufficient to defeat summary judgment). Even if Nissley's declaration is considered sufficient, when the

Court construes all reasonable inferences in Plaintiffs' favor as it must do, it will find that it has personal jurisdiction over Nissley.

The parties here agree that the determination of personal jurisdiction over a nonresident defendant requires a two-part analysis. Nissley MTD at 5. The Court must first examine the jurisdictional issue under the state long-arm statute. Id. It must then ascertain whether or not sufficient 'minimum contacts' exist to satisfy the Due Process Clause of the Fourteenth Amendment so that 'maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Id. In this case both parts of the analysis are satisfied.

B.    This Court Has Personal Jurisdiction Over Nissley Because There Is No Dispute That It Has Personal Jurisdiction Over Several of His Co-Conspirators.

Plaintiffs' claim against Nissley is for conspiracy to defraud Gainor, which Nissley accomplished with Arthur Andersen and Sidley Austin, among others. If the Court has personal jurisdiction over one of the co-conspirators, then it has personal jurisdiction over all of them. See Machtinger v. Inertial Airline Svcs., Inc., 937 So. 2d 730, 736 (Fla. 3d DCA 2006) (if plaintiff successfully alleges that any member of a conspiracy commits a tortious act in Florida in furtherance of the conspiracy, then all of the conspirators are subject to Florida long-arm jurisdiction; citing Wilcox v. Stout, 637 So. 2d 335, 335 (Fla. 2d DCA 1994); Stone v. Wall, 135 F.3d 1438, 1442 n.4 (11th Cir. 1998) (jurisdiction may be proper over other defendants where court has jurisdiction over one of co-conspirators, citing Wilcox v. Stout).

In this case Plaintiffs has successfully alleged that, among others, Sidley Austin and Arthur Andersen committed a tort against him in Florida. Regardless of where the

initial discussions took place, the tort was not completed and Gainor was not injured until he became a Florida resident. See Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1168 (11th Cir. 2005) (jurisdiction under Florida's long-arm provision is found when an out-of-state defendant commits a tort that produced an injury in Florida, even if the tortious act was not committed in Florida). Although Arthur Andersen "negligently shot [its] arrow into the air of [Georgia], it did no harm and had no effect until it fell to earth in [Florida.]". Tucker v. Fianson, 484 So. 2d 1370, 1372 (Fla. 3d DCA 1986) (deciding venue issue).

Sidley Austin directed its offending opinion letters to Gainor in Florida. These opinion letters were a crucial part of the conspiracy. Arthur Andersen prepared the offending tax returns that implemented the tax shelter for Gainor while he was living in Florida and sent the completed returns to him there. Gainor was injured in Florida by the conspirators' actions once the IRS audited him while he was living in Florida and denied the losses claimed by virtue of the tax shelter, and required him to pay $17,000,000. See Gainor Affidavit at ¶ 32. Thus, this Court has personal jurisdiction over Arthur Andersen and Sidley Austin. § 48.193(1)(b), Fla. Stat. (2006) (Florida court has personal jurisdiction over out-of-state defendant who commits tort in Florida); Horizon Aggressive Growth, 421 F.3d at 1168 (out-of-state defendant's telephonic, electronic, or written communications into Florida sufficient to trigger jurisdiction under Florida's long-arm statute if the cause of action arises from those communications); Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1216-17 (11th Cir. 1999) (11th Circuit consistently applies broad construction of tort provision of Florida's long-arm statute – it applies to defendants committing tortious acts outside the state that cause injury in Florida); Robinson v. Giarmarco & Bill, P.C., 74 F.3d

253 (11th Cir. 1996) (same; nonresident attorneys and accountant had sufficient minimum contacts in a suit for negligent estate planning services where Florida resident retained them to design estate plan to minimize taxes and documents implementing same were prepared for and delivered to Florida resident).

Indeed, Arthur Andersen and Sidley Austin have conceded this point by having never challenged personal jurisdiction. Since there is no dispute that this Court has personal jurisdiction over these conspirators, it likewise has jurisdiction over co-conspirator Nissley. See Machtinger, 937 So. 2d at 736; Stone, 135 F.3d at 1442, n.4.

