UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO.: 06-21748-CIV-MARTINEZ-BANDSTRA

MARK J. GAINOR and ELYSE GAINOR,

      Plaintiffs,

v.

SIDLEY AUSTIN LLP, a Delaware limited liability
Partnership, f/k/a SIDLEY AUSTIN
BROWN & WOOD, f/k/a BROWN & WOOD,
R. J. RUBLE, an individual, ARTHUR
ANDERSEN, LLP, an Illinois limited liability
partnership, MICHAEL S. MARX, an individual,
P. ANTHONY NISSLEY, an individual,
MERRILL LYNCH & CO., INC., a Delaware
corporation, and MARK C. KLOPFENSTEIN,
an individual,

      Defendants.

_____/

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT ARTHUR ANDERSEN, LLP'S MOTION TO DISMISS

Plaintiffs, Mark J. Gainor and Elyse Gainor, by and through their undersigned

counsel, submit the following Memorandum in Opposition to Defendant Arthur

Andersen, LLP's ("Andersen") Motion to Dismiss.

## I.   ON THE FACE OF THE COMPLAINT, THE MOTION MUST BE DENIED

The sole ground for Andersen's Motion to Dismiss is that Plaintiffs' claims

against Andersen are barred by the statute of limitations.  However, if the Court looks

solely to the face of the Complaint, the motion must be denied.

It is familiar law that the Court should look only to the four corners of the

Complaint in determining whether a motion to dismiss for failure to state a claim should

be granted.  O'Connor v. Kawasaki Motors Corp., U.S.A., 699 F.Supp. 1538 (S.D. Fla.

1988); Mainstreet One Financial Plaza Ltd. v. Axis Surplus Ins. Co., 2007 WL 1888311 (S.D. Fla. 2007). Further, the court must view the complaint in the light most favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232 (1974), taking all allegations of the complaint as true and drawing all reasonable inferences therefrom in favor of the plaintiff. Jenkins v. McKeithen, 395 U.S. 411 (1969); Stephens v. Dep't of Health & Human Servs., 901 F. 2d 1571, 1573 (11th Cir. 1990). Moreover, a federal court may not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the plaintiff cannot prove any set of facts that would support a claim for relief. See Conley v. Gibson, 355 U.S. 41 (1957). Accord, e.g., Cook & Nichol, Inc. v. The Plimsoll Club, 451 F2d 505, 506-507 (5th Cir. 1971).

Based on these principles, the Court must assume that Florida law is applicable, as the Complaint alleges in paragraph 19 that this action arose in Dade County, Florida.[1]

### Professional Malpractice Claim

Under Florida law, a cause of action for professional malpractice, which has a two-year statute of limitations (See Fla. Stat. 95.11(4)(a)), does not arise until the underlying or related legal proceeding on which the malpractice claim is based has been completed upon appellate review, or a final settlement has been executed by the parties. Peat, Marwick, Mitchell & Co. v. Lane, 565 So. 2d 1323 (Fla. 1990); Perez-Abreu, Zamora & de La Fe, P.A. v. Taracido, 790 So. 2d 1051 (Fla. 2001). Significantly, the mere existence of a dispute between the Internal Revenue Service and the taxpayer does not give rise to an injury sufficient to trigger the running of the statue of limitations.

---

[1]  In addition, the law of the forum state is presumed applicable. E.g., Hagen v. Viney, 169 So 391 (Fla. 1936); Hieber v. Hieber, 151, So 2d 646 (Fla 3d DCA 1963); Cordrey v. Cordrey, 206 So. 2d 234 (Fla. 2d DCA 1968)

Peat, Marwick, Mitchell & Co., supra. The reason for this rule is that until there has been an irrevocable settlement of the dispute between the IRS and the plaintiff, or a complete litigation of the legality of plaintiff's tax treatment, it cannot be said with the requisite certainty that the plaintiff has in fact suffered an injury, for the underlying legal proceeding could terminate in a manner that results in no harm to the plaintiff. Peat, Marwick, Mitchell & Co., supra; Fremont Indemnity Co. v. Carey, Dwyer, Eckhart, Mason & Spring, P.A., 796 So. 2d 504 (Fla. 2001).

In this case, Plaintiffs did not reach a final settlement with the Internal Revenue Service until January 20, 2006 (Complaint ¶49). Accordingly, this action was filed well within the two-year period applicable to malpractice claims against Andersen.

