UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case No.: 06-21748 CIV-MARTINEZ/BANDSTRA

MARK J. GAINOR and ELYSE GAINOR,

    Plaintiffs,

v.

SIDLEY AUSTIN LLP, a Delaware limited liability
Partnership, f/k/a SIDLEY AUSTIN
BROWN & WOOD, f/k/a BROWN & WOOD,
R. J. RUBLE, an individual, ARTHUR
ANDERSEN, LLP, an Illinois limited liability
partnership, MICHAEL S. MARX, an individual,
P. ANTHONY NISSLEY, an individual,
MERRILL LYNCH & CO., INC., a Delaware
corporation, and MARK C. KLOPFENSTEIN,
an individual,

    Defendants.
_____/

### REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE PORTIONS OF SIDLEY'S ANSWER

Plaintiffs, Mark J. Gainor ("Gainor") and Elyse Gainor, by and through their undersigned attorneys, hereby file their Reply Memorandum in Support of Plaintiffs' Motion to Strike Portions of Sidley's Answer.

In response to 17 paragraphs of the Amended Complaint, Sidley stated in its Answer that it did not have to admit or deny some or all of the allegations because they amounted to a "legal conclusion." Plaintiffs moved to strike these responses, citing two Federal District Court opinions which both specifically hold that Fed. R. Civ. P. 8 requires a response of "admitted," "denied," or "without knowledge" to all averments

of a complaint, including specifically ones characterized as "legal conclusions." Farrell vs. Pike, 342 F.Supp.2d 433 (M.D.N.C., 2004); State Farm Mut. Auto. Ins. v. Riley, 199 F.R.D. 276 (N.D.Ill., 2001).

In its reply memorandum, Sidley cites no case dealing with this precise issue, except one from the Court of International Trade, Beker Industries Corp. v. United States, 585 F.Supp. 663 (CIT, 1984), which was a proceeding to review an administrative decision, with the review limited to the factual record made during the administrative proceeding. Thus, the pleadings were not framing factual issues for purposes of discovery and trial; the issues had been defined and tried before the matter came to the court. Indeed, the court specifically noted that, "pleading procedure is, at least in this case, altered by the substantive law and related procedures involved here." Id. at 666.

In contrast, numerous federal district court opinions have agreed with Farrell and Riley that "legal conclusions" must be either admitted or denied. E.g., Lathom v. City of Des Plaines, 2004 WL 870829 (N.D.Ill., 2004) ("Answer § 15 declines to respond to the allegations in Complaint § 15 on the premise that those allegations 'attempt [ ] to state a legal conclusion, which is as a matter of law to be decided by the court.' That is just wrong, for legal conclusions are an entirely permissible part of federal pleading … . Accordingly Answer § 15 is stricken."); Moriarty v. B. Michael Muzyka, Ltd., 2003 WL 22964370 (N.D.Ill. 2003) ("Answer ¶ 6 purports to deny the allegations of Complaint ¶ 6 on the ground that they 'call for legal conclusions.' That flouts the well-established principle that legal conclusions are not only a permissible but an integral part of federal notice pleading … . Answer ¶ 6 is stricken."); Ramada Franchise Systems, Inc. v. Royal

2

Vale Hospitality of Cincinnati, Inc., 2002 WL 737283 (N.D.Ill., 2002); McCutcheon v. Zimmer Holdings, Inc., 2006 WL 3431937 (N.D.Ill., 2006).

The reason for the courts' virtually unanimous agreement that legal conclusions must be either admitted or denied, stems from the fact that the Federal Rules of Civil Procedure embrace "notice" pleading, rather than "fact" pleading. E.g., Frieri v. The City of Chicago, 127 F.Supp.2d 992, 994-995 (N.D.Ill., 2001). The purpose of federal complaints is to give notice of the claims that will be tried; and "conclusions" may be pled as long as they provide the defendant with fair notice of the claim. Id.

The requirement of giving your adversary fair notice works both ways. The plaintiff is required to give the defendant notice of his claims, and the defendant is required to give the plaintiff notice of what matters the defendant is placing in issue, so both know what discovery they need to conduct and what they will and will not have to prove at trial in order to prevail. Mitchell v. Wright, 154, F.2d 924, 926-927 (C.A.5 1946); Martinez v. Cornell Corrections of Texas, Inc., 229 F.R.D. 236, 237-238 (D.N.Mex. 2005); Budd Company v. United States, 19 F.R.D. 346, 348 (E.D.Pa., 1956); White v. Smith, 91 F.R.D. 607, 608 (W.D.NY., 1981); see generally 5 C. Wright & A. Miller, *Federal Practice and Procedure*, §1261.