C. This Court Has Personal Jurisdiction Over Nissley Independently.

1. *The Court has personal jurisdiction over Nissley because he committed a tort in Florida and thus falls within Florida's long-arm statute.*

Even if the existence of personal jurisdiction over Nissley's co-conspirators were not enough, Nissley has had sufficient contacts of his own with the State of Florida to satisfy the requirements for personal jurisdiction. In his motion to dismiss, Nissley first challenges personal jurisdiction under sections 48.193(1)(f) or (1)(g) of Florida's long-arm statute. Nissley MTD at 6-8. Subsection 48.193(1)(f) applies to personal injuries and property damage caused in Florida. § 48.193(1)(f), Fla. Stat. (2006). Subsection (1)(g) applies to breaches of contract in Florida. *Id.* at § 48.193(1)(g). These are not the provisions applicable to Nissley. Instead, Plaintiffs have alleged that Nissley committed a tort in Florida – conspiracy to commit fraud. *See* Plaintiffs' Amended Complaint at pp. 11-25. As a result, the applicable long-arm provision here is section 48.193(1)(b) – personal jurisdiction over persons "committing tortious acts within Florida." § 48.193(1)(b), Fla. Stat. (2006). Unlike section 48.193(1)(f) which specifically requires a

plaintiff to prove that an out-of-state defendant engaged in solicitation or service activities in Florida, or manufactured or serviced products used in Florida, section 48.193(1)(b) contains no such requirements. Nor are Plaintiffs required to satisfy subsection (1)(g)'s requirement that the defendant failed to perform acts that, by contract, had to be performed in Florida. Instead, subsection 48.193(1)(b) requires only that a tort be committed in Florida. Id. at § 48.193(b)(1).

Nissley essentially ignores subsection 48.193(b)(1), claiming Plaintiffs pled no facts supporting the conclusion that Nissley committed a tort in Florida. Nissley MTD at 7. To the contrary, Plaintiffs pled extensive facts about the conspiracy in their Amended Complaint. See Amd. Comp. at pp. 1-25. Moreover, the Court can consider the additional facts set forth below which are sufficient to establish personal jurisdiction. See Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1214 (11th Cir. 1999) (plaintiff must prove basis for jurisdiction by way of affidavit if defendant challenges jurisdiction by affidavit).

The tort provision of Florida's long-arm statute is broadly construed. See Future Tech Intern., Inc. v. Tae Il Media, Ltd., 944 F. Supp 1538, 1558 (S.D. Fla. 1996). Jurisdiction under this provision is found when an out-of-state defendant commits a tort that produced an injury in Florida, even if the tortious act was not committed in Florida. See Horizon Aggressive Growth, 421 F.3d at 1168. "For example, allegations about an out-of-state defendant's 'telephonic, electronic, or written communications into Florida' are sufficient to trigger jurisdiction" under Florida's long-arm statute if the cause of action arises from those communications. Id. All that is required is a "connexity" between the out-of-state communications and the cause of action "such that the cause of action 'would depend upon proof of either the existence or content of any of the communications . . . into

Florida.'" Id; see also Posner, 178 F.3d at 1216-17 (11th Circuit consistently applies broad construction of section (1)(b) – it applies to defendants committing tortious acts outside the state that cause injury in Florida); Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253 (11th Cir. 1996) (same).

In this instance, Plaintiffs alleged that Nissley and his co-conspirators defrauded him into entering into a tax shelter that they knew was unlikely to pass IRS muster. They did so in order to charge and receive hundreds of thousands of dollars in fees to implement the necessary transactions for the tax shelter. *Amd. Comp.* at pp.1-25. Although Defendants initially solicited Gainor's participation in the tax shelter while Gainor was a Georgia resident, Nissley continued to advise him when he moved to Florida. By the time Gainor was injured, Gainor was a Florida resident. Andersen knew in 1999 that this would be the case. *See Gainor Affidavit at ¶¶ 8-10.*

Specifically, Nissley's firm, Arthur Andersen, prepared the tax returns that reflected the losses from the tax shelter. *See Gainor Affidavit at ¶¶ 11-13.* It prepared those returns after Gainor moved to Florida and sent them to Gainor in Florida. Id. Nissley's declaration suggests that he traveled to Florida on a number of occasions to meet with Gainor. *Nissley Declaration at ¶ 26.* Members of Nissley's firm, Arthur Andersen, including possibly Nissley, participated in a telephone conference with Gainor in Florida dealing with tax issues arising from the 1999 tax return and the Brown & Wood opinion letter. *Gainor Affidavit at ¶ 19.* Members of Arthur Andersen continued through at least March of 2002, over two years after Gainor became a Florida resident, to deal with matters relating to the Sidley Plan. Id. at 20. The IRS audited Gainor when he was a Florida resident and disallowed the tax shelter loss while he was a Florida resident. Id. at 31-32

and *Amd. Comp. at 49*. Nissley and Arthur Andersen refused to assist Gainor with the IRS audit when Gainor was in Florida. *Gainor Affidavit at ¶¶ 21-28*. All of these actions have "connexity" to the tax shelter at issue in this case, Nissley's tortious acts, and Gainor's injury.