### Fraud and Negligent Misrepresentation Claims

Under Florida law, "it is the accrual of a cause of action which commences the running of the statute of limitations" on a fraud claim. Hynd v. Ireland, 582 So. 2d 772 (Fla. 4th DCA 1991). Damages are an essential element of a cause of action for fraud. (Id.) Thus, the statute of limitations does not begin to run on a fraud claim until legally cognizable damages are incurred by the plaintiff as a result of the defendant's fraud.[2] (Id.) A cause of action for negligent misrepresentation is governed by these same principles. Ostreyko v. B.C. Morton Organization, Inc., 310 So. 2d 316 (Fla. 3d DCA 1975); Poulos v. Vordermeier, 327 So. 2d 245 (Fla. 4th DCA 1976).

---

[2]  Under Fla. Stat §95 031, if the plaintiff does not discover the fraud until after he has sustained such damage, the commencement of the running of the statute of limitations is further delayed until such discovery

As more fully set forth above, Plaintiffs did not settle with the Internal Revenue Service and pay the $17 million in taxes and interest until January of 2006. Accordingly, their causes of action for fraud and negligent misrepresentation did not accrue until that date, and therefore are clearly timely under the four-year statute of limitations (Fla. Stat. §95.11(3)(j)) applicable to fraud and misrepresentation claims.

In its memorandum, Andersen suggests that Plaintiffs suffered damage at an earlier date in the form of the professional fees they paid in connection with the IRS audit. This contention cannot withstand analysis.

As a result of the implementation of the tax strategy, Plaintiffs' tax payment was reduced by $17 million. This sum is partially offset by the $2,100,000 in fees that the Plaintiffs paid to the Defendants, but nonetheless, Plaintiffs clearly had not suffered any economic loss as a result of the implementation of the strategy; Plaintiffs were "ahead" by several million dollars.

The expenses paid as professional fees in connection with the IRS audit do not change this result. They were expressly contemplated by the parties as part of the strategy. Plaintiffs were not promised that they would not be audited by the IRS; they were promised that it was "more likely than not" that they would prevail in an IRS audit, clearly demonstrating that the prospect of an IRS audit was within the contemplation of the parties. Necessarily, therefore, the expenditure of professional fees in connection with the IRS audit was also contemplated by the parties. Thus, the professional fees incurred in connection with the audit were not unexpected expenditures caused by the breach; they

were expenditures which the parties contemplated might be required even if there were no breach. They are, therefore, akin to the fees paid to Andersen, Sidley and the other Defendants; i.e., costs of implementing the strategy. Accordingly, these professional fees were not damage of the form required to trigger the commencement of the statute of limitations.

As stated by the Florida Supreme Court in <u>Fremont (796 So.2d at 506)</u>:

> [W]e reject Carey, Dwyer's claim that Fremont began sustaining damages at least by 1989 in the form of attorney's fees and costs that it had paid because it lost the opportunity to settle the state court claim within the policy limits.

* * *

> [T]he present case is a classic example of why redressable harm cannot be determined until the conclusion of the litigation. Carey, Dwyer alleges that Fremont had to pay attorney's fees and costs to defend a lawsuit that it otherwise could have settled. The settlement would have cost Fremont two million dollars. As Fremont points out in its brief, prior to the conclusion of the litigation, there was the potential of a lower settlement or judgment. Hence, even including the additional costs and fees, the possibility existed that Fremont would not suffer any redressable harm.

In addition, and in any event, even after payment of these professional fees, Plaintiffs still had not yet suffered any pecuniary damage, because they did not offset the $17 million in tax savings Plaintiffs had realized as a result of the strategy. Thus, it was not until the Plaintiffs settled with the IRS and paid $17 million in January of 2006 that they first sustained pecuniary loss as a result of implementation of the strategy.

### The Conspiracy Claim

Under Florida law, the statute of limitations on a conspiracy claim begins to run when the plaintiff suffers damage as a result of the conspiracy. <u>Olson v. Johnson</u>, 2007 WL 1855687 (Fla. 2d DCA 2007). Thus, here again Plaintiffs' conspiracy action did not

arise until January of 2006, and the statute of limitations did not commence running until then. Accordingly, Plaintiffs' conspiracy action is timely under the applicable four-year limitations statute (Fla. Stat 95.11(3)(p)). Id.