In this case, Plaintiffs have done their part; they have given Sidley full and complete notice of their claims. Indeed, in its Order granting Plaintiff's Motion to Amend (Doc. 39, dated March 7, 2007), this Court noted "the detailed allegations contained in Plaintiffs' proposed Amended Complaint."

Sidley, however, has not done its part. By refusing to admit or deny the allegations of the Amended Complaint, Sidley has failed to give Plaintiffs notice of what matters are in issue and must be proven at trial.

Sidley contends in its reply memo that Plaintiffs have not demonstrated prejudice stemming from Sidley's refusal to state its position on the referenced allegations. The short answer is that the authorities do not require such showing. In any event, however, it can easily be demonstrated.

For example, in Count II of the Compliant, the malpractice claim against Sidley, Plaintiffs made the following allegations:

> 100. As a result Sidley had a duty to exercise reasonable care, skill, and the diligence ordinarily possessed and exercised by attorneys specializing in the field of tax planning, under similar circumstances.
>
> 101. Sidley breached this duty and deviated from the acceptable standard of care for a tax specialist in numerous respects.
>
> 102. In its December 31, 1999 opinion letters, Sidley specifically represents that the Sidley Plan transactions created losses that could legitimately be claimed as tax deductions, and it was "more likely than not" they would be upheld if challenged by the IRS.
>
> 103. At all times material, Sidley knew, or in the exercise of reasonable care should have known, that the deductions were not likely to be upheld if challenged by the IRS. Indeed, Sidley knew or should have known that there was virtually no reasonable possibility that the deductions would be upheld if challenged; yet it told Gainor the exact opposite.

In these paragraphs, Plaintiffs pleaded the various elements of the cause of action: "duty" in paragraph 100; "breach of duty" in paragraph 101; and the basis for the breach in paragraphs 102 and 103. By characterizing the allegations of paragraphs 100, 101 and 103 as "legal conclusions," and refusing to either admit or deny them, Sidley has failed to

give Plaintiffs notice of whether Plaintiffs will have to prove at trial that Sidley owed them a duty of reasonable care; Sidley has failed to notify Plaintiffs whether Plaintiffs will have to prove at trial that Sidley breached its duty to Plaintiffs; and Sidley has failed to notify Plaintiffs whether Plaintiffs will have to prove at trial the matters set forth in paragraph 103, which constitute the basis for Plaintiffs' contention that Sidley breached its duty to Plaintiffs.[1]

Sidley's refusal to notify Plaintiffs of its position on these issues in its pleading is exacerbated by the stance taken by Sidley in discovery. During the deposition of Sidley's corporate representative, Mr. J.A. MacKinnon, counsel for Plaintiffs asked about the element of duty, inquiring whether or not Sidley acknowledged that Mr. Gainor was a client of Sidley's. Mr. MacKinnon's response was problematic. The most he would say is that if the opinion letters were delivered (he claimed not to have seen signed copies), then "I would think Mr. Gainor would have been a client" of Sidley's. (Depo. pp. 17-18)[2]. Moreover, Mr. MacKinnon refused to say if Sidley owed Gainor a fiduciary duty, because "that's a legal conclusion" (Depo. pp. 470-471); and he claimed to be unable to provide Sidley's position on whether Sidley was required to use reasonable care in connection with its services to Gainor. (Depo. pp. 469-470)

With respect to the matter of breach of duty, counsel for Plaintiffs inquired at the deposition whether Sidley presently maintains that the opinions set forth in Mr. Ruble's

---

[1] Sidley's response to ¶ 102 of the Amended Complaint is similarly uninformative. Sidley's response to paragraph 102 reads: "To the extent that paragraph 102 purports to allege the content of documents, the documents speak for themselves, and Brown & Wood denies any allegations regarding or purporting to characterize the content of those documents that are inconsistent with the documents themselves."

[2] These and the subsequently referenced deposition pages have been designated as confidential by Sidley. Accordingly, they are being separately filed as attachments to Plaintiffs' Motion to File Deposition Pages Under Seal, which is being filed simultaneously herewith.

opinion letters – which Plaintiffs claim were incorrect – are valid (Depo. p. 28), and counsel further asked whether Sidley stands behind Ruble's opinions today. (Depo. pp. 142-143) Mr. MacKinnon refused to answer either question, claiming that he was unable to state Sidley's position on these issues. Similarly, when asked whether Sidley agrees with Mr. Ruble's statement in the opinion letters that IRS Notice 99-59 did not make it more likely than not that the program would fail to pass IRS scrutiny, Mr. MacKinnon said he was not aware of Sidley's position and had no position himself. (Depo. pp. 48-49) Mr. MacKinnon was also asked whether Sidley complied with prevailing professional standards of care with regard to the Gainor opinion letters, and again claimed to be unable to answer. (Depo. p. 61)

In summary, when the Plaintiffs attempted to learn Sidley's position on key issues in the pleadings, Sidley refused to disclose them claiming the matters are "legal conclusions that do not require a response," and when Plaintiffs tried to get this information in discovery, Sidley thwarted that effort as well, by supplying a corporate representative who claimed to be unable to state Sidley's position.[3]

These matters - particularly Sidley's position on whether it will concede that the Ruble opinions were invalid or, on the other hand, will contend that they were legitimate legal advice which met the prevailing standard of care - are extremely important for Plaintiffs to know at this time. If Sidley is conceding these issues, enormous amounts of discovery and expert witness fees can be avoided. However, to realize these benefits, Plaintiffs must know Sidley's position now.