In short, it is simply not controlling that the course of events leading to Gainor's injuries began in Georgia. By the time those actions injured Gainor, he was living in Florida. This is more than sufficient to satisfy section 48.193(b)(1) of Florida's long arm statute.

2.    *Nissley Had Sufficient Minimum Contacts With Florida To Comport With Fair Play And Substantial Justice.*

Nissley's contacts with Florida also meet the test for sufficient minimum contacts to satisfy due process. Many of those contacts were related to Plaintiffs' cause of action for conspiracy to commit fraud. His contacts related to the tax shelter and Defendants' continuing efforts to hide their scheme even after the IRS audited Gainor. Nissley purposely availed himself of Florida when he: continued to represent Gainor in Florida; met with Gainor in Florida, gave him advice when he was there; and otherwise continued to maintain a relationship with Gainor after he moved to Florida. His firm, Arthur Andersen also prepared the tax returns that implemented the tax shelter for Gainor when he was a Florida resident; it delivered the tax returns to Gainor in Florida. Nissley also may have known that in the likely event the IRS audited Gainor, it would do so while Gainor was living in Florida. *See Gainor Affidavit at ¶¶ 8-11*. Nissley could have reasonably anticipated being haled into court in Florida once the Gainors discovered what had happened to them. These are sufficient minimum contacts. See <u>Posner</u>, 178 F.3d at 1220 (reciting test Eleventh Circuit uses in minimum contacts analysis); <u>Robinson</u>, 74 F.3d at

259 (nonresident attorneys and accountant had sufficient minimum contacts in a suit for negligent estate planning services where Florida resident retained defendants to design estate plan to minimize taxes and documents for disposition of assets were drafted and memoranda analyzing estate distribution were prepared for and delivered to Florida resident). Nissley also admits that he owns property in Florida. *Nissley Declaration* at ¶9.

In considering "fair play and substantial justice," courts look at the burden on the defendant, the interests of the forum state, and the plaintiff's interests in obtaining relief. Robinson, 74 F.3d at 259. Here both Plaintiffs and the State of Florida have compelling interests in adjudicating this matter in Florida. Plaintiffs, of course, have a great interest in the convenience of litigating in their home state. Florida likewise has a significant interest in adjudicating a dispute involving services provided by out-of-state professionals to its residents. See Kim v. Keenan, 71 F. Supp.2d 1228, 1236 (M.D. Fla. 1999) (citing Robinson, 74 F.3d at 259); E-One, Inc. v. R. Cushman & Assoc., Inc., 2006 WL 2599130, *8 (M.D. Fla. May 15, 2006), report and recommendation adopted, 2006 WL 2598458 (M.D. Fla. Sept. 11, 2006). As for any burden on Nissley in having to defend the action in Florida, "modern methods of transportation and communication reduce this burden significantly." E-One, 2006 WL 2599130 at *8 (citing Posner, 178 F.3d at 1221; rejecting burdensomeness arguments made by Netherlands defendant). Moreover, Nissley's more than isolated contacts with Florida (personal visits, phone calls and written communications directed to Florida and his ownership of property in Florida) "demonstrate that access to Florida is not overly burdensome" for him. Id.

Several of the cases Nissley relies on support the imposition of personal jurisdiction here. For instance in Kim v. Keenan, 71 F. Supp.2d 1228, the plaintiffs were

injured by the professional negligence of Georgia attorneys. The injury they ultimately suffered occurred in Florida when they suffered damages from the foreign malpractice. Id. at 1233. The defendants there could have reasonably expected to be haled into a Florida court because they expected to gain a benefit from the relationship with the Florida client including the collection of fees. Id. at 1235-36. Similarly, in Robinson v. Giarmarco & Bill, P.C., personal jurisdiction over nonresident attorneys was appropriate where the attorneys provided significant services to the plaintiff while he lived in Florida, knew the will they prepared for him would be probated in Florida, and mailed correspondence to him in Florida. 74 F.3d 253, 259 (11th Cir. 1996). As the court noted, the defendants were not being haled into a Florida court for random, fortuitous or attenuated contacts. They were fully aware that their acts or omissions would have a substantial effect in Florida. Id. Finally, the defendants' contacts with Florida in Sculptchair, Inc. v. Century Arts, Inc., were knowing and significant, not random or fortuitous. 94 F.3d 623, 630-31 (11th Cir. 1996). In this instance, Nissley's contacts with Florida and the foreseeability of injury to Gainor in Florida similarly support personal jurisdiction.