### Breach of Contract

The Statute of Limitations for breach of an oral contract (Fla. Stat. §95.11(3)(k)) is four years. The period begins to run when the last element constituting the cause of action occurs. Abbott Labotatories, Inc. v. General Electric Capital, 765 So.2d 737 (Fla. 5th DCA 2000); J.J. Gumberg Co. v. Janis Services, Inc., 847 So.2d 1048 (Fla 4th DCA 2003). An essential element of the cause of action for breach of contract is that the breach by the defendant caused damage to the plaintiff.  . Abbott Labotatories, Inc. v. General Electric Capital, supra; J.J. Gumberg Co. v. Janis Services, Inc., supra. As more fully set forth above, Plaintiffs did not suffer damage as a result of the breach of contact until January of 2006.   Accordingly, the breach of contract claim is not barred by the applicable four-year statute of limitations

## II.  ANDERSEN'S REQUEST THAT THE COURT CONSIDER DOCUMENTS AND MATTERS OUTSIDE THE ALLEGATIONS OF THE COMPLAINT SHOULD BE DENIED

Obviously recognizing that it has no viable statute of limitations defense based on the face and allegations of the Complaint, Andersen has filed and attempted to rely upon other documents to support its position. This attempt is unavailing for several reasons:

   A.    The Motion Should be Denied Because the Statute of Limitations is an Affirmative Defense and May Not be Raised by Motion to Dismiss Where the Defense Does Not Appear From the Face of the Complaint

Rule 8(c) of the Federal Rules of Civil Procedure states that the defense of the statute of limitations is an affirmative defense which is to be raised in an answer to the complaint, not in a motion under Rule 12(b). City of Fort Lauderdale v. Ross, Saarinen, Bolton & Wilder, Inc., 815 F.Supp. 444 (S.D. Fla. 1992). The only exception to this rule is where the limitations defense affirmatively appears on the face of the complaint. Id.. As more fully set forth above, the limitations defense asserted by Andersen does not appear on the face of the Complaint. Plaintiffs did not suffer damage until January of 2006, and they commenced this action against Andersen well within the limitations period measured from that date. Accordingly, since the statute of limitations defense cannot be demonstrated from the face of the complaint, Andersen's motion to dismiss should be denied. Id.; see also, Milburn v. United States, 734 F.2d 762, 764-5 (11th Cir. 1984).

B.     The Court Should Exercise its Discretion to Refuse to Consider Andersen's Statute of Limitations Defense at This Juncture

Rule 12(b) provides that a court may consider matters outside the pleadings in connection with a motion filed under Rule 12(b)(6). However, case law is clear that the court is not required to consider such matters. The court can simply deny the motion without prejudice to raising the issue in the more proper fashion of a motion for summary judgment. Jones v. Automobile Ins. Co. of Hartford, Connecticut, 917 F.2d 1528 (11th Cir. 1990); Mancini Enterprises, Inc. v. American Express Company, 236 F.R.D. 695 (S.D. Fla. 2006).

Courts routinely exercise their discretion to refuse to consider matters outside the pleadings. E.g., Tafarella v. Hollywood Greyhound Track, Inc., 2007 WL 1113205 (S.D. Fla. 2007); Mainstreet One Financial Plaza Ltd. v. Axis Surplus Ins. Co., 2007 WL

1888311 (S.D. Fla. 2007). As more fully shown below, to decide the issues raised by Andersen's motion, the court will be required to make an intricate, fact-intensive inquiry into numerous factors and reach a judgment based on several malleable principles whose relative importance vary with the particular facts of the specific case. It is clearly inappropriate to make to such a delicate, fact-intensive, balancing judgment without a full development of the factual record through discovery. The Court should exercise its discretion to refuse to consider Andersen's argument at this time.

In a diversity case, a federal court applies the choice of law principles of the forum state. See, e.g., Federated Rural Elec. Ins. Exchange v. R.D. Moody & Assoc., Inc., 468 F.3d 1322, 1324 (11th Cir. 2006). In this case, of course, the forum state is Florida. Florida applies the "significant relationship" test to tort claims. See, e.g., Connell v. Riggins, 944 So. 2d 1174, 1176 (Fla. 1st DCA 2006); Walker v. Paradise Grand Hotel, Inc., 2003 WL 21361662, *2 (S.D. Fla. April 24, 2003), aff'd, 107 Fed. Appx. 894 (11th Cir. 2004). Florida also applies the significant relationship test to decide conflicts of law questions concerning the statute of limitations. Bates v. Cook, Inc., 509 So. 2d 1112, 1114-15 (Fla. 1987). The "significant relationship test" is an intricate, fact-intensive inquiry into numerous factors which requires the court to make a judgment based on several malleable principles whose relative importance varies with the particular facts of the specific case.