---

[3] No motion to compel has as yet been filed in regard to Sidley's failure to produce a corporate representative with the requisite knowledge, as counsel for Plaintiffs and counsel for Sidley are in a continuing dialogue attempting to resolve the situation without the need of court intervention.

Along the same lines, in paragraphs 106 and 107, Plaintiffs alleged that:

> 106. In addition, Sidley failed to disclose that the subject transactions should have been registered as "potentially abusive tax shelters" under 26 U.S.C. § 6111(c).
>
> 107. Further, Sidley should have, but did not, disclose Sidley's actual role as an organizer, promoter and seller of these unregistered, potentially abusive tax shelters, its relationship with Andersen and other large accounting firms, and related conflicts of interest which precluded the rendition of objective and "independent" tax opinions.

Here again, Plaintiffs were setting forth and notifying Sidley of the basis of their claim of malpractice, but Sidley failed to notify Plaintiffs whether these were contested matters or not, claiming that "to the extent the allegations [of these paragraphs] are legal conclusions, no response is required."[4]

Another example of Sidley's failure to provide Plaintiffs with notice of the matters Sidley is placing in issue, relates to Sidley's responses to Count IV, which claims a breach of implied contract. In pertinent part, Count IV alleges:

> 120. An agreement between Sidley and Gainor arose by implication given the facts and circumstances surrounding the parties' conduct.
>
> 121. Gainor conferred a benefit upon Sidley by paying four hundred thousand dollars ($400,000) to Sidley which was accepted as payment for legal services.
>
> 122. Under ordinary circumstances, a reasonable law firm holding itself out as specializing in tax planning, would reasonably expect to be required to render substantial, competent legal services for such a benefit.

---

[4] Sidley went on to say it "is without sufficient knowledge to admit or deny the remaining allegations" in these paragraphs, but it does not tell Plaintiffs what these "remaining" allegations are. See McCutcheon v. Zimmer Holdings, Inc., 2006 WL 3431937 (N.D.Ill., 2006). ("Each Answer ¶¶ 11-13, 28-31 and 33 wrongly assert that the corresponding Complaint allegations state legal conclusions, so that 'no response is required and none is given … . Those same paragraphs also wrongly employ a 'to the extent' locution in a way that leaves the reader to guess just what defense counsel considers to be legal conclusions on the one hand and factual allegations on the other.").

    123. Sidley breached the implied contract with Gainor in failing to render competent legal services by, among other things: (1) failing to exercise such reasonable care, skill, and diligence as is ordinarily exercised by attorneys specializing in the field of tax planning, under similar circumstances; (2) failure to disclose that the subject transactions should have been registered as "potentially abusive tax shelters" under 26 U.S.C. § 6111(c) and that investor lists needed to be maintained under 26 U.S.C. § 6112; (3) failing to disclose Sidley's actual role as an organizer, promoter and seller of these and other unregistered, potentially abusive tax shelters, its relationship with Andersen, and related conflicts of interest which precluded the rendering of objective and "independent" tax opinions; (4) failing to disclose to Gainor Sidley's concerns that Gainor's ability to rely in good faith upon the advice of a tax professional was impaired by Notice 99-59; and (5) making the material misstatements and omissions set forth in paragraph 93 hereof.

In response to paragraphs 120, 122, and 123, Sidley claims that it did not have to admit or deny all the allegations because these paragraphs contained "legal conclusions". Here again, Plaintiffs were alleging the elements of the cause of action: paragraph 120 alleges that there was an "agreement"; paragraph 122 states the "duty" that Sidley owed as a result of the agreement; and paragraph 123 alleges that, and how, Sidley breached the agreement. Plaintiffs are entitled to know which of these matters Sidley is placing in issue such that Plaintiffs must prove them at trial, and Plaintiffs need to know this now, in time to conduct appropriate discovery. Sidley has failed to do this. It says it will not admit or deny these allegations because they are "legal conclusions." Sidley's position is unsupportable. The law requires Sidley to contest or admit now, in time for Plaintiffs to conduct appropriate discovery and be prepared to prove the matters at trial, if necessary.