Many of the other cases Nissley relies on are distinguishable. For example, Aetna Life & Casualty Co. v. Therm-O-Disc, Inc., was a products liability case involving breach of warranties and strict liability. 511 So. 2d 992 (Fla. 1987). As discussed previously, personal injury and property damage cases require different standards for personal jurisdiction. See supra at p.6. Unlike Gainor, who is a Florida resident, the plaintiff in Alternate Energy Corp. v. Redstone, who sued an out-of-state defendant in Florida, was not even a Florida resident himself. 328 F. Supp.2d 1379 (S.D. Fla. 2004). The plaintiff in Fleming & Weiss, P.C., v. First Am. Title Co., was a Florida bank's insurer which sued a

New York law firm over an opinion it rendered to the bank on New York law. Neither the Florida bank nor its insurer, however, were the law firm's clients; instead the firm's client was a New York resident. 580 So. 2d 646 (Fla. 3d DCA 1991).

Other inapposite decisions Nissley cited include Green v. USF&G Corp., involving a slanderous statement by a Maryland attorney to the plaintiff in Florida. The statement was sufficient for long-arm purposes but the single phone call during which that statement was made was insufficient for minimum contacts purposes. Similarly, in Future Technology Today, Inc. v. OSF Healthcare Sys., the court refused to invoke personal jurisdiction over a non-profit out-of-state company on the basis of one phone call for a one-time service, as opposed to a continuing business relationship. 218 F.3d 1247 (11th Cir. 2000). As discussed above, Nissley's many contacts with Gainor in Florida, over the course of their substantial and continuing relationship, were far more significant than a single phone call.

The Steinhilber v. Lamoree opinion Nissley cites is similarly inapplicable. The plaintiff there did not meet the first requirement for personal jurisdiction – pleading a prima facie case under Florida's long arm statute. 825 F. Supp. 1003 (S.D. Fla. 1992). The Steinhilber plaintiff sued for abuse of process but never alleged that any process was ever issued, a requirement under Florida law. As a result, the plaintiff did not even state a claim for the tort of abuse of process so there was no long-arm jurisdiction under section 48.193(b) of the Florida Statutes. Id. at 1006. The Steinhilber court also rejected the suggestion that the defendant's meeting with the plaintiffs in Florida, which the defendant attended at the court's request, could constitute sufficient voluntary minimum contacts with Florida to justify personal jurisdiction. Id.

Here, of course, Nissley was never asked or ordered by a judge to meet with Gainor in Florida. He came to Florida voluntarily, possibly on a number of occasions, to visit with Gainor and provide him with professional advice and services. *See Nissley Declaration* at ¶26. These were not "incidental" contacts – they were substantial, significant, and done in furtherance of the conspiracy.

Nissley tries to analogize this case to Sun Bank, N.A. v. E.F. Hutton & Co., Inc., 926 F.2d 1030 (11th Cir. 1991); Nissley's MTD at 7-9. In Sun Bank the defendant's Massachusetts customer moved to Florida, sought a loan from a Florida bank, and told the bank to call the defendant in Massachusetts. The Sun Bank court rejected an argument that these unilateral actions on the plaintiff's part could constitute defendant's purposeful availment of the privilege of conducting activities in Florida. Id. at 1034. In this case, Nissley is not being subjected to the jurisdiction of a Florida court based on Gainor's unilateral actions. Plaintiffs moved to Florida in part based on Arthur Andersen's advice. *Gainor Affidavit at ¶¶ 8-10.* Nissley directed his activities to Florida by visiting Gainor here, while his firm sent key documents to Gainor here and prepared the offending tax returns for Gainor while Gainor was a Florida resident. This is not the same as the plaintiff in Sun Bank simply moving to Florida and asking his Florida banker to call an advisor in another state.

Similarly inapposite is Groome v. Feyh, 651 F. Supp. 249 (S.D. Fla. 1991). The pre-contract phone calls and letters sent to the plaintiff were not enough to constitute minimum contacts purposely directed at Florida because all of the "meaningful" acts occurred in another state. Id. at 256. As discussed above, many of the most "meaningful acts" at issue here occurred in Florida – the continuing provision of advice to Gainor in

Florida, sending Gainor the Brown & Wood opinion letters in Florida, preparing the tax returns at issue in this case after Gainor became a Florida resident, and sending those returns to him in Florida.