The pertinent principles are set forth in Crowell v. Clay Hyder Trucking Lines, Inc., 700 So. 2d 120, 122-24 (Fla. 2d DCA 1997). The first applicable principle is Restatement (Second) Conflict of Laws § 145(2) (1971), which provides:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that

8

issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2)   Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

   (a) the place where the injury occurred,

   (b) the place where the conduct causing the injury occurred,

   (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

   (d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

The principles stated in the referenced § 6 of the Restatement (Restatement (Second) of Conflict of Law § 6 (1971)) are as follows:

   (1)   A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice-of-law.[3]

   (2)   When there is no such directive, the factors relevant to the choice of the applicable rule of law include:

   (a) the needs of the interstate and international systems,

   (b) the relevant policies of the forum,

   (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

   (d) the protection of justified expectations,

   (e) the basic policies underlying the particular field of law,

   (f) certainty, predictability and uniformity of result, and

   (g) ease in the determination and application of the law to be applied.

The Second District Court of Appeal of Florida explained how these tests are applied:

   The significant relationship is assessed by examining the enumerated factual "contacts" in section 145(2), which are to be taken "into account" while applying the general principles of section 6. This is not a simple "center of gravity" or "contacts counting" test. Rather, the court must determine which state or states have a true interest in the application of their law, by examining the various factual contacts in light of the rather malleable principles set forth in section 6. If only one state is interested in the tort issue, the court should apply the law of that state. If two or more

---

[3] Florida has a "borrowing statute" which provides that if a cause of action arose in another state and the cause of action would be time-barred there, it will be time-barred in Florida as well. § 95.10, Fla. Stat. (2007) ("When the cause of action arose in another state or territory of the United States, or in a foreign country, and its laws forbid the maintenance of the action because of lapse of time, no action shall be maintained in this state."). The significant relationship test is used to determine where a cause of action arose for purposes of determining whether a cause of action "arose in another state" within the meaning of the borrowing statute. Bates, 509 So. 2d at 1115. If the cause of action did not arise in another state, the borrowing statute does not apply. Id.

states are interested, then the court must determine which state has a dominant interest and apply the law of that state. If no state has a clearly dominant interest, then the court should apply the law of the place of injury as explained in section 146.

Mezroub v. Capella, 702 So. 2d 562, 566 (Fla. 2d DCA 1997).

Thus, the "significant relationship test" requires the Court to make an intricate, fact-intensive inquiry into numerous factors and make a judgment based on several malleable principles whose relative importance vary with the particular facts of the specific case. It is clearly inappropriate to make to such a delicate, fact-intensive, balancing judgment without a full development of the factual record through discovery.

The words of this Court in Manicini Enterprises, Inc. v. American Express Company, 236 F.R.D. 695, 697-98 (S.D. Fla. 2006) are instructive:

> Defendants contend that the Complaint should be dismissed because it is barred by the Florida Statute of Limitations. In its opposition, Plaintiff contends that this action should be governed by the more expansive New York Statute of Limitations. Further, Plaintiff contends that the statute of limitations should be tolled due to Defendants' alleged failure to negotiate in good faith. Opp. at 10-11. Additionally, the Parties dispute the date upon which Plaintiff's claims actually accrued.
>
>                          * * *
>
> [T]he Court will not resolve this issue at this juncture. This action was filed on March 26, 2006 as such the Parties have yet to fully engage in discovery on this issue. Moreover, it is not apparent from the face of Plaintiff's Complaint that the statute of limitations period has run. See Compl. Again, the Parties dispute whether this action should be governed by Florida or New York law. Further, even if the Court were to adopt Florida's four year statute of limitations period it is not apparent that the period has run as Plaintiff alleges that the breach occurred in 2002. Additionally, the limitations period which Defendants request that this Court adopts governs actions not founded upon a written instrument. See Fla. Stat. § 95.11(3)(k). Thus, if the Court were to find that the action was founded on a written instrument then the four year limitations period would be inapplicable. Instead, a five year limitations period would govern this action and Plaintiff's claims would not be barred. See Fla. Stat. § 95.11(2)(b). Therefore, the Court finds that it would be improper to attempt to resolve this issue without the benefit of further discovery and

briefing on this issue. However, once discovery has been substantially completed the Defendants may re-raise this issue through a properly laid summary judgment motion.

Accordingly, the Court should exercise its discretion to refuse to consider Andersen's Statute of Limitations defense at this juncture. The motion to dismiss should be denied, without prejudice to Andersen asserting it in its Answer to the Amended Complaint and raising it on motion for summary judgment at the appropriate time – after full and complete discovery has been had so that the Plaintiffs are accorded their due process rights to full and complete presentation of their position and the Court is placed in the best position possible to make a fully informed decision.