Sidley's responses to paragraphs alleging its omissions and misrepresentations likewise fail to notify Plaintiffs of what is and is not being placed in issue. For example, in paragraphs 80 and 81 of Count I, the conspiracy claim, Plaintiffs set forth Sidley's alleged misrepresentations and omissions, and Sidley's state of mind at the time. Sidley's

responses to these paragraphs, which state that no response is required to legal conclusions, that "the documents speak for themselves," and that Sidley is without knowledge of "the remaining allegations," make it unclear what, if anything, Sidley is admitting and what Sidley is denying. See State Farm Mut. Auto. Ins. v. Riley, 199 F.R.D. 276 (N.D.Ill., 2001); McCutcheon v. Zimmer Holdings, Inc., 2006 WL 3431937 (N.D.Ill., 2006).

Sidley's responses in connection with the negligent misrepresentation and fraud claims, Counts VI and VII respectively, are similarly problematic. In the negligent misrepresentation count, Plaintiffs alleged:

> 133.   At the time they were made, Sidley should have known that these representations of material fact were false and that these omissions of fact were material.

Likewise, in the fraud count, Plaintiffs alleged:

> 141.   At the time they were made, Sidley knew that these representations of material fact were false and that these omissions of fact were material.

Here again, Plaintiffs are alleging one of the elements of the cause of action: knowledge by Sidley of the falsity of its representations and omissions. Plaintiffs have notified Sidley what they are claiming to be Sidley's state of mind at the time Sidley made false representations and omissions. Under the Federal Rules of Civil Procedure, Sidley is required to notify Plaintiffs whether it admits or denies what Plaintiffs have alleged. Sidley has failed to do this. Rather, Sidley again claims that it does not have to reveal its position on these matters because these paragraphs plead "legal conclusions." Plaintiffs do not necessarily agree or acknowledge that they do, but even if they do, Sidley is required to admit or deny them. Sidley's Answer should be stricken and the

allegations should be deemed admitted, or Sidley should be made to notify Plaintiffs of its position on these matters.

For the above-stated reasons, paragraphs 19, 54, 80, 81, 95, 100, 101, 103, 106, 107, 120, 122, 123, 128, 133, 141, and 148 of Sidley's Answer should be stricken, and either Sidley should be deemed to have admitted these paragraphs of the Amended Complaint, or Sidley should be required to admit or deny their allegations.

_____
RICHARD BENJAMIN WILKES
Florida Bar No. 267163
**RICHARD BENJAMIN WILKES**
**ATTORNEYS AT LAW**
600 South Magnolia Avenue, Suite 200
Tampa, Florida  33606
E-Mail:        rwilkes@rbwilkes.com
Telephone:   (813) 254-6060
Facsimile:    (813) 254-6088
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this ____ day of August, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_____
Richard Benjamin Wilkes

## SERVICE LIST

Jonathan E. Altman, Esq.
Jonathan.Altman@mto.com
Aaron May, Esq.
Aaron.May@mto.com
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071
**Counsel for Sidley Austin**

Katherine W. Ezell, Esq.
KEzell@podhurst.com
Podhurst Orseck, P.A.
25 W. Flagler Street, Suite 800
Miami, FL  33130
**Counsel for Sidley Austin**

Coren Stern, Esq.
CStern@bressler.com
Bennett Falk, Esq.
BFalk@bressler.com
Bressler, Amery & Ross
2801 S.W. 149th Avenue
Miramar, FL  33027
**Counsel for Merrill Lynch**

Stuart E. Abrams, Esq.
SAbrams@frankelabrams.com
Frankel & Abrams
230 Park Avenue, Suite 3330
New York, NY  10169
**Counsel for Ruble**

R. J. Ruble
1517 Avalon Square
Glen Cove, NY  11542

Douglas E. Whitney, Esq.
Jocelyn Francoeur, Esq.
DWhitney@mwe.com
McDermott Will & Emery
227 West Monroe Street
Chicago, IL  60606-5096
**Counsel for Arthur Andersen,
   Nissley and Marx**

Stephen J. Anderson, Esq.
Anderson@andersondailey.com
Anderson Dailey LLP
2002 Summit Boulevard, Suite 1250
Atlanta, GA  30319
**Counsel for Klopfenstein**

Richard A. Morgan, Esq.
Richard.Morgan@bipc.com
Buchanan Ingersoll & Rooney, P.C.
Bank of America Tower
100 S.E. 2nd Street, 34th Floor
Miami, FL  33131
**Counsel for Klopfenstein**

Michael G. Austin, Esq.
MAustin@mwe.com
McDermott Will & Emery
201 South Biscayne Boulevard
Suite 2200
Miami, FL  33131
**Counsel for Arthur Andersen,
   Nissley and Marx**

R.J. Ruble
65 Duck Pond Road
Glen Cove, NY  11542