> D. **Alternatively, this Court Should Not Rule on the Motion to Dismiss Until Plaintiffs Have Had the Opportunity to Supplement this Response With Discovery That Nissley Has Refused to Provide.**

Plaintiffs believe Nissley's significant contacts with Florida, as set forth above, are more than sufficient to justify the imposition of personal jurisdiction over Nissley. The allegations and evidence submitted with this response have been compiled and prepared without the benefit of any discovery from Nissley on the personal jurisdiction issue because he has refused Plaintiffs' discovery requests.

Plaintiffs have the right to obtain discovery on the personal jurisdiction issue before the Court decides the motion. See Nissim Corp. v. Clearplay, Inc., 351 F. Supp.2d 1343, 1346 (S.D. Fla. 2004) (resolution of pretrial motion that turns on fact findings, such as motion to dismiss for lack of personal jurisdiction, may require some limited discovery before a meaningful ruling can be made; citing Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1367 (11th Cir. 1997)). Plaintiffs propounded discovery to Nissley relevant to the personal jurisdiction issue both before and right after Nissley moved to dismiss. Nissley, however, refuses to respond to the discovery, claiming he has no obligation to do so. Plaintiffs are in the process of moving to compel the responses. The need for discovery with respect to Defendant Nissley is particularly acute. Plaintiffs are aware of a number of facts and contacts tying Defendants Andersen and Marx to the state of Florida which may also be true of Defendant Nissley, but without the discovery, Plaintiffs are unable to know. If this Court does not believe Plaintiffs have yet provided sufficient

evidence to support personal jurisdiction over Nissley, it should decline to rule on Nissley's MTD until Plaintiffs obtain the discovery on this issue they are entitled to and supplement this response.

## III.    CONCLUSION

This Court has personal jurisdiction over Nissley because it has personal jurisdiction over his co-conspirators, Arthur Andersen and Sidley Austin. It also has personal jurisdiction over him based on his commission of a tort in Florida and his substantial contacts with the State of Florida. Accordingly, Nissley's motion to dismiss must be denied.

Alternatively, before ruling on Nissley's motion to dismiss, the Court should compel Nissley to respond to Plaintiffs' discovery seeking further information on the personal jurisdiction issue and permit Plaintiffs to supplement their response to Nissley's motion to dismiss.

Respectfully submitted,

RICHARD BENJAMIN WILKES
Florida Bar No. 267163
**RICHARD BENJAMIN WILKES**
**ATTORNEYS AT LAW**
600 South Magnolia Avenue, Suite 200
Tampa, Florida 33606
E-Mail:        rwilkes@rbwilkes.com
Telephone:    (813) 254-6060
Facsimile:     (813) 254-6088
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of July, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/Richard W. Candelora
Richard W. Candelora

17

## SERVICE LIST

Katherine W. Ezell, Esq.
KEzell@podhurst.com
Podhurst Orseck, P.A.
25 W. Flagler Street, Suite 800
Miami, FL  33130
**Counsel for Sidley Austin**

Douglas E. Whitney, Esq.
DWhitney@mwe.com
McDermott Will & Emery
227 West Monroe Street
Chicago, IL  60606-5096
**Counsel for Arthur Andersen,**
   **Nissley and Marx**

Jonathan E. Altman, Esq.
Jonathan.Altman@mto.com
Aaron May, Esq.
Aaron.May@mto.com
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071
**Counsel for Sidley Austin**

Michael G. Austin, Esq.
MAustin@mwe.com
McDermott Will & Emery
201 South Biscayne Boulevard
Suite 2200
Miami, FL  33131
**Counsel for Arthur Andersen,**
   **Nissley and Marx**

Coren Stern, Esq.
CStern@bressler.com
Bennett Falk, Esq.
BFalk@bressler.com
Bressler, Amery & Ross
2801 S.W. 149th Avenue
Miramar, FL  33027
**Counsel for Merrill Lynch**

Richard A. Morgan, Esq.
Richard.Morgan@bipc.com
Buchanan Ingersoll & Rooney, P.C.
Bank of America Tower
100 S.E. 2nd Street, 34th Floor
Miami, FL  33131
**Counsel for Klopfenstein**

Stuart E. Abrams, Esq.
SAbrams@frankelabrams.com
Frankel & Abrams
230 Park Avenue, Suite 3330
New York, NY  10169
**Counsel for Ruble**

Stephen J. Anderson, Esq.
Anderson@andersondailey.com
Anderson Dailey LLP
2002 Summit Boulevard, Suite 1250
Atlanta, GA  30319
**Counsel for Klopfenstein**

R. J. Ruble
1517 Avalon Square
Glen Cove, NY  11542

R.J. Ruble
65 Duck Pond Road
Glen Cove, NY  11542