Indeed, Rule 12(b) itself says that if the court does exercise its discretion to consider matters outside the pleading, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Thus, should the Court determine that it will consider matters raised by Andersen that go outside the pleading, Plaintiffs are entitled to the full panoply of discovery rights that would attend a motion for summary judgment. Snook v. Trust Co. of Georgia Bank of Savannah, N.A., 859 F.2d 865 (11th Cir. 1988) ("summary judgment should not, therefore, ordinarily be granted before discovery has been completed"); Jones v. City of Columbus, Georgia, 120 F.3d 248 (11th Cir. 1997) ("The law in this circuit is clear: the party opposing a motion for summary judgment should be permitted an adequate opportunity to complete discovery prior to consideration of the motion"); Tapken v. Brown, 1992 WL 178984 (S.D. Fla. 1992) ("A fuller record must be developed before a

reasoned consideration of the appropriateness of a summary judgment can be undertaken", citing Snook). [4]

Deferring ruling until a full and complete factual presentation can be made is particularly necessary where, as here, there is a conspiracy count in the complaint, and different defendants are contending that different states' law applies. Defendant Andersen contends that Georgia law applies; Defendant Merrill Lynch, on the other hand, contends in its motion to dismiss that New York law may apply; and Defendant Sidley has placed a notice in its Answer that the law of either Georgia or New York may apply. Plaintiffs believe that only one state's law must be selected as applicable to this transaction. It would create an evidentiary and jury instructional nightmare to apply different states' laws to different defendants in connection with a single transaction, particularly in regard to the conspiracy claim; Plaintiffs have found no case which does so. For this additional reason, it is imperative to defer ruling on Andersen's argument until the factual record is

---

[4]   In its memorandum, Andersen contends that notwithstanding the clear language of Rule 8, the Court should not convert its motion to one for summary judgment, although the Court should consider the matters submitted by Andersen outside the record. This argument is without merit.

There is only a very limited circumstance in which matters outside a pleading do not convert a motion under Rule 12(b)(6) into a motion for summary judgment. That is where the document relied upon is both (1) central to Plaintiffs' claim, and (2) undisputed. Lockwood v. Beasley, 211 Fed Appx 873, 877 (11th Cir 2006).

The test established by the Eleventh Circuit for determining whether an external document is "central" is whether or not the information contained in it will necessarily have to be submitted by the plaintiff as part of the plaintiff's case in chief to prove its cause of action  (Id.) In Andersen's motion, it relies on at least three separate sources of information that do not meet this requirement.  At page 10, Andersen relies upon two affidavits submitted by Co-Defendants Michael Marx and P  Anthony Nissley  Clearly, Plaintiffs will not be using these affidavits to prove their case in chief, and the facts contained in these affidavits most certainly are not undisputed  Similarly, Andersen has submitted excerpts of the deposition of Plaintiff Mark Gainor  While Plaintiffs did not dispute the facts stated by Mr. Gainor in his deposition, Plaintiffs do dispute that the few limited excerpts supplied by Andersen in fact present a true, accurate and complete presentation of the facts  In addition, the matters relied upon by Andersen in Mr  Gainor's affidavit are not matters which Plaintiffs must use as part of their case in chief to prove their cause of action  Rather, they apparently are matters which Defendants will attempt to use to try to establish their affirmative defense of the statute of limitations  As stated by the Eleventh Circuit in Lockwood, such matters do not meet the centrality requirement. Id.

fully developed through discovery and all parties are in a position to make a full factual presentation of their position. Manicini, supra. [5]

## III.    UNDER GEORGIA LAW, ANDERSEN'S MOTION MUST BE DENIED

Andersen contends that Georgia law should be applied to this action and that under Georgia law Plaintiffs' claims against Andersen are barred by the applicable statute of limitations. Andersen is incorrect.

### Tort Claims

Plaintiffs agree with Andersen that the statute of limitations applicable to actions for negligent misrepresentation and fraud are four years, and that the law with respect to accrual of a cause of action for fraud is the same as the law with respect to an action for negligent misrepresentation. Hardaway Co. v Parsons, Brinckerhoff, Quade & Douglas, Inc.., 479 S.E.2d 727 (Ga. 1997); Kothari v. Patel, 585 S.E.2d. 97 (Ga.App. 2003); Paul v. Destito, 550 S.E.2d 739 (Ga.App. 2001). Under Georgia law, actions for negligent misrepresentation and fraud do not arise, and therefore the statute of limitations does not begin to run, until a plaintiff has, with certainty, incurred actual pecuniary loss as a result of the defendant's misrepresentation. Hardaway, supra. It is not enough that the defendant's misrepresentation undoubtedly will cause the plaintiff to sustain economic harm. Rather, the cause of action does not accrue until the plaintiff in fact has incurred actual pecuniary harm proximately caused by the misrepresentation. Id.

In Hardaway, the general contractor on a state construction project sued the project design engineer for economic losses incurred due to alleged negligent

---

[5] There are numerous matters which Plaintiffs would submit should the Court decide to convert Andersen's motion into a motion for summary judgment. They are listed on **Exhibit "A"** hereto. In addition, Plaintiffs expect that discovery from Andersen in the form of production of documents and depositions of Marx, Nissley and Andersen's corporate representative would yield substantial amounts of information tending to show that Florida law should be applied to this case.

misrepresentations of the engineer. (479 S.E.2d at 728) The defendant moved for summary judgment on the ground that the action was barred by the statute of limitations. (Id. at 729) Defendant claimed that the statute of limitations began to run on the date the plaintiff signed its contract with the Georgia Department of Transportation. It argued that by that date the plaintiff had been provided the allegedly deficient plans, had relied on them in setting the contract price, and had suffered damage in that it had contracted to build the project at a price that was too low, given the errors in the plans. The plaintiff contended that the statute of limitations did not begin to run until it actually began to incur pecuniary losses as a result of the defendant's negligent misrepresentations. (Id. at 728-29) The Georgia Supreme Court agreed with the plaintiff, saying:

> [W]e find that the Court of Appeals misapprehended the essential requirement that in order to maintain its action, Hardaway must have suffered economic loss, and that until actual economic losses were incurred with certainty, and not merely as a matter of speculation, Hardaway's claim did not accrue, and the limitation period did not commence.
>
> * * *
>
> With the benefit of hindsight, we can see now that at the time Hardaway signed the contract, it may have been foreseeable, or even likely, that it would lose money due to delays caused by apparent errors in the initial designs. However, the uncontroverted evidence shows that it did not suffer actual "pecuniary loss" due to flawed designs until it was certain that the Project would not commence as scheduled. A plain reading of the essential elements underlying Hardaway's cause of action shows that in order to file a legitimate claim, it had to show actual economic loss proximately resulting from Parsons' negligent misrepresentation.
>
> * * *
>
> Thus, until economic loss actually was sustained by Hardaway, it did not have a cause of action against Parsons, and the prescriptive period did not begin to run.
>
> * * *
>
> [I]n a claim for economic injury sustained due to reliance upon false information negligently provided by a defendant, the statute of

limitations begins to run when the plaintiff suffers pecuniary loss with certainty, and not as a matter of pure speculation.

In this case, Plaintiffs did not suffer economic loss until they settled with the IRS in January of 2006 and paid $17 million. Accordingly, under Georgia law, Plaintiffs' claim for negligent misrepresentation and fraud are timely filed.[6]

### Malpractice Action

Georgia cases in this context are not completely clear. On the one hand, under Georgia law, the statute of limitations does not begin to run on a tort claim until the cause of action accrues (Jankowski v. Taylor, Bishop & Lee, 273 S.E.2d 16 (Ga. 1980)), and a cause of action in tort does not arise until damage is sustained as a result of the tortious act. Id. On the other hand, however, a number of Georgia cases have stated that a cause of action for legal malpractice arises immediately upon the wrongful act having been committed, even though there are no special damages. Id. The Georgia Supreme Court acknowledged the apparent conflict of these two propositions in Jankowski. However, the court then said that "a closer examination of these authorities alleviates much of the concern over the potential conflict" because the malpractice decisions were bottomed in the proposition that "the fact that nominal damages may be recovered is sufficient to create a cause of action and therefore result in the statute of limitation's beginning to run." Id. at 18.

The Georgia Court of Appeals has interpreted this statement to mean that loss or damage resulting from the malpractice is an essential element of the claim. In Whitehead v. Cuffie, 364 S.E.2d 87, 89 (Ga.App. 1987) the court said:

---

[6] Plaintiffs' conspiracy claim is also timely. Under Georgia law, a cause of action for conspiracy lies not in the conspiracy itself, but in the underlying tort. Dyer v. Honea, 557 S.E.2d 20 (Ga.App. 2001) Accordingly, the statute of limitations analysis for conspiracy is identical to the statute of limitations analysis for the underlying tort. As more fully set forth above, Plaintiffs' fraud claim is timely. Accordingly, the conspiracy claim is likewise timely.

We do not agree with appellants that a cause of action for legal malpractice can be maintained where there is no evidence that the breach of the professional duty proximately caused any harm to the client. *Id.* Nor do we agree with appellants that *Jankowski v. Taylor, Bishop & Lee,* 246 Ga. 804, 806(1), 273 S.E.2d 16 (1980) and *Spence v. Hilliard,* 181 Ga.App. 767, 353 S.E.2d 634 (1987) support their argument. It is well-established Georgia law that before an action for a tort will lie, the plaintiff must show he sustained injury or damage as a result of the negligent act or omission to act in some duty owed to him. OCGA § 51-1-8; *Black v. New Holland Baptist Church,* 122 Ga.App. 606, 609(2), 178 S.E.2d 571 (1970); *Clements v. Hendi,* 182 Ga.App. 118, 119(2), 354 S.E.2d 700 (1987). Although nominal damages can be awarded where there has been an injury but the injury is small, OCGA § 51-12-4, where there is no evidence of injury accompanying the tort, an essential element of the tort is lacking, thereby entitling the defendant to judgment in his favor. See *Meeks v. Coan,* 165 Ga.App. 731, 733-734(2), 302 S.E.2d 418 (1983). We do not read *Jankowski,* supra, as eliminating from a cause of action for malpractice the necessity that the breach of the professional's duty to conform to a certain standard of conduct gives rise, by means of a legally attributable causal connection, to a resulting injury, loss or damage flowing to the plaintiff's legally protected interest. See generally *Bradley Center,* supra. Rather, *Jankowski* recognizes that where a valid cause of action for malpractice exists, with all elements for such an action present, then the statute of limitations for such a cause of action arises as of the time of the breach of the duty because nominal damages " *may* be recovered" at that time. *Jankowski,* supra 246 Ga. at 806(1), 273 S.E.2d 16. It stands to reason that if there is no harm resulting from the breach of duty, then no cause of action exists to be the subject of a lawsuit and questions regarding the statute of limitations are rendered moot thereby.

Thus, the Georgia cases which loosely say that the cause of action for malpractice arises at the time of the commission of the malpractice, do not stand for the proposition that a cause of action for malpractice accrues before the plaintiff sustains damage resulting from the malpractice.

To the contrary, numerous Georgia cases hold that damage resulting from the malpractice is an essential element of a cause of action against a lawyer or an accountant. Rogers v. Norvell, 330 S.E.2d 392 (Ga.App. 1985); DeLaMaria v. Powell, Goldstein, Frazer & Murphy, (N.D. Ga.1985). Obviously, if damage is an essential element of the

cause of action, and no damage has been sustained, then there is no right of action, and consequently the statute of limitations could not have begun to run. Significantly, several Georgia cases hold that where the dispute underlying the malpractice claim is still pending, the plaintiff has not suffered the damage essential to triggering a cause of action. Rogers, supra, 330 S.E.2d at 396 ("where the underlying action remains pending, plaintiff can prove no injury because the action may terminate favorably to the client"); Mauldin v. Weinstock, 411 S.E.2d 370, 373 (Ga.App. 1991) (same); Allen Decorating, Inc. v. Oxendine, 483 S.E.2d 298, 301 (Ga. App. 1997) (same).

A number of cases have recognized, in the context of a taxpayer dealing with an IRS audit, that the cause of action does not accrue until a final resolution of the dispute between the taxpayer and the IRS is reached. Perhaps most notable is this Court's opinion in Loftin v. KPMG LLP, 2003 WL 22225621 (S.D. Fla. 2002) authored by Judge Ryskamp. In Loftin, the plaintiff, a shareholder in a regional telecommunications company, sold his stock in a transaction that netted him $30,000,000. At the urging of his banker, plaintiff Loftin contacted the accounting firm of KPMG LLP, which induced him to adopt a "tax planning strategy" that required him to employ an investment firm and entailed issuance of a "more likely than not" opinion letter by Sidley Austin Brown & Wood. The Internal Revenue Service audited the plaintiff's tax return, which KPMG had prepared, and while the audit was still in progress, Loftin filed suit against the accounting firm KPMG and Sidley and others, alleging that they fraudulently induced him to enter into the strategy. He asserted causes of action for *inter alia*, malpractice, fraud, and negligent misrepresentation.

The defendants moved to dismiss, asserting, *inter alia,* that such causes of action had not yet arisen because Loftin, who was still negotiating with the IRS at the time the action was filed, had not yet suffered the essential element of damage. Judge Ryskamp agreed, saying:

> Loftin has failed to state claims for fraud and negligent misrepresentation because he has not established that he suffered any injury stemming from Defendants' alleged misconduct. The Amended Corrected Complaint merely establishes that Loftin is in the midst of a dispute with the IRS. According to the Complaint, "Loftin's 1997, 1999 and 2000[tax] returns are under audit by the Internal Revenue Service ('IRS') ... [he] is currently in negotiations with the IRS ... and may be assessed significant penalties." (ACC ¶ 5.) Loftin also alleges that he "has now committed to pursue settling his tax liability with the IRS and will likely have to pay substantial tax repayments, plus undetermined interest and is subject to potential penalties." (ACC ¶ 55.) Loftin argues that he has suffered an injury because he "has committed to settle with the IRS and is just waiting to be told the ultimate number." (Response to KPMG's Motion to Dismiss at 15.) Loftin speculates that he will have to pay the IRS a "hefty sum" as a settlement. (Id.) Until and unless Loftin and the IRS reach a final resolution of the dispute, it is impossible to determine whether Loftin actually suffered damages from Defendants' alleged misconduct.

As more fully set forth above, it was not until the Plaintiffs, in January 2006, settled with the IRS and wrote a check to the IRS for the $17 million that they sustained any pecuniary loss.    Accordingly, under Georgia law, which provides a four-year limitations period for professional malpractice claims, Plaintiffs' malpractice claim is timely.

Andersen argues in its motion that Plaintiffs' causes of action accrued, and the statute of limitations began to run, when Plaintiff Mark Gainor was advised by lawyers at King & Spalding that the strategy would not withstand IRS scrutiny. This argument misses the mark for several reasons. First, as set forth above, the cause of action does not arise until pecuniary loss is sustained. The fact that a plaintiff knew of the defendant's

error prior sustaining pecuniary loss, is irrelevant. Such knowledge by the plaintiff does not change the date that pecuniary loss is sustained, and it is the date that the plaintiff first sustains pecuniary loss which commences the running of the statute of limitations.

Further, the fact that some attorney did not believe the strategy would withstand IRS scrutiny does not necessarily give rise to knowledge that <u>Andersen</u> did something wrong. The fact that Sidley's legal advice was bad <u>does not mean that Andersen knew that Sidley's opinion was wrong</u>. Thus, notwithstanding this information, Plaintiffs can still prove that they did not discover Andersen's complicity until less than four years before they filed suit. A federal court may not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the plaintiff cannot prove any set of facts that would support a claim for relief. <u>See</u> <u>Conley v. Gibson</u>, 355 U.S. 41 (1957). Plaintiffs certainly can (and expect to) prove that they did not learn of Andersen's complicity until well less than four years before they filed suit. Thus, the motion to dismiss must be denied. E.g., <u>Cook & Nichol, Inc. v. The Plimsoll Club</u>, 451 F2d 505, 506-507 (5th Cir. 1971) ("a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would not be entitled to recover under any state of facts which could be proved in support of his claim.")

_____

**RICHARD CANDELORA**
Florida Bar No. 198056
**RICHARD BENJAMIN WILKES**
**ATTORNEYS AT LAW**
600 South Magnolia Avenue, Suite 200
Tampa, Florida 33606
Telephone:    (813) 254-6060
Facsimile:    (813) 254-6088
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of July, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/Richard W. Candelora
Richard W. Candelora

## SERVICE LIST

Katherine W. Ezell, Esq.
KEzell@podhurst.com
Podhurst Orseck, P.A.
25 W. Flagler Street, Suite 800
Miami, FL 33130
**Counsel for Sidley Austin**

Douglas E. Whitney, Esq.
DWhitney@mwe.com
McDermott Will & Emery
227 West Monroe Street
Chicago, IL 60606-5096
**Counsel for Arthur Andersen,
    Nissley and Marx**

Jonathan E. Altman, Esq.
Jonathan.Altman@mto.com
Aaron May, Esq.
Aaron.May@mto.com
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071
**Counsel for Sidley Austin**

Michael G. Austin, Esq.
MAustin@mwe.com
McDermott Will & Emery
201 South Biscayne Boulevard
Suite 2200
Miami, FL 33131
**Counsel for Arthur Andersen,
    Nissley and Marx**

Coren Stern, Esq.
CStern@bressler.com
Bennett Falk, Esq.
BFalk@bressler.com
Bressler, Amery & Ross
2801 S.W. 149th Avenue
Miramar, FL 33027
**Counsel for Merrill Lynch**

Richard A. Morgan, Esq.
Richard.Morgan@bipc.com
Buchanan Ingersoll & Rooney, P.C.
Bank of America Tower
100 S.E. 2nd Street, 34th Floor
Miami, FL 33131
**Counsel for Klopfenstein**

Stuart E. Abrams, Esq.
SAbrams@frankelabrams.com
Frankel & Abrams
230 Park Avenue, Suite 3330
New York, NY 10169
**Counsel for Ruble**

Stephen J. Anderson, Esq.
Anderson@andersondailey.com
Anderson Dailey LLP
2002 Summit Boulevard, Suite 1250
Atlanta, GA 30319
**Counsel for Klopfenstein**

R. J. Ruble
1517 Avalon Square
Glen Cove, NY 11542

R.J. Ruble
65 Duck Pond Road
Glen Cove, NY 